# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (Miami Division)

FRANK E. POLO, SR. (Pro Se);　)
FP; HP.　)
　　　Plaintiffs,　)
　)

v.　) CASE NO: _____

SCOTT MARCUS BERNSTEIN (in his Personal　)
and official capacity);　)
MARCIA DEL REY (in her Personal and Official　)
capacity);　)
SPENCER MULTACK (in his Personal and　)
official capacity);　)
BERTILA SOTO (in her official capacity);　)
NUSHIN G. SAYFIE (in her official capacity);　)
IVAN F. FERNANDEZ (in his official capacity);　)
KEVIN EMAS (in his official capacity);　)
NORMA S. LINDSEY (in her official capacity);　)
ERICK WM. HENDON (in his official capacity);　)
FLEUR J. LOBREE (in her official capacity);　)
MONICA GORDO (in her official capacity);　)
ALEXANDER S. BOKOR (in his official　)
capacity);　)
TOMAS LOGUE (in his official capacity);　)
MANUEL A. SEGARRA III (in his personal and　)
official capacity);　)
ROBERT S. SINGER (in his Personal and　)
Official Capacity);　)
TAMARA F. LAWSON (In her official　)
capacity);　)
JAY S. SILVER (In his official capacity);　)
PATRICIA MOORE (In her official capacity);　)
JUAN CARLOS PLANAS (In his Official　)
capacity);　)
DAVID A. ARMSTRONG (In his official　)
capacity);　)
DANIELLA LEVINE CAVA (in her official　)
capacity);　)
ELEVENTH JUDICIAL CIRCUIT COURT OF　)
FLORIDA;　)
FLORIDA THIRD DISTRICT COURT OF　)
APPEALS;　)
SEGARRA & ASSOCIATES, P.A.;　)
ST. THOMAS UNIVERSITY, INC.　)
MIAMI-DADE COUNTY;　)

**JURY TRIAL IS DEMANDED**

FILED BY _____ D.C.

MAY 04 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

MIAMI-DADE COUNTY POLICE
DEPARTMENT;
MERLIN HERNANDEZ (in her personal
capacity)
RANDOLPH MARTINEZ (in his personal
capacity)
ARMANDO GARCIA (in his official Capacity)

Defendants,

_____/

## § 1.COMPLAINT

1. Plaintiffs, FRANK E. POLO SR., individually and as natural father and next friend for FP, and HP, both minors, file this complaint against the defendants, SCOTT MARCUS BERNSTEIN (in his Personal and official capacity); MARCIA DEL REY (in her Personal and Official capacity); SPENCER MULTACK (in his Personal and official capacity); BERTILA SOTO (in her official capacity); NUSHIN G. SAYFIE (in her official capacity); IVAN F. FERNANDEZ (in his official capacity); KEVIN EMAS (in his official capacity); NORMA S. LINDSEY (in her official capacity); ERICK WM. HENDON (in his official capacity); FLEUR J. LOBREE (in her official capacity); MONICA GORDO (in her official capacity); ALEXANDER S. BOKOR (in his official capacity); TOMAS LOGUE (in his official capacity); MANUEL A. SEGARRA III (in his personal and official capacity); ROBERT S. SINGER (in his Personal and Official Capacity); TAMARA F. LAWSON (In her official capacity); JAY S. SILVER (In his official capacity); PATRICIA MOORE (In her official capacity); JUAN CARLOS PLANAS (In his Official capacity); THOMAS WENSKI (In his official capacity); DAVID A. ARMSTRONG (In his official capacity); DANIELLA LEVINE CAVA (in her official capacity); ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; FLORIDA THIRD DISTRICT COURT OF APPEALS; SEGARRA & ASSOCIATES, P.A.; ST. THOMAS UNIVERSITY, INC.; MIAMI-DADE COUNTY; MIAMI-DADE COUNTY POLICE DEPARTMENT; MERLIN HERNANDEZ (in her personal capacity); and RANDOLPH MARTINEZ (in his personal capacity), ARMANDO GARCIA (in his official capacity) and alleges as follows:

## § 2. JURISDICTION, VENUE & STANDING

2. Jurisdiction is proper in this court under 42 U.S.C. §1983, 42 U.S.C. §1961 - §1968, and 42 U.S.C. §1985. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a), and attorneys' fees and costs under 42 U.S.C. § 1988. Moreover, this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

3. Venue is proper under 28 U.S.C. §1391(b) as most Defendants are residents of Miami-Dade County, which is located in the U.S. Southern District of Florida (this judicial district) and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County.

4. All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiffs for which the Plaintiffs are seeking relief. Therefore, the Plaintiffs, have "standing" to bring this cause of action.

## § 3. PARTIES

5. Plaintiff, FRANK E. POLO, SR., individually, (hereinafter "MR. POLO" or "Polo") and as the next friend to FP (10 years old), and HP (10 years old), both minors, (hereinafter, the "Children," and collectively with MR. POLO, the "Plaintiffs") are residents of Miami-Dade County, Florida.

6. Defendant, SCOTT M. BERNSTEIN, (hereinafter "JUDGE BERNSTEIN") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, he is a resident of Miami-Dade County, Florida.

7. Defendant, MARCIA DEL REY, (hereinafter "JUDGE DEL REY") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

8. Defendant, SPENCER MULTACK, (hereinafter "JUDGE MULTACK") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, he is a resident of Miami-Dade County, Florida

9. Defendant, BERTILA SOTO, (hereinafter "JUDGE SOTO") was/is a Chief Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

10. Defendant, NUSHIN G. SAYFIE, (hereinafter "JUDGE SAYFIE") was/is a Chief Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

11. Defendant, IVAN F. FERNANDEZ, (hereinafter "JUDGE FERNANDEZ") was/is the Chief Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, he is a resident of Miami-Dade County, Florida.

12. Defendant, KEVIN EMAS, (hereinafter "JUDGE EMAS") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, he is a resident of Miami-Dade County, Florida.

13. Defendant, NORMA S. LINDSEY, (hereinafter "JUDGE LINDSEY") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, she is a resident of Miami-Dade County, Florida.

14. Defendant, ERICK WM. HENDON, (hereinafter "JUDGE HENDON") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, he is a resident of Miami-Dade County, Florida.

15. Defendant, FLEUR J. LOBREE, (hereinafter "JUDGE LOBREE") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, she is a resident of Miami-Dade County, Florida.

16. Defendant, MONICA GORDO, (hereinafter "JUDGE GORDO") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, she is a resident of Miami-Dade County, Florida.

17. Defendant, ALEXANDER S. BOKOR, (hereinafter "JUDGE BOKOR") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and upon information and belief, he is a resident of Miami-Dade County, Florida.

18. Defendant, TOMAS LOGUE, (hereinafter "JUDGE LOGUE") was/is a Judge and employee of the Defendant FLORIDA THIRD DISTRICT COURT OF APPEALS, and defendant ST. THOMAS UNIVERSITY, INC., and upon information and belief, he is a resident of Miami-Dade County, Florida.

19. Defendant, ROBERT S. SINGER, (hereinafter "GM SINGER") was/is a General Magistrate and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

20. Defendant, TAMARA F. LAWSON (hereinafter "Ms. Lawson" or "DEAN LAWSON" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was an employee and Dean of the Defendant's ST. THOMAS UNIVERSITY, INC. School of law, and upon information and belief she is a resident of Seattle, Washington.

21. Defendant, JAY S. SILVER (hereinafter "MR. SILVER" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee of ST. THOMAS UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

22. Defendant, PATRICIA MOORE (hereinafter "Dean Moore" or "Ms. Moore" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee and Dean of ST. THOMAS UNIVERSITY, INC., and upon information and belief she is a resident of Miami-Dade County, Florida.

23. Defendant, JUAN CARLOS PLANAS (hereinafter "MR. PLANAS" or "JC PLANAS" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee of ST. THOMAS UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

24. Defendant, DAVID A. ARMSTRONG (hereinafter "MR. ARMSTRONG" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is the president and an employee of the DEFENDANT ST. THOMAS UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

25. Defendant, MERLIN HERNANDEZ, (hereinafter "MS. HERNANDEZ") was/is the Petitioner in Family Court case 2012-017787-FC-04 in the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

26. Defendant, RANDOLPH MARTINEZ, (hereinafter "MR. MARTINEZ") was/is Ms. Hernandez's boyfriend, and upon information and belief, he is a resident of Miami-Dade County, Florida.

27. Defendant, MANUEL A. SEGARRA II, (hereinafter "MR. SEGARRA") was/is an employee, owner, and operator of SEGARRA & ASSOCIATES, P.A., and upon information and belief, he is a resident of Miami-Dade County, Florida.

28. Defendant DANIELLA LEVINE CAVA was/is the Mayor of MIAMI-DADE COUNTY and upon information and belief, she is a resident of Miami-Dade County, Florida.

29. Defendant ARMANDO GARCIA was/is an investigator/employee of MIAMI-DADE POLICE DEPARTMENT and of MIAMI-DADE COUNTY and upon information and belief, he is a resident of Miami-Dade County, Florida.

30. Defendant, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (hereinafter "EJC") is located at 175 NW 1st Avenue, 30th floor, Miami, FL 33128, and it is one of twenty (20) judicial circuits in the Florida State Courts System, a subdivision of the State of Florida.

31. Defendant, FLORIDA THIRD DISTRICT COURT OF APPEALS (hereinafter "3d DCA") is located at 2001 SW 117th Ave, Miami, FL 33175, and it is one of six (6) Courts of Appeals in the Florida State Courts System, a subdivision of the State of Florida.

32. Defendant, SEGARRA & ASSOCIATES, P.A. (hereinafter "Segarra Law"), is a Florida for Profit Corporation organized and existing under the laws of the State of Florida, the corporation has its principal place of business in Miami-Dade County, Florida, and it is located at 2655 South Le Jeune Road, Penthouse 2 C, Coral Gables, FL 33134

33. Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "STU"), is a Florida Not for Profit Corporation organized and existing under the laws of the State of Florida, the corporation has its principal place of business at 16401 NW 37th Avenue, Miami Gardens, FL 33054, Miami-Dade County, Florida.

34. Defendant, MIAMI-DADE COUNTY (hereinafter the "MDC") is located at 111 NW 1st Street, 29th Floor, Miami, FL 33128, one of the 67 counties in the State of Florida, a subdivision of the State of Florida.

35. Defendant, MIAMI-DADE COUNTY POLICE DEPARTMENT (hereinafter the "MDCPD") is located at 9105 NW 25th St., Doral, FL 33172, a Police Department directly managed and supervised by the MDC, a subdivision of MDC and the State of Florida.

## § 4. GENERAL FACTS APPLYING TO ALL COUNTS

36. ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; FLORIDA THIRD DISTRICT COURT OF APPEALS; SEGARRA & ASSOCIATES, P.A.; ST. THOMAS UNIVERSITY, INC.; MIAMI-DADE COUNTY; MIAMI-DADE COUNTY POLICE DEPARTMENT, and all other Defendants, individually, are "persons" for purposes of 42 U.S.C. Section 1983.

37. At all times relevant in all counts, sections, and subsections, is the fact that MR. POLO and his Children were parties in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA for Miami-Dade Country, Case No.: 2012-017787-FC-04, where the defendant Scott M. Bernstein was the presiding judge from about July 7, 2012, until on or about January 31, 2019.

38. At all times relevant in all counts, sections, and subsections, is the fact that MR. POLO was a party in a Civil Florida State case (the "Civil Case"), in which MR. POLO was seeking redress for injuries resulting from intentional torts caused by many attorneys including, among others, BERNSTEIN'S appointed Guardian Ad Litem in the family case, Lilli Josephine Real (AKA Lilliana Real) (hereinafter, the "GAL").

39. At all times relevant in all counts, sections, and subsection is the fact that DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY (together hereinafter "11th Circuit Judges") are Fla. Const. Art. 5 Judges, and their Jurisdiction is obtained from, state statutory law, common law, and the authority granted under the Fla. Const. Art. 5 §5 and are limited to heard and adjudicated cases raised under Florida Law, appeals from county courts, and direct review of administrative action prescribed by Florida law.

40. At all times relevant in all counts, sections, and subsections, is the fact that DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY, and GENERAL MAGISTRATE ROBERT S. SINGER, were acting under color of state law. The *misused of their power*, which they *possessed by virtue of state law* and made possible only because the DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY, and GENERAL MAGISTRATE ROBERT S. SINGER are *clothed with the authority of state law,* is an action taken under color of state law.

41. At all times relevant herein in all counts is the fact that the DEFENDANTS' JUDGES BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and GM SINGER malicious, unlawful,

and unconstitutional acts were done while they were acting in the performance of their official duties, but in clear absence of all jurisdictions. JUDGE BERNSTEIN was acting in a clear absence of all jurisdiction when he sent the letter to ST. THOMAS UNIVERSITY to maliciously interfere with MR. POLO's right to continued enrollment at ST. THOMAS UNIVERSITY, and JUDGE DEL REY, JUDGE MULTACK, and GM SINGER were acting in clear absence of all jurisdiction when they continued to adjudicate matters in a case that was precluded by res judicata with the intent of, but not limited to, depriving the plaintiffs of their constitutional rights, harassing, intimidating, and retaliating against the plaintiff(s), and preventing the Plaintiffs from accessing the court system without due process of law to secure plaintiff's unsuccessful use of court resources.

42. At all times relevant in all counts, sections, and subsection is the fact that DEFENDANTS IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE; (together hereinafter "3d DCA Judges") are Fla. Const. Art. 5 Judges, and their Jurisdiction is obtained from the authority granted under the Fla. Const. Art. 5 §4(b) and are limited "to hear appeals, that may be taken as a matter of right, from final judgments or orders of trial courts, including those entered on review of administrative action, not directly appealable to the supreme court or a circuit court. They may review interlocutory orders in such cases to the extent provided by rules adopted by the supreme court."

43. At all times relevant in all counts, sections, and subsections, is the fact that DEFENDANTS IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE, were acting under color of state law. The *misused of their power*, which they *possessed by virtue of state law* and made possible only because the DEFENDANTS IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE are *clothed with the authority of state law,* is an action taken under color of state law.

44. At all times relevant herein in all counts is the fact that DEFENDANTS' IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE malicious, unlawful, and unconstitutional acts were done while they were acting in the performance of their

official duties, but in the clear absence of all jurisdiction. THE 3D DCA JUDGES were acting in a clear absence of all jurisdiction when they conspired to protect ST. THOMAS UNIVERSITY, , JUDGE DEL REY, JUDGE MULTACK, and GM SINGER.

45. At all times relevant is the fact that Defendant, MANUEL A. SEGARRA II owns, operates, manages, directs, and controls SEGARRA & ASSOCIATES, P.A.

46. At all relevant times, Manuel A. Segarra III (hereinafter "DEFENDANT MR. SEGARRA") was the attorney for MR. POLO's ex-girlfriend Merlin Hernandez (hereinafter "Ms. Hernandez"), he was a co-conspirator with, at least, four State Actors, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, and JUDGE MULTACK. MR. SEGARRA and the company he owned and represented, SEGARRA & ASSOCIATES, P.A., were acting under the color of Florida law, in furtherance to the conspiracy he had with those judges at the time these claims occurred.

47. At all times relevant is the fact that DEFENDANT MR. SEGARRA, as the registered owner and president of Segarra & Associates, P.A., had the right to control his agents. This right includes but is not limited to controlling the acts of any employee in his office, the acts of any associate attorney, the hiring of independent contractors, and his own actions as an agent of Segarra & Associates, P.A. Moreover, DEFENDANT MR. SEGARRA had the right to make decisions in regard to Segarra's Law Firm's day-to-day operations. Therefore, the actions of DEFENDANT MR. SEGARRA, his employees, associates, and independent contractors are attributable to Segarra & Associates, P.A., and Segarra's Law Firm.

48. At all times it is material, on all counts, that MS. HERNANDEZ, conspired and acted in concert with state officials, namely, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM. SINGER, and with her attorney DEFENDANT MR. SEGARRA who was also acting under Color of State Law. Therefore, Ms. Hernandez was acting under Color of State Law.

49. At all times it is material, on all counts, that MR. MARTINEZ, conspired and acted in concert with state officials, namely, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM. SINGER, MS. HERNANDEZ, and with MS. HERNANDEZ'S attorney DEFENDANT MR. SEGARRA who was also acting under Color of State Law. Therefore, MR. MARTINEZ was acting under Color of State Law.

50. SEGARRA LAW was at all relevant times responsible for its employees. SEGARRA LAW is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Laws of Florida.

51. ST. THOMAS UNIVERSITY, INC. was at all relevant times responsible for its employees. ST. THOMAS UNIVERSITY, INC., is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Florida Laws.

52. At all times it is material, in all counts, that TAMARA F. LAWSON; JAY S. SILVER; PATRICIA MOORE; JUAN CARLOS PLANAS; DAVID A. ARMSTRONG (hereinafter all together referred to as "STU DEFENDANT EMPLOYEES), conspired and acted in concert with, at least two state actors, JUDGE BERNSTEIN and JUDGE THOMAS LOGUE. Therefore, TAMARA F. LAWSON; JAY S. SILVER; PATRICIA MOORE; JUAN CARLOS PLANAS; DAVID A. ARMSTRONG was acting under Color of State Law, and so it was their employer ST. THOMAS UNIVERSITY, INC., (hereinafter "STU").

53. MIAMI-DADE COUNTY; and MIAMI-DADE COUNTY POLICE DEPARTMENT. were at all relevant times responsible for their employees. MIAMI-DADE COUNTY; and MIAMI-DADE COUNTY POLICE DEPARTMENT, are charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Florida Laws.

54. This lawsuit arises out of the Defendants' violation of Plaintiff's federal, and state constitutional rights as secured by the United States Constitution, the Florida Constitution, and Federal and State statutory and common laws. Consequently, the Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983. Plaintiff also has viable state law claims.

## A. Agency and Concert of Action

55. At all times abovementioned Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining

Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

56. At all times it is material, on all counts, that DAVID A. ARMSTRONG, was acting within the scope of his official duties as the Maximum representative of ST. THOMAS UNIVERSITY, INC., and as an employee of STU, consented to the harassment, and violation of the constitutional rights of STU DEFENDANT EMPLOYEES against MR. POLO and his children. Therefore, all actions of STU DEFENDANT EMPLOYEES and those of David A. ARMSTRONG are attributable to ST. THOMAS UNIVERSITY, INC. At all times it is material, on all counts, that STU DEFENDANT EMPLOYEES and MR. ARMSTRONG were acting to protect the Political, financial, and influential interests of ST. THOMAS UNIVERSITY, INC., in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of their malicious acts.

57. At all times it is material, on all counts, that BERTILA SOTO and NUSHIN G. SAYFIE acting within the scope of their official duties as the Maximum representatives of the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (hereinafter the "11th CIRCUIT") and an employee of the 11th CIRCUIT, consented to the harassment, and violation of constitutional rights of 11th Circuit Judges Employees against MR. POLO and his children. Therefore, all actions of the BERTILA SOTO, NUSHIN G. SAYFIE, and those actions of the other 11th CIRCUIT JUDGES, are attributable to the 11th CIRCUIT. At all times it is material, on all counts, that the 11th CIRCUIT JUDGES were acting to protect the Political, financial, and influential interests of the FAMILY COURT ENTERPRISE and this of the 11th CIRCUIT, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of their malicious acts.

58. At all times it is material, on all counts, that IVAN F. FERNANDEZ, acting within the scope of their official duties as the Maximum representatives of FLORIDA THIRD DISTRICT COURT OF APPEALS (hereinafter the "3d DCA") and an employee of the 3d DCA, consented to the harassment, and violation of constitutional rights of 11th Circuit Judges Employees against MR. POLO and his children. Therefore, all actions of the IVAN F. FERNANDEZ, and those of the other 3d DCA JUDGES, are attributable to the 3d DCA. At all times it is material, on all counts,

the 3d DCA JUDGES were acting to protect the Political, financial, reputation, and influential interests of the FAMILY COURT ENTERPRISE, and this of the 3rd DCA in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of their malicious acts.

59. At all times it is material, on all counts, that MR. SEGARRA was acting within the scope of official duties as the Maximum representative of SEGARRA & ASSOCIATES, P.A., and within the scope of his duties and responsibility as an employee of SEGARRA & ASSOCIATES, P.A. Therefore, as the principal of SEGARRA & ASSOCIATES, P.A., MR. SEGARRA consented to the harassment and all the intentional violations of MR. POLO's constitutional Rights and all acts of retaliation, harassment, and humiliation of MR. SEGARRA against MR. POLO. Therefore, all the actions of MR. SEGARRA are attributable to SEGARRA & ASSOCIATES, P.A. At all times it is material, on all counts, that MR. SEGARRA was acting in protecting the Political, financial, and influential interests of SEGARRA & ASSOCIATES, P.A., MR. SEGARRA, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of MR. SEGARRA'S malicious acts.

60. At all times a material is, on all counts, that the DEFENDANT MS. MERLIN HERNANDEZ and MR. RANDOLPH MARTINEZ (who, upon information and belief, financed the harassment) hired the DEFENDANT SEGARRA & ASSOCIATES, P.A., and thereby MR. SEGARRA, to act as her agent, and at all times relevant in this complaint, SEGARRA & ASSOCIATES, P.A. and THE DEFENDANT MR. SEGARRA were acting within the scope of their duties and responsibility as employees/agents of MERLIN HERNANDEZ and MR. RANDOLPH MARTINEZ. Therefore, as the principal and employer of DEFENDANT SEGARRA & ASSOCIATES, P.A., and thereby of MR. SEGARRA, MS. HERNANDEZ, and MR. MARTINEZ consented to the harassment and all the intentional violations of MR. POLO's constitutional Rights and all acts of retaliation, harassment, and humiliation of MR. SEGARRA against MR. POLO. Therefore, all actions of MR. SEGARRA, and SEGARRA & ASSOCIATES, P.A. are attributable to MS. MERLIN HERNANDEZ. At all times it is material, on all counts, that MS. HERNANDEZ and MR. MARTINEZ were acting in protecting their own Political, financial, and influential interests, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of MS. HERNANDEZ and MR. MARTINEZ malicious acts.

## § 5.STATEMENT OF FACTS

61. MR. POLO is an immigrant that came to this country in search of freedom from his natal country, Cuba, where he lived under a dictatorship. From an early age, MR. POLO felt a passion for law, for doing the right thing, and for fighting for what he was passionate about, the rights of others.

62. In 2013, when he was forty-one (41) years old, MR. POLO decided to go back to school and make a change in his field of work; therefore, he switched careers from the Information Technology field to the legal field.

63. However, he had to first finish his bachelor's degree to apply for admission into Law School. Therefore, he went back to Miami Dade College to finish his bachelor's degree.

64. Before going back to school. MR. POLO was debt-free. In pursuit of his lifelong dream of becoming a lawyer, MR. POLO returned to college and finished his bachelor's degree. MR. POLO made it into the dean's list every single semester since he came back to MDC and maintained straight "A" with the objective of bringing his GPA to a minimum of 3.0 to be able to get admitted into law school.

65. MR. POLO had impeccable conduct, at Miami-Dade College ("MDC"), and later at St. Thomas University, Inc. ("STU"). There was never a complaint about MR. POLO's conduct, and he never challenged the authority of any of his supervisors.

66. MR. POLO was admitted to three different Law Schools, but he decided to enter into an implied contract with STU where STU was to provide legal education in exchange for MR. POLO's payment for STU's educational services.

67. Because of the agreement between MR. POLO and STU, MR. POLO was entitled to receive a Juris Doctor Degree ("JD"), and a Certificate in Tax Law ("Tax Certificate") upon satisfactory completion of STU's JD and Tax Certificate programs. MR. POLO never received either one of those.

68. In reasonable reliance on the agreement he had with STU, MR. POLO gave up the opportunity of returning to his business which, at some point, had produced a salary of more than $160,000 dollars per year, and other perks and benefits. Moreover, also in reliance on the agreement he had with STU, MR. POLO gave up his technical certifications, which made possible the previously mentioned salary, and sold his company's assets to survive, and provide for his children and wife while going to law school.

69. Among those certifications MR. POLO gave up in reasonable reliance on the agreement he had with STU were: Cisco Certified **_Design_** Professional (CCDP), Cisco Certified Network Professional in **_Voice_** (CCNP Voice), Cisco Certified Network Professional (CCNP), Microsoft Certified System Engineer in Servers (MCSE Server), and Microsoft Certified System Engineer in Messaging (MCSE Messaging). Said Certifications were at the senior network design engineers, senior analysts, and principal systems engineer's level.

70. MR. POLO was over 43 years old, with an untreated attention deficit, and Neurocognitive impairments before he began law school; nevertheless, he performed at his best being an excellent student who received (1) the CALI Excellence for the Future Award; (2) Excellence in Academic Studies (Dean List) spring 2017; (3) Excellence in Academic Studies (Dean List) Fall 2017; (4) Pro Bono Commendation; (5) was a member of the Tax Law Society; (6) Student Member of Florida Bar's Tax Division; and (7) a member of Hon. Peter T. Fay American Inn of Court (in multiple occasions).

71. MR. POLO has never been involved in the use of drugs, abuse of alcohol, or prescribed drugs.

### B.  THE FAMILY COURT CASE

72. On May 10, 2012, MR. POLO had two out-of-wedlock children with Merlin Hernandez (hereinafter "Ms. Hernandez"). After Ms. Hernandez's family performed a public scandal in the hospital where the children were born, MR. POLO decided to leave the relationship.

73. At the beginning of June 2012, MR. POLO told Ms. Hernandez to go on with her life and start meeting other people, because he was already meeting someone. Thereafter, Ms. Hernandez engaged in using the judicial system, the Law Enforcement system, and repeated public scandals to harass MR. POLO.

74. After finding out that MR. POLO was dating his current wife, in preparation for legal separation, Ms. Hernandez engaged (Stephanie Granda (hereinafter "Ms. Granda") and Gustavo J. Losa (hereinafter "Mr. Losa"), to plan how to illegally take custody of the minor children FP and HP (hereinafter, the "Two Minors").

### C.  MS. HERNANDEZ

75. On **_July 19, 2012_**, Ms. Hernandez filed a petition, no supported by then existing law or fact, asking for sole parental responsibility, alleging MR. POLO had a short temper and therefore was incapable of co-parenting, and proposing for MR. POLO to have limited and supervised visitation with the children.

76. Ms. Hernandez continued provoking MR. POLO, using abusive language every single time MR. POLO was picking up his children, secluding MR. POLO's property against MR. POLO's will, filing a sham domestic violence injunction against MR. POLO using false allegations, trying to get her boyfriend, Mr. Martinez, to create a confrontation with MR. POLO, and even her attorney, Mr. Losa, tried to create confrontation and embarrassing MR. POLO in front of everyone at the Coral Gables court house.

77. Moreover, Ms. Hernandez aided and abetted, throughout the entire 10+ years of litigation, her attorneys and the accused Judges named herein in this complaint to deprive the plaintiffs of their constitutional rights.

## I.    REMOVING MR. POLO'S CUSTODY

78. Before the GAL, Ms. Real, was appointed in MR. POLO's case, DEFENDANT JUDGE BERNSTEIN was a fair and balanced Judge.

79. On **_February 10, 2014_**, MR. POLO sent an email to Ms. Real, in which he stated among other things, "[T]omorrow will be the last time I will see my children. I am giving them to Merlin [Ms. Hernandez] after that."

80. On that same day, Ms. Granda, Ms. Real, Mr. Losa, Ms. Hernandez, and Mr. Martinez, removed MR. POLO's children from Polo's custody and detained them until seven days later with the consent and approval of JUDGE BERNSTEIN.

81. On **_February 11, 2014_**, MR. POLO had legal custody of his two minor children.

82. On that same day, without notice or hearing, **_Ms. Real called MR. POLO and ordered MR. POLO not to pick up_** the children from the daycare. Ms. Real also prevented MR. POLO and his children from seeing each other on skype. Ms. Granda, Ms. Real, Mr. Losa, told Ms. Hernandez and Mr. Martinez to pick up the children from the daycare, and they **_intentionally removed_** MR. POLO's children from the daycare.

83. On the same day, February 11, 2014, Ms. Real sent an email to the children's daycare. The email reads in pertinent part as follows:

> I am instructing you to allow [HP] and [FP] to be picked up by the Mother, Merlin Hernandez, *even though it is the Father, Frank Polo, Sr.'s timesharing day today*.
>
> [P]lease let the Mother pick up the children *prior to any order being entered by the Judge* (emphasis added) and *contact the police as you see fit to protect the children who remain in the daycare and yourself and your employees*.

84. Thereafter, Ms. Hernandez's attorneys and Ms. Hernandez, filed an emergency motion (the "Emergency Motion") requesting the timesharing to be removed from MR. POLO.

85. In their motion, they intentionally excluded the **exculpatory language**, which showed that there was **no probable cause** to remove the children.

86. DEFENDANT JUDGE BERNSTEIN *intentionally delayed the emergency motion hearing for 7 days*. MR. POLO was without contact with his children for seven days, and he was unable to exercise *custody and control over his children* for seven days.

87. MR. POLO remained calm until DEFENDANT JUDGE BERNSTEIN decided to hear the motion seven days later. DEFENDANT JUDGE BERNSTEIN had to dismiss the motion to remove custody for *lack of probable cause*.

88. Ms. Real filed her Guardian's report the day before the final hearing, which was due, by law, 20 days before the hearing.

89. DEFENDANT JUDGE BERNSTEIN denied a motion for continuance, which would have allowed time for MR. POLO to prepare to confront the false allegations contained in Ms. Real's final report.

90. The report contained false accusations to which Ms. Real testified under oath. Ms. Real stated in her report that MR. POLO was building a case against the mother.

91. In support of the above statement, Ms. Real stated that MR. POLO had sent pictures, which none had the face of the children, and none had the dates on which they were taken. Additionally, Ms. Real stated that she did not even know if the children were MR. POLO's children.

92. On August 7, 2014, DEFENDANT JUDGE BERNSTEIN, based on the false and biased testimony of the GAL, signed a final order giving Ms. Hernandez child support & and timesharing not supported by law or facts.

93. Thereafter, MR. POLO subpoenaed the emails from Microsoft Corporation which showed that (1) some pictures contained, in fact, faces of the children, and most of them had the date imprinted on them.

94. On or about **_May 26, 2015_**, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

95. The Motion to Vacate forced Ms. Hernandez and her attorneys to enter into an Agreed Final Judgment (the "AFJ") to settle the case for 50/50 timesharing.

96. On or about **_July 15, 2015_**, even though it is illegal to contract away the right of the children to child support, DEFENDANT JUDGE BERNSTEIN signed off on the AFJ.

97. Neither side's attorney had a court reporter in court to record the final hearing where Ms. Real falsely testified under oath.

## D. DECLARING MR. POLO IN CONTEMPT

98. Months later, Ms. Hernandez created a dispute about whether MR. POLO's "exclusive vacations," as said in the surviving part of the Mediated Settlement Agreement ("MSA"), were taking precedence over Ms. Hernandez holidays timesharing. The MSA was partially incorporated into the Agreed Final Judgement ("AFJ).

99. The MSA did not provide a **clear and definite statement, making MR. POLO aware of any court's command** giving Ms. Hernandez's holiday schedule priority over MR. POLO's vacations.

100.      On **_November 23, 2015_**, Ms. Hernandez's attorney, Ms. Granda, set a hearing to "**_Enforce the MSA._**" On that hearing. DEFENDANT JUDGE BERNSTEIN _refused to address the disputed terms_ of the agreement and maliciously waited until after MR. POLO had taken the children to Orlando to file an order which did not address the issue of interpretation and contained vague language which did not have a clear and definite statement _putting MR. POLO on notice of any consequences for taking the children on vacation._

101.     Once MR. POLO returned from vacation with his children, Ms. Hernandez and Ms. Granda filed a Motion for Contempt.

102.     On *February 2, 2016*, DEFENDANT JUDGE BERNSTEIN held a telephonic non-evidentiary hearing on the Motion for Contempt, where MR. POLO argued that the order did not contain a *clear and definite statement, making MR. POLO aware of any court's command* and that since DEFENDANT JUDGE BERNSTEIN did not clarify the wording of the MSA, *MR. POLO was not on notice of any consequences for taking the children on vacation.* Nevertheless, DEFENDANT JUDGE BERNSTEIN filed the order finding MR. POLO in contempt without first issuing an order to show cause, and opportunity to present evidence.

### E.   THE 3ᴿᴰ DISTRICT COURT OF APPEAL

103.     On *March 16, 2016*, when the Third District Court of Appeals ("3d DCA") did not have jurisdiction to hear an appeal on the ***July 15, 2015***, Amended Final Judgement, MR. POLO filed a motion to appeal the ***February 2, 2016***, order of contempt. Nothing else but the order of contempt was appealed. The 3d DCA dismissed the case with a citation to *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150 (Fla. 1979).

104.     However, in the opinion issued on an appeal filed on *November 4, 2021*, where the 3d DCA decided to hear the matter of whether Judge Del Rey erred in affirming the General Magistrates Report without a hearing on MR. POLO's timely filed exceptions to the general magistrate report, the 3d DCA made frivolous erroneous and irrelevant footnotes comments in *Polo v. Hernandez*, 224 So. 3d 229 (Fla. 3d DCA 2017) stating as follows:

> In July 2015, the trial court rendered an amended final judgment of paternity and holding that the 2013 mediated settlement agreement was to remain in full force and effect, which ***was affirmed on appeal***. Polo v. Hernandez, 224 So. 3d 229 (Fla. 3d DCA 2017).

105.     Thomas Logue (St. Thomas University's Adjunct Professor) was among the three judge's panel that issued the above-mentioned order.

106.     The opinion issued on *April 6, 2022*, further erroneously asserts as follows:

> In October 2017, ***because of the Father's excessive and frivolous post-judgment filings and history of vexatious conduct,*** the trial court precluded him from filing any additional pro se pleadings, motions, or letters without the assistance of a member of the Florida Bar. His petition for certiorari seeking to quash the preclusion order and other relief was dismissed.

*Citing Polo v. Hernandez*, 245 So. 3d 730 (Fla. 3d DCA 2017).

107.     However, the vexatious order of October 2017 shows that JUDGE BERNSTEIN'S *October 24, 2017*, order naming MR. POLO's vexatious litigant, lacks express findings of bad faith litigation and it is supported only by conclusory statements and not by facts and evidence on the record.

108.     X

109.     X

110.     X

111.     On September 14, 2022, Judges FERNANDEZ, GORDO, and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders".

112.     Fla. R. App. P. 9.130 (a)(3)(B) Limits the Appeals to the District Courts of Appeal of non-final orders to those orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions."

113.     The others MR. POLO appealed were, in fact, order Continuing, Modifying, and imposing injunctions without due process of law and injunctive in nature. However, Judges FERNANDEZ, GORDO, and LOBREE denied MR. POLO's appeal and motion to issue a written opinion.

114.     The order was entered without an opinion which foreclosures a review of the Florida Supreme Court, and it does not set a precedent for lack of opinion.

115.     Moreover, Fla. R. App. P. 9.040(c) creates a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought. ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought....") *id*.

116.     However, MR. POLO asked the court to issue a writ of prohibition, in the alternative, to prevent the lower court from exercising jurisdiction when it had lost all jurisdiction, but the court also denied that option.

117.     On March 01, 2023, Judges LINDSEY, HENDON, and LOBREE rendered an order denying a writ of prohibition and citing the wrong law that does not apply to MR. POLO's case, which also prevented MR. POLO from appealing to a higher court.

118.     The court dismissed the case citing *Rorrer v. Orban*, 215 So. 3d 148 (Fla. 3d DCA 2017); *Juhl v. Juhl*, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous to MR. POLO's case.

119.     MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different from MR. POLO's case, and that the facts of MR. POLO's case were more like this in their own case from the 3d DCA *Frumkes v. Frumkes*, 328 So. 2d 34 (Fla. 3d DCA 1976) in which the 3d DCA held that Court loses jurisdiction of a cause after a judgment or final decree has been entered and the time for filing petition for rehearing or motion for new trial has expired.

120.     Moreover, a month before issuing this order, in *Padron v. Padron*, No. 3D22-2146 (Fla. Dist. Ct. App. Feb. 8, 2023) the 3d DCA (judges EMAS, LINDSEY, and GORDO) used the same rule stipulated in *Frumkes* to dismiss a case for lack of jurisdiction with extremely similar facts to MR. POLO's case. However, they did not dismiss MR. POLO's case.

121.     On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismiss a Writ of Mandamus as moot, when the issue of access to the court and to file documents was not moot at all. However, even if it was moot, mootness does not defeat appellate jurisdiction, in Florida.

122.     There was still a controversy to be resolved by the 3d DCA, and the issues continue to exist.

123.     The Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and he is obliged to accept motions presented for filing in pending cases.

124.     MR. POLO had a clear legal constitutional right (under Article I, Section 21 of the Florida Constitution) to access the court and file documents in the lower court, and that right was being violated.

125.     And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts.

### F.  COPARENTING COORDINATOR

126.    On multiple occasions, including on February 7, 2017, the clerk of courts determined that MR. POLO was indigent.

127.    On *February 13, 2017*, MR. POLO filed sue in state court (the "State Case") against Ms. Lilliana Real (the "GAL"), Ms. Hernandez, Ms. Real (the GAL), and other tortfeasors for the following cause of actions: (1) Civil Conspiracy; (2) interference with the legal custody of the two minors, FP and HP; (3) Malicious Prosecution; (4) Abuse of process; and (5) Outrageous Conduct Causing Severe Emotional Distress.

128.    Ms. Granda withdrew from the case, and on or about *March 22, 2017*, DEFENDANT MR. SEGARRA file his notice of appearance to represent Ms. Hernandez.

129.    DEFENDANT MR. SEGARRA is an attorney who worked for eight (8) years in the Miami-Dade State Attorney's Office, where he was a prosecutor for Domestic Violence cases. In 2004, DEFENDANT MR. SEGARRA was promoted to Chief of Litigation in the Domestic Crimes Unit. Then in 2006, he was elevated to Chief of the Domestic Crimes Unit in the County Court Division, and he directly supervised an entire division of over thirty (30) prosecutors and twenty (20) support staff. DEFENDANT MR. SEGARRA holds a Bachelor of Science in Psychology.

130.    DEFENDANT MR. SEGARRA developed a close relationship with Miami-Dade Police Department Special Victims Bureau (SVB) while he was working for the SAO.

131.    The MSA signed by the parties called to register the children in the ***zip code with the best school***.

132.    At the beginning of 2017, Ms. Hernandez began to make it difficult for MR. POLO to register the children at an "A" rated school in MR. POLO's zip code with the excuse that Ms. Hernandez wanted to register the children in a "B" rated school at her zip code.

133.    MR. POLO brought the dispute to court on or about *March 28, 2017*. Judge Judith Kreeger entered an order of referral sending the case to Family Court Services ("FCS") to schedule a co-parenting coordinator *to resolve the issue in front of the court, the school registration issue*. Upon a finding that MR. POLO was indigent, Judge Kreeger sent the case to the FCS to get pro bono in-house services for *six (6) meetings*.

134.     After JUDGE BERNSTEIN returned, Ms. Aileen Alvarez (hereinafter "Ms. Alvarez") was the caseworker since the first time the case was referred to Family Court Services in 2013. MR. POLO registered with the Family Court Services, and Ms. Alvarez told MR. POLO that she was unable to find a ***Hispanic-speaking in-house (pro-bono) coordinator in Miami***, so she said she was going to call him later. Ms. Alvarez never called MR. POLO but sent the case back to DEFENDANT JUDGE BERNSTEIN.

135.     On *April 03, 2017*, DEFENDANT JUDGE BERNSTEIN, filed a new and different, order of *referral to the parenting* coordinator *without a hearing, Without MR. POLO consent or knowledge*, and *without serving MR. POLO* with the new order of Referral.

136.     The New order stated that there was a *history of allegations of domestic violence*, that the parties had an *opportunity to consult with an attorney* or *domestic violence advocate*, and that the Parenting coordinator was "with the *prior consent* of the parties and approval of the court." Moreover, the order extended the six (6) meetings initially scheduled by Judge Kreeger to *24 months of co-parenting coordinator services*.

137.     MR. POLO did not have an attorney at that moment, MR. POLO did not consult with any domestic violence advocate, MR. POLO never consented to that referral and there were no allegations of domestic violence, or anything else, pending to be resolved or heard in any court.

138.     On *August 01, 2017,* DEFENDANT JUDGE BERNSTEIN on his own called a Case Management Conference to be held. At the hearing, DEFENDANT JUDGE BERNSTEIN asks MR. POLO if the issue with the school was resolved. Then MR. POLO responded "Yes, your honor, but…" and DEFENDANT JUDGE BERNSTEIN pretended to be furious and said, "but nothing, I am sending you to a co-parenting coordinator, and *you are going to pay 100% of the fees*."

139.     MR. POLO told DEFENDANT JUDGE BERNSTEIN that he was indigent, and DEFENDANT JUDGE BERNSTEIN asked, "What school do you go to?" MR. POLO replied, "To St. Thomas, your honor" and DEFENDANT JUDGE BERNSTEIN replied, "Well if you *can pay for a private school you can pay for the fees*." MR. POLO explained that he pays with student loans, but DEFENDANT JUDGE BERNSTEIN did not care.

140.     On *August 1, 2017*, MR. POLO went to register with Family Court Services ("FCS"). There, MR. POLO overheard a conversation between the *intake worker, and Ms. Aileen*

*Alvarez*, in which Aileen told the intake worker, when she handled the case file to Ms. Alvarez, "No, I transferred this case to Nancy Canate [hereinafter "Ms. Canate"], the mother, in this case, is best friends with Nancy's aunt." MR. POLO knew that Ms. Hernandez did not have any friends in Family Court services.

141.     When MR. POLO finished completing the intake, the intake worker told him that his case manager was not there and that he had to return later. MR. POLO concerned about what he had heard told the lady, "I know what you are all up to, you are referring this case to an outside co-parenting coordinator to return a report saying that I am not a good fit for my children and, thereby, remove the custody of my children from me. I overheard your conversation with Ailing Alvarez."

142.     Five months later Ms. Canate contacted MR. POLO for him to register with an outside co-parenting coordinator. On or about ***January 2, 2018***, MR. POLO called Lisette Beraja ("Ms. Beraja" or the "Coordinator") to register. MR. POLO told the coordinator that he was indigent and did not have the resources to pay. Then, MR. POLO told her that he was concerned about what he had heard in the FCS's office and that he knew everything was arranged for her to return an unfavorable report against MR. POLO.

143.     After that, MR. POLO sent an email summarizing what was said over the phone to Ms. Beraja, she answered denying any knowledge of MR. POLO's allegations. Ms. Beraja sent the case back to the court, and the court and the other side remained silent with regard to enforcing the co-parenting coordinator meetings.

## G. OCTOBER 24, 2017, ORDER/ ST. THOMAS MEETING

144.     After finding out, on *August 01, 2017*, that MR. POLO was going to STU, on *October 23, 2017 (two months later)*, MR. POLO saw DEFENDANT JUDGE BERNSTEIN, with another judge, Honorable Daryl E. Trawick (an adjunct professor at St. Thomas University School of Law since 2004), at St. Thomas University, *meeting with the top management of the school*. (About a year and a half before MR. POLO's graduation and a day before naming MR. POLO vexatious without due process).

145.     On *October 3rd, 2017*, the DEFENDANT MR. SEGARRA had noticed a hearing for *October 24, 2017*, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties."

146. On *October 24, 2017*, the hearing was held, but the hearing was not so much about competing orders, but about removing MR. POLO's right to access the court by naming MR. POLO vexatious without previously issuing an order to show cause, noticing a hearing for the order to show cause, and without having a hearing.

147. DEFENDANT MR. SEGARRA presented a list he had generated ahead of the hearing, which falsely and misleadingly listed alleged open motions in the docket, which DEFENDANT MR. SEGARRA claimed to be MR. POLO's and also claimed that MR. POLO had never acted upon them.

148. Pretending once more to be furious, DEFENDANT JUDGE BERNSTEIN named MR. POLO a vexatious litigant preventing him from filing any "further pleadings, motions, or letters to the court ...." without "having the same reviewed by a Member of the Florida Bar."

149. JUDGE BERNSTEIN knew MR. POLO was declared indigent by the court and, therefore, was unable to retain counsel.

150. The order did not include a listing of *all* the cases and motions that led DEFENDANT JUDGE BERNSTEIN to conclude that a vexatious litigant order was warranted.

151. Moreover, the order did not contain substantive findings as to the frivolous or harassing nature of MR. POLO's actions based on the number and content of the filings as indicia.

152. Additionally, MR. POLO never received an Order to Show Cause why MR. POLO shouldn't be found to be vexatious.

## H. ORDER NOT TO FILE ANYTHING

153. On or about **_June 06, 2018_**, Polo registered to **_run for a State Representative_** with an agenda against judicial corruption. During the campaign, and thereafter, Polo engaged in **_core political speech_** which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

154. Ms. Hernandez was keeping track of MR. POLO's social media account to maintain DEFENDANT MR. SEGARRA, and thereby DEFENDANT JUDGE BERNSTEIN informed about MR. POLO's open statements about fighting Judicial Corruption in the Family Court System.

155.     Upon information and believe, on ***February 28, 2018***, Ms. Hernandez coordinated with State Representative Daniel Perez's Campaign for her and her mother to perform a public scandal in Coral Way Public Library to embarrass and humiliate MR. POLO in front of the voters.

156.     When Ms. Hernandez realized that MR. POLO had discovered her presence at the Public library where Ms. Polo was campaigning for weeks, Ms. Hernandez got nervous and began to scream saying that MR. POLO did not pay child support, knowing that she was the one with a duty to pay Child support and that but for the illegal agreement JUDGE BERNSTEIN signed, she was not paying child support. Additionally, she began to try to create a confrontation with MR. POLO's current wife, calling MR. POLO's wife MR. POLO's accomplice.

157.     About one (1) to three (3) minutes after MR. POLO recorded Ms. Hernandez performing the public scandal, Telemundo News' Reporter, Marilys Llanos, came and pointed her cameras toward the parking spot where Ms. Hernandez's car was parked. However, MR. POLO had already discovered Ms. Hernandez's presence and after recording her, he summoned the police who asked Ms. Hernandez to leave the premises. Along with the press came Daniel Perez's volunteers.

158.     DEFENDANT MR. SEGARRA repeatedly and maliciously, engaged in objections to prevent the case to go to the General Magistrate ("GM"), after accepting the consenting to the referral to the GM, and the DEFENDANT JUDGE BERNSTEIN kept sending the case to the GM to unduly delay the case and then blame MR. POLO for the delays.

159.     On *August 20, 2018*, General Magistrate Singer filed a report. Even though MR. POLO was registered for Electronic Filing, the General Magistrate never served via electronic filing, but via regular mail, on or about *August 30, 2018* (10 days later).

160.     On *September 5, 2018,* MR. POLO filed timely exceptions to the General Magistrate Report (exceptions were due 10 days after service), but the Clerk of Court rejected those. Despite JUDGE BERNSTEIN'S *October 24, 2017* order allowing MR. POLO to file certain documents, *DEFENDANT JUDGE BERNSTEIN had prevented MR. POLO from filing anything* at all after *October 24, 2017*. Then later, MR. POLO found out that his Docket was flagged with a notice not to allow MR. POLO to file anything. The same practice of preventing MR. POLO from filing anything was continued by Judge Del Rey, and then by Judge Multack.

161.    On *September 18, 2018*, JUDGE BERNSTEIN'S Judicial assistant Debra Schwarz ("Ms. Schwarz" or the "BERNSTEIN'S JA"), *called MR. POLO* and told MR. POLO that she needed MR. POLO to send her the exceptions MR. POLO had tried to file on *September 5, 2018*, via email. MR. POLO complied and sent the file.

162.    DEFENDANT JUDGE BERNSTEIN'S JA filed the Objections to the General Magistrate that MR. POLO had sent via email. Later DEFENDANT JUDGE BERNSTEIN denied the exceptions for being untimely and not supported by law.

163.    On or about *September 10, 2018*, MR. POLO made an interpretation from the four corners of the First Order of Vexatious as one allowing ANY member of the Florida Bar to review his motion before filing. Since MR. POLO was a *Student Member of the Florida Bar*, he interpreted the order as allowing him to file the motion without being found in contempt.

164.    On *September 10, 2018*, MR. POLO tried to file a motion to recuse DEFENDANT JUDGE BERNSTEIN (hereinafter "First Motion to Recuse"), but the clerk refused to file the order once more.

165.    MR. POLO *mailed, via U.S. Postal Service*, another copy of the motion to DEFENDANT JUDGE BERNSTEIN. Someone in JUDGE BERNSTEIN'S office ended up filing a copy of the motion to recuse JUDGE BERNSTEIN.

166.    On *September 11, 2018*, DEFENDANT MR. SEGARRA suggested to DEFENDANT JUDGE BERNSTEIN to find Polo in indirect criminal contempt for MR. POLO's filing of the First Motion to Recuse, and DEFENDANT JUDGE BERNSTEIN accepted the suggestion and issue an order to show cause why MR. POLO should not be found in *Criminal Contempt*. DEFENDANT JUDGE BERNSTEIN allowed DEFENDANT MR. SEGARRA to write the order, and then DEFENDANT JUDGE BERNSTEIN reviewed it and signed it.

167.    14. The order deceitfully insinuated, but did not clearly express, that MR. POLO ***"might"*** have been found in criminal contempt.

168.    On *September 25, 2018*, MR. POLO filed an affidavit in support of the *Order to Show Cause* and the *Oral Second Motion to Recuse* that Polo planned to enter in open court. This filing was also rejected by the clerk of court.

169.     Since the court was not accepting MR. POLO's filings of any documents from MR. POLO, he, out of an abundance of caution, sent a copy of the affidavit to DEFENDANT JUDGE BERNSTEIN'S JA and the opposing counsel. No other unsolicited email communication was ever sent to JUDGE BERNSTEIN'S Judicial Assistant.

170.     The affidavit negated the required mental state (intent) to find MR. POLO in contempt based on a logical interpretation "*within [the] four corners*" of the First Order. Moreover, it stated that MR. POLO was going to move, orally, for DEFENDANT JUDGE BERNSTEIN'S recusal.

171.     DEFENDANT JUDGE BERNSTEIN acknowledged himself that the content of the First Order may have not been as clear as to relay the command to follow from the four corners of the order.

172.     Despite the content of the affidavit, during the *September 25, 2018* hearing, and subsequently on the hearing of October 2, 2018 hearing, DEFENDANT MR. SEGARRA continued to suggest to DEFENDANT JUDGE BERNSTEIN to Arrange MR. POLO and put him in jail.

173.     DEFENDANT MR. SEGARRA engaged in other psychologically abusive behavior, like trying to serve MR. POLO with court documents on multiple occasions when he knew MR. POLO was already under the court's jurisdiction and registered to receive Electronic Filing.

174.     At the hearing on *September 25, 2018*, MR. POLO found out that DEFENDANT JUDGE BERNSTEIN knew the fact that MR. POLO had not completed the process of admission into the Florida bar. This was something that MR. POLO had told DEFENDANT MR. SEGARRA, exclusively, in a never filed, unpublished, or/ and never printed deposition[1], which DEFENDANT MR. SEGARRA, conducted on *May 23, 2018*.

175.     May 23, 2018, deposition:

> ·7· · · ·Q.· ·Have you applied for admission to the
> ·8· · Florida Bar?
> ·9· · · ·A.· ·No, sir.
> 10· · · ·Q.· ·When do you plan on applying for admission

---

[1] the deposition was produced, recently, for the first time in preparation for trial.

11· · to the Florida Bar?
12· · · ·A.· ·I don't know.
13· · · ·Q.· ·Have you applied for admission into any
14· · other bar association in the United States?
15· · · · ·A.· ·No, sir.

176.      Hearing of September 25, 2018:

20· ·THE COURT:· You are not a member of Florida
21· ·Bar, MR. POLO.· A member of the Florida Bar means
22· ·you've passed the Bar Exam, passed the background
23· ·check and have been admitted to practice law in the
24· ·state of Florida.· *You haven't done those things*, or
25· ·at least you've told me that you haven't.

177.      MR. POLO had never told JUDGE BERNSTEIN anything about applying for the Florida Bar, passing the exams, background check, or any of those things.

## I.  2nd ORDER PREVENTING MR. POLO FROM FILING ANYTHING. JUDGE BERNSTEIN, MR. CEBALLOS, AND MS. CAMACHO.

178.      The *September 25, 2018* hearing was postponed to *October 2, 2018*. MR. POLO never receive a notice which indicated that a new order further restricting MR. POLO from filing *anything* in the case was going to be even entertained on *October 2, 2018*. Nevertheless, on *October 2, 2018*, DEFENDANT JUDGE BERNSTEIN issued an order preventing MR. POLO from filing anything in the case.

179.      MR. POLO hired Mr. Raul Ceballos (hereinafter "Mr. Ceballos") using his wife's credit card for the *October 2, 2018* hearing.

180.      On *October 2, 2018*, Mr. Ceballos went to the hearing where DEFENDANT JUDGE BERNSTEIN tried on multiple occasions to enter into the record false allegations that MR. POLO had represented *to be an attorney* during the *September 25, 2018* hearing. MR. POLO repeatedly corrected DEFENDANT JUDGE BERNSTEIN telling him that Polo never said so. MR. POLO explained that he stated in the affidavit that he was a *Student Member of the Florida Bar*, as is shown in the *September 25, 2018* hearing transcript also.

181.      After multiple attempts to put on the record that MR. POLO had represented to be an attorney, DEFENDANT JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney "*was a gross misrepresentation.*"

182.     Upon information and belief, DEFENDANT MR. SEGARRA falsely said on the record that MR. POLO was even engaged in *the illegal practice of law by representing himself* in court with the malicious intent of providing this to STU, for STU to act against MR. POLO.

183.     On the same day, *October 2, 2018*, DEFENDANT JUDGE BERNSTEIN entered an order, which was never noticed for hearing. The order prevented MR. POLO from filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from **calling, emailing, or texting the Judicial Assistant**.

184.     Upon information and belief, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MARCIA DEL REY, and MR. SEGARRA influenced attorneys Karim Batista, Mr. Ceballos, and Anthony Meehan Genova to leave MR. POLO without representation, and they did so.

185.     Mr. Ceballos refused to file the motion to recuse and told MR. POLO that if MR. POLO were to proceed with the motion to recuse, DEFENDANT JUDGE BERNSTEIN and any judge coming after Bernstein would come after Polo and destroy his life.

186.     Moreover, during a personal conversation at Mr. Ceballos' office, Mr. Ceballos told MR. POLO that if MR. POLO were to call him to testify about what he had just said, he would say that MR. POLO was lying, and threatened MR. POLO with withdrawing representation if MR. POLO was to file the Motion to recuse.

187.     Thereafter, MR. POLO sent an email summarizing the above-mentioned conversation and demanding that Mr. Ceballos file the motion to recuse, which forced Mr. Ceballos to file the motion.

188.     On ***January 29, 2019***, in the hearing for recusal, DEFENDANT JUDGE BERNSTEIN entered an order of recusal and stated in open court "I'm aware of the fact that I am not permitted under Florida law to challenge the allegations raised in the motion to recuse without triggering your recusal, so I haven't before now."

189.     Kathia Camacho (hereinafter the "Court Reporter" or "Ms. Camacho") was the Court Reported on *January 29, 2019* hearing and was the same court reporter that MR. POLO had mostly used since the beginning of the case.

190.     MS. CAMACHO had admitted to MR. POLO that she had performed independent contractor jobs for DEFENDANT MR. SEGARRA on multiple occasions.

191.     Upon information and belief, DEFENDANT JUDGE BERNSTEIN, and MR. SEGARRA *influenced Ms. Camacho's production* of the transcripts of the *January 29, 2019* hearing by inducing her to suppress the part where DEFENDANT JUDGE BERNSTEIN says, "so I haven't before now."

192.     After DEFENDANT JUDGE BERNSTEIN and Segarra failed to put MR. POLO in Jail with the initial plan, on ***February 22, 2019***, MS. CAMACHO tried to entrap MR. POLO to commit forgery by asking him to sign the transcripts for her, which MR. POLO refused to do.

## J.  MIAMI DADE POLICE DEPARTMENT

### II.     FIRST POLICE INCIDENT

193.     On or about ***June 16, 2012***, when MR. POLO was visiting his children, Regino Perez ("Mr. Perez"). Mr. Perez was hiding waiting for MR. POLO for MR. POLO to viciously attack MR. POLO in front of his minor nephew, Jorge Polo.

194.     The attack left MR. POLO with permanently broken bones in his face.

195.     The State Attorney's office informed MR. POLO that even if there was conflicting testimony, the Police officer had a duty to arrest Mr. Perez. However, they never did allege there were conflicting testimony.

196.     Detective Armando Garcia had a duty to investigate the incident.

197.     Despite multiple attempts by MR. POLO to contact Mr. Garcia, Mr. Garcia never answered MR. POLO's calls or voice messages.

198.     To the best of MR. POLO's knowledge, the Police department never conducted an investigation of the incident.

### III.     SECOND POLICE INCIDENT

199.     On ***February 25, 2020***, in the middle of MR. POLO's campaign for U.S. Congress Ms. Hernandez sent an email to MR. POLO falsely accusing MR. POLO of mistreating and psychologically abusing MR. POLO's wife. Accusing him of making MR. POLO's wife cry, making her feel inferior, etc., etc., etc.,

200.    On **_April 15, 2020_**, the Police came to MR. POLO's house banging on MR. POLO's door and screaming: "Open up, this is the police," while Mrs. Polo was getting ready to sleep, the children were already sleeping, and MR. POLO was working in his political campaign preparation.

201.    When MR. POLO opened the door sees two police officers wearing N-95 masks with their hands on the guns ready to draw them. One of the officers told MR. POLO they received an "anonymous" call about an ongoing domestic violence incident in MR. POLO's house.

202.    MR. POLO asked the officer if he was sure that the report was about an incident in MR. POLO's apartment. One of the officers replied in an intimidating form and still with their hands on the guns, "yes, it was here, we know it was here."

203.    MR. POLO invited the officers to come in and, at that moment, MR. POLO's wife came out of the room scared and asked the officers what had happened. The officers asked MR. POLO's wife if everything was fine, and who else was in the apartment. MR. POLO's wife responded that the children were sleeping, and she was in the room getting ready to sleep. Then, MR. POLO's wife also invited them into the apartment. They refused to come in and check the premises. Then, the officers left saying that it could have been in another apartment. MR. POLO, nor Mrs. Polo heard any disturbance in any other apartment.

204.    When MR. POLO tried to obtain a police report about the incident, there was no police report generated, and no additional information about the incident existed.

### K. ST THOMAS UNIVERSITY, SCHOOL OF LAW

205.    On or before **_January 29, 2019_**, DEFENDANT JUDGE BERNSTEIN had drafted the Order of Recusal, in which he was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO being abusing the system by filing repetitive frivolous motions (but never pointed to a specific one); and (5) interfering with the functioning of his office by **_"incessantly"_** calling his Judicial Assistant. Moreover, DEFENDANT JUDGE BERNSTEIN stated in pertinent part:

MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

206.     Two days after BERNSTEIN'S hearing on **January 29, 2019**, DEFENDANT JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with who DEFENDANT JUDGE BERNSTEIN had met on ***October 23, 2017***, the day before he named MR. POLO a vexatious litigant.

207.     DEFENDANT JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with DEFENDANT JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

### L.  MR. POLO AT STU

208.     During his first year at St. Thomas, MR. POLO's father got ill, and MR. POLO had to take care of his father at night and go to school during the day. On November 21, 2015, MR. POLO's father passed away and this was devastating for MR. POLO's academic performance. Therefore, MR. POLO's GPA went under the required 2.0. MR. POLO had to go through the process of readmission. During this process, MR. POLO advised STU's management about the high conflict case he had pending with his ex-girlfriend, Ms. Hernandez. However, STU readmitted MR. POLO into law school.

209.     After being readmitted, the Dean of the Students told MR. POLO not to engage in outside employment or extracurricular activities until his GPA had improved above 2.0. The following semester, in 2016, MR. POLO's GPA was improved above 2.0 and never fell under 2.0 again.

210.     MR. POLO participated in an internship at STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes and to promote St. Thomas' Tax Clinic.

211.     MR. POLO was over 43 years old, with an untreated attention deficit, and Neurocognitive impairments before he began law school; nevertheless, he performed at his best being an excellent student who received (1) the CALI Excellence for the Future Award; (2) Excellence in Academic Studies (Dean List) spring 2017; (3) Excellence in Academic Studies (Dean List) Fall 2017; (4) Pro Bono Commendation; (5) was a member of the Tax Law Society; (6) Student Member of Florida Bar's Tax Division; and (7) a member of Hon. Peter T. Fay American Inn of Court (in multiple occasions).

212.     On or about **September 27, 2018**, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

213.     Moreover, MR. POLO is associated with a new class of leaders who believe this country is on the wrong track and both major parties are damaging America, through the acceptance and tolerance of corruption.

214.     After DEFENDANT JUDGE BERNSTEIN sent the letter to STU, the school initiated an honor proceeding to end MR. POLO's Career in Law based on the false allegations contained in DEFENDANT JUDGE BERNSTEIN Order of Recusal more specifically, on the following allegations:

> "The court's order mentions various violations of court rules, and most specifically alleges 'at least two direct misrepresentations: 1) that [Judge Scott Bernstein] had an ex parte communication with DEFENDANT MR. SEGARRA, and 2) that MR. POLO was a "member" of the Bar. Each of these misrepresentations constitutes bad faith.' The court's order further articulates that you abused the court system by *filing repetitive and frivolous motions, as well as interfered with the functioning of the judge's office* by incessantly calling the judicial assistant."

215.     On **February 7, 2019**, MR. POLO received an email containing a letter in which Ms. Lawson, basically was saying that MR. POLO was guilty of the above-mentioned allegations, of which Ms. Lawson did not have personal knowledge.

216.     On **February 8, 2019**, MR. POLO sent an email, with a copy of his objection, to DEAN LAWSON, and MR. SILVER. In the email, MR. POLO outlined the illegality and

unethical actions of DEFENDANT JUDGE BERNSTEIN and asked the school to revert their decision to invoke Sections 1.03(B) & 2.03 of the honor code based on the personal and biased character of the actions of DEFENDANT JUDGE BERNSTEIN.

217.      MR. POLO had agreed to pay for STU legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate upon completion of the program. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans. MR. POLO was about four weeks aways to complete not only his JD in Law but also a Tax Law Certificate.

218.      MR. POLO changed his career from the technical field to law and MR. POLO sold all his business assets to be able to go full time to STU and relinquished his technical certifications, which made MR. POLO able to produce a salary of up to 160,000 per year in reasonable reliance on the agreement MR. POLO had with STU.

### M. THE FIRST AND 2ND HONOR COUNCIL HEARING

219.      The first hearing in front of the Honor Council was held on or about *Tuesday, February 26, 2019*.

220.      Before, and at the hearing, MR. POLO submitted evidence showing that (1) MR. POLO was, in fact, a Student Member of the Florida Bar; (2) that MR. POLO did not claim DEFENDANT JUDGE BERNSTEIN was having ex-parte communication in bad faith; (3) that DEFENDANT JUDGE BERNSTEIN had interfered with the production of a transcript, and tried to mutilate the record; (4) that the Court Reporter had attempted to set MR. POLO to commit forgery acting as BERNSTEIN'S co-conspirator; (5) that MR. POLO, did not interfere with the functioning of the judge's office by incessantly calling the judicial assistant; and (6) that MR. POLO did not abuse the court system by filing repetitive and frivolous motions.

221.      Dean Moore had already planned with the other members of the Honor Council Committee to blame MR. POLO, not only for his acts, but also for the acts of his attorney. Therefore, during the hearing, MR. SILVER tried to accuse MR. POLO of filing the motion to recuse DEFENDANT JUDGE BERNSTEIN while Polo knew it was not legally sufficient but for the allegations of ex-parte communication. The following day MR. POLO submitted evidence showing his attorney had reviewed and found the motion legally sufficient before Mr. Ceballos filed the motion.

222.     During the hearing MR. SILVER called Mr. Planas to testify and asked MR. POLO to step outside the room while Ms. Planas was testifying. After the testimony of Mr. Planas, MR. SILVER summarized for MR. POLO what Mr. Planas, allegedly, had said about DEFENDANT JUDGE BERNSTEIN Reputation, and that MR. POLO was a good student.

223.     Nevertheless, in an email that Mr. Jay Silver sent to the Members of the honor council, which was not supposed to fall into MR. POLO's hands, MR. SILVER stated "J.C. Planas, who is familiar ***from practice*** with both DEFENDANT JUDGE BERNSTEIN and MR. POLO and will provide us with relevant information at the hearing…" "Please remember that all the attachments to this email and the body of the email are ***highly confidential communications***."

224.     The only information Mr. Planas had, as the attorney of a then-candidate for U.S. Congress Maria Elvira Salazar ("Salazar"), was that MR. POLO's, publicly accused Salazar and State Representative Daniel Perez of having ties with the Cuban Dictatorship, and that MR. POLO was promising to fight judicial corruption in the Family Court system in the campaign trail and social media. Moreover, MR. POLO had also accused publicly Nelson Diaz, who was friends with Mr. Planas, of corruption in the Miami GOP.

225.     MR. POLO's political views were brought up by MR. SILVER when he stated to MR. POLO: "There was a post in your political campaign social media account in which you posted a picture depicting a group of Democrats in congress dressing in white, on one side, and another group of Nazi dressing in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

226.     When MR. POLO heard this, he researched the member of the Honor Council and found that all them were all democrats.

227.     The Members of the committee, all, knew that (1) DEFENDANT JUDGE BERNSTEIN was the real accuser behind the Honor Council's proceeding; (2) they knew MR. POLO was innocent of the allegations DEFENDANT JUDGE BERNSTEIN made on his order of recusal; (3) they knew they were acting under color of state law; (4) they knew that DEFENDANT JUDGE BERNSTEIN was, maliciously, coming after MR. POLO career as MR. POLO had predicted in his affidavit.

228.     At the end of the hearing, MR. SILVER told MR. POLO that they were going to deliberate and give him the results later that night. The following day, at 4:21 AM, MR. SILVER

sent an email to MR. POLO saying that they were going to resume deliberations on the following *Tuesday, March 5, 2019.*

229.     STU's honor Code provides for a single hearing against a student subject to the honor code's rules, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part "(1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If *a majority* of the Council finds by *clear and convincing evidence* that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote."

230.     After the deliberation of ***February 26, 2019,*** the committee found out that MR. POLO had not done any of the things DEFENDANT JUDGE BERNSTEIN alleged in his Order of Recusal. Nevertheless, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to initiate a second honor council proceeding.

231.     On *March 23, 2019,* MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council proceeding to take place on *April 4, 2018.*

232.     Nevertheless, by then, STU had already deactivated MR. POLO's Id card to access campus, removed MR. POLO from the security access list at the gate, and removed MR. POLO's access to STU's network.

233.     This time, they were accusing MR. POLO of:

   a.   (1) failing to answer "Yes" to a question which asked if MR. POLO was, ever, a party in a civil Lawsuit including "Marriage Dissolution." MR. POLO had been part of a Federal Discrimination Case, and his family case that the Court labeled "Paternity" case. MR. POLO admitted that failing to disclaim was a mistake, but that it happened due to his dominion of the English language, and his lack of knowledge of legal terms when he entered law school, he believed Civil Cases to be those held on Civil State court, and Federal Cases to be just Federal Cases. Moreover, since his family case had been labeled as paternity because he was never married to Ms. Hernandez, then he believed that case did not have to be released to the school. However, MR. POLO released the information to the school during his readmission process, and later in the Tax Clinic Application.

b.  (2) Failing to notify the school of failure to inform the Law School of subsequent litigation. MR. POLO admitted that he did fail to inform the school, but that due to his diagnosed attention deficit and his cognitive problems, he had forgotten he had a duty to report this.

c.  (3) Failing to list all employment including internships. MR. POLO acknowledged that he did fail to list all employment. Nevertheless, the only employment he had failed to list were those he had removed from his resume long ago. MR. SILVER accused MR. POLO of not disclosing only one company, Sita, because MR. POLO had brought discrimination charges against Sita, Inc., nevertheless, that was not true. MR. POLO did not fail to list only Sita, but a number of other companies, which he had never sued, but since he had removed those from his resume, he forgot to list those.

d.  (4) Failure to list of being charged with a misdemeanor for "spearfishing" in Monroe County. Due to a failure to appear to court after MR. POLO sent a request for a hearing, and was never notified of the hearing, a judge issue a warrant for MR. POLO's arrest, and while in the keys picking up his boat which was detained for not having the registration on it, the Coast Guard called the police and the officer told MR. POLO that he would take him to a place where he had to pay 250 dollars, and he was going to be released right away. MR. POLO was never handcuffed or spent a minute in jail. Moreover, MR. POLO had totally forgotten that incident due to his medical condition. Additionally, MR. POLO listed more serious and more embarrassing arrests, which he never even tried to expunge. MR. POLO did not even believe he was ever arrested due to the way things happened and the kindness of the police officer.

e.  (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application. MR. POLO applied for the tax clinic in the last minute, and due to his attention deficit sent the application without fully completing it after he had started listing his Paternity case. Nevertheless, at no time did MR. POLO try to hide the cases. Moreover, he had verbally informed his supervisor about these cases, and his supervisor, worried that MR. POLO was going to have a problem

with his application to the Florida Bar, informed one of the Deans, Dean Dykas, about MR. POLO's cases, and especially the case with JUDGE BERNSTEIN.

234.     STU's management had in their possession since 2016, a full psychological evaluation, and they knew MR. POLO had attention deficit, and Neurocognitive impairments, for which MR. POLO was granted additional time to complete his test, in accordance with the American with Disability Act ("ADA"). They knew the symptoms of MR. POLO's condition included memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms which may have produced those results they were complaining about.

235.     Moreover, STU Management knew MR. POLO's cognitive and psychological impairment was no reason for the Florida Bar to prevent MR. POLO from becoming a member of the bar.

236.     When MR. POLO asked who his accuser was, MR. SILVER refused to disclose to MR. POLO that DEFENDANT JUDGE BERNSTEIN was the accuser promoting the initiation of an honor proceeding against MR. POLO. Nevertheless, the committee was already in possession of DEFENDANT JUDGE BERNSTEIN'S letter with the attached Order of Recusal.

237.     Professor Silver identified the accuser as DEAN LAWSON, who did not have personal knowledge of any of the raised accusations.

238.     STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

239.     No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

240.     STU's honor code, Section 3.03 (A)(3), states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

241.     STU's Section 3.04(E)(2) establishes that the adjudication of the honor code Council must be by "Clear and Convincing Evidence."

242.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

243.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

244.     STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware of when he received a call past midnight from Campus security.

245.     Before initiating the Honor Council proceeding, STU Management already had decided to find any excuse to terminate MR. POLO and was never interested in finding the truth, but any pretext to terminate MR. POLO's career in law.

246.     The appeal was a meeting with DEAN LAWSON and Dean Moore. During the appeal, MR. POLO's incursion into politics came again. Dean Moore asked MR. POLO why he ran for office. MR. POLO told Ms. Moore that his political activities had nothing to do with the school, and she replied "yes it does. Because you challenged the authority of Dean Hernandez when he told you not to engage in any employment or external activities." That was another excuse because the requirement not to engage in employment or external activities was until MR. POLO had improved his GPA, and STU had even employed MR. POLO as a research assistant.

247.     During the meeting, MR. POLO explained once more that he may have forgotten to disclose information in his application because of his cognitive diagnosed disability and Ms. Lawson responded "I, don't think your problem is cognitive, but think your problems is one of honesty," when she knew that MR. POLO's wife was seating right next to the door, and she did it to humiliate MR. POLO.

### I.    Mr. Planas

248.     Juan Carlos Planas (hereinafter "Mr. Planas") was the attorney for at least one of two political rivals of MR. POLO who had a special interest in destroying MR. POLO's career. Additionally, Mr. Planas was MR. POLO's professor of Election Law while MR. POLO was

running for state office in 2018, and Mr. Planas had a friendship with JUDGE BERNSTEIN, Daniel Perez, and Nelson Diaz, both Republicans whom MR. POLO had accused of corrupt acting.

249.	STU DEFENDANT EMPLOYEES maliciously presented Mr. Planas as a witness knowing that he was biased and interested in destroying MR. POLO's political future for his client's benefit. STU DEFENDANT EMPLOYEES made MR. POLO step outside the conference room to prevent MR. POLO from hearing the testimony Mr. Planas was about to make about MR. POLO's political speech and affiliation..

250.	Mr. Planas' clients would have benefited from MR. POLO losing his Law Degree, and losing the reputation, prestige, and goodwill that having a career in law would represent in MR. POLO's political career. Moreover, Mr. Planas confessed to MR. POLO that he had followed MR. POLO's 2018 campaign, and even tried to discourage MR. POLO from running against Daniel Perez once more.

## N.  FLORIDA DIVISION OF ELECTIONS

251.	Mr. Planas worked and collaborated with the Florida Division of Elections and maintained contact with attorneys within the Florida Division of Elections.

252.	Upon information and believe, Mr. Planas, who had worked for the FLORIDA DIVISION OF ELECTIONS, and kept a tight relation with the department, incited someone within the FLORIDA DIVISION OF ELECTIONS to maliciously initiate a legal proceeding against MR. POLO without probable cause.

253.	On February 18, 2019, at the same time the honor proceeding was taking place, Ms. Kristi Reid Willis (hereinafter "Ms. Reid") on behalf of the Florida Division of Elections filed a complaint with the Florida Elections Commission for alleged violation of multiple statutes.

254.	MR. POLO answered right away. From the answer, the Florida Elections Commission legal department knew there was no probable cause to initiate a legal proceeding against MR. POLO.

255.	Nevertheless, the legal department's investigator sent an affidavit to MR. POLO trying to get MR. POLO to incriminate himself and asked MR. POLO to sign it and send it back to them.

256.     The Commission hearing officer found no probable cause to continue the proceedings the Election Department had begun against MR. POLO.

## O. JUDGE DEL REY

257.     On or about January 18, 2019, Polo's attorney, Mr. Ceballos filed a motion to withdraw, which JUDGE DEL REY granted on or about March 6, 2019 (almost two months later). This was the first hearing in front of JUDGE DEL REY.

258.     MR. POLO opposed the motion on the grounds that the withdrawal was prejudicial to MR. POLO because the Second Vexatious Order was preventing MR. POLO from filing *ANYTHING* in the court docket. MR. POLO objected, also, on the basis that did not have money to hire another attorney, that he had to use his wife's credit card to pay Mr. Ceballos, and that MR. POLO had never failed to pay him.

259.     MR. POLO objected, among other things, to the constitutionality of leaving MR. POLO without an attorney when there was a current order preventing MR. POLO from filing ANYTHING in the docket. Additionally, MR. POLO asked to get an evidentiary hearing to vacate the two orders Preventing MR. POLO from filing. To which JUDGE DEL REY responded, "Given the history of this case, I would not vacate the current order on file."

260.     Thereafter, MR. POLO had to hire another attorney, with his wife's credit card, Anthony Meehan Genova (hereinafter "Mr. Genova").

261.     Mr. Genova filed a motion to withdraw, which JUDGE DEL REY heard on or about *April 15, 2021*, and was finally granted on *May 06, 2021*.

262.     MR. POLO opposed Mr. Genova's withdrawal on the basis that the Second Vexatious Order dated *October 2, 2018* (the second order), was preventing him access to the court and that the Order is unconstitutional.

263.     JUDGE DEL REY answered similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw."

264.     During the hearing, Polo told the judge: "there is no evidence on the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and JUDGE DEL REY responded: "Okay. That order predates me. That was my predecessor and

that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?"

265.     After the hearing, the opposing counsel, DEFENDANT MR. SEGARRA, who knew that MR. POLO was about to file in Federal Court, drafted an order whanging JUDGE DEL REY'S holding and sent it to MR. POLO attorney, and never to MR. POLO. MR. POLO's attorney replied without attaching the order saying that he agreed with the order.

266.     The Third Order's hearing was never noticed as a hearing to address removing or modifying MR. POLO's constitutional rights to access the court.

267.     Furthermore, JUDGE DEL REY, Ms. Hernandez, and DEFENDANT MR. SEGARRA delayed the case for five years with unnecessary hearings and delaying tactics with the intent of financially devastating MR. POLO's family, intimidating MR. POLO, and delaying MR. POLO in reporting violations of possible violations of federal criminal activity.

268.     MR. SEGARRA in collusion with Judge Del Rey and Ms. Polo's attorney has kept two motions that were sitting on the docket since about October 8, 2018, knowing that the court does not have jurisdiction to entertain a motion for attorney's fees, and knowing that the Court did not have discretion under the law to deny the timely filed objections to the General Magistrate Report and Recommendations.

269.     Nevertheless, Judge Del Rey knew that she had no discretion to grant the exceptions without a hearing; however, she affirmed the exception. MR. POLO's attorney intentionally failed to file a request for a hearing to give the other side a viable argument.

270.     Judge del Rey was scheduling MR. POLO's 15-minute hearings for 5 months down the road while in other similarly situated cases she scheduled the hearings for 15 to 20 days down the road. Moreover, JUDGE DEL REY was holding hearings on what was said in the earlier hearing to determine how she is ruling on a motion that was already heard and ready for adjudication.

271.     When MR. POLO complaint to his attorney about the delay in the case, Mr. Genova told MR. POLO that it was the Judge giving this hearing so far apart from each other.

272.     By using those techniques, Judge Del Rey and MR. SEGARRA intentionally delayed the proceeding, to create additional procedural steps to have more chance of getting MR.

POLO to fail one of those steps, and to increase DEFENDANT MR. SEGARRA'S billing and later hit MR. POLO with attorney's fees. Sample:

> MR. SEGARRA: So, at this point, I think, if I may make a suggestion, I would just like to have another seven days to just submit to you, _**again**_, the case law, any memos, as well as for post-order just so that Your Honor has enough time to review the docket.

273.   The Case Law and proposed orders were submitted a long time ago to JUDGE DEL REY after Judge Del Rey ordered those on _**June 24th, 2020**_.

274.   On July 29, 2019, MR. POLO timely filed and served his exception to the General Magistrate's report. The other side did not dispute the timely filing of the exceptions.

275.   On September 10, 2019, Forty-five (45) days after the filing of the exceptions, Judge Del Rey intentionally violated MR. POLO's right to due process[2] by entering an order ignoring the exceptions, and saying that the exceptions were never filed.

276.   This time, also, the General Magistrate had mailed the order, instead of serving it via electronic filing. A practice that JUDGE BERNSTEIN also used when he mailed the First final Judgment filed in the case.

277.   Moreover, MR. POLO's attorney filed a motion to vacate the September 10, 2019 order, and Judge Del Rey intentionally, once more, violated MR. POLO's right to due process by denying MR. POLO's attorney motion to vacate Judgment, so that the case could go to the Court of Appeal, where the court "Independently" could name MR. POLO a Vexatious Litigant, this way they release the 11th Circuit of all legal liability to MR. POLO.

### P.   GENERAL MAGISTRATE SINGER

278.   On or about August 15, 2017, during a hearing, DEFENDANT JUDGE BERNSTEIN and DEFENDANT MR. SEGARRA found out that MR. POLO's arguments for the final hearing were that there was no order of child support because nobody was ordered to pay child support on the illegal Agreed Amended Final Judgement. Additionally, they found out that

---

[2] Fla. R. Fam. P. 12.490 (f) establishes a mandatory hearing for timely filed objections. "If exceptions are filed, they _**shall**_ be heard on reasonable notice by either party or the court." Therefore, Judge Del Rey had no discretion to deny a hearing on timely filed exceptions.

MR. POLO's argument in front of GM SINGER was going to be that there was an increase of ten percent (10%) in timesharing since the original order to pay child support, that Ms. Hernandez was not reporting all the income she was making, and that she had a higher income than what she had reported.

279.     GM SINGER sua sponte dismissed an action based on affirmative defenses not raised by proper pleadings.

280.     Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO had an obligation to pay child support. Moreover, such a decision was to be made once a bankruptcy case was filed and there was no pending Bankruptcy case.

281.     DEFENDANT JUDGE BERNSTEIN had dismissed a previous petition to dismiss the action. Therefore, there was no petition to dismiss pending from the other side.

## Q. JUDGE DAVIS and JUDGE FUNK

282.     The GAL, Lilli J. Real, moved out of Miami-Dade Country to file for Bankruptcy in Jacksonville where DEFENDANT JUDGE BERNSTEIN'S friend and Law School peer, JUDGE BRIAN DAVIS, was going to facilitate Ms. Real's bankruptcy and prevent MR. POLO from bringing any claims in federal court against Ms. Real.

283.     The claims MR. POLO had against Ms. Real were those willful and malicious injuries described as non-dischargeable in bankruptcy under § 523(a)(6). Nevertheless, JUDGE FUNK, with the intent of preventing MR. POLO's success, ruled that MR. POLO's causes of actions against Ms. Real were dischargeable.

284.     The Federal court and the State Court had concurrent jurisdiction to decide the issue of Dischargeability under §523.

285.     MR. POLO filed with the state Court, where MR. POLO had an open case against Ms. Real, a Motion for Declaratory Judgment asking the Court to determine whether MR. POLO's claims against Ms. Real were exempt from discharge.

286.     Ms. Real's attorney filed a motion for sanctions in the Middle District of Florida for MR. POLO filing his Motion for Declaratory Judgement and JUDGE FUNK granted the motion when MR. POLO's petition for determination of dischargeability did not violate any law.

287.     Moreover, the evidence presented in the Federal court shows that Ms. Real knew MR. POLO's actual place of abode; nevertheless, Ms. Real served MR. POLO at MR. POLO's mother's address, leaving the court without personal jurisdiction over MR. POLO.

288.     MR. POLO filed a timely motion to dismiss for lack of personal jurisdiction, which Judge Jerry A. Funk (hereinafter "JUDGE FUNK"), denied against U.S. Supreme Court rulings.

289.     JUDGE FUNK prevented MR. POLO from testifying by telling MR. POLO that he was going to allow all evidence in and by cutting off MR. POLO's testimony to prevent MR. POLO from entering further verbal testimony.

290.     JUDGE FUNK ruled that MR. POLO's testimony was not credible, to prevent success in any further appeal. Nevertheless, the evidence in front of JUDGE FUNK showed that Ms. Real was the only one lacking credibility for filing a false and misleading report in the Family Court case.

291.     MR. POLO appealed the case to the District Court for the Middle District of Florida, and the appeal was handled by JUDGE DAVIS, who, upon information and belief, was DEFENDANT JUDGE BERNSTEIN'S Law School peer.

292.     JUDGE DAVIS denied the appeal and ruled that because the "Creditor has consistently listed 1475 SW 8th Street as his address, including in the state court proceedings and the bankruptcy case [which is factually wrong]. He cannot now claim that he did not receive adequate notice and service by being contacted at that address" and he cites Van Brunt, 158 (S.D.N.Y. 1994).

293.     Every document MR. POLO filed with the Jacksonville Court contained MR. POLO's actual place of abode and not the 1475 SW 8th Street address. Nevertheless, JUDGE FUNK served most, if not all, appealable orders to MR. POLO's mother until MR. POLO failed to timely appeal due to the fact that he received the filing too late.

294.     When MR. POLO was taken to the honor council, the appeal with JUDGE DAVIS was still pending. Nevertheless, Professor Jay Silver asked MR. POLO about the case, and when

MR. POLO said that he expected to win the case on appeal, Professor Silver Sarcastically smiled at MR. POLO and said "year right."

295.      Professor Silver also used JUDGE FUNK'S credibility statement in his opinion to put MR. POLO's credibility in doubt in front of the honor council.

## R.   JUDGE ROY K. ALTMAN

296.      On October 8, 2021, MR. POLO filed (1) an Emergency Petition For Ex Parte Application for Temporary Restraining Order; Order To Show Cause Why A Preliminary Injunction Should Not Issue, And Memorandum In Support Thereof; (2) and a Motion for Leave to Proceed in Forma Pauperis. MR. POLO asked the Ex-Parte TRO to be issued, along with the Order to show cause, by 4:00 PM October 8, 2021. The petition stated, under §9, that MR. POLO had a hearing on October 12, 2021, where the state court was going to violate MR. POLO's access to the court without due process once more.

297.      On the same day, Judge William P. Dimitrouleas was assigned to the case, then Judge Federico A. Moreno, and finally JUDGE ROY K. ALTMAN.

298.      On the same date, the 11th District Court's Clerk stated that "Summons(es) cannot be issued. The motion to proceed in forma pauperis is pending."

299.      October 12, 2021, came by and JUDGE ALTMAN had not heard the Emergency motion, and MR. POLO was forced to appear in State court without access to the court in an evidentiary hearing where he had to file evidence, but the State Court rejected every single document MR. POLO submitted into evidence.

300.      On Oct 19, 2021, JUDGE ROY K. ALTMAN, issued an order Referring Case to Magistrate Judge AND Order Referring Motion. Doc. 10.

301.      On or about Oct 21, 2021, MR. POLO filed an amended Petition for Temporary Restraining Order Relief and Petition for Order to Show cause, where he was leaving out the emergency request because MR. POLO's and his children's rights were already violated on October 12, 2021. The new petition was asking for *expedited* issuance of the TRO by November 26, 2021. Doc. 11.

302.      On Nov 2, 2021, the Magistrate files her Report and Recommendations, recommending the petition for injunctive relief to be denied based on nonapplicable law.

303.     On Nov 10, 2021, MR. POLO filed his "Objections to Report and Recommendations."

304.     On Jan 14, 2022, MR. POLO files a motion to expedite requesting the Judge to expedite the issuing of the injunction to prevent being further damaged by the State court, and to issue this by January 20, 2019.

305.     On January 27, the court had not issued the TRO and order to show cause; therefore, MR. POLO was forced once more to litigate without access to the court in State Court.

306.     As of February 6, 2022, four months after the initial filing, Judge Kalman had not ruled on the petition for TOR, and petition to Proceed in Forma Pauperis. Consequently, MR. POLO had to withdraw his (1) *Amended Petition For Ex Parte Application For Temporary Restraining Order; Order To Show Cause Why A Preliminary Injunction Should Not Issue, And Memorandum In Support Thereof*; (2) and the *Motion for Leave to Proceed in Forma Pauperis.*

## S.  STATE ATTORNEY'S OFFICE

307.     In approximately 2017, the Department of Children and Families referred MR. POLO to the State Attorney's office, Child Support Enforcement Section, to get the State Attorney's office to assign an attorney to help MR. POLO with his family case.

308.     The State Attorney's office took the case and told MR. POLO that they were going to assign an attorney to the case. Additionally, they told MR. POLO that he was going to get a call from the attorney assigned to the case.

309.     After realizing that the Attorney never called, MR. POLO personally went to the State Attorney's office where he was told that he had to wait until he had a final judgment in the pending petitions and motions in the case.

310.     It was not until 2022 that the State Attorney's office contacted MR. POLO demanding MR. POLO comply with the program, after MR. POLO sent his first notice of filing a lawsuit to the State of Florida including the  draft complaint.

## § 6.COMPLAINT

**COUNT: 1.        DEPRIVATION OF PLAINTIFFS' CONSTITUTIONAL RIGHT TO LIBERTY, OF MR. POLO TO EXERCISE AND THE CHILDREN TO RECEIVE THE CARE, CUSTODY, AND CONTROL OF MR. POLO'S CHILDREN IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENT**

**RIGHTS WITHOUT DUE PROCESS OF LAW, UNDER 42 U.S.C. § 1983, AND INTERFERENCE WITH CUSTODY.**

311. Plaintiffs re-alleges paragraphs 61 through 310 and further state that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA and DEFENDANT JUDGE BERNSTEIN, the DEFENDANT MERLIN HERNANDEZ, and the DEFENDANT RANDOLPH MARTINEZ (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

312. The DEFENDANTS JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

313. DEFENDANT JUDGE BERNSTEIN, the Guardian Ad Litem, Ms. Hernandez's attorneys, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ had an agreement/understanding to intentionally violate the plaintiffs' constitutional right to liberty, of MR. POLO to exercise and the children' to receive the care, custody, and control of MR. POLO's children, without due process of law, and in with a common objective, they committed the following over acts:

314. On February 10, 2014, after realizing that Mr. Real was acting biased, MR. POLO sent Ms. Real an email which stated among other things, "[T]omorrow will be the last time I will see my children. I am giving them to Merlin [Ms. Hernandez] after that."

315. On February 11, 2014, MR. POLO had legal custody of his children.

316. On that same day, all the co-conspirators, namely MS. GRANDA, MS. REAL, MR. LOSA, MS. HERNANDEZ, MR. MARTINEZ, and DEFENDANT JUDGE BERNSTEIN (hereinafter in this Count "Co-conspirators"), acted in concert to removed MR. POLO's children from Polo's custody and detained them until seven days later with the malicious consent and approval of JUDGE BERNSTEIN, but without an official court order.

317. MERLIN HERNANDEZ and RANDOLPH MARTINEZ physically removed the children from the daycare without MR. POLO's consent and they harbored the children for seven (7) days without ever returning the children, knowing there was no judicial order granting them the right to remove the children, nor probable cause to remove the children.

318.     MR. POLO never consented to anyone removing the children, and MS. GRANDA, MS. REAL, MR. LOSA, MR. MARTINEZ, and JUDGE BERNSTEIN were all parties outside the relationship of MR. POLO with his children.

319.     The Co-conspirators, intentionally and maliciously, left out exculpatory language when they drafted the Emergency Motion for Removal of Custody (the "Emergency Motion"). The email contained more evidence showing that MR. POLO was inviting Ms. Real to come to complete her last visit to his house if she wanted to, and he was talking about paying her, paying his attorney, and more importantly continuing life.

320.     Additionally, Ms. Real, knowing that MR. POLO had a legal right to custody, and legal right to take his children on February 11, sent an email to the daycare inciting the daycare to call the Police if MR. POLO was to exercise his legal right to custody.

321.     The facts observed by DEFENDANT JUDGE BERNSTEIN, when he received the Emergency Motion and its attachment, would have warranted a reasonable person to believe that there was NOT probable cause to remove the children. Nevertheless, DEFENDANT JUDGE BERNSTEIN intentionally, maliciously, and in conspiracy with Ms. Real and all other involved attorneys, delayed the return of the children without probable cause expecting to provoke Polo's impulsive (without thinking) reaction, which never occurred. MR. POLO remained calm, and DEFENDANT JUDGE BERNSTEIN had to dismiss the motion to remove custody for lack of probable cause.

322.     MR. POLO's custodial relationship was harmed when the relationship was broken, MR. POLO was unable to exercise, and the children were unable to enjoy custody and companionship of each other for over seven (7) days.

323.     Therefore, the DEFENDANTS JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ, deprived the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children, which were removed without notice, hearing, and opportunity to be heard. The Plaintiffs suffered deprivation of rights in violation of the Plaintiffs' 5th and 14th Amendment right to Due Process of Law.

324.     Moreover, the DEFENDANTS JUDGE BERNSTEIN, and RANDOLPH MARTINEZ, interfered with and damaged MR. POLO's and his children's custodial relationship.

325.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

326.     If not enjoined by this Court to cease its deprivation of MR. POLO and his children's constitutional right to the liberty of MR. POLO to exercise, and the children to receive the care, custody, and control of MR. POLO's children, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ will continue to, or will conspire to, deprive the plaintiffs, without due process of law, of their right to:

    a.  MR. POLO freely exercising the care, custody, and control of MR. POLO's children, and

    b.  The children freely receive the care, custody, and control of their father.

327.     The Plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to recover their costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

328.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.  The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.  The Plaintiff(s) sustained severe mental and emotional distress;

    d.  The Plaintiff(s) suffered physical pain and suffering;

    e.  The Plaintiff(s) suffered diminished health;

    f.  The Plaintiff(s) suffered mental pain and suffering;

    g.  The Plaintiff(s) suffered loss of earnings and;

    h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    i.  H.     the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in

this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.   the children's right to parental support was impaired with a value of more than $96,000; and

l.   MR. POLO will incur attorney's fees and/or court costs.

329.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, MERLIN HERNANDEZ, AND RANDOLPH MARTINEZ as follows:

a.   Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.   Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ from violating, or conspiring to violate with anyone, the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.   Awarding attorney's fees, and costs, against JUDGE BERNSTEIN, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ pursuant to 42 U.S.C. Sections 1983 and 1988 for the deprivation of MR. POLO's protected rights, and against JUDGE BERNSTEIN and RANDOLPH MARTINEZ for interference with legal Custody of two minors.

d.   Awarding attorney's fees, and costs, against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1988.

e. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, RANDOLPH MARTINEZ, and MS. HERNANDEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

f. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

**COUNT: 2.      DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS, WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983 AND FLORIDA CONSTITUTION.**

330.      Plaintiffs re-alleges paragraphs 61 through 310 and further states that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

331.      The DEFENDANT JUDGE BERNSTEIN, in all his actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

332.      After MR. POLO subpoenaed information showing that JUDGE BERNSTEIN'S appointed Guardian Ms. Real, lied in her report and perjured herself under oath, Ms. Hernandez was forced to settle, and DEFENDANT JUDGE BERNSTEIN signed an illegal order not to pay child support to silence MR. POLO, depriving, thereby, MR. POLO's children of their right to parental support.

333.      In retaliation for exposing JUDGE BERNSTEIN'S GAL, DEFENDANT JUDGE BERNSTEIN decided to damage MR. POLO's career in law.

334.      After the case was already closed, taking advantage of an honest dispute over the interpretation of the MSA, JUDGE BERNSTEIN, maliciously, arranged with Ms. Granda, with

who he was having ex-parte communication with, and thereby, with MS. HERNANDEZ, to bring the case back to court to begin damaging MR. POLO's career in law.

335.     On November 23, 2015, Ms. Hernandez's attorney, Ms. Granda, set a hearing to "Enforcer the MSA." On that hearing, DEFENDANT JUDGE BERNSTEIN refused to address the disputed terms of the agreement and maliciously waited until after MR. POLO had taken the children to Orlando to file an order which did not address the issue of interpretation and contained vague language which did not put MR. POLO on notice of any consequences for taking the children on vacation.

336.     Once MR. POLO returned from vacation with his children, Ms. Hernandez and Ms. Granda maliciously filed a Motion for Contempt with the only purpose of damaging MR. POLO's career in law with the help of JUDGE BERNSTEIN.

337.     In a non-evidentiary telephonic hearing held on February 2, 2016, MR. POLO explained that the MSA did not provide a clear and definite statement, making MR. POLO aware of the court's command giving Ms. Hernandez's holiday schedule priority over MR. POLO's vacations. Nevertheless, DEFENDANT JUDGE BERNSTEIN did not care and granted Ms. Granda attorney's fees without an evidentiary hearing as to the reasonableness of the hours or rates of the attorney's fees as required by Florida law and did not provide MR. POLO with a meaningful hearing and proper notice. Therefore, JUDGE BERNSTEIN violated the plaintiff(s) right to access the court without due process of law.

338.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

339.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN through other judges, will continue to deprive the plaintiffs, without due process of law.

340.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

      a.  The Plaintiff(s) sustained emotional damages;

b.   The Plaintiff(s) sustained reliance damages;

c.   The Plaintiff(s) sustained severe mental and emotional distress;

d.   The Plaintiff(s) suffered physical pain and suffering;

e.   The Plaintiff(s) suffered diminished health;

f.   The Plaintiff(s) suffered mental pain and suffering;

g.   The Plaintiff(s) suffered loss of earnings and;

h.   The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i.   the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.   the children's right to parental support was impaired with a value of more than $96,000; and

l.   MR. POLO will incur attorney's fees and/or court costs.

341.       **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN as follows:

a.   Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 3.   DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

342.     Plaintiffs re-alleges paragraphs 61 through 310 and further state that DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

343.     The DEFENDANT JUDGE BERNSTEIN, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

344.     DEFENDANT MR. SEGARRA noticed a hearing to "resolve the pending conflicting orders".

345.

346.     On **_October 3rd, 2017_**, the DEFENDANT MR. SEGARRA had noticed a hearing for **_October 24, 2017_**, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties."

347. On *October 24, 2017*, the hearing was held, but the hearing was not so much about competing orders, but about removing MR. POLO's right to access the court by naming MR. POLO vexatious without due process of law.

348. DEFENDANT JUDGE BERNSTEIN named MR. POLO a vexatious litigant preventing him from filing any "further pleadings, motions, or letters to the court ...." without "having the same reviewed by a Member of the Florida Bar."

349. However, the DEFENDANT JUDGE BERNSTEIN ordered the Clerk's office not to accept any filing from MR. POLO, despite his order which did not prevent MR. POLO from entering other documents but pleadings, motions, or letters to the court.

350. JUDGE BERNSTEIN knew MR. POLO was declared Indigent by the court and, therefore, was unable to retain counsel.

351. JUDGE BERNSTEIN'S hearing held on August 24, 2017, was never noticed as a hearing to remove MR. POLO's access to the court.

352. MR. POLO never received an order to show cause why he shouldn't be named vexatious. Therefore, MR. POLO never had a meaningful opportunity to be heard.

353. The First Vexatious Order signed by DEFENDANT JUDGE BERNSTEIN did not provide a sufficiently developed record to show that MR. POLO was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered.

354. Moreover, DEFENDANT JUDGE BERNSTEIN was depriving MR. POLO's right to access the court conditioned on MR. POLO having the money to pay for an attorney, which MR. POLO did not have.

355. Therefore, DEFENDANT JUDGE BERNSTEIN, deprived MR. POLO and his children of access to the court in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

356. The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

357.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, through other judges, and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

358.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

   a.   The Plaintiff(s) sustained emotional damages;

   b.   The Plaintiff(s) sustained reliance damages;

   c.   The Plaintiff(s) sustained severe mental and emotional distress;

   d.   The Plaintiff(s) suffered physical pain and suffering;

   e.   The Plaintiff(s) suffered diminished health;

   f.   The Plaintiff(s) suffered mental pain and suffering;

   g.   The Plaintiff(s) suffered loss of earnings and;

   h.   The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

   i.   the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

   j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

   k.   the children's right to parental support was impaired with a value of more than $96,000; and

   l.   MR. POLO will incur attorney's fees and/or court costs.

359.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA DEFENDANT

JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ as follows:

a. Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining MR. SEGARRA, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against MR. SEGARRA, and MS. HERNANDEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 4.     CONSPIRACY TO DEPRIVED THE PLAINTIFFS OF THEIR CONSTITUTIONAL RIGHT TO LIBERTY, OF MR. POLO TO EXERCISE AND THE CHILDREN TO RECEIVE THE CARE, CUSTODY, AND CONTROL OF MR. POLO'S CHILDREN IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

360.     Plaintiffs re-alleges paragraphs 61 through 310 and further state that DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT MERLIN HERNANDEZ (all together

referred to as the "DEFENDANTS" throughout this Count), did the following: conspired to deprive the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children.

361. The DEFENDANTS JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and MS. HERNANDEZ, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

362. DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ had an agreement/understanding to intentionally deprived the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children, without due process of law, and in furtherance of the agreement/understanding, they acted in concert and committed the following overt acts with a common objective:

363. In furtherance of their agreement at the beginning of 2017, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ maliciously and unreasonably staged a plan to take MR. POLO's children from him without due process of law.

364. DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ, maliciously and unreasonably, began to make it difficult for MR. POLO to register the children at an "A" rated school in MR. POLO's zip code to get MR. POLO to file for enforcement of MSA. Their excuse was that Ms. Hernandez wanted to register the children in a "B" rated school because it used to be an "A" rated school, while MR. POLO's proposed school was an "A" rated school.

365. The MSA signed by the parties called to register the children in the *zip code with the best school*.

366. On or about *March 28, 2017*, Judge Judith Kreeger, who was covering for JUDGE BERNSTEIN, entered an order of referral sending the case to Family Court Services ("FCS") to schedule a co-parenting coordinator *to resolve the school issue only*.

367. In furtherance of the agreement/understanding in 2017, JUDGE BERNSTEIN staged a plan to take MR. POLO's children from him without due process of law, by involving the Family Court services to obtain a biased report recommending timesharing change, and on **April 3, 2017**, JUDGE BERNSTEIN filed a new and different order of **referral to the co-**

parenting coordinator *without notice*, without a hearing, Without MR. POLO's consent or knowledge, and *without serving MR. POLO* with the new Order of Referral to Coparenting coordinator.

368.    The New order stated that there was a ***history of allegations of domestic violence***, that the parties had an ***opportunity to consult with an attorney*** or ***domestic violence advocate***, and that the Parenting coordinator referral was "with the **prior consent** of the parties and approval of the court." Moreover, the order extended the six (6) meetings initially scheduled by Judge Kreeger to **24 months of co-parenting coordinator services**.

369.    The parties were separated for more than 5 years, MR. POLO did not have an attorney at that moment. MR. POLO did not consult with any domestic violence advocate, MR. POLO never consented to that referral, and there were no allegations of domestic violence or personal conflict pending to be resolved by a coparenting coordinator. Therefore, the referral was unjustified.

370.    DEFENDANT JUDGE BERNSTEIN called, sua sponte, for a Case Management conference which was held on ***August 01, 2017,*** with the sole objective of sending the case to a pre-arranged coparenting coordinator to obtain a recommendation of change of custody based on the order he never served on MR. POLO dated ***April 3, 2017***.

371.    Additionally, even when the issue of school selection was resolved in an out of court agreement. Mr. Segarra and Ms. Hernandez continued with their plan knowing that there was no pending issue to be resolved.

372.    On ***August 1, 2017***, MR. POLO went to register with FCS where MR. POLO overheard a conversation between the ***intake worker, and Ms. Aileen Alvarez*** (the original case manager. Referred hereinafter to as "Ms. Alvarez"), in which Aileen told the intake worker that the case was transferred to Nancy Canate ("Ms. Canate"), because the mother, in that case, is best friends with Nancy's aunt.

373.    Therefore, the DEFENDANT JUDGE BERNSTEIN conspired with MR, SEGARRA, and MS. HERNANDEZ to deprive the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

374.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, MR. SEGARRA, and MS. HERNANDEZ through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

375.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

376.     The Plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to recover their costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

377.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.     The Plaintiff(s) sustained emotional damages;

    b.     The Plaintiff(s) sustained reliance damages;

    c.     The Plaintiff(s) sustained severe mental and emotional distress;

    d.     The Plaintiff(s) suffered physical pain and suffering;

    e.     The Plaintiff(s) suffered diminished health;

    f.     The Plaintiff(s) suffered mental pain and suffering;

    g.     The Plaintiff(s) suffered loss of earnings and;

    h.     The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    i.     the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.   the children's right to parental support was impaired with a value of more than $96,000; and

l.   MR. POLO will incur attorney's fees and/or court costs.

378.   **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, MR. SEGARRA, and MS. HERNANDEZ as follows:

a.   Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.   Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.   Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d.   Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 5.        CONSPIRACY TO DEPRIVE PLAINTIFFS OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

379.      Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, and MS, HERNANDEZ (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

380.      The DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, and MS, HERNANDEZ, in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

381.      DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ had an agreement/understanding to intentionally violate the plaintiffs' constitutional right to access the court, without due process of law, and in furtherance of the agreement/understanding, they acted in concert and committed the following overt acts with a common objective:

382.      On October 2, 2018, DEFENDANT JUDGE BERNSTEIN, maliciously, entered an order (hereinafter the "Second Vexatious Order") preventing MR. POLO from filing "anything" in the case's docket. However, the clerk of courts was not allowing MR. POLO to file ANYTHING since the previous First Vexatious Order was rendered.

383.      MR.    SEGARRA    and    Ms.    Hernandez,    in    furtherance    of    the agreement/understanding they had with JUDGE BERNSTEIN, **never noticed** the hearing as a hearing to remove or alter MR. POLO's access to the court rights to prevent MR. POLO from having an opportunity to prepare for the hearing. Therefore, MR. POLO was **not afforded an opportunity to prepare for the hearing, present witnesses, or be heard.**

384.      The Second Vexatious Order signed by DEFENDANT JUDGE BERNSTEIN did not provide **a sufficiently developed record to show that MR. POLO was abusing the judicial system** and the order was **not narrowly tailored to closely fit the specific vice** encountered, because **no vice was encountered**. Moreover, DEFENDANT JUDGE BERNSTEIN was preventing MR. POLO's right to access the court **conditioned on MR. POLO having the money** to pay for an attorney, which MR. POLO did not have unless he was borrowing money from his wife's credit cards, which Bernstein knew was the case.

385.    Therefore, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ, conspire to violate, and DEFENDANT JUDGE BERNSTEIN violated, the plaintiff's Federal and Florida State Constitutional Rights to Access the Court, without Due Process of Law in direct violation of 42 U.S.C. Section 1983, in violation of Plaintiff's Fifth and Fourteenth Amendment Rights to Due Process.

386.    The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

387.    If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

388.    As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.  The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.  The Plaintiff(s) sustained severe mental and emotional distress;

    d.  The Plaintiff(s) suffered physical pain and suffering;

    e.  The Plaintiff(s) suffered diminished health;

    f.  The Plaintiff(s) suffered mental pain and suffering;

    g.  The Plaintiff(s) suffered loss of earnings and;

    h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    i.  the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.  the children's right to parental support was impaired with a value of more than $96,000; and

l.  MR. POLO will incur attorney's fees and/or court costs.

389.  **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ as follows:

a.  Declaring that, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ, from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d.  Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 6.        ARBITRARY AND CAPRICIOUS BREACH OF IMPLIED IN LAW CONTRACT**

390.        Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, SEGARRA & ASSOCIATES, P.A., ST. THOMAS UNIVERSITY, INC., MERLIN HERNANDEZ, and MR. SEGARRA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

391.        MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law, but also a Tax Law Certificate.

392.        MR. POLO was just weeks away from graduation when JUDGE BERNSTEIN interfered with the contract and influenced STU to breach the contract STU had with MR. POLO, and STU, in fact, breached their contract with MR. POLO.

393.        MR. POLO was over 43 years old, with an untreated attention deficit, and Neurocognitive impairments before he began law school; nevertheless, he performed at his best being an excellent student who received (1) the CALI Excellence for the Future Award; (2) Excellence in Academic Studies (Dean List) spring 2017; (3) Excellence in Academic Studies (Dean List) Fall 2017; (4) Pro Bono Commendation; (5) was a member of the Tax Law Society; (6) Student Member of Florida Bar's Tax Division; and (7) a member of Hon. Peter T. Fay American Inn of Court (in multiple occasions).

394.        MR. POLO participated in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

395.        STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

396.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

397.     STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware of when he received a call past midnight from Campus security.

398.     Furthermore, STU DEFENDANT EMPLOYEES knew MR. POLO was diagnosed with a cognitive condition that had led to MR. POLO failing to disclose previous employments, and failure to mention some of the cases he had pending in Federal and State court. However, after not finding probable cause to expel MR. POLO from school, after the first honor council hearing, STU went on a fishing expedition to find additional pretexts to breach the contract they had with MR. POLO.

399.     In the second hearing, STU DEFENDANT EMPLOYEES accused MR. POLO of intentionally failing to list previous employment and list cases in federal court. Even if MR. POLO had intentionally failed to list the employment and the cases in Federal and State Court, which was not the case, STU has a procedure for the students to amend the students' applications before applying to the Florida Bar.

400.     No student has ever been taken to a disciplinary proceeding for amending their application and/or for putting information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school, as any other student would.

401.     STU's honor code, Section 3.03 (A)(3), states in pertinent part "The Honor Council **SHALL** not be used to resolve personal conflicts."

402.     STU's Section 3.04(E)(2) establish that the adjudication of the honor code Council must be by "Clear and Convincing Evidence."

403.     Because of the influence that JUDGE BERNSTEIN exercised on STU, STU used the Honor Council to resolve JUDGE BERNSTEIN'S personal conflicts with MR. POLO, as MR. POLO's political speech about corruption in the family court.

404.     STU and STU DEFENDANT EMPLOYEES had also political motivations to get MR. POLO out of the way of Mr. Planas clients for the accusations MR. POLO was publicly

making about Mr. Planas' client, now congresswoman Maria Elvira Salazar, and his friends State Representative Daniel Perez, and Nelson D. Diaz's (then chair of the Miami-Dade County Republican Party) corrupt acts and possible ties with the Cuban Intelligence Services during MR. POLO's political campaigns and as part of protected political act.

405.    JUDGE BERNSTEIN falsely accused MR. POLO of claiming to be a member of the Florida Bar, which was a manipulation of the statement MR. POLO had made which was that MR. POLO was a Student Member of the Florida Bard.

406.    STU did not have "clear and convincing evidence" to terminate MR. POLO's contract with the school or to say that MR. POLO was not a Student Member of the Florida Bar. Moreover, becoming a student member of the Florida Bar was a requirement for one of the classes MR. POLO was enrolled in at STU. Additionally, STU did not have evidence to say that MR. POLO did not have a reasonable belief to say that JUDGE BERNSTEIN and MR. SEGARRA were having ex parte communication, in fact, MR. POLO did have a reasonable belief.

407.    MR. POLO had never told JUDGE BERNSTEIN anything about applying for the Florida Bar, passing the exams, background check, or any of those things. However, MR. POLO had told this information to Mr. Segarra in a never published (until that moment) deposition.

408.    JUDGE BERNSTEIN, in clear absence of all jurisdictions, sent a letter to DEAN LAWSON, which contained false allegations and manipulated facts, which DEAN LAWSON, MR. SILVER, and DEAN MOORE needed to proceed with the plan they had to terminate the Plaintiffs' property and liberty interest in MR. POLO's continued enrollment at ST. THOMAS UNIVERSITY, INC., and to interfere with MR. POLO's contract with STU.

409.    The order of recusal was carefully drafted before the hearing on MR. POLO's Motion to Recuse, and was maliciously drafted in violation of Florida Law, which prohibits a Judge from engaging in discussions of merits of the Motion of Recusal.

410.    Two days later, JUDGE BERNSTEIN sent a letter to STU's DEAN LAWSON. The letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal, and called for the schools to act upon it. Therefore, JUDGE BERNSTEIN and his co-conspirators were acting under color of state law.

411.     STU's DEFENDANT EMPLOYEES prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter and order of recusal the DEFENDANT JUDGE BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents.

412.     Moreover, MR. POLO never had an opportunity to have his case hear by an impartial jury, never have access to the evidence STU DEFENDANT EMPLOYEES were going to present at the hearing, never had an opportunity to confront his accuser, never had an opportunity to be represented by an attorney at the hearing.

413.     DEFENDANT MR. SEGARRA, acting on behalf of JUDGE BERNSTEIN, while he was also performing as the attorney/Agent for Ms. Hernandez, and under color of Law, engaged in providing DEAN LAWSON, MR. SILVER, and DEAN MOORE with the pretext STU needed to continue with the unconstitutional proceeding. DEFENDANT MR. SEGARRA stepped out of his role of advocate for Ms. Hernandez and stepped into the role of investigator for the ST. THOMAS UNIVERSITY, INC.

414.     Therefore, ST. THOMAS UNIVERSITY, INC. breached the agreement they had with MR. POLO by expelling MR. POLO in a capricious and arbitrary manner, in furtherance of a conspiracy its employees had with JUDGE BERNSTEIN, without due process of law.

415.     As a direct, natural, and proximate result of DEFENDANTS' ST. THOMAS UNIVERSITY, INC., JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, SEGARRA & ASSOCIATES, P.A., MS. HERNANDEZ, MR. MARTINEZ and MR. SEGARRA actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

    a.  emotional damages;

    b.  severe mental and emotional distress;

    c.  The Plaintiff(s) suffered physical pain and suffering;

    d.  The Plaintiff(s) suffered diminished health;

    e.  The Plaintiff(s) suffered mental pain and suffering;

    f.  The Plaintiff(s) suffered loss of earnings and;

g.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

h.  H.   the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

i.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

j.   the children's right to parental support was impaired with a value of more than $96,000; and

k.  MR. POLO will incur attorney's fees and/or court costs.

416.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC., as follows:

a.  Declaring that DEFENDANTS JUDGE BERNSTEIN, ST. THOMAS UNIVERSITY, INC., STU's Agents DEAN LAWSON, MR. SILVER, DEAN MOORE, SEGARRA & ASSOCIATES, P.A., SEGARRA & ASSOCIATES' agent MR. SEGARRA, and MS. HERNANDEZ violated the Plaintiff(s)' constitutional rights to property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., without due process of law, and arbitrary and capriciously terminated MR. POLO's career in law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining JUDGE BERNSTEIN, ST. THOMAS UNIVERSITY, INC., STU's Agents DEAN LAWSON, MR. SILVER, DEAN MOORE, SEGARRA & ASSOCIATES, P.A., SEGARRA & ASSOCIATES' agent MR. SEGARRA, and MS. HERNANDEZ from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and Florida Common law.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 7.       DEPRIVATION OF PROPERTY AND LIBERTY INTEREST IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

417.     Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS JUDGE BERNSTEIN, DAVID A. ARMSTRONG, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, and DEFENDANT MR. SEGARRA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

418.     The DEFENDANTS JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA in all their actions described in this complaint deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

419.     MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete not only his JD in Law, but also a Tax Law Certificate.

420.     As the result of MR. POLO's agreement with ST. THOMAS UNIVERSITY, INC., MR. POLO and his children had a property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor and integrity.

421.     When STU DEFENDANT EMPLOYEES decided to capriciously, arbitrarily, and in a conspiracy with JUDGE BERNSTEIN, and MR. SEGARRA, breached the contract STU had with MR. POLO, and dirty MR. POLO's good name, STU deprived the Plaintiffs of their property

interest in the continued enrollment at STU, and of the liberty interest in their family name, reputation, honor and integrity.

422.     DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, and MR. SEGARRA, acting as agents of the DEFENDANT JUDGE BERNSTEIN; therefore, acting under color of state law, commenced and maintained the Honor Council proceeding against MR. POLO, which was violative of Due Process for not having an impartial adjudicator, for no providing access to evidence that was being used against MR. POLO, for no providing opportunity to confront Mr. Planas and Mr. Bernstein, for preventing MR. POLO from being present during Mr. Planas' testimony, for no providing a summary of Mr. Planas testimony before the hearing, for having a bias tribunal trying MR. POLO's honor council proceeding, fore being politically motivated, and for being a pretext to deprive the Plaintiffs of their interest in property, and liberty without due process of law.

423.     Because of JUDGE BERNSTEIN'S act of sending the letter to ST. THOMAS UNIVERSITY, INC., and the participation of MR. SEGARRA providing misleading information/filings, in conspiracy with STU DEFENDANT EMPLOYEES, the unconstitutional proceeding had never taken place, and the Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor and integrity.

424.     Because the acts of DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS of instituting, maintaining, and continuing the proceeding without providing MR. POLO Due Process of Law before Depriving the Plaintiffs of their property and liberty interest, Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor and integrity.

425.     As the President of STU, DAVID A. ARMSTRONG had a duty to act to prevent the violations of MR. POLO and his children constitutional rights when he found out that the procedure was instituted for political reasons and personal reasons under color of state law. However, MR. ARMSTRONG breached his duty when he failed to act to prevent further dames to the plaintiffs.

426.     The expulsion of MR. POLO from STU, resulted in a stain on MR. POLO's family good name, reputation, honor and integrity that will follow him and his family for life.

427.     As the result of the proceeding the Plaintiffs lost their property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor and integrity.

428.     Therefore, DEFENDANTS JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA deprived the Plaintiffs of their property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor and integrity in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

429.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA, through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

430.     As a direct, natural, and proximate result of DEFENDANTS' JUDGE BERNSTEIN'S, DEAN LAWSON'S, MR. SILVER'S, DEAN MOORE'S, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA'S actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

    a.  emotional damages;

    b.  severe mental and emotional distress;

    c.  The Plaintiff(s) suffered physical pain and suffering;

    d.  The Plaintiff(s) suffered diminished health;

    e.  The Plaintiff(s) suffered mental pain and suffering;

    f.  The Plaintiff(s) suffered loss of earnings and;

    g.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    h.  the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

    i.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

    j.  the children's right to parental support was impaired with a value of more than $96,000; and

    k.  MR. POLO will incur attorney's fees and/or court costs.

431.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA as follows:

    a.  Declaring that JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, violated the Plaintiff(s)' constitutional rights to property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., and their liberty interest in their good name, reputation, honor and integrity without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

    b.  Enjoining JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

    c.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, JUDGE BERNSTEIN, DEAN

LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 8.    DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

432.    Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

433.    The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

434.    The lower court lost jurisdiction as of ***September 14, 2018;*** however, judge Del Rey continued exercising Jurisdiction in clear absence of all clear jurisdiction with the intent of harming MR. POLO and his children to protect JUDGE BERNSTEIN malicious and unconstitutional acts.

435.    On or about January 18, 2019, Polo's attorney, Mr. Ceballos file a motion to withdraw, which JUDGE DEL REY granted on or about March 6, 2019 (almost two months later).

436.    Judge DEL REY, intentionally and maliciously allowed Mr. Ceballos to withdraw knowing that she was leaving MR. POLO without an attorney when there was a current order preventing MR. POLO from filing ANYTHING in the docket. Additionally, MR. POLO asked to get an evidentiary hearing to vacate the two orders Preventing MR. POLO from filing. To which JUDGE DEL REY responded, "Given the history of this Case, I would not vacate the current order on file."

437.    As previously stated, the Second Vexatious Order signed by DEFENDANT JUDGE BERNSTEIN did not provide a sufficiently developed record to show that MR. POLO

was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, DEFENDANT JUDGE BERNSTEIN was preventing MR. POLO's right to access the court conditioned on MR. POLO having the money to pay for an attorney, which MR. POLO did not have unless he was borrowing money from his wife's.

438.     Therefore, JUDGE DEL REY left MR. POLO without access to the court violating MR. POLO's Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

439.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

440.     As a direct, natural, and proximate result of DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. MR. POLO has suffered damages, including but not limited to:

     a.   The Plaintiff(s) sustained emotional damages;

     b.    The Plaintiff(s) sustained reliance damages;

     c.   MR. POLO suffered severe mental and emotional distress;

     d.   The Plaintiff(s) suffered physical pain and suffering;

     e.   The Plaintiff(s) suffered diminished health;

     f.   The Plaintiff(s) suffered mental pain and suffering;

     g.   The Plaintiff(s) suffered loss of earnings and;

     h.   The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

     i.   H.     the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.   the children's right to parental support was impaired with a value of more than $96,000; and

l.   MR. POLO will incur attorney's fees and/or court costs.

441.   **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a.   Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.   Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.   Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

d.   Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

e.   Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 9.       DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

442.      Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

443.      The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

444.      MR. POLO's attorney Mr. Genova filed a motion to withdraw, which JUDGE DEL REY heard on or about *April 15, 2021*, and she finally granted on *May 5, 2021*.

445.      MR. POLO opposed Mr. Genova's withdrawal on the basis that the Second Vexatious Order dated *October 2, 2018* (the second order), was preventing MR. POLO access to the court and that the order on file was unconstitutional.

446.      JUDGE DEL REY answered similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw."

447.      During the hearing, Polo told the judge: "there is no evidence on the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and JUDGE DEL REY responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?"

448.      DEFENDANT MR. SEGARRA knew that MR. POLO was about to file in Federal court through a Cease-and-Desist letter that MR. POLO sent to DEFENDANT MR. SEGARRA'S client. Therefore, during the hearing DEFENDANT MR. SEGARRA tried on different occasions to get JUDGE DEL REY to reinstate the First Vexatious Order, which she never realized he was trying.

449.      After the hearing, the opposing counsel, DEFENDANT MR. SEGARRA, coordinated with Judge's del Rey behind MR. POLO's back, after the hearing, to change her

holding with a new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting MR. POLO access the court.

450.     The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change MR. POLO's access to the court, MR. POLO was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered.

451.     The new order ("hereinafter the "Third Vexatious Order") signed by JUDGE DEL REY did not provide sufficiently developed record to show that MR. POLO was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, JUDGE DEL REY was preventing MR. POLO's right to access the court conditioned on MR. POLO having the money to pay for an attorney, which MR. POLO did not have unless he was barrowing money from his wife's credit cards, which JUDGE DEL REY Knew was the case.

452.     Therefore, DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA left MR. POLO without access to the court violating MR. POLO's Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

453.     As a direct, natural, and proximate result of DEFENDANTS' JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. The Plaintiffs have suffered damages, including but not limited to:

   a.   The Plaintiff(s) sustained emotional damages;

   b.   The Plaintiff(s) sustained reliance damages;

   c.   MR. POLO suffered severe mental and emotional distress;

   d.   The Plaintiff(s) suffered physical pain and suffering;

   e.   The Plaintiff(s) suffered diminished health;

   f.   The Plaintiff(s) suffered mental pain and suffering;

   g.   The Plaintiff(s) suffered loss of earnings and;

h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i.  the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.  the children's right to parental support was impaired with a value of more than $96,000; and

l.  MR. POLO will incur attorney's fees and/or court costs.

454.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a.  Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to access the court without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

**COUNT: 10.       DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

455.     Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

456.     The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

457.     The lower court lost jurisdiction as of ***September 14, 2018;*** however, judge Del Rey continued exercising Jurisdiction in clear absence of all clear jurisdiction with the sole purpose of harming MR. POLO and his children.

458.     MR. POLO's attorney Mr. Genova filed a motion to withdraw, which JUDGE DEL REY heard on or about ***April 15, 2021***, and she finally granted on ***May 5, 2021***.

459.     MR. POLO opposed Mr. Genova's withdrawal on the basis that the Second Vexatious Order dated ***October 2, 2018*** (the second order), was preventing MR. POLO access to the court and that the order on file was unconstitutional.

460.     JUDGE DEL REY answered similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw."

461.     During the hearing, Polo told the judge: "there is no evidence on the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and JUDGE DEL REY responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?"

462.     DEFENDANT MR. SEGARRA knew that MR. POLO was about to file in Federal court through a Cease-and-Desist letter that MR. POLO sent to DEFENDANT MR. SEGARRA'S client. Therefore, during the hearing DEFENDANT MR. SEGARRA tried on different occasions to get JUDGE DEL REY to reinstate the First Vexatious Order, which she never realized he was trying.

463.     After the hearing, the opposing counsel, DEFENDANT MR. SEGARRA, engaged in ex parte communication and coordinated with Judge's del Rey behind MR. POLO's back, to change her holding with a new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting MR. POLO's access to the court.

464.     The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change MR. POLO's access to the court, MR. POLO was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered.

465.     The new order ("hereinafter the "Third Vexatious Order") signed by JUDGE DEL REY did not provide a sufficiently developed record to show that MR. POLO was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, JUDGE DEL REY was preventing MR. POLO's right to access the court conditioned on MR. POLO having the money to pay for an attorney, which MR. POLO did not have unless he was borrowing money from his wife's credit cards, which JUDGE DEL REY Knew was the case.

466.     Therefore, DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA left MR. POLO without access to the court violating MR. POLO's Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

467.     As a direct, natural, and proximate result of DEFENDANTS' JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. The Plaintiffs have suffered damages, including but not limited to:

    a.  The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.  MR. POLO suffered severe mental and emotional distress;

    d.  The Plaintiff(s) suffered physical pain and suffering;

    e.  The Plaintiff(s) suffered diminished health;

    f.   The Plaintiff(s) suffered mental pain and suffering;

g.  The Plaintiff(s) suffered loss of earnings and;

h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i.  the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.  the children's right to parental support was impaired with a value of more than $96,000; and

l.  MR. POLO will incur attorney's fees and/or court costs.

468.  **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a.  Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and

capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

d.   Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

e.   Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 11.   DEPRIVATION OF ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS UNDER 42 U.S.C. SECTION 1983.**

469.   Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

470.   The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

471.   The lower court lost jurisdiction as of ***September 14, 2018;*** however, judge Del Rey continued exercising Jurisdiction in clear absence of all clear jurisdiction with the sole purpose of harming MR. POLO and his children.

472.   On July 29, 2019, MR. POLO timely filed and served his exception to the General Magistrate's report.

473.   MR. POLO's attorney, influenced by the court and MR. SEGARRA, intentionally failed to ask for a hearing on the timely filed exceptions, to allow the other side to have a frivolous argument to continue delaying the case.

474.    On September 10, 2019, forty-five (45) days after the filing of the exceptions, Judge Del Rey intentionally violated MR. POLO's right to due process[3] by entering an order ignoring the exceptions, and saying that the exceptions were never filed.

475.    Moreover, MR. POLO's attorney filed a motion to vacate the September 10, 2019, order, and Judge Del Rey intentionally, once more, violated MR. POLO's right to due process by denying MR. POLO's attorney motion to vacate Judgment.

476.    Judge del Rey was maliciously creating additional procedural loops to make MR. POLO lose his case and generate unnecessary appeals. However, MR. POLO appealed her decision and the decision was reversed.

477.    Therefore, JUDGE DEL REY violated MR. POLO's right access the court without due process of law, by preventing a fair and just trial, with an impartial adjudicator, by denying MR. POLO's right to hearing on the Timely Filed Exceptions, and by exercising jurisdiction over a case she knew was precluded by res judicata.

478.    Moreover, she intentionally engaged in retaliatory acts outside all clear jurisdiction when she continued to exercise jurisdiction with the malicious intent to harm the plaintiffs.

479.    As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.   The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.   The Plaintiff(s) sustained severe mental and emotional distress;

    d.   The Plaintiff(s) suffered physical pain and suffering;

    e.   The Plaintiff(s) suffered diminished health;

    f.   The Plaintiff(s) suffered mental pain and suffering;

---

[3] Fla. R. Fam. P. 12.490 (f) establishes a mandatory hearing for timely filed objections. "If exceptions are filed, they ***shall*** be heard on reasonable notice by either party or the court." Therefore, Judge Del Rey had no discretion to deny a hearing on timely filed exceptions.

g.  The Plaintiff(s) suffered loss of earnings and;

h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i.  Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.  the children's right to parental support was impaired with a value of more than $96,000; and

l.  MR. POLO will incur attorney's fees and/or court costs.

480.  **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a.  Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and

capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 12. DEPRIVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION, IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983

481.      Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK, GM. ROBERT S. SINGER, DEFENDANT MR. SEGARRA, and STU DEFENDANT EMPLOYEES, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and DAVID A. ARMSTRONG (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

482.      The DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK, GM. ROBERT S. SINGER, DEFENDANT MR. SEGARRA, and STU DEFENDANT EMPLOYEES, in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

483.      The DEFENDANTS engaged in a retaliatory scheme to prevent MR. POLO from engaging in free speech.

484.      Ms. Real (the "GAL") insinuated to MR. POLO that she was friends with JUDGE BERNSTEIN and that JUDGE BERNSTEIN was going to do in the case what she was going to tell him. Even though MR. POLO understood this as an offer to buy her illegal services, MR. POLO ignored it.

485.      Thereafter Ms. Real started acting biased and began to target MR. POLO, by first Depriving MR. POLO and his children of liberty to exercise custody, and control of his children without Due Process of Law, under 42 U.S.C. §1983.

486.      Then, Ms. Real filed a late report which contained false allegations to justify not giving MR. POLO the 50% timesharing he had requested from the beginning of the case.

DEFENDANT JUDGE BERNSTEIN frivolous denied a motion for continuance, so that MR. POLO did not have time to prepared against the false allegations contained in Ms. Real report.

487.     Ms. Real testified under oath to the truthfulness of the report. Both attorneys, in the case at that time, intentionally failed to have a court reporter in the courtroom to prevent Ms. Real testimony from being recorded and to prevent an appeal.

488.     MR. POLO obtained the evidence showing Ms. Real had lied, and then MR. POLO filed a motion to vacate Judgment. As a result, the other side settled. JUDGE BERNSTEIN, to keep MR. POLO quiet, signed an illegal Agreed Final Judgment. Nevertheless, he had the intent to retaliate against MR. POLO later for, among other things, exposing the corruption of Ms. Real, and her co-conspirators JUDGE BERNSTEIN, MR. LOSA, MS. GRANDA, MS. HERNANDEZ, AND MR. MARTINEZ.

489.     On or about June 6, 2018, MR. POLO registered to run for a State Representative. During the campaign Polo, and thereafter, engaged in core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System from the State Legislature level, creating thereby interactive communication concerning political change in the court system.

490.     Ms. Hernandez was closely following MR. POLO's social media, and she reported to DEFENDANT MR. SEGARRA, and thereby to JUDGE BERNSTEIN, about MR. POLO's open statements about fighting Judicial Corruption in the Family Court System.

491.     Thereafter, DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN became more aggressive in coming after MR. POLO, livelihood, degree in Law, and career in law in retaliation for MR. POLO's political speech and affiliation and political speech against the corruption in the Family Court System, led by JUDGE BERNSTEIN.

492.     To retaliate and deprive MR. POLO of the legal custody of his children without due process of law, the DEFENDANT JUDGE BERNSTEIN substituted the original Order of Referral by another judge, which was sending MR. POLO and Ms. Hernandez to a Coparenting Coordinator to resolve a school registration issue, by his own order that was talking about a "history of domestic violence." DEFENDANT JUDGE BERNSTEIN never served MR. POLO with the Order of Referral and domestic violence was never an issue in front of DEFENDANT JUDGE BERNSTEIN. He did so to terminate MR. POLO's custodial rights by using and outside

coparenting coordinator, which was colluding with DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN to terminate MR. POLO's parental rights with her "independent" recommendation without due process of law, violating thereby, the Plaintiffs' right to 5th and 14th.

493.     Moreover, Defendant JUDGE BERNSTEIN ordered MR. POLO to pay 100% of two years of unwarranted coparenting sections knowing that MR. POLO, for being indigent, was going to have to be in contempt of court for not having the money to pay the coparenting fees.

494.     MR. SEGARRA and JUDGE BERNSTEIN entrapped MR. POLO by taking his constitutional right to access the court knowing that MR. POLO was indigent and was not going to be able to afford to have an attorney to review his filings. They harassed MR. POLO to the point at which MR. POLO was forced to file a Motion to recuse JUDGE BERNSTEIN, which would have allowed JUDGE BERNSTEIN to put MR. POLO in Jail.

495.     After failing in their attempt to put MR. POLO in Jail, DEFENDANT MR. SEGARRA and JUDGE BERNSTEIN, through the other member of the enterprise, Ms. Camacho, tried to entrap MR. POLO to commit forgery on a transcript signature to put MR. POLO in prison and terminate MR. POLO's custodial rights.

496.     The STU DEFENDANT EMPLOYEES, Ms. Segarra, JUDGE BERNSTEIN, JUDGE DEL REY, and General MAGISTRATE SINGER, intentionally deprived the Plaintiffs, without due process of law, (1) of property right to continued enrollment STU, (2) of their right to access the court, (3) of MR. POLOs constitutional right to access the court, to intimidate MR. POLO.

497.     JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG, intimidated MR. POLO to make him drop the case he had against BERNSTEIN'S co-conspirators, to prevent MR. POLO to bring federal charges against all them and other co-conspirators, to silence MR. POLO's political speech, and for MR. POLO's political speech and affiliation.

498.     After *September 14, 2018* when the court lost jurisdiction, Judge Del Rey and Judge Spencer Multack, continued to exercise jurisdiction and to file orders while there was a clear absence of Jurisdiction.

499.     Judge Del Rey engaged in Deprivation of MR. POLO's constitutional access to the court without due process in multiple occasions to intimidate MR. POLO and silence him about the corruption in the Family Court.

500.     Judge Del Rey denied equal protection of the law when, despite the simple command of the law denying judicial discretion when it comes to hearing on timely filed objections to general magistrate report, she denied a hearing on the timely filed objections.

501.     Judge del Rey Engaged in dilatory tactics to give Mr. Segarra additional argument to day MR. POLO had delayed the case.

502.     On July 11, 2022, Judge Multack maliciously entered an ex parte order, without notice or opportunity to be heard stating that MR. POLO was in violation of Rules Regulating the Florida Bar Rule 4-3.5(a) and Rules Regulating The Florida Bar Rule 4-35.5(b), which are applicable to attorneys only, with the objective of providing bases for Mr. Segarra to continue attacking MR. POLO in two pending motions for attorney's fees.

503.     On the same date, Judge Multack issued another order limiting MR. POLO's access to the court. However, during the hearing Judge Multack had said he was going to remove MR. POLO's access to the court restriction; nevertheless, he filed a different order limiting access to file. The hearing was never noticed as a motion to show cause why MR. POLO's rights shouldn't be limited, removed, or altered, and MR. POLO did not get an opportunity to be heard.

504.     The unconstitutional depravations or rights that JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES' DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG inflicted on MR. POLO, intimidated MR. POLO in multiple occasions and forced MR. POLO to change the speech to other subjects, but the corruption in the Family Court System.

505.     When STU DEFENDANT EMPLOYEES, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG came after Plaintiff's property interest in continued enrollment at STU, their livelihood, MR. POLO's degree, the reputation, prestige, and goodwill that having a career in law would represent in MR. POLO's political career and future. MR. POLO felt even more

intimidated; therefore, not only he stopped the political speech, but he also dropped the case in the State Court against other co-conspirators and reframed from bringing federal causes of action against DEFENDANT JUDGE BERNSTEIN and all his co-conspirators for a period of more than two (2) years.

506.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, the Defendants JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG, through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

507.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.   The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.   The Plaintiff(s) sustained severe mental and emotional distress;

    d.   The Plaintiff(s) suffered physical pain and suffering;

    e.   The Plaintiff(s) suffered diminished health;

    f.   The Plaintiff(s) suffered mental pain and suffering;

    g.   The Plaintiff(s) suffered loss of earnings and;

    h.   The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    i.   the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

    j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

    k.   the children's right to parental support was impaired with a value of more than $96,000; and

508.       MR. POLO will incur attorney's fees and/or court costs.

509.       **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT MR. SEGARRA, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA as follows:

    a.  Declaring that JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

    b.  Enjoining JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, DAVID A. ARMSTRONG from, directly or indirectly, violating the Plaintiffs' constitutional rights, from retaliating against the Plaintiffs for seeking to remedy their inappropriate and unlawful conduct; and

    c.  Award judgement against DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988, and demands trial by jury on all issues so triable.

    d.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, and MR. SEGARRA pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against TAMARA F. LAWSON,

JAY S. SILVER, PATRICIA MOORE, pursuant to 42 U.S.C. Sections 1983 and 1988.

e.   Awarding any necessary equitable relief including prejudgment and post judgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 13.   DEPRIVATION OF MR. POLO'S EQUAL PROTECTION OF LAW UNDER 42 U.S.C. SECTION 1983

510.    Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, FLORIDA THIRD DISTRICT COURT OF APPEALS,  JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, GM ROBERT S. SINGER, JUDGE SPENCER MULTACK, MR. SEGARRA, DAVID A. ARMSTRONG, TAMARA F. LAWSON, JAY S. SILVER, JUAN CARLOS PLANAS, PATRICIA MOORE, IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

511.    All the Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

512.    As a Cuban born, and poor person MR. POLO is member of two suspected classes under the Fifth and fourteenth Amendments Equal Protection Clauses. Moreover, MR. POLO is associated with a new class of leaders who believe this country is on the wrong track and both major parties are damaging America, through the acceptance and tolerance of corruption.

513.    STU's professors are well known for their tendency to be associated with extreme left Political ideology and indoctrinating students. STU, acting under color of state law, purposely discriminated against MR. POLO using MR. POLO's national origin, socioeconomic status, and Political speech and affiliation., as the main factors to destroy MR. POLO's career in law and in Politics on behalf of JUDGE BERNSTEIN.

514.    Other similarly situated U.S. born student and employees of STU were never terminated when they had committed serious crimes, were arrested, and in some cases were convicted for those crimes. Nevertheless, because of MR. POLO's national origin, his lacks of

resources to defend his rights, and his political association, STU looked for any pretexts to deprive MR. POLO and his children of their interest in MR. POLO's continued enrollment at STU without due process of law.

515.    Moreover, intentionally and maliciously selected all members of the Honor Council who were registered democrats and got Juan Carlos Planas to testify about MR. POLO's political speech during his campaign, including a post MR. POLO had retweeted/reposted about democrats. At the second hearing they switch one member of the council for a Republican after MR. POLO asked why they were bringing up his political speech.

516.    Therefore, the defendants, STU employees (TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, JUAN CARLOS PLANAS, and DAVID A. ARMSTRONG), acting under color of state law, violated the Plaintiffs' equal protection right protected under the fifth (5) and fourteenth (14) amendment of the U.S. Constitution when they employed disparate treatment by treating MR. POLO differently than other similarly situated students and violated MR. POLO's property interest in the continued enrollment in St. Thomas University, Inc.

517.    Moreover, DEFENDANT MR. SEGARRA, while he was acting in a conspiracy with JUDGE BERNSTEIN, participated in collecting misleading information for STU's management to come after MR. POLO's interest in property right without due process of law which resulted in a disparate treatment against the Plaintiffs compared to similarly situated U.S. born students. Additionally, DEFENDANT MR. SEGARRA'S collusion with JUDGE BERNSTEIN, GM SINGER, and JUDGE DEL REY, in furtherance of their conspiracy, resulted in violations of the plaintiff's constitutional rights to access the court without due process of law, which violations were purposely conducted because of MR. POLO's national origin, lack of wealth, and political speech and affiliation..

518.    GM SINGER, after finding out from JUDGE BERNSTEIN that MR. POLO had competent arguments to sustain the petition that was going to be adjudicated by GM SINGER; prevented MR. POLO from making any argument by dismissing sua sponte the Petition for Modification based on affirmative defenses not raised by proper pleadings. Therefore, GM SINGER deprived MR. POLO of his right to access the court without due process of law, because MR. POLO never received Notice and opportunity to be heard. Moreover, GM SINGER granted

attorney's fees to MR. SEGARRA not warranted by facts or law, while acting in clear absence of all jurisdiction.

519.     MR. SEGARRA, while acting under color of state law in conspiracy with JUDGE BERNSTEIN, and JUDGE DEL REY, GM SINGER, and JUDGE MULTACK harassed MR. POLO with improper service of process when MR. POLO was already under the jurisdiction of the court, with a deposition designed to harass MR. POLO and not to obtain any evidentiary valuable testimony, with two motions for attorney's fees not supported by law or facts when he knew that the court did not have jurisdiction to entertain such petition, by filing documents protected under the litigation privilege to intimidate MR. POLO, by coming after Polo's career in law by providing STU with misleading information, and by perjuring himself in open court to enter evidence that was misleading in nature.

520.     JUDGE DEL REY, GM SINGER and JUDGE MULTACK maliciously, allowed MR. SEGARRA to continue harassing the Plaintiffs with two motions MR. SEGARRA kept opened for a period of almost 5 years when they both knew that the court had not reserve jurisdiction to entertain a motion of attorney's fees in the final judgement, and that Ms. Hernandez failed to request a rehearing in a timely manner. Moreover, they had already planned to introduce inadmissible misleading and irrelevant evidence to hit MR. POLO with attorney's fees not supported by fact and law, resulting in a disparate treatment of the plaintiff compared with similarly situated U.S. born parents, people not engaged in Political speech against the corruption in the family court system, and people with the resources to defend their rights. Those violations were purposely conducted because of MR. POLO's lack of wealth, political speech and affiliation.

521.     The DEFENDANTS MR. SEGARRA and JUDGE DEL REY conspired with MR. POLO's attorney to delay the case to the point in which MR. POLO was not going to be able to pay a professional attorney to go to trial, and they influenced MR. POLO's attorney to get out of the case leaving MR. POLO without access to the court, without due process of law.

522.     On September 14, 2022, Judges FERNANDEZ, GORDO and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders".

523.     Fla. R. App. P. 9.130 (a)(3)(B) Limits the Appeals to the District Courts of Appeal of non-final orders to those orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions."

524.     The others MR. POLO appealed were, in fact, order Continuing, Modifying, and imposing injunctions without due process of law and injunctive in nature. However, Judges FERNANDEZ, GORDO and LOBREE maliciously denied MR. POLO's appeal and motion to issue a written opinion to prevent MR. POLO from having access to the court and to prevent the case from being dismissed for lack of jurisdiction.

525.     The order was entered without an opinion to foreclosures review of the Florida Supreme Court, without setting a precedent for lack of opinion.

526.     Moreover, Fla. R. App. P. 9.040(c) creates a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought. ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought....") *id.*

527.     However, MR. POLO asked the court to issue a writ of prohibition, in the alternative, to prevent the lower court from exercising jurisdiction when it had lost all jurisdiction, but the court also denied that option with the malicious intent of forcing MR. POLO to file another pleading so they could have an excuse to say MR. POLO is a vexatious litigant and restrict MR. POLO's access to appeal without an attorney.

528.     On March 01, 2023, Judges LINDSEY, HENDON and LOBREE rendered an order denying a writ of prohibition and citing wrong law that does not apply to MR. POLO's case, with the malicious intent of preventing the case from being dismissed for lack of jurisdiction to allow the lower court to continue with the harassment and prevent MR. POLO from appealing to a higher court.

529.     The court dismissed the case citing *Rorrer v. Orban*, 215 So. 3d 148 (Fla. 3d DCA 2017); *Juhl v. Juhl*, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous to MR. POLO's case.

530.     MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different and that the facts of MR. POLO case were more like this in their own case from the 3d DCA *Frumkes v. Frumkes*, 328 So. 2d 34 (Fla. 3d DCA 1976) in which the 3d DCA held that Court loses jurisdiction of a cause after a judgment or final decree has been entered and the time for filing petition for rehearing or motion for new trial has expired.

531.     Moreover, a month before issuing this order, in *Padron v. Padron*, No. 3D22-2146 (Fla. Dist. Ct. App. Feb. 8, 2023) the 3d DCA (judges EMAS, LINDSEY and GORDO) used the same rule stipulated in *Frumkes* to dismiss a case for lack of jurisdiction with extremely similar facts to MR. POLO's case.

532.     However, the aforementioned judges denied the motion for reconsideration knowing that they were citing two wrong inapplicable laws.

533.     On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismiss a Writ of Mandamus as moot, when the issue of access to the court and to file documents was not moot at all. However, even if it was moot, mootness does not defeat appellate jurisdiction, in Florida.

534.     There was still a controversy to be resolved by the 3d DCA, and the issues continued to exist.

535.     The Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and he is obliged to accept motions presented for filing in pending cases.

536.     MR. POLO had a clear legal constitutional right (under Article I, Section 21 of the Florida Constitution) to access the court and file documents in the lower court, and that right was being violated.

537.     And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts.

538.     Therefore, Judges FERNANDEZ, EMAS, and HENDON dismissed the Petition for writ of Mandamus to prevent MR. POLO from having access to the court to file proper filings.

539.     On April 6, 2022, the Judges LOGUE (adjunct professor of law at St. Thomas University), HENDON, and BOKOR, rendered an opinion, granting the only appeal ever to MR. POLO with the malicious intent of using the opinion to record incorrect statements stating that MR. POLO had appeal the final judgement and this was affirmed on appeal which was totally incorrect. Moreover, the order accenting that MR. POLO was found to be vexatious knowing that such a statement was not supported by competent evidence in the record. Additionally, the judges knew that MR. POLO's right to file was removed unconstitutionally without notice and opportunity to be heard.

540.     The acts of the DEFENDANTS were irrational, wholly arbitrary, and were mainly motivated by the defendants ill will stemming from MR. POLO's national origin, political speech (which include public serious accusation of corruption in the Family Court System, while MR. POLO was in political campaign), MR. POLO's Political affiliation, and for publicly exposing former and current republican members of Congress, and a member of the State legislature for their possible ties with the Cuban, Nicaraguan, and Venezuelan Dictatorship.

541.     Strict scrutiny under the Equal Protection Clause applies where, as here, the classification (national origin, socioeconomic status, and political speech and affiliation.) infringes on a fundamental right, including the right to access the courts, due process, the right not to be deprived of freedom or property without due process, and the right to freedom of association, among others.

542.     The acts of the Defendants are arbitrary classifications not narrowly tailored to further compelling government interests. The government, or those acting on behalf of government actors, had no interest whatsoever in preventing MR. POLO from graduating in retaliation for his political speech, his national origin, and because MR. POLO did not have the financial resources to hire an attorney to defend his rights.

543.     Even under heightened scrutiny, the defendants can say the government had important or compelling reasons to justify the discrimination, and/or that the discrimination was carefully tailored to serve those reasons. JUDGE BERNSTEIN, acting absent all jurisdiction came after MR. POLO career to silence MR. POLO for his political speech and political affiliation., national origin, and lack of wealth.

544.     The Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing violating the Plaintiffs' constitutional rights.

545.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Defendants unconstitutional acts.

546.     As a direct, natural, and proximate result of DEFENDANTS THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, FLORIDA THIRD DISTRICT COURT OF APPEALS, JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, GM ROBERT S. SINGER,

JUDGE SPENCER MULTACK, MR. SEGARRA, DAVID A. ARMSTRONG, TAMARA F. LAWSON, JAY S. SILVER, JUAN CARLOS PLANAS, PATRICIA MOORE, IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE actions towards the Plaintiffs. The Plaintiffs have suffered damages, including but not limited to:

    a.  The Plaintiff(s) sustained emotional damages;

    b.  The Plaintiff(s) sustained reliance damages;

    c.  MR. POLO suffered severe mental and emotional distress;

    d.  The Plaintiff(s) suffered physical pain and suffering;

    e.  The Plaintiff(s) suffered diminished health;

    f.  The Plaintiff(s) suffered mental pain and suffering;

    g.  The Plaintiff(s) suffered loss of earnings and;

    h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

    i.  the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

    j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

    k.  the children's right to parental support was impaired with a value of more than $96,000; and

    l.  MR. POLO will incur attorney's fees and/or court costs.

547.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE SPENCER MULTACK, GM ROBERT S. SINGER, MR. SEGARRA, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and JUAN CARLOS PLANAS as follows:

a.  Declaring that all the DEFENDANTS, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b.  Enjoining all the DEFENDANTS from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c.  Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against MR. SEGARRA, JUDGE SCOTT BERNSTEIN, SPENCER MULTACK, and MARCIA DEL REY. Awarding attorney's fees and cost, against all the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

d.  Awarding compensatory damages, reliance damages, punitive damages, special damages attorney's fees, and costs, pursuant to 42 U.S.C. Sections 1983 against MR. SEGARRA, JUDGE SCOTT BERNSTEIN, SPENCER MULTACK, and MARCIA DEL REY. Awarding attorney's fees and cost, against all the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

e.  Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 14.    CIVIL CONSPIRACY

548.    Plaintiffs re-alleges paragraphs 61 through 310 and further states that in furtherance of the agreement/understanding all the defendants had, the Defendants, ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, the 3d DCA, IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE, DEAN LAWSON, DEAN MOORE, MR.

SILVER, MR. SEGARRA, DAVID A. ARMSTRONG, JUAN CARLOS PLANAS, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM SINGER, of MIAMI-DADE COUNTY, MIAMI-DADE COUNTY POLICE DEPARTMENT), MERLIN HERNANDEZ, and RANDOLPH MARTINEZ(all together referred to as the "DEFENDANTS" throughout this Count), did the following:

549.     There was an agreement among all co-conspirators with the common objective (hereinafter the "Objectives") of:  (1) intimidating MR. POLO's to silence his political speech against the corruption in the Family Court System (2) intimidating MR. POLO's to silence his political speech about the possible ties of State and Federal candidates with the Cuban dictatorship; (3) intimidating MR. POLO to prevent him from bringing civil federal causes of actions against the Defendants in Federal Court; (4) intimidating MR. POLO to force him to drop the State Civil case against Ms. Real and other members of the family Court RICO Enterprise; (5) intimidating MR. POLO to prevent him from reporting violations or possible violations of Federal Law to federal law enforcement officials; (6) and preventing MR. POLO from testifying in Federal Court against some/all members of the criminal enterprise.

550.     To accomplish their Objectives, the defendants engaged the following methods (hereinafter the "Methods"): (1) destroying MR. POLO's and his children livelihood, (2) Depriving MR. POLO of his degree in Law, (3) Destroying MR. POLO's reputation, (4) Destroying Polo's prestige, (5) Destroying MR. POLO's career in Politics, (6) destroying the goodwill that having a career in law would represent in MR. POLO's political career, (5) inflicting severe emotional distress on MR. POLO, (6) removing MR. POLO's children without due process of law, (7) conspiring to putting MR. POLO in Jail without due process of law, (8) removing Plaintiffs' access to the court, without due process of law, (9) depriving Plaintiffs of equal protection of the law, (10) depriving the Plaintiffs of Property interest in property and liberty without due process of law, (11) depriving Plaintiff(s) of first amendment right to engage in political speech, (12) malicious prosecution, and (13) inflicting financial damages to MR. POLO and his family.

### A.  MR. SEGARRA, SEGARRA & ASSOCIATES, P.A. MS. HERNANDEZ, and MR. MARTINEZ

551.     The DEFENDANT MR. SEGARRA, acting in the course and scope of his duties as an attorney employed by the SEGARRA & ASSOCIATES, P.A. and by MS. HERNANDEZ

and MR. MARTINEZ, and acting in furtherance of the agreement/understanding he had with DEFENDANT JUDGE BERNSTEIN and the other co-conspirators, instructed his client, MERLIN HERNANDEZ, to create a nonsense dispute over the clear and unambiguous term of the MSA to force MR. POLO to bring the case to the court, so that DEFENDANT JUDGE BERNSTEIN had an opportunity to send the case to a biased Co-parenting coordinator to remove MR. POLO's custody of his children without Due Process of Law.

552.    DEFENDANT MR. SEGARRA, intentionally engaged in furtherance of the agreement/understanding he had with JUDGE BERNSTEIN and his client MS. HERNANDEZ in (1) harassing and intimidating MR. POLO with unproper process of service and unwarranted deposition; (2) he tried to entrap MR. POLO in conspiracy with DEFENDANT JUDGE BERNSTEIN and the court reporter, Katia Camacho, to commit forgery; (3) he with JUDGE BERNSTEIN, tried to entrap MR. POLO by forcing him to be in criminal contempt to get him arrested; (4) he conspired with Katia Camacho and DEFENDANT JUDGE BERNSTEIN to alter and mutilate the production of a transcript; (5) DEFENDANT MR. SEGARRA filed evidence he knew to be protected by the litigation privilege with the court with the objective of intimidating MR. POLO and preventing MR. POLO from filing this cause of actions against all the defendants; (6) DEFENDANT MR. SEGARRA served in the investigator role for STU DEFENDANT EMPLOYEES to produce misleading information to deprive MR. POLO of his property right to continuing enrollment at STU; (7) MR. SEGARRA, filed a motion for attorney's fees not supported by law, or facts, and colluded with MR. POLO's attorney Mr. Genova, and JUDGE DEL REY, and JUDGE MULTACK to maintain the motion open for a period of about 5 years with the only objective of creating damages on MR. POLO with never ending hearing retrying issues that were heard before, and engaged in dilatory tactics to prevent the case from advancing, and then blame MR. POLO for the delay in the case and collect attorney's fees he knew the court lacked jurisdiction to grant, and the law and facts did not support his claim for attorney's fees.

553.    Defendant MERLIN HERNANDEZ, in furtherance of her agreement throughout 10 years of litigation has keep harassing MR. POLO with (1) Malicious and improper legal procedure, (2) she hired attorneys to come after MR. POLO's career in law, (3) as the employer of Mr. Segarra, Ms. Hernandez consented to Mr. Segarra's actions to entrap MR. POLO, to put MR. POLO in jail, and to harass MR. POLO with motions for attorney's fees not supported by law or facts, (4) deprived the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise

and the children to receive the care, custody, and control of MR. POLO's children by taking the children without due process of law, (5) she paid MR. SEGARRA, not only to harass MR. POLO, but also to maliciously interfere with MR. POLO's property right in the continued enrollment at STU.

554.     MR. MARTINEZ acted in concert with all other defendants, and he (1) financed the 10 years of malicious prosecution and harassment (2) provoked confrontation with MR. POLO at the Police station, and (3) deprived the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO's children.

## B.  JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and GM SINGER

555.     The DEFENDANTS JUDGE BERNSTEIN, JUDGE DEL REY, and JUDGE MULTACK acted in clear absence of all jurisdiction engaged in the conspiracy.

556.     DEFENDANT JUDGE BERNSTEIN, frivolously, in furtherance of the agreement/understanding he had with DEFENDANT MR. SEGARRA and other co-conspirators, engaged in acts like, but not limited to, (1) Deprivation of plaintiffs' liberty to exercise custody, and control of his children in violation of plaintiffs' 5th and 14th amendment right to due process of law; (2)  issuing an Order of Referral to Coparenting Coordinator alleging domestic violence when DEFENDANT MR. SEGARRA and JUDGE BERNSTEIN knew there was not a pending domestic violence allegations; (3) Moreover, JUDGE BERNSTEIN never serve MR. POLO with notice, and opportunity to be heard about the Order of Referral to Coparenting Coordinator; therefore, he deprived the Plaintiffs of their Constitutional Access to the court without Due Process of Law; (4) JUDGE BERNSTEIN sent the case to coparenting coordinator knowing that MR. POLO was indigent expecting MR. POLO to be in contempt for failure to pay the coparenting fees, and (5) JUDGE BERNSTEIN sent the case to a prearranged co-parenting coordinator who was going to return a recommendation to remove MR. POLO's Custody of his children due to JUDGE BERNSTEIN'S fabricated "Allegations of Domestic Violence" which were never pending in front of JUDGE BERNSTEIN, and were never an issue in the case.

557.     (6) DEFENDANT JUDGE BERNSTEIN and DEFENDANT MR. SEGARRA planned and execute a plan to name MR. POLO a vexatious litigant without due process of Law, with the objective of forcing MR. POLO to file a motion to recuse, and thereby forcing MR. POLO

to be in criminal contempt of court, to have an excuse to put MR. POLO in Jail and end his parental rights without due process of law.

558.     (7) DEFENDANT JUDGE BERNSTEIN entered an order depriving MR. POLO of his right to access the court without due process and preventing MR. POLO from Filing ANYTHING; (8) DEFENDANT JUDGE BERNSTEIN and DEFENDANT MR. SEGARRA influenced the court reporter to mutilate the transcript to prevent part of the record to be presented in Federal Court; (9) DEFENDANT JUDGE BERNSTEIN interfered (through DEFENDANT MR. SEGARRA) to prevent the State Attorney's office to appoint a pro-bono attorney to MR. POLO (10) DEFENDANT JUDGE BERNSTEIN colluded with STU's Defendants employee to deprive MR. POLO of Property right without due process of law; (11) DEFENDANT JUDGE BERNSTEIN sent a letter the STU DEFENDANT EMPLOYEES, which they needed to have an excuse to institute an arbitrary and capricious fraudulent honor council against MR. POLO.

### C. TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and JUAN CARLOS PLANAS

559.     The defendants TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and JUAN CARLOS PLANAS, acting in the course and scope of their duties as employees of ST. THOMAS UNIVERSITY, INC, and acting under color of state Law, planed the termination of MR. POLO with DEFENDANT JUDGE BERNSTEIN, and MR. SEGARRA way before DEFENDANT JUDGE BERNSTEIN sent the letter providing the school with an excuse to terminate MR. POLO's career in law.

560.     On *October 23, 2017,* the day before DEFENDANT JUDGE BERNSTEIN deprived MR. POLO of access to the court without Due Process of Law, DEFENDANT JUDGE BERNSTEIN visited STU, where he met among others with DEAN LAWSON, and DEAN MOORE. ST. THOMAS UNIVERSITY, INC.

561.     DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG and DEAN MOORE ("STU DEFENDANT EMPLOYEES") knew that DEFENDANT JUDGE BERNSTEIN was (1) in violation of Fla. Sup. Ct. mandate which prohibited JUDGE BERNSTEIN to make comments about the merits of a motion to disqualify a judge, (2) that DEFENDANTS JUDGE BERNSTEIN, and JUAN CARLOS PLANAS were acting in retaliation for MR. POLO's engagement in Political Speech, (3) that MR. POLO had never represented to be an Attorney, or a licensed Member of the Florida Bar, but a student Member of

the Florida Bar, and (4) that MR. POLO did not abuse any court proceeding, (5) that JUDGE BERNSTEIN was colluding with MR. SEGARRA and with STU DEFENDANT EMPLOYEES to retaliate against MR. POLO (6) that JUDGE BERNSTEIN, MR. SEGARRA, and Katia Camacho were conspiring to mutilate evidence that could be presented in Federal Court, and entrapping MR. POLO to get him to commit forgery, and (7) STU DEFENDANT EMPLOYEES knew that those excuses in JUDGE BERNSTEIN'S Order of Recusal were, just excuses STU's Defendants Employees needed to put into action the plan they had with JUDGE BERNSTEIN to accomplish their common Objectives.

562.      The    Defendant    JUAN    CARLOS    PLANAS,    in    furtherance    of    the agreement/understanding he had with all other defendants, testified in close doors, after MR. SILVER asked MR. POLO to wait outside the room, about MR. POLO engagement in protected political speech during MR. POLO's 2018 campaign. Moreover, JUAN CARLOS PLANAS engaged the Florida department of Election to harass MR. POLO and to initiate a malicious prosecution against MR. POLO. Moreover, Mr. Planas had tried, during classes, to entrap MR. POLO by asking MR. POLO if he had coordinated with a PAC to send an advertisement on his behalf and against Mr. Planas' friend Daniel Perez, which is illegal under the laws of campaign financing.

563.      MR. PLANAS used the FLORIDA DIVISION OF ELECTIONS), to harassed MR. POLO knowing that there was not probable cause to open a legal proceeding against MR. POLO, and they subjected MR. POLO to malicious prosecution for about a full year, contemporarily with the fraudulent honor proceeding started by STU DEFENDANT EMPLOYEES. Moreover, MR. PLANA maliciously testify about MR. POLO's protective speech, and MR. SILVER questioned MR. POLO about his political speech during the honor council hearing.

564.      Finally, all STU DEFENDANT EMPLOYEES capricious and arbitrary terminated MR. POLO career in law while acting under color of state law, this resulted in DEPRIVATION of the Plaintiffs' property interest right to MR. POLO's Continued Enrollment at STU without Due Process of Law.

565.      The DEFENDANT JUDGE DEL REY, JUDGE MULTACK and GM SINGER, acting in the course and scope of their duties as employees of the ELEVENTH JUDICIAL

DISTRICT COURT OF FLORIDA, acting under color of state Law, and acting in clear absence of all jurisdiction engaged in the conspiracy.

566.     In furtherance of the agreement/understanding/understanding and the common objectives all conspirators had, JUDGE DEL REY did the following: (1) knowing that previous entered orders were unconstitutionally preventing MR. POLO from accessing the Court, JUDGE DEL REY continued to enforce those orders to prevent MR. POLO's case from succeeding and to inflict, economic and financial damages on MR. POLO, and his children; (2) Judge Del Rey entered orders limiting, and preventing MR. POLO's access to the court without Notice or Opportunity to be heard; (3) Judge Del Rey engaged in repetitive hearings and delay tactics to delay the case, and then blame MR. POLO for the delay, (4) Judge Del Rey ignored multiple claims of MR. POLO in which MR. POLO expressed that his constitutional rights to access the court were being violated and she forced MR. POLO to litigate without access to the court; (5) Judge Del Rey prevented the Clerk of Courts from allowing MR. POLO to file an amended notice of appeal, so that MR. SEGARRA could ask the 3d DCA to dismiss the appeal based on failure to file Amended notice of Appeal in the lower court; (6) Judge Del Rey ordered the clerk of Court not to allow MR. POLO to file transcripts that he would need on Appeal; (7) JUDGE DEL REY allowed Mr. Ceballos to withdraw representation knowing that the withdrawal was detrimental to MR. POLO and knowing that there was an unconstitutional order preventing MR. POLO from entering ANYTHING on the court's docket; thereby, leaving MR. POLO without access to the court without due process of law.

567.     JUDGE DEL REY allowed Mr. Genova to withdraw representation knowing that was detrimental to MR. POLO and knowing that there was an unconstitutional order preventing MR. POLO from entering anything on the court's docket. Additionally, she admitted on the record that she had no intent to vacate the unconstitutional order preventing MR. POLO's access to the court.

568.     Additionally, JUDGE DEL REY, behind MR. POLO's back, allowed DEFENDANT MR. SEGARRA to change her oral order, from preventing all access to the court, to allow some access to the court, and then she signed the order, without notice and opportunity to be heard.

569.     Even when this new Order was allowing MR. POLO to file other things, but motions, pleadings, and letters to the court, JUDGE DEL REY ordered the Clerk of court, as her predecessor did, to prevent MR. POLO from filing ANYTHING, and she directly ordered the Appeals Clerk of court to refuse MR. POLO's filing of transcripts needed for an appeal.

570.     DEFENDANT ARMANDO GARCIA, acting in the course and scope of his duties as employees of MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT) had a duty to investigate, detect, and arrest offenders, protect the rights of persons and property; nevertheless, Mr. Garcia, in furtherance of the agreement/understanding they had with other co-conspirators failed to arrest, and investigate Mr. Regino Perez when he attacked MR. POLO. MR. GARCIA maliciously failed to investigate MR. POLO's allegations, return calls to MR. POLO, or even open a formal investigation. Moreover, in furtherance of the agreement/understanding officers of the police department came to MR. POLO's house pretending to be responding to a "anonymous" domestic violence call, with the objective of intimidating MR. POLO and his family during his 2020 election.

### D. IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE

571.     The 3d DCA Judges IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE, (hereinafter "3d DCA JUDGES") acting in the course and scope of their duties as employees of FLORIDA THIRD DISTRICT COURT OF APPEAL, acting under color of state Law, and acting in clear absence of all jurisdiction engaged in the conspiracy.

572.     In furtherance of the agreement/understanding/understanding and the common objectives all conspirators had, all 3d DCA JUDGES engaged in a scheme to protect JUDGE BERNSTEIN, DEL REY, and MULTACK from Civil liability, to prevent MR. POLO from having a hearing and access to the court, to prevent MR. POLO from successfully appealing any of the illegal actions of the lower court to a higher court by either (1) denying the appeals without an opinion, (2) denying the appeals citing to wrong case law unrelated to MR. POLO's appeal, (3) denying the appeal with any pretextual argument, or (4) entering false comments in the only opinion they issued with the intent of building a case against MR. POLO to say MR. POLO is

vexatious and remove MR. POLO's access to file anything in future appeal and foreclose any access to the court of appeal.

573.     On September 14, 2022, Judges FERNANDEZ, GORDO and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders".

574.     Fla. R. App. P. 9.130 (a)(3)(B) Limits the Appeals to the District Courts of Appeal of non-final orders to those orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions."

575.     The others MR. POLO appealed were, in fact, order Continuing, Modifying, and imposing injunctions without due process of law and injunctive in nature. However, Judges FERNANDEZ, GORDO and LOBREE maliciously denied MR. POLO's appeal and motion to issue a written opinion to prevent MR. POLO from having access to the court and to prevent the case from being dismissed for lack of jurisdiction.

576.     The order was entered without an opinion to foreclosures review of the Florida Supreme Court, and it does not set a precedent for lack of opinion.

577.     Moreover, Fla. R. App. P. 9.040(c) creates a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought. ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought....") *id.*

578.     However, MR. POLO asked the court to issue a writ of prohibition, in the alternative, to prevent the lower court from exercising jurisdiction when it had lost all jurisdiction, but the court also denied that option with the malicious intent of forcing MR. POLO to file another pleading so they could have an excuse to say MR. POLO is a vexatious litigant.

579.     On March 01, 2023, Judges LINDSEY, HENDON and LOBREE rendered an order denying a writ of prohibition and citing wrong law that does not apply to MR. POLO's case, with the malicious intent of preventing the case from being dismissed for lack of jurisdiction to allow the lower court to continue with the harassment and prevent MR. POLO from appealing to a higher court.

580.      The court dismissed the case citing *Rorrer v. Orban*, 215 So. 3d 148 (Fla. 3d DCA 2017); *Juhl v. Juhl*, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous to MR. POLO's case.

581.      MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different and that the facts of MR. POLO case were more like this in their own case from the 3d DCA *Frumkes v. Frumkes*, 328 So. 2d 34 (Fla. 3d DCA 1976) in which the 3d DCA held that Court loses jurisdiction of a cause after a judgment or final decree has been entered and the time for filing petition for rehearing or motion for new trial has expired.

582.      Moreover, a month before issuing this order, in *Padron v. Padron*, No. 3D22-2146 (Fla. Dist. Ct. App. Feb. 8, 2023) the 3d DCA (judges EMAS, LINDSEY and GORDO) used the same rule stipulated in *Frumkes* to dismiss a case for lack of jurisdiction with extremely similar facts to MR. POLO's case.

583.      However, the aforementioned judges denied the motion for reconsideration knowing that they were citing two wrong inapplicable laws.

584.      On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismiss a Writ of Mandamus as moot, when the issue of access to the court and to file documents was not moot at all. However, even if it was moot, mootness does not defeat appellate jurisdiction, in Florida.

585.      There was still a controversy to be resolved by the 3d DCA, and the issues continue to exist.

586.      The Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and he is obliged to accept motions presented for filing in pending cases.

587.      MR. POLO had a clear legal constitutional right (under Article I, Section 21 of the Florida Constitution) to access the court and file documents in the lower court, and that right was being violated.

588.      And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts.

589.      Therefore, Judges FERNANDEZ, EMAS, and HENDON dismissed the Petition for writ of Mandamus to prevent MR. POLO from having access to the court to file proper filings.

590.     On April 6, 2022, the Judges LOGUE (adjunct professor of law at St. Thomas University), HENDON, and BOKOR, rendered an opinion, granting the only appeal ever to MR. POLO with the malicious intent of using the opinion to record incorrect statements stating that MR. POLO had appeal the final judgement and this was affirmed on appeal which was totally incorrect. Moreover, the order accenting that MR. POLO was found to be vexatious knowing that such a statement was not supported by competent evidence in the record. Additionally, the judges knew that MR. POLO's right to file was removed unconstitutionally without notice and opportunity to be heard.

591.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

592.     (1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) The Plaintiff(s) sustained severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) Plaintiff, MR. POLO has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

593.

594.

595.

596.     **WHEREFORE**, Plaintiff(s) demand judgment for damages against, and DEFENDANT MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

597.     Moreover, the Plaintiffs demand Declaring that DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER discriminated against the Plaintiff(s), violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

598.     Enjoining DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

599.     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against ST. THOMAS UNIVERSITY, INC., **SEGARRA & ASSOCIATES, P.A.,** THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, the 3d DCA, **MR. SEGARRA, JUDGE BERNSTEIN,** JUDGE DEL REY, JUDGE MULTACK, GM SINGER, of MIAMI-DADE COUNTY, MIAMI-DADE COUNTY POLICE DEPARTMENT), **MERLIN HERNANDEZ,** and RANDOLPH MARTINEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against DEFENDANT, DEAN LAWSON, DEAN MOORE, MR. SILVER, DAVID A. ARMSTRONG, JUAN CARLOS PLANAS, pursuant to 42 U.S.C. Sections 1983 and 1988.

600.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 15.     TORTUOUS INTERFERENCE WITH CONTRACT

601.     Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, JAY SILVER, MERLIN HERNANDEZ, AND

RANDOLPH MARTINEZ (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

602.     MR. POLO was a student at STU, and STU had implied contractual legal obligations to the Plaintiff to grant Plaintiff a Degree upon completion of Plaintiff's course of study and any other requirement contained in the 2015 school manual.

603.     In exchange for obtaining the Degree, MR. POLO had to pay STU tuition, for which STU provided access to the campus and enrollment in the school. MR. POLO was in good standing at STU before the acts complained of herein.

604.     The ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, JAY SILVER, MERLIN HERNANDEZ, AND RANDOLPH MARTINEZ knew that MR. POLO had a contractual relation with STU and a legal right to obtain, upon completion of all required courses of study, a Juris Doctor Degree and a Tax Law Certificate from STU where MR. POLO was studying Law.

605.     DEFENDANT JUDGE BERNSTEIN was a Judge in the family court and was an Agent of defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA. JUDGE BERNSTEIN'S jurisdiction over the Plaintiffs extended only to hearing and adjudicating matters related to the Family Court case. When the acts complained off occurred, JUDGE BERNSTEIN was acting within his capacity and scope as an agent of ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA.

606.     DEFENDANT MR. SEGARRA was the attorney for Ms. Hernandez, and was an Agent of defendant SEGARRA & ASSOCIATES, P.A., and of Ms. Hernandez, and his duties to Ms. Hernandez were in regard to the Family Court Proceeding for which he was hired. Nevertheless, he was acting within his capacity and scope as an agent of SEGARRA & ASSOCIATES, P.A. and thereby of MS. HERNANDEZ who had hired SEGARRA & ASSOCIATES, P.A. to represent her, when he engaged in providing misleading information to STU in furtherance of the agreement/understanding DEFENDANT MR. SEGARRA had with STU DEFENDANT EMPLOYEES, JUDGE BERNSTEIN and MS. HERNANDEZ, to breach their contractual obligations intentionally and unjustifiably with MR. POLO.

607.     The Defendants DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER were professors, and/or managers of ST THOMAS UNIVERSITY, INC., and they were acting withing their capacity and scope as agents of ST THOMAS UNIVERSITY, INC., when they engaged in conspiring with DEFENDANT JUDGE BERNSTEIN to intentionally and unjustifiably breach the contractual obligation STU had to MR. POLO.

608.     ST. THOMAS UNIVERSITY, INC., and the STU DEFENDANT EMPLOYEES were engaged in "training and graduating lawyers capable of applying legal principles to address and solve problems of an increasingly complex and changing society." Neither the defendants ST. THOMAS UNIVERSITY, INC., or STU DEFENDANT EMPLOYEES were engaged in "regulating the practice of law in Florida; ensuring the highest standards of legal professionalism in Florida; or protect the public by prosecuting unethical attorneys and preventing the unlicensed practice of law."

609.     The DEFENDANTS' intentional interference disrupts the contractual relationship MR. POLO had with STU when on October 23, 2017, DEFENDANT JUDGE BERNSTEIN JUDGE BERNSTEIN began the plan with STU to damage MR. POLO career at ST. THOMAS UNIVERSITY, INC., the day before JUDGE BERNSTEIN unconstitutionally Deprived MR. POLO of access to the Court without due process of law.

610.     There DEFENDANT JUDGE BERNSTEIN, maliciously, got the STU DEFENDANT EMPLOYEES to agree with his plan to end MR. POLO's career in law when MR. POLO was about to graduate but never before graduation. For this JUDGE BERNSTEIN, and STU DEFENDANT EMPLOYEES, maliciously, willfully, and wantonly, prepared the conditions necessary for the school to intervene.

611.     MS. HERNANDEZ and MR. MARTINEZ were paying SEGARRA & ASSOCIATES, P.A., and MR. SEGARRA not only to represent her, but to come after MR. POLO's livelihood, degree in law, to put MR. POLO in Jail, to illegally terminate MR. POLO's parental rights, and to interfere with MR. POLO's contractual relation with STU.

612.     On *September 25, 2018*, MR. POLO filed an affidavit in support of the *Order to Show Cause* and the *Oral Second Motion to Recuse* that Polo planned to enter in open court. In the affidavit MR. POLO claimed that he was *a Student Member of the Florida Bar Tax Section*.

613.     On **October 2, 2018**, JUDGE BERNSTEIN, frivolously, and maliciously tried on multiple occasions to enter into the record false allegations indicating that MR. POLO **had represented to be an attorney** in his court. MR. POLO repeatedly corrected DEFENDANT JUDGE BERNSTEIN telling him that Polo never said to be licensed to practice or an attorney. What MR. POLO stated in the affidavit was that he was a *Student Member of the Florida Bar*. As it is shown in the **September 25, 2018,** hearing's transcript, and the affidavit itself.

614.     After multiple malicious attempts to put on the record that MR. POLO represented to be an attorney, DEFENDANT JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney would be "*a gross misrepresentation.*"

615.     DEFENDANT MR. SEGARRA maliciously said on the record that MR. POLO was even engaged in **an illegal practice of law by representing himself** in court, which was factually and legally incorrect.

616.     All, aforementioned allegations were made with the intent of creating the excuse STU needed to start an Honor Council proceeding against MR. POLO, and after DEFENDANT JUDGE BERNSTEIN'S and DEFENDANT MR. SEGARRA'S attempt to put MR. POLO in Jail had failed for lack of intent.

617.     On **January 29, 2019**, during the hearing for recusal, DEFENDANT JUDGE BERNSTEIN entered an order of recusal which he had, maliciously and premeditatedly, already drafted. At the hearing JUDGE BERNSTEIN stated: "I'm aware of the fact that I am not permitted under Florida law to challenge the allegations raised in the motion to recuse without triggering your recusal, so I haven't before now."

618.     DEFENDANT JUDGE BERNSTEIN Order of Recusal contained false accusation saying that MR. POLO (1) falsely representing to be a "Member of the Florida Bar;" (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra and accusing MR. POLO of being disrupting judicial the functioning of the office by calling his judicial assistant, which was also false. Moreover, the order did not contain any evidence of JUDGE BERNSTEIN'S allegations.

619.     Then, two days later, acting in clear absence of all jurisdiction, DEFENDANT JUDGE BERNSTEIN sent a letter to STU, which contained the Order of Recusal containing the

allegations necessary for STU to act against MR. POLO to breach STU's contractual obligation to STU had to MR. POLO.

620. DEFENDANT MR. SEGARRA, intentionally and maliciously, actively engaged in depriving MR. POLO and his children of access to the court without due process of law, taking MR. POLO's liberty right to the care and custody of his children without due process of law, and in entrapping MR. POLO to deprive MR. POLO of liberty (Putting MR. POLO in Jail) without due process and in collusion with JUDGE BERNSTEIN. JUDGE BERNSTEIN had arranged with STU to provide STU with fabricated bases for STU to terminate intentionally and maliciously the Plaintiffs' property interest in the continued enrollment of MR. POLO at STU. Moreover, MR. SEGARRA, colluded with STU DEFENDANT EMPLOYEES by providing Jay S. Silver with "numerous filings" to use those as pretexts to breach STU's contractual obligation to MR. POLO, and to deprive, thereby, MR. POLO of his property right interest in the continued enrollment at STU without due process of law.

621. DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN had an interest in maliciously terminating MR. POLO career law because of MR. POLO's Political speech against the family Court Enterprise. Polo's promises to fight corruption in the family court represented a threat to DEFENDANT MR. SEGARRA, DEFENDANT JUDGE BERNSTEIN and the continued operation of the Family Court RICO enterprise. MR. POLO's accusations of corruption against JUDGE BERNSTEIN and his co-conspirators made in the campaign trail against the Family Court Judicial System, along with MR. POLO's accusations of possible ties of a State Representative, an ex-congressperson, and a then candidates to U.S. Congress with the Cuban dictatorship, were additional motivations for all the defendants to come after MR. POLO to silence his political speech. Therefore, they joined forces with a well-known attorney for political figures, Juan Carlos Planas.

622. DEFENDANTS, ST THOMAS UNIVERSITY, INC., DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, intentionally, maliciously and wantonly initiated an honor proceeding against MR. POLO with JUDGE BERNSTEIN'S fabricated pretexts, with the intent of capriciously and arbitrarily terminating MR. POLO's Political and legal career, silence MR. POLO's speech against the local political figures, and the RICO enterprise organized and operated within the Miami-Dade Family Court (ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA).

623.     DAVID A. ARMSTRONG, knew that MR. POLO was retaliated against for his political position, speech, and that ST. THOMAS UNIVERSITY, INC. was acting in collusion with JUDGE BERNSTEIN, and under color of law, to deprive the Plaintiffs' of their property interest without due process of law.

624.     MR. POLO felt humiliated and embarrassed when he had to ask his peers, and professors, for letters of recommendations and had to explain to them what he was falsely being accused of.

625.     Ms. Lawson humiliated MR. POLO, intentionally knowing that MR. POLO's wife was sitting right outside the door when she was conducting the appeal meeting with her and Dean Moore.

626.     MR. POLO's wife witnesses when DEAN LAWSON told MR. POLO "I, don't think your problem is cognitive, but I think your problems is one of honesty" when Polo explained that he may have forgot to disclose information in his application because of his cognitive diagnosed problem, which was well known to DEAN LAWSON and everyone at STU management.

627.     Therefore, the Contract MR. POLO had with STU, would have never been breached but for the interference of the DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, tortuously and intentionally interference with MR. POLO's contractual relation with STU.

628.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.  The Plaintiff(s) sustained emotional damages;

    b.  The Plaintiff(s) sustained reliance damages;

    c.  The Plaintiff(s) sustained severe mental and emotional distress;

    d.  The Plaintiff(s) suffered physical pain and suffering;

    e.  The Plaintiff(s) suffered diminished health;

f.  The Plaintiff(s) suffered mental pain and suffering;

g.  The Plaintiff(s) suffered loss of earnings and;

h.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i.  Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k.  the children's right to parental support was impaired with a value of more than $96,000; and

l.  MR. POLO will incur attorney's fees and/or court costs.

629.   **WHEREFORE**, Plaintiff(s) demand judgment for damages against DEFENDANT, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, JUAN CARLOS PLANAS, and DEFENDANT MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

630.   Moreover, the Plaintiffs demand Declaring that ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, and PATRICIA MOORE discriminated against the Plaintiff(s), violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

631.     Enjoining DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, and PATRICIA MOORE from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct;

632.     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER pursuant to 42 U.S.C. Sections 1983 and 1988; and

633.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 16.     NEGLIGENT HIRING UNDER 42 U.S.C. SECTION 1983

634.     Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

635.     The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

636.     Defendants, ST. THOMAS UNIVERSITY, INC., and negligently knew or should have known that the DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG were dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida.

637. Defendants, ST. THOMAS UNIVERSITY, INC., failed to conduct a reasonable investigation regarding the competence of the DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, AND DAVID A. ARMSTRONG to be retained as their, president, management staff/employees, and to be assigned with the duty of handling the honor council against MR. POLO.

638. Defendants, ST. THOMAS UNIVERSITY, INC., during the course of employment of STU DEFENDANT EMPLOYEES became aware or should have become aware of problems with STU DEFENDANT EMPLOYEES, and STU's president DAVID A. ARMSTRONG that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Bar.

639. Defendants, ST. THOMAS UNIVERSITY, INC, owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent managers, professors.

640. Defendant, ST. THOMAS UNIVERSITY, INC., breached their duty of care to the Plaintiffs by hiring and retaining incompetent employees, as the Defendants, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG.

641. Defendant, SEGARRA & ASSOCIATES, P.A., negligently knew or should have known that the DEFENDANT MR. SEGARRA was dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida.

642. Defendant, SEGARRA & ASSOCIATES, P.A., failed to conduct a reasonable investigation regarding the competence of THE DEFENDANT MR. SEGARRA to be retained as its managing director/president, and/or attorney.

643. The Defendant, SEGARRA & ASSOCIATES, P.A., during the course of employment of MR. SEGARRA became aware or should have become aware of problems with MR. SEGARRA indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging, or reassignment of MR. SEGARRA.

644. Defendant, SEGARRA & ASSOCIATES, P.A., owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent Lawyers.

645.    Defendant, SEGARRA & ASSOCIATES, P.A., breached its duty of care to the Plaintiffs by retaining incompetent attorneys such as DEFENDANT MR. SEGARRA.

646.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, failed to conduct a reasonable investigation regarding the competence of THE DEFENDANT JUDGES (MARCIA DEL REY, JUDGE BERNSTEIN, JUDGE MULTACK, and GM SINGER) to be retained as judges.

647.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, during the course of employment of DEFENDANT JUDGES became aware or should have become aware of problems with DEFENDANT JUDGES that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Judicial Qualification Commission.

648.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent Judges.

649.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, breached its duty of care to the Plaintiffs by retaining incompetent Judges such as DEFENDANT JUDGES, MARCIA DEL REY, JUDGE BERNSTEIN, JUDGE MULTACK, and GM SINGER.

650.    As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

    a.   The Plaintiff(s) sustained emotional damages;

    b.   The Plaintiff(s) sustained reliance damages;

    c.   The Plaintiff(s) sustained severe mental and emotional distress;

    d.   The Plaintiff(s) suffered physical pain and suffering;

    e.   The Plaintiff(s) suffered diminished health;

    f.   The Plaintiff(s) suffered mental pain and suffering;

    g.   The Plaintiff(s) suffered loss of earnings and;

h. The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i. Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j. The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

k. the children's right to parental support was impaired with a value of more than $96,000; and

l. MR. POLO will incur attorney's fees and/or court costs.

651. **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a. Declaring that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and

punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees.

    d.   Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 17.    NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983

652.    Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

653.    The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

654.    Defendants, DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, individually, owed the public, including Plaintiffs, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when dealing with the public in a way that could result in deprivations of any member of the public' constitutional rights without due process of law.

655.    DEFENDANTS, ST. THOMAS UNIVERSITY, INC., and breached their duty of care to Plaintiff by STU failing to provide each of the STU DEFENDANT EMPLOYEES (DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and MR. SILVER), and DAVID A. ARMSTRONG, with proper and special training and/or supervision so that they could be prepared to execute the duties the STU reasonably could expect them to perform during the course and scope of their employment.

656.     As a proximate result of lack of training and supervision, STU DEFENDANT EMPLOYEES deprived the plaintiffs of their constitutional rights, without due process of law by cutting short the Plaintiffs' property right to MR. POLO's continued enrollment at STU, and by depriving the Plaintiffs of liberty interest in their good name, reputation, honor and integrity, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

657.     DEFENDANT, SEGARRA & ASSOCIATE, P.A., breached its duty of care to Plaintiff by failing to provide the DEFENDANT MR. SEGARRA with proper and special training and/or supervision so that he could be prepared to execute the duties Segarra & Associates, P.A., reasonably could expect MR. SEGARRA to perform during the course and scope of his employment.

658.     As a proximate result of lack of training and supervision, DEFENDANT MR. SEGARRA deprived the plaintiffs of their constitutional rights, without due process of law and tried to entrap MR. POLO to commit felony crimes he had no predisposition to commit, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

659.     DEFENDANTS, MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT breached their duty of care to Plaintiff by failing to provide the DEFENDANT ARMANDO GARCIA, employee of MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT) with proper and special training and/or supervision so that he could be prepared to execute the duties MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT, reasonably could expect DEFENDANT ARMANDO GARCIA, employee of MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT) to perform during the course and scope of his/their employment.

660.     As a proximate result of lack of training and supervision, DEFENDANT ARMANDO GARCIA, employee of MIAMI-DADE COUNTY, and MIAMI-DADE COUNTY POLICE DEPARTMENT) deprived the plaintiffs of their constitutional rights to equal protection under the law, by treating MR. POLO disparately compared to similarly situated individuals by

breaching their duty to arrest Mr. Perez when this committed Aggravated battery as described under Fla. Stat. §784.045, and by breaching their duty to investigate the incidents which left MR. POLO with great bodily harm, and deter the criminals from continuing further malicious acts against the Plaintiff(s). Such failure encouraged those Ms. Hernandez, her attorneys and subsequent attorneys to continue to deprive the plaintiffs of multiple constitutional rights without due process of law knowing that the MIAMI-DADE POLICE DEPARTMENT was going to fail to investigate as it previously did. Because of the MIAMI-DADE POLICE DEPARTMENT employees' failure to act, all the defendants in the case continued harassing and depriving the Plaintiff(s) of their/his constitutional rights without due process, until STU and STU DEFENDANT EMPLOYEES, in a conspiracy with all other Defendants, cut short the Plaintiffs' property right to MR. POLO's continued enrollment at STU, and deprived the Plaintiffs of liberty interest in their good name, reputation, honor and integrity, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

661.    DEFENDANT, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, breached its duty of care to Plaintiff by failing to provide each of the DEFENDANT JUDGES (JUDGE BERNSTEIN, Judge Del Rey, and GM SINGER) with proper and special training and/or supervision so that they could be prepared to execute the duties the Court reasonably could expect them to perform during the course and scope of their employment.

662.    As a proximate result of lack of training and supervision, DEFENDANT JUDGES (Judge Del Rey, JUDGE BERNSTEIN, and GM SINGER) deprived the plaintiffs of their constitutional rights, without due process of law and tried to entrap MR. POLO to commit felony crimes he had no predisposition to commit, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing toll against corruption in the Judicial system, and for his political speech.

663.    As a direct, natural, and proximate result of DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., FLORIDA DIVISION OF ELECTIONS, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, and UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, MIAMI-DADE STATE ATTORNEY'S OFFICE, MIAMI-DADE COUNTY, THE

FLORIDA BAR, MIAMI-DADE COUNTY POLICE DEPARTMENT, AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

a.  emotional damages;

b.  severe mental and emotional distress;

c.  The Plaintiff(s) suffered physical pain and suffering;

d.  The Plaintiff(s) suffered diminished health;

e.  The Plaintiff(s) suffered mental pain and suffering;

f.  The Plaintiff(s) suffered loss of earnings and;

g.  The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

h.  H.    the Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

i.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

j.  the children's right to parental support was impaired with a value of more than $96,000; and

k.  MR. POLO will incur attorney's fees and/or court costs.

664.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

a.  Declaring that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first

Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 18.        GROSS NEGLIGENCE UNDER FLORIDA LAW**

665.        Plaintiffs re-alleges paragraphs 61 through 310 and further states that DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ; (5) NUSHIN G. SAYFIE ; (6) IVAN F. FERNANDEZ ; (7) KEVIN EMAS ; (8) NORMA S. LINDSEY ; (9) ERICK WM. HENDON ; (10) FLEUR J. LOBREE ; (11) MONICA GORDO ; (12) ALEXANDER S. BOKOR ; (13) TOMAS LOGUE ; (14) MANUEL A. SEGARRA III ; (15) ROBERT S. SINGER ; (16) TAMARA F. LAWSON ; (17) JAY S. SILVER ; (18) PATRICIA MOORE ; (19) JUAN CARLOS PLANAS ;    (20) DAVID A. ARMSTRONG ;    (21) DANIELLA LEVINE CAVA ; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;    (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-

DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNÁNDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA, (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

666.    DEFENDANTS ST. THOMAS UNIVERSITY, INC., employed DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG, and was engaged in the exercise of providing legal education to member of our community.

667.    DEFENDANT SEGARRA & ASSOCIATES, P.A. employed DEFENDANT MR. SEGARRA, and was engaged in the exercise of legal services.

668.    The ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, which employed Defendants JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, and DEFENDANT JUDGE BERNSTEIN, was engaged in the exercise of discharge of a governmental function, the administration of justice.

669.    The FLORIDA THIRD DISTRICT COURT OF APPEALS, which employed Defendants JUDGES IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE, was engaged in the exercise of discharge of a governmental function, the administration of justice.

670.    The MIAMI-DADE COUNTY; MIAMI-DADE COUNTY POLICE DEPARTMENT; that employed Defendants DANIELLA LEVINE CAVA, and ARMANDO GARCIA respectively, was engaged in the exercise of discharge of a governmental function, Miami Dade County's administration, and law enforcement respectively.

671.    The conduct of the DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, the FLORIDA THIRD DISTRICT COURT OF APPEALS, MIAMI-DADE COUNTY; and the MIAMI-DADE COUNTY POLICE DEPARTMENT, individually, amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of their respective employees, and the that were the proximate cause of Polo's and his children's damages.

672.     The DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG were working for ST. THOMAS UNIVERSITY, INC., at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

673.     The DEFENDANT MR. SEGARRA was working for SEGARRA & ASSOCIATES, P.A., and thereby for MS. HERNANDEZ and MR. MARTINEZ; at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, MR. POLO's Children and his family.

674.     The DEFENDANTS JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, and DEFENDANT JUDGE BERNSTEIN were working for the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

675.     The DEFENDANTS JUDGES IVAN F. FERNANDEZ; KEVIN EMAS; NORMA S. LINDSEY; ERICK WM. HENDON; FLEUR J. LOBREE; MONICA GORDO; ALEXANDER S. BOKOR; TOMAS LOGUE were working for FLORIDA THIRD DISTRICT COURT OF APPEALS, at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

676.     The DEFENDANTS DANIELLA LEVINE CAVA, and ARMANDO GARCIA were working for MIAMI-DADE COUNTY; and MIAMI-DADE COUNTY POLICE DEPARTMENT respectively, at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

677.     The DEFENDANTS MERLIN HERNANDEZ, and RANDOLPH MARTINEZ, HAD a duty to engage in litigation so as not to endanger or harm MR. POLO, his children and his family.

678.

679.     The conduct of the DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (21) DANIELLA LEVINE CAVA; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; and (30) ARMANDO GARCIA  individually, amounted to gross negligence through its wanton and reckless disregard the Plaintiffs' right under the law, and the that their individual acts were the proximate cause of Polo's and his children's damages.

680.     Notwithstanding these duties, DEFENDANTS ST. THOMAS UNIVERSITY; INC.; SEGARRA & ASSOCIATES, P.A.; MIAMI-DADE COUNTY; MIAMI-DADE COUNTY POLICE DEPARTMENT; THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and FLORIDA THIRD DISTRICT COURT OF APPEALS; breached these duties with deliberate indifference and gross negligence and without regard to MR. POLO's and his children's rights and welfare through creating an environment in which the unconstitutional depravations conducted by, (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (21) DANIELLA LEVINE CAVA; (30) and ARMANDO GARCIA, were viewed as acceptable to their respective employers, which caused serious injuries and damages to the plaintiffs.

681.     Notwithstanding abovementioned duties, DEFENDANTS, (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15)

ROBERT S. SINGER;  (16) TAMARA F. LAWSON;  (17) JAY S. SILVER;  (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS;  (20) DAVID A. ARMSTRONG;  (21) DANIELLA LEVINE CAVA; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; and (30) ARMANDO GARCIA breached these duties with deliberate indifference and gross negligence and without regard to MR. POLO's and his children's rights and welfare through creating an environment in which their unconstitutional depravations of rights without due process conduct were viewed as acceptable to all them, which caused serious injuries and damages to the plaintiffs.

682.     DEFENDANTS   ST.   THOMAS   UNIVERSITY   INC.;   SEGARRA   & ASSOCIATES, P.A.; MIAMI-DADE COUNTY; MIAMI-DADE COUNTY POLICE DEPARTMENT; FLORIDA THIRD DISTRICT COURT OF APPEALS and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, along with their respective employees/supervisees; knew or should have known that by breaching these duties they would injure the Plaintiffs.

683.     DEFENDANTS, (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK;  (4) BERTILA SOTO;   (5) NUSHIN G. SAYFIE;  (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS;  (8) NORMA S. LINDSEY;  (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE;  (11) MONICA GORDO;  (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG;     (21) DANIELLA LEVINE CAVA; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA, knew or should have known that by breaching these duties they would injure the Plaintiffs.

684.     All the aforementioned DEFENDANTS had a duty to exercise reasonable care through sufficient training and supervision, and/or just by using reasonable care not to harm MR. POLO, his Children and his family. Their breach of those duties was reckless and amounts to gross negligence.

685.     The actions of DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK;  (4) BERTILA SOTO;   (5) NUSHIN G. SAYFIE;  (6) IVAN F. FERNANDEZ;  (7) KEVIN EMAS;  (8) NORMA S. LINDSEY;  (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE;  (14) MANUEL A. SEGARRA III;  (15) ROBERT S. SINGER;  (16)

TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (21) DANIELLA LEVINE CAVA; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA were so egregious that MR. POLO's and his children's damages were heightened and made more severe, thus entitling Plaintiff to exemplary damages.

686.    As a direct, natural, and proximate result of the indifferent and grossly negligent acts and/or omissions committed by DEFENDANTS and their actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

a. The Plaintiff(s) sustained emotional damages;

b.  The Plaintiff(s) sustained reliance damages;

c. The Plaintiff(s) sustained severe mental and emotional distress;

d. The Plaintiff(s) suffered physical pain and suffering;

e. The Plaintiff(s) suffered diminished health;

f. The Plaintiff(s) suffered mental pain and suffering;

g. The Plaintiff(s) suffered loss of earnings and;

h. The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

i. Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

j.  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

    k.  the children's right to parental support was impaired with a value of more than $96,000; and

    l.  MR. POLO will incur attorney's fees and/or court costs.

687.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (21) DANIELLA LEVINE CAVA; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA as follows:

    a.  Declaring that (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (21) DANIELLA LEVINE CAVA; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA, violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution, without due process of law

intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;   (3) SPENCER MULTACK;   (4) BERTILA SOTO;   (5) NUSHIN G. SAYFIE;   (6) IVAN F. FERNANDEZ;   (7) KEVIN EMAS;   (8) NORMA S. LINDSEY;   (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR;   (13) TOMAS LOGUE;   (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER;  (18) PATRICIA MOORE;  (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG;    (21) DANIELLA LEVINE CAVA;   (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.;  (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (15) ROBERT S. SINGER; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.;  (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

    d.   The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the Defendants in accordance with law.

    e.   Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 19.    18 USC § 1961 (RICO)

688.    Plaintiffs re-alleges paragraphs 61 through 310 and further states that THE DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK; (4) BERTILA SOTO; (5) NUSHIN G. SAYFIE; (6) IVAN F. FERNANDEZ; (7) KEVIN EMAS; (8) NORMA S. LINDSEY; (9) ERICK WM. HENDON; (10) FLEUR J. LOBREE; (11) MONICA GORDO; (12) ALEXANDER S. BOKOR; (13) TOMAS LOGUE; (14) MANUEL A. SEGARRA III; (15) ROBERT S. SINGER; (16) TAMARA F. LAWSON; (17) JAY S. SILVER; (18) PATRICIA MOORE; (19) JUAN CARLOS PLANAS; (20) DAVID A. ARMSTRONG; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ; (29) RANDOLPH MARTINEZ; (30) ARMANDO GARCIA, (all together referred to as the "DEFENDANTS" throughout this Count), did the following: are all associated with the Family court Enterprise (hereinafter the "Enterprise"), and as members of the enterprise they did the following:

689.    The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

690.    Since at least 2012, and until the present day (January 5, 2022), the above-mentioned Defendants engaged in a series of continuous and interrelated predicate acts with the common objective of (1) intimidating MR. POLO'S to silence his political speech against the corruption in the Family Court System and the relation of State and Federal candidates with the Cuban dictatorship; (2) intimidating MR. POLO to prevent him from bringing federal causes of actions against the Defendants in Federal Court; (3) intimidating MR. POLO to force him to drop the Civil case against Ms. Real and other co-conspirators; (4) intimidating MR. POLO to prevent

him from reporting violations of Federal Law to federal law enforcement officials; (5) preventing MR. POLO from testifying in Federal Court against all members of the criminal enterprise.

691.     To accomplish their objectives, the defendants planned to intimidate MR. POLO used the following methods: (1) destroying MR. POLO'S and his children livelihood; (2) destroying MR. POLO'S degree in Law; (3) destroying MR. POLO'S reputation and credibility; (4) destroying Polo's prestige; (5) destroying MR. POLO'S career in Politics; (6) destroying the goodwill that having a career in law would represent in MR. POLO'S political career; (5) inflicting severe emotional distress on MR. POLO; (6) inflicting financial damages to MR. POLO and his family; (7) illegally depriving MR. POLO liberty to exercise his Parental rights, without due process of law; (8) and putting MR. POLO in Jail as an alternative method to deprive MR. POLO of his parental rights.

692.     A criminal enterprise exists, which is run from, and corrupts the operation of, the Miami-Dade County family court system. The enterprise is an association-in-fact composed of, but it is not limited to: Federal and State judges and magistrates, social workers, guardian ad litem, co-parenting coordinators, attorneys, state attorneys, politicians (in both parties, Republican and Democrat), psychologists, Court Reporters, Federal Judges, and police officers.

693.     As the Administrative Judge, DEFENDANT JUDGE BERNSTEIN ran, at least, part of the Family Court enterprise, which traffics with influence and power to illegally adjudicate cases to benefit members of the enterprise. Judge Bertila Soto, (the "Chief Judge"), supervised all the judges in the Family court system, and she received multiple letters from multiple parents making her aware of the operation of a criminal enterprise within the Court system. However, she never acted upon the allegations contained in those letters with the objective of protecting the members of the enterprise.

694.     It was not until MR. POLO sent a cease-and-desist letter to Ms. Hernandez, making her aware of his intent to file sue in Federal Court that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA removed DEFENDANT BERTILA SOTO and DEFENDANT JUDGE BERNSTEIN of their positions; nevertheless, the threat of continuing criminal activity that extends beyond the initial period of time when the predicate acts were originally committed were not removed.

695. JUDGE DEL REY and JUDGE MULTACK continued to retaliate and violate MR. POLO'S constitutional rights without due process of law. Moreover, those judges act in representation of the enterprise to ensure that MR. POLO is unable to file documents needed present a successful defense on appeal, continue to deny motions knowing she had not legal bases in violation of due process, and continued to prevent MR. POLO from accessing the court without due process.

### A.  VIOLATIONS OF 18 U.S. Code §1503

696. DEFENDANT JUDGE BERNSTEIN, JUDGE DAVIS, JUDGE FUNK, JUDGE ROY K. ALTMAN, JUDGE DEL REY, and GM SINGER violated 18 U.S. Code §1503 when JUDGE BERNSTEIN corruptly and maliciously endeavored to influence and in fact influenced his law school peer, JUDGE BRIAN DAVIS, and thereby also JUDGE FUNK to impede the due administration of law and to get, thereby, a favorable outcome in a pending Bankruptcy Case that Ms. Real, a member of the family Court Enterprise, had opened in Jacksonville to escape legal liability to MR. POLO.

697. DEFENDANT JUDGE BERNSTEIN, JUDGE DAVIS, JUDGE FUNK, JUDGE ROY K. ALTMAN, JUDGE DEL REY, and GM SINGER agreed to participate in BERNSTEIN plan to impede the due administration of law, and in furtherance of their agreement they did the following:

698. JUDGE DAVIS, and JUDGE FUNK, corruptly and maliciously, violated 18 U.S. Code §1503 when JUDGE DAVIS endeavored to and influenced JUDGE JERRY FUNK to prevented MR. POLO from having fair access to the Federal court system, and JUDGE FUNK accepted.

699. JUDGE FUNK, corruptly and maliciously, used sanction no supported by law to intimidate MR. POLO for filing a petition for a Declaratory and injunctive relief in a court which had concurrent Jurisdiction to issue such a declaratory judgement.

700. JUDGE FUNK, corruptly and maliciously, denied MR. POLO'S motion to dismiss for lack of personal Jurisdiction when the record showed that Ms. Real had served MR. POLO in a place that she actually knew not to be MR. POLO'S actual place of residency (abode).

701. Moreover, JUDGE FUNK, corruptly and maliciously and with the intent of preventing a successful appeal, continued to send appealable orders to the wrong address until MR. POLO failed to timely file his Notice of Appeal.

702. JUDGE FUNK, corruptly and maliciously, cut off MR. POLO testimony to prevent MR. POLO from further testifying, and stated in the opinion that MR. POLO was not credible to prevent MR. POLO'S oral testimony from being considered on appeal and for STU DEFENDANT EMPLOYEES to use the comment against MR. POLO during the honor council hearing, as STU DEFENDANT EMPLOYEES did.

703. JUDGE FUNK, corruptly and maliciously, prevented MR. POLO from filing a direct appeal to the U.S. THE ELEVENTH CIRCUIT COURT OF APPEALS, to prevent MR. POLO from circumventing JUDGE DAVIS' review and reaching, thereby, the court of appeals before JUDGE DAVIS' review.

704. JUDGE DAVIS denied the appeal and ruled that because the "Creditor has consistently listed 1475 SW 8th Street as his address, including in the state court proceedings and the bankruptcy case [which is factually wrong]. He cannot now claim that he did not receive adequate notice and service by being contacted at that address." Dist. CT: Doc: 26, and he cites Van Brunt, 158 (S.D.N.Y. 1994).

705. Van Brunt, as many other U.S. Supreme Court cases, establishes a multifactor determination of place of abode. Nevertheless, Judge Davis used only one factor with the clear intent of preventing MR. POLO'S success in the case, and to protect the members of the Family Court Enterprise MS. REAL. Therefore, Judge Funk and JUDGE DAVIS exercised illegal personal jurisdiction over MR. POLO who was never served at his actual place of abode, which was well known to MS. REAL at the time of service.

706. JUDGE FUNK, knowing that MR. POLO was an indigent party, corruptly and maliciously refused MR. POLO to proceed in forma pauperis to prevent the case from reaching the court of appeals.

707. JUDGE FUNK, corruptly and maliciously, allowed Ms. Real to discharge a non-dischargeable debt to prevent MR. POLO and his children from obtaining a judgement against Ms. Real for her tortious acts against MR. POLO and his children.

708.     JUDGE ROY K. ALTMAN, corruptly and maliciously, prevented the Plaintiffs from obtaining a summon by retaining and not granting the Plaintiffs petition to proceed in forma pauperis, and prevented the plaintiff from obtaining temporary emergency, and expedited injunctive reliefs by delaying the grant of the petitions for injunctive relief and to proceed in forma pauperis.

709.     JUDGE ALTMAN, with the intent of delaying the case requested recommendations from Judge Magistrate LISETTE REID, who recommended the petition for injunctive relief to be denied, and she used pure non-applicable law expecting MR. POLO to fail to file his objection within the 14 days allowed by law.

710.     Nevertheless, despite the Plaintiff(s) rapid and timely file of objections, JUDGE ALTMAN intentionally and maliciously failed to promptly process the petition to allow the state court to continue violating the Plaintiff(s) constitutional rights and, to facilitate JUDGE DEL REY'S continue violations of the Plaintiffs' constitutional rights, JUDGE ALTMAN delayed the processing of the two pending petitions he had in front of him for injunctive relief and to proceed in forma pauperis for a period of four months.

711.     JUDGE ALTMAN knew that failing to timely hear the Plaintiffs motion was going to result in the State of Florida to continue violating the Plaintiff(s) constitutional right. Nevertheless, he corruptly and intentionally delayed the resolution of those petitions.

712.     JUDGE BERNSTEIN influenced, obstructed and prevented the due administration of justice by convincing and influencing JUDGE DEL REY, JUDGE MULTACK, and GM SINGER, even when they did not have continue jurisdiction to act on the case, participate in his plan to impede the due administration of justice by continuing the pattern of harassment JUDGE BERNSTEIN had maintained for many years, which included but was not limited to violations of MR. POLO'S constitutional rights without due process, preventing MR. POLO from obtaining a fair and just trial, and devastating MR. POLO and his family's future. In furtherance of the agreement/understanding, JUDGE DEL REY left MR. POLO without attorney knowing that MR. POLO didn't have access to file anything (emphasis added), in multiple occasions and refused to vacate unconstitutional orders that were depriving MR. POLO from accessing the courts without due process of law.

713.    MR. SEGARRA and JUDGE DEL REY engaged in delaying tactics with MR. POLO'S attorney to delay the resolution of two attorney's fees motion for over four years as a harassment technique. Moreover, MR. SEGARRA used unnecessary deposition, and service of process with the intent of harassing MR. POLO.

714.    GM SINGER, maliciously and in conspiracy with JUDGE BERNSTEIN violated MR. POLO'S right to due process by sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings to prevent MR. POLO from entering evidence int the record.

715.    Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO was had an obligation to pay child support. Moreover, such a determination was to be due once a bankruptcy case was ready for resolution, which was not the case.

716.    Therefore, JUDGE BERNSTEIN, JUDGE ALTMAN, JUDGE FUNK, JUDGE DAVIS, JUDGE DEL REY, and GM SINGER violated 18 U.S. Code §1503, by influencing, obstructing, and impeding the due administration of Justice.

### B. VIOLATIONS OF 18 U.S. Code § 1512 (b).

717.    The defendants JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and DEFENDANT JUDGE BERNSTEIN knowingly violated 18 U.S. Code § 1512 (b).

718.    JUDGE FUNK prevented MR. POLO from giving his full testimony in Federal court against a Member of the Family Court Enterprise, MS. REAL when he cut off MR. POLO'S testimony before finishing with the intent of preventing the testimony of MR. POLO to be recorded in the record. Moreover, JUDGE FUNK allowed all the evidence into evidence to mislead MR. POLO into thinking that because the evidence was in the record, he did not have to testify anymore.

719.    STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, and DEAN MOORE), while acting under color of state law, knowingly intimidated MR. POLO by depriving the plaintiffs of their constitutional property interest in MR. POLO'S continued enrollment at STU; (2) knowingly violated MR. POLO'S equal protection rights; (3) knowingly violated MR. POLO'S first Amendment rights without due process of law; and (4) knowingly conspired with the

enterprise to intimidate and to prevent MR. POLO from reporting to the federal investigators that JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and Kathia Camacho had corruptly conspired to alter the transcript of the hearing on the Motion to recuse DEFENDANT JUDGE BERNSTEIN with intent to impair the transcript's integrity and availability for use in this official proceeding.

720.    DEFENDANT JUDGE BERNSTEIN, and DEFENDANT MR. SEGARRA planned, and executed an intimidatory scheme in conspiracy with all other defendants to silence MR. POLO, by which scheme they deprived MR. POLO and his children of their constitutional right to access the court, to interest in property, to liberty, to free speech, and to equal protection of the laws.

721.    JUDGE BERNSTEIN, and DEFENDANT MR. SEGARRA unconstitutionally removed MR. POLO'S filing rights to force MR. POLO to be in contempt of court and have an excuse, thereby, to put MR. POLO in jail and remove MR. POLO'S custody of his children, knowing that MR. POLO did not have the predisposition to be in contempt.

722.    All Defendants knowingly engaged in aforementioned acts, and they delayed, prevented MR. POLO'S testimony in Federal court against Ms. Real, and prevented communication to a law enforcement officer of information relating to the commission or possible commission of criminal Federal offenses under Title 18, U.S.C., § 241 (Conspiracy Against Rights), Title 18, U.S.C., § 242 (Deprivation of Rights Under Color of Law), Ms. Hernandez's and her employer's violations of 26 U.S. Code § 7201 (Attempt to evade or defeat tax), Title 18 USC § 1961 and Fla. Stat. § 895.01 - 895.06 (Federal and State Racketeer Influenced and Corrupt Organizations) (hereinafter the "Federal Offenses").

723.    JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and DEFENDANT JUDGE BERNSTEIN, through intimidation, caused MR. POLO'S withholding of testimony against the Family Court Enterprise, in State and Federal Court, and they prevented MR. POLO from reporting, to federal officers the abovementioned Federal Offenses.

724.    JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and DEFENDANT JUDGE BERNSTEIN, knowingly, intimidated MR. POLO by using

intimidating legal harassment, and they hindered, delayed, and prevented MR. POLO'S communication to a law enforcement officer of the United States of information relating to the commission or possible commission of aforementioned federal Criminal Offenses.

725.    Therefore, all the Defendants violated 18 U.S. Code §1512 (b)

## C. VIOLATIONS OF 18 U.S. Code § 1512 (c)

726.    DEFENDANTS MR. SEGARRA, JUDGE BERNSTEIN, and KATHIA CAMACHO, corruptly engaged in altering, and mutilating a transcript of the hearing on the Motion to Recuse DEFENDANT JUDGE BERNSTEIN with the intent to impair the transcript's integrity and availability for use in this official proceeding.

727.    When MR. POLO found out that the transcript did not reflect the whole content of the hearing, he asked MS. CAMACHO to provide the audio which she had made. After refusing many times, MS. CAMACHO sent the audio to MR. POLO and in fact the content of the transcript was altered, and part of the words showing JUDGE BERNSTEIN'S bias against MR. POLO removed. MS. CAMACHO refused to correct the transcript, and she never corrected the transcript.

728.    Consequently, the DEFENDANTS MR. SEGARRA, JUDGE BERNSTEIN, and KATHIA CAMACHO violated **18 U.S. Code § 1512.**

## D. VIOLATIONS OF 18 U.S. Code § 1512 (d)

729.    DEFENDANTS MR. SEGARRA, JUDGE DEL REY, GM SINGER, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES, DAVID A. ARMSTRONG, and ST. THOMAS UNIVERSITY, INC., violated 18 U.S. Code § 1512 (d), when they intentionally harassed MR. POLO, with the objective of hindering, delaying, and preventing MR. POLO from reporting to a law enforcement officer the commission or possible commission of abovementioned Federal Offenses, and causing a criminal prosecution to be sought or instituted.

730.    DEFENDANT DAVID A. ARMSTRONG intentionally permitted his subordinate to harass, and thereby hindered, delayed, and dissuaded MR. POLO from reporting to a law enforcement officer the commission of possible commission of abovementioned Federal Offenses.

731.    DAVID A. ARMSTRONG knew that their subordinates were violating MR. POLO'S rights in conspiracy with a state actor to harass MR. POLO by violating the Plaintiffs' property right to continued enrollment at STU without due process. MR. ARMSTRONG was

protecting his and STU's political power, and monetary interest. MR. ARMSTRONG used deliberate indifference to protect STU's and his own political interest and intentionally failed to act to protect MR. POLO'S constitutional rights.

732.    JUDGE BERNSTEIN agree with STU DEFENDANT EMPLOYEES to provide the pretext for STU DEFENDANT EMPLOYEES to initiate an honor council proceeding to destroy MR. POLO'S political and legal career year and a half before MR. POLO graduation, and STU agreed to terminate MR. POLO'S career in law if Mr. Bernstein was to provide the pretexts. In furtherance of their agreement JUDGE BERNSTEIN tried on multiple occasions to entrap MR. POLO to put him in jail, tried to illegally take MR. POLO'S children's custody from him, tried to entrap MR. POLO with MS. CAMACHO for MR. POLO to commit forgery.

733.    STU DEFENDANT EMPLOYEES had in their possession the audio file and the transcripts that JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and MS. CAMACHO conspired to mutilate. The STU DEFENDANT EMPLOYEES knew that DEFENDANT JUDGE BERNSTEIN'S order of recusal was a violation of Fla. Sup. Court's mandate, and they knew the allegations contained in the order of recusal were false. Moreover, STU DEFENDANT EMPLOYEES knew they were acting in violation of their own code of conduct that says that the Honor Council shall not be used to resolve personal problems. Nevertheless, they used the Honor Council proceeding to resolve JUDGE BERNSTEIN personal interest in destroying MR. POLO'S political and legal career, to silence MR. POLO'S political speech, and to retaliate to intimidate MR. POLO, to prevent MR. POLO from reporting to a U.S. law enforcement officer the commission or possible commission of abovementioned Federal Offenses.

734.    The STU DEFENDANT EMPLOYEES intentionally harassed and intimidated MR. POLO by using the false allegations contained in JUDGE BERNSTEIN'S order of recusal to continue with the fraudulent unconstitutional honor council proceeding against MR. POLO and his family's future economic wellbeing to prevent MR. POLO from testifying in state and federal court.

735.    JUDGE DEL REY, and GM SINGER, agreed with JUDGE BERNSTEIN to harass MR. POLO and to violate MR. POLO'S constitutional rights without due process. In furtherance of the agreement/understanding JUDGE DEL REY left MR. POLO without attorney knowing that MR. POLO was being left without access to the court, in multiple occasions and refused to vacate

unconstitutional orders that were depriving MR. POLO from accessing the courts without due process of law.

736.    MR. SEGARRA and JUDGE DEL REY engaged in delaying tactics with MR. POLO'S attorney to delay the resolution of two attorney's fees motion for over four years as a harassment technique. Moreover, MR. SEGARRA used unnecessary deposition, and service of process with the intent of harassing MR. POLO.

737.    GM SINGER, maliciously and in conspiracy with JUDGE BERNSTEIN violated MR. POLO'S right to due process by sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings to prevent MR. POLO from entering evidence int the record.

738.    Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO was had an obligation to pay child support. Moreover, such a determination was to be due once a bankruptcy case was filed, which was not the case.

739.    Aforementioned actions were done with the objective of harassing MR. POLO, creating emotional distress, depriving MR. POLO of his constitutional rights without due process of law, and thereby hindered, delayed, and dissuaded MR. POLO, from reporting to a law enforcement officer the commission of possible commission of abovementioned Federal Offenses.

740.    As a result, MR. POLO was harassed and intimidated, and he got afraid to report to a U.S. law enforcement officer the DEFENDANTS' commission or possible commission of Federal Offenses.

741.    Therefore, the DEFENDANTS MR. SEGARRA, JUDGE DEL REY, GM SINGER, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES, DAVID A. ARMSTRONG, and ST. THOMAS UNIVERSITY, INC., violated 18 U.S. Code § 1512 (d).

742.    The corrupt acts of all the Defendants members of the enterprise resulted in STU preventing MR. POLO from obtaining a Juris Doctor degree, which was one of the requirements for MR. POLO to enter into an intrastate agreement to continue his Tax Law education at Boston University. Boston University is located in Boston, the state of Massachusetts.

743.      At least one more father had to escape the state of Florida for DEFENDANT JUDGE BERNSTEIN'S retaliatory and unconstitutional violations to that Father.

744.      As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

   a.   The Plaintiff(s) sustained emotional damages;

   b.   The Plaintiff(s) sustained reliance damages;

   c.   The Plaintiff(s) sustained severe mental and emotional distress;

   d.   The Plaintiff(s) suffered physical pain and suffering;

   e.   The Plaintiff(s) suffered diminished health;

   f.   The Plaintiff(s) suffered mental pain and suffering;

   g.   The Plaintiff(s) suffered loss of earnings and;

   h.   The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600;

   i.   Plaintiff, MR. POLO, lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest;

   j.   The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely.

   k.   the children's right to parental support was impaired with a value of more than $96,000; and

   l.   MR. POLO will incur attorney's fees and/or court costs.

745.      **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against the DEFENDANTS STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., as follows:

a. Declaring that the DEFENDANTS STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., violated the Plaintiff(s)' constitutional rights to equal protection, property rights, and the right to free from political persecution (under the first Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

b. Enjoining THE DEFENDANT MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, JUDGE FUNK, JUDGE DAVIS, JUDGE ROY K. ALTMAN, STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

c. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against; THE DEFENDANT MR. SEGARRA, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG, SEGARRA & ASSOCIATES, PA., and ST THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

d. The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the applicable Defendants for violation of RICO Federal Law.

e. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## § 7.PRAYER FOR RELIEF

746.      FRANK E. POLO, SR., Individually and as the next friend to FP, and HP, both minors, FP, and HP, demands a trial by jury, and judgement against (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ; (14) MANUEL A. SEGARRA III ;  (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;    (23) FLORIDA THIRD DISTRICT COURT OF APPEALS; (24) SEGARRA & ASSOCIATES, P.A.; (25) ST. THOMAS UNIVERSITY, INC.  (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT;  (28) MERLIN HERNANDEZ, and  (29) RANDOLPH MARTINEZ    (collectively the "DEFENDANTS" in the amount of $12,742,800, for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of pass earnings, and impairment of future earning capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper.

747.      Additionally, the Plaintiffs demand a Declaratory and injunctive relief against injuncting the DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ;  (5) NUSHIN G. SAYFIE ;  (6) IVAN F. FERNANDEZ ; (7) KEVIN EMAS ;  (8) NORMA S. LINDSEY ;  (9) ERICK WM. HENDON ; (10) FLEUR J. LOBREE ;  (11) MONICA GORDO ;  (12) ALEXANDER S. BOKOR ;  (13) TOMAS LOGUE ;  (14) MANUEL A. SEGARRA III ;  (15) ROBERT S. SINGER ;  (16) TAMARA F. LAWSON ;  (17) JAY S. SILVER ;  (18) PATRICIA MOORE ;  (19) JUAN CARLOS PLANAS ;  (20) DAVID A. ARMSTRONG ;  (21) DANIELLA LEVINE CAVA ; (22) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (23) FLORIDA THIRD DISTRICT COURT OF APPEALS;  (24) SEGARRA & ASSOCIATES, P.A.;   (25) ST. THOMAS UNIVERSITY, INC. (26) MIAMI-DADE COUNTY; (27) MIAMI-DADE COUNTY POLICE DEPARTMENT; (28) MERLIN HERNANDEZ  (29) RANDOLPH MARTINEZ (30) ARMANDO GARCIA, from violating, or conspiring to violate with anyone, the Plaintiffs' and the witnesses' constitutional rights, or from retaliating against the Plaintiffs and witnesses, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and declaring that the DEFENDANTS violated the Plaintiff's Federal Protective rights, enumerating those rights.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1TH ST APT 411
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com