# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (Miami Division)

FILED BY _____ D.C.

MAY 2 2 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

FRANK E. POLO, SR. (Pro Se);  )
FP; HP.  )
    Plaintiffs,  )
      )
      )
    v.  )  CASE NO: **1:23-cv-21684**
SCOTT MARCUS BERNSTEIN (in his Personal  )
and official capacity);  )
MARCIA DEL REY (in her Personal and Official  )  **JURY TRIAL IS DEMANDED**
capacity);  )
SPENCER MULTACK (in his Personal and  )
official capacity);  )
BERTILA SOTO (in her official capacity);  )
NUSHIN G. SAYFIE (in her official capacity);  )
MANUEL A. SEGARRA III (in his personal and  )
official capacity);  )
ROBERT S. SINGER (in his Personal and  )
Official Capacity);  )
TAMARA F. LAWSON (In her official  )
capacity);  )
JAY S. SILVER (In his official capacity);  )
PATRICIA MOORE (In her official capacity);  )
JUAN CARLOS PLANAS (In his Official  )
capacity);  )
DAVID A. ARMSTRONG (In his official  )
capacity);  )
ELEVENTH JUDICIAL CIRCUIT COURT OF  )
FLORIDA;  )
FLORIDA THIRD DISTRICT COURT OF  )
APPEALS;  )
SEGARRA & ASSOCIATES, P.A.;  )
ST. THOMAS UNIVERSITY, INC.  )
DEPARTMENT;  )
MERLIN HERNANDEZ (in her personal  )
capacity)  )
RANDOLPH MARTINEZ (in his personal  )
capacity)  )
    Defendants,  )
_____/  )
      )
      )
      )
      )
      )

## § 1. FIRST AMENDED COMPLAINT

1.   Plaintiffs, FRANK E. POLO SR., individually and as natural father and next friend for FP, and HP, both minors, file this complaint against the defendants, SCOTT MARCUS BERNSTEIN (in his Personal and official capacity); MARCIA DEL REY (in her Personal and Official capacity); SPENCER MULTACK (in his Personal and official capacity); BERTILA SOTO (in her official capacity); NUSHIN G. SAYFIE (in her official capacity); MANUEL A. SEGARRA III (in his personal and official capacity); ROBERT S. SINGER (in his Personal and Official Capacity); TAMARA F. LAWSON (In her official capacity); JAY S. SILVER (In his official capacity); PATRICIA MOORE (In her official capacity); JUAN CARLOS PLANAS (In his Official capacity); THOMAS WENSKI (In his official capacity); DAVID A. ARMSTRONG (In his official capacity); ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; SEGARRA & ASSOCIATES, P.A.; ST. THOMAS UNIVERSITY, INC.; MERLIN HERNANDEZ (in her personal capacity); and RANDOLPH MARTINEZ (in his personal capacity), ARMANDO GARCIA (in his official capacity) and alleges as follows:

## § 2. JURISDICTION, VENUE & STANDING

2.   Jurisdiction is proper in this court under 42 U.S.C. §1983, 42 U.S.C. §1961 - §1968, and 42 U.S.C. §1985. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a), and attorneys' fees and costs under 42 U.S.C. § 1988. Moreover, this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

3.   Venue is proper under 28 U.S.C. §1391(b) as most Defendants are residents of Miami-Dade County, which is located in the U.S. Southern District of Florida (this judicial district) and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County.

4.   All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiffs for which the Plaintiffs are seeking relief. Therefore, the Plaintiffs, have "standing" to bring this cause of action.

## § 3. PARTIES

5.   Plaintiff, FRANK E. POLO, SR., individually, (hereinafter "MR. POLO" or "Polo") and as the next friend to FP (10 years old), and HP (10 years old), both minors, (hereinafter, the "Children," and collectively with MR. POLO, the "Plaintiffs") are residents of Miami-Dade County, Florida.

6.   Defendant, SCOTT M. BERNSTEIN, (hereinafter "JUDGE BERNSTEIN") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, he is a resident of Miami-Dade County, Florida.

7.   Defendant, MARCIA DEL REY, (hereinafter "JUDGE DEL REY") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

8.   Defendant, SPENCER MULTACK, (hereinafter "JUDGE MULTACK") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, he is a resident of Miami-Dade County, Florida

9.   Defendant, BERTILA SOTO, (hereinafter "JUDGE SOTO") was/is a Chief Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

10.  Defendant, NUSHIN G. SAYFIE, (hereinafter "JUDGE SAYFIE") was/is a Chief Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

11.  Defendant, ROBERT S. SINGER, (hereinafter "GM SINGER") was/is a General Magistrate and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

12.  Defendant, TAMARA F. LAWSON (hereinafter "Ms. Lawson" or "DEAN LAWSON" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was an employee and Dean of the Defendant's ST. THOMAS UNIVERSITY, INC. School of law, and upon information and belief she is a resident of Seattle, Washington.

13.  Defendant, JAY S. SILVER (hereinafter "MR. SILVER" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee of ST. THOMAS

UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

14. Defendant, PATRICIA MOORE (hereinafter "Dean Moore" or "Ms. Moore" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee and Dean of ST. THOMAS UNIVERSITY, INC., and upon information and belief she is a resident of Miami-Dade County, Florida.

15. Defendant, JUAN CARLOS PLANAS (hereinafter "MR. PLANAS" or "JC PLANAS" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is an employee of ST. THOMAS UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

16. Defendant, DAVID A. ARMSTRONG (hereinafter "MR. ARMSTRONG" and together with other STU Employees "STU DEFENDANT EMPLOYEES") was/is the president and an employee of the DEFENDANT ST. THOMAS UNIVERSITY, INC., and upon information and belief he is a resident of Miami-Dade County, Florida.

17. Defendant, MERLIN HERNANDEZ, (hereinafter "MS. HERNANDEZ") was/is the Petitioner in Family Court case 2012-017787-FC-04 in the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, she is a resident of Miami-Dade County, Florida.

18. Defendant, RANDOLPH MARTINEZ, (hereinafter "MR. MARTINEZ") was/is Ms. Hernandez's boyfriend, and upon information and belief, he is a resident of Miami-Dade County, Florida.

19. Defendant, MANUEL A. SEGARRA II, (hereinafter "MR. SEGARRA") was/is an employee, owner, and operator of SEGARRA & ASSOCIATES, P.A., and upon information and belief, he is a resident of Miami-Dade County, Florida.

20. Defendant, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (hereinafter "EJC") is located at 175 NW 1st Avenue, 30th floor, Miami, FL 33128, and it is one of twenty (20) judicial circuits in the Florida State Courts System, a subdivision of the State of Florida.

21. Defendant, SEGARRA & ASSOCIATES, P.A. (hereinafter "Segarra Law"), is a Florida for Profit Corporation organized and existing under the laws of the State of Florida, the corporation

has its principal place of business in Miami-Dade County, Florida, and it is located at 2655 South Le Jeune Road, Penthouse 2 C, Coral Gables, FL 33134

22. Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "STU"), is a Florida Not for Profit Corporation organized and existing under the laws of the State of Florida, the corporation has its principal place of business at 16401 NW 37th Avenue, Miami Gardens, FL 33054, Miami-Dade County, Florida.

23. Defendant, MIAMI-DADE COUNTY (hereinafter the "MDC") is located at 111 NW 1st Street, 29th Floor, Miami, FL 33128, one of the 67 counties in the State of Florida, a subdivision of the State of Florida.

### § 4.GENERAL FACTS APPLYING TO ALL COUNTS

24. ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; SEGARRA & ASSOCIATES, P.A.; ST. THOMAS UNIVERSITY, INC., and all other Defendants, individually, are "persons" for purposes of 42 U.S.C. Section 1983.

25. At all times relevant in all counts, sections, and subsections, is the fact that MR. POLO and his Children were parties in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA for Miami-Dade Country, Case No.: 2012-017787-FC-04, where the defendant Scott M. Bernstein was the presiding judge from about July 7, 2012, until on or about January 31, 2019.

26. At all times relevant in all counts, sections, and subsections, is the fact that MR. POLO was a party in a Civil Florida State case (the "Civil Case"), in which MR. POLO was seeking redress for injuries resulting from intentional torts caused by many attorneys including, among others, BERNSTEIN'S appointed Guardian Ad Litem in the family case, Lilli Josephine Real (AKA Lilliana Real) (hereinafter, the "GAL").

27. At all times relevant in all counts, sections, and subsection is the fact that DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY (together hereinafter "11th Circuit Judges") are Fla. Const. Art. 5 Judges, and their Jurisdiction is obtained from, state statutory law, common law, and the authority granted under the Fla. Const. Art. 5 §5 and are limited to heard and adjudicated cases raised under Florida Law, appeals from county courts, and direct review of administrative action prescribed by Florida law.

28. At all times relevant in all counts, sections, and subsections, is the fact that DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY, and GENERAL MAGISTRATE ROBERT S. SINGER, were acting under color of state law. The ***misused of their power***, which they ***possessed by virtue of state law*** and made possible only because the DEFENDANTS JUDGE BERNSTEIN, JUDGE MULTACK, JUDGE DEL REY, and GENERAL MAGISTRATE ROBERT S. SINGER are ***clothed with the authority of state law,*** is an action taken under color of state law.

29. At all times relevant herein in all counts is the fact that the DEFENDANTS' JUDGES BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and GM SINGER malicious, unlawful, and unconstitutional acts were done while they were acting in the performance of their official duties, but in clear absence of all jurisdictions. JUDGE BERNSTEIN was acting in a clear absence of all jurisdiction when he sent the letter to ST. THOMAS UNIVERSITY to maliciously interfere with MR. POLO'S right to continued enrollment at ST. THOMAS UNIVERSITY, and JUDGE DEL REY, JUDGE MULTACK, and GM SINGER were acting in clear absence of all jurisdiction when they continued to adjudicate matters in a case that was precluded by res judicata with the intent of, but not limited to, depriving the plaintiffs of their constitutional rights, harassing, intimidating, and retaliating against the plaintiff(s), and preventing the Plaintiffs from accessing the court system without due process of law to secure plaintiff's unsuccessful use of court resources.

30. At all times relevant is the fact that Defendant, MANUEL A. SEGARRA II owns, operates, manages, directs, and controls SEGARRA & ASSOCIATES, P.A.

31. At all relevant times, Manuel A. Segarra III (hereinafter "DEFENDANT MR. SEGARRA") was the attorney for MR. POLO'S ex-girlfriend Merlin Hernandez (hereinafter "Ms. Hernandez"), he was a co-conspirator with, at least, four State Actors, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, and JUDGE MULTACK. MR. SEGARRA and the company he owned and represented, SEGARRA & ASSOCIATES, P.A., were acting under the color of Florida law, in furtherance to the conspiracy he had with those judges at the time these claims occurred.

32. At all times relevant is the fact that DEFENDANT MR. SEGARRA, as the registered owner and president of Segarra & Associates, P.A., had the right to control his agents. This right

includes but is not limited to controlling the acts of any employee in his office, the acts of any associate attorney, the hiring of independent contractors, and his own actions as an agent of Segarra & Associates, P.A. Moreover, DEFENDANT MR. SEGARRA had the right to make decisions in regard to Segarra's Law Firm's day-to-day operations. Therefore, the actions of DEFENDANT MR. SEGARRA, his employees, associates, and independent contractors are attributable to Segarra & Associates, P.A., and Segarra's Law Firm.

33. At all times it is material, on all counts, that MS. HERNANDEZ, conspired and acted in concert with state officials, namely, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM. SINGER, and with her attorney DEFENDANT MR. SEGARRA who was also acting under Color of State Law. Therefore, Ms. Hernandez was acting under Color of State Law.

34. At all times it is material, on all counts, that MR. MARTINEZ, conspired and acted in concert with state officials, namely, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM. SINGER, MS. HERNANDEZ, and with MS. HERNANDEZ'S attorney DEFENDANT MR. SEGARRA who was also acting under Color of State Law. Therefore, MR. MARTINEZ was acting under Color of State Law.

35. SEGARRA LAW was at all relevant times responsible for its employees. SEGARRA LAW is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Laws of Florida.

36. ST. THOMAS UNIVERSITY, INC. was at all relevant times responsible for its employees. ST. THOMAS UNIVERSITY, INC., is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Florida Laws.

37. At all times it is material, in all counts, that TAMARA F. LAWSON; JAY S. SILVER; PATRICIA MOORE; JUAN CARLOS PLANAS; DAVID A. ARMSTRONG (hereinafter all together referred to as "STU DEFENDANT EMPLOYEES), conspired and acted in concert with, at least two state actors, JUDGE BERNSTEIN and JUDGE THOMAS LOGUE. Therefore, TAMARA F. LAWSON; JAY S. SILVER; PATRICIA MOORE; JUAN CARLOS PLANAS; DAVID A. ARMSTRONG was acting under Color of State Law, and so it was their employer ST. THOMAS UNIVERSITY, INC., (hereinafter "STU").

38. This lawsuit arises out of the Defendants' violation of Plaintiff's federal, and state constitutional rights as secured by the United States Constitution, the Florida Constitution, and Federal and State statutory and common laws. Consequently, the Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983. Plaintiff also has viable state law claims.

## A.  Agency and Concert of Action

39. At all times abovementioned Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

40. At all times it is material, on all counts, that DAVID A. ARMSTRONG, was acting within the scope of his official duties as the Maximum representative of ST. THOMAS UNIVERSITY, INC., and as an employee of STU, consented to the harassment, and violation of the constitutional rights of STU DEFENDANT EMPLOYEES against MR. POLO and his children. Therefore, all actions of STU DEFENDANT EMPLOYEES and those of David A. ARMSTRONG are attributable to ST. THOMAS UNIVERSITY, INC. At all times it is material, on all counts, that STU DEFENDANT EMPLOYEES and MR. ARMSTRONG were acting to protect the Political, financial, and influential interests of ST. THOMAS UNIVERSITY, INC., in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of their malicious acts.

41. At all times it is material, on all counts, that BERTILA SOTO and NUSHIN G. SAYFIE acting within the scope of their official duties as the Maximum representatives of the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (hereinafter the "11th CIRCUIT") and an employee of the 11th CIRCUIT, consented to the harassment, and violation of constitutional rights of 11th Circuit Judges Employees against MR. POLO and his children. Therefore, all actions of the

BERTILA SOTO, NUSHIN G. SAYFIE, and those actions of the other 11th CIRCUIT JUDGES, are attributable to the 11th CIRCUIT. At all times it is material, on all counts, that the 11th CIRCUIT JUDGES were acting to protect the Political, financial, and influential interests of the FAMILY COURT ENTERPRISE and this of the 11th CIRCUIT, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of their malicious acts.

42. At all times it is material, on all counts, that MR. SEGARRA was acting within the scope of official duties as the Maximum representative of SEGARRA & ASSOCIATES, P.A., and within the scope of his duties and responsibility as an employee of SEGARRA & ASSOCIATES, P.A. Therefore, as the principal of SEGARRA & ASSOCIATES, P.A., MR. SEGARRA consented to the harassment and all the intentional violations of MR. POLO'S constitutional Rights and all acts of retaliation, harassment, and humiliation of MR. SEGARRA against MR. POLO. Therefore, all the actions of MR. SEGARRA are attributable to SEGARRA & ASSOCIATES, P.A. At all times it is material, on all counts, that MR. SEGARRA was acting in protecting the Political, financial, and influential interests of SEGARRA & ASSOCIATES, P.A., MR. SEGARRA, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of MR. SEGARRA'S malicious acts.

43. At all times a material is, on all counts, that the DEFENDANT MS. MERLIN HERNANDEZ and MR. RANDOLPH MARTINEZ (who, upon information and belief, financed the harassment) hired the DEFENDANT SEGARRA & ASSOCIATES, P.A., and thereby MR. SEGARRA, to act as her agent, and at all times relevant in this complaint, SEGARRA & ASSOCIATES, P.A. and THE DEFENDANT MR. SEGARRA were acting within the scope of their duties and responsibility as employees/agents of MERLIN HERNANDEZ and MR. RANDOLPH MARTINEZ. Therefore, as the principal and employer of DEFENDANT SEGARRA & ASSOCIATES, P.A., and thereby of MR. SEGARRA, MS. HERNANDEZ, and MR. MARTINEZ consented to the harassment and all the intentional violations of MR. POLO'S constitutional Rights and all acts of retaliation, harassment, and humiliation of MR. SEGARRA against MR. POLO. Therefore, all actions of MR. SEGARRA, and SEGARRA & ASSOCIATES, P.A. are attributable to MS. MERLIN HERNANDEZ. At all times it is material, on all counts, that MS. HERNANDEZ and MR. MARTINEZ were acting in protecting their own Political, financial, and influential interests, in reckless disregard to the damages that the Plaintiffs were to suffer as a direct consequence of MS. HERNANDEZ and MR. MARTINEZ malicious acts.

## § 5.STATEMENT OF FACTS

### A.  FACTS APPLYING TO COUNTS: 1, COUNT 10, and COUNT 12

44. After Judge Bernstein name Lilliana Real as the Guardian Ad Litem in Mr. Polo's case, Judge Bernstein engaged in a series of acts resulting in depravation of the Plaintiffs' right to access the court. Such deprivation persists until today.

45. During Lilliana Real's (the "GAL") first visit to Mr. Polo's house, Ms. Real insinuated to MR. POLO that she was friends with JUDGE BERNSTEIN and that JUDGE BERNSTEIN was going to do in the case what she was going to tell him. Even though MR. POLO understood this as an offer to buy her illegal services, MR. POLO ignored it.

46. Thereafter Ms. Real started twisting the balance of the law, by first falsely creating an emergency and pretending that she was worried about Mr. Polos' children's safety without having probable cause.

47. On February 10, 2014, MR. POLO sent Ms. Real an email stating, among other things, "[T]omorrow will be the last time I will see my children. I am giving them to Merlin [Ms. Hernandez] after that."

48. On February 11, 2014, when MR. POLO had legal custody of his children, MS. GRANDA, MS. REAL, MR. LOSA asked MS. HERNANDEZ to remove the children from the daycare without a court order. MS. HERNANDEZ, and MR. MARTINEZ removed MR. POLO'S children from Polo's custody and detained the children until seven days later with the malicious consent and approval of JUDGE BERNSTEIN and without a court order.

49. MERLIN HERNANDEZ and RANDOLPH MARTINEZ physically removed the children from the daycare without MR. POLO'S consent and they harbored the children for seven (7) days without ever returning the children, knowing there was no judicial order granting them the right to remove the children, nor probable cause to remove the children.

50. MR. POLO never consented to anyone removing the children, and MS. GRANDA, MS. REAL, MR. LOSA, MR. MARTINEZ and JUDGE BERNSTEIN were all parties outside the relationship of MR. POLO with his children.

51. When Ms. Hernandez's attorneys filed the emergency motion to remove timesharing, they intentionally and maliciously left out exculpatory language when they drafted the Emergency Motion for Removal of Custody (the "Emergency Motion").

52. Additionally, Ms. Real, knew that MR. POLO had a legal right to custody, and legal right to be with his children on February 11, 2014; however, she sent an email to the daycare inciting the daycare to call the Police if MR. POLO was to exercise his legal right to custody.

53. At least, as of February 13, 2014, Judge Bernstein knew that Mr. Polo's children were removed without notice and opportunity to be heard, and MR. POLO never received a notice of a hearing before the Plaintiffs were deprived of their constitutionally protected right of MR. POLO to freely exercises the care, custody, and control of his children, and The children freely receive the care, custody, and control of their father.

54. On February 18, 2014, the day of the hearing, Judge Bernstein filed a copy of the Emergency Motion, with a note stating that it was not an emergency.

55. DEFENDANT JUDGE BERNSTEIN received an Amended Emergency Motion with the attachment on February 13, 2014.

56. The attachments clearly showed that there was no probable cause to retain Mr. Polo's children against Mr. Polo's will. Nevertheless, DEFENDANT JUDGE-BERNSTEIN delayed the return of the children for 7 days without probable cause with the intent of provoking Polo's impulsive (without thinking) reaction, which never occurred. MR. POLO remained calm, and DEFENDANT JUDGE BERNSTEIN had to dismiss the motion to remove custody for lack of probable cause.

## B. FACTS APPLYING TO COUNTS 2, COUNT 10, and COUNT 12

57. After MR. POLO subpoenaed information showing that JUDGE BERNSTEIN'S appointed Guardian Ms. Real, lied in her report and perjured herself under oath, Ms. Hernandez was forced to settle, and DEFENDANT JUDGE BERNSTEIN signed an illegal order not to pay child support to silence MR. POLO, depriving, thereby, MR. POLO'S children of their right to parental support.

58. In retaliation for exposing JUDGE BERNSTEIN'S GAL, DEFENDANT JUDGE BERNSTEIN decided to damage MR. POLO'S career in law.

59. After the case was already closed, taking advantage of an honest dispute over the interpretation of the MSA, JUDGE BERNSTEIN, maliciously, arranged with Ms. Granda, with whom he was having ex-parte communication, and thereby, with MS. HERNANDEZ, to bring the case back to court to begin damaging MR. POLO'S career in law.

60. On November 23, 2015, Ms. Hernandez's attorney, Ms. Granda, set a hearing to "Enforcer the MSA." On that hearing, DEFENDANT JUDGE BERNSTEIN refused to address the disputed terms of the agreement and maliciously waited until after MR. POLO had taken the children to Orlando to file an order which did not address the issue of interpretation and contained vague language which did not put MR. POLO on notice of any consequences for taking the children on vacation.

61. Once MR. POLO returned from vacation with his children, Ms. Hernandez and Ms. Granda maliciously filed a Motion for Contempt with the only purpose of damaging MR. POLO'S career in law with the help of JUDGE BERNSTEIN.

62. In a non-evidentiary telephonic hearing held on February 2, 2016, MR. POLO explained that the MSA did not provide a clear and definite statement, making MR. POLO aware of the court's command giving Ms. Hernandez's holiday schedule priority over MR. POLO'S vacations. Nevertheless, DEFENDANT JUDGE BERNSTEIN did not care and granted Ms. Granda attorney's fees without an evidentiary hearing as to the reasonableness of the hours or rates of the attorney's fees as required by Florida law and did not provide MR. POLO with a meaningful hearing and proper notice. Therefore, JUDGE BERNSTEIN violated the plaintiff(s) right to access the court without due process of law.

### C. FACTS APPLYING TO COUNTS 3, COUNT 10, and COUNT 12

63. On October 3rd, 2017, the DEFENDANT MR. SEGARRA noticed a hearing for October 24, 2017, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties."

64. On October 24, 2017, the hearing was held, but the hearing was not so much about competing orders, but about removing MR. POLO'S right to access the court by naming MR. POLO vexatious without notice and opportunity to be heard.

65. DEFENDANT JUDGE BERNSTEIN named MR. POLO vexatious litigant preventing him from filing any "further pleadings, motions, or letters to the court ...." without "having the same reviewed by a Member of the Florida Bar."

66. However, the DEFENDANT JUDGE BERNSTEIN ordered the Clerk's office not to accept any filing from MR. POLO, despite his order which did not prevent MR. POLO from entering other documents but pleadings, motions, or letters to the court.

67. JUDGE BERNSTEIN knew MR. POLO was declared Indigent by the court and, therefore, was unable to retain counsel.

68. JUDGE BERNSTEIN'S hearing held on August 24, 2017, was never noticed as a hearing to remove MR. POLO'S access to the court.

69. MR. POLO never received an order to show cause why he shouldn't be named vexatious.

### D.  FACTS APPLYING TO FACTS APPLYING TO COUNTS: 4, COUNT 10, COUNT 12

70. There was a hearing held on October 2, 2018, which was never noticed as a hearing to remove or alter MR. POLO'S access to the court rights.

71. However, on October 2, 2018, DEFENDANT JUDGE BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order prevented MR. POLO from filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. These allegations contained in the order were later used by Judge Bernstein to get STU to expel Mr. Polo.

72. MR. POLO never received an order to show cause why he shouldn't have his rights to file were to be totally removed on the October 2, 2018, hearing.

### E.  FACTS APPLYING TO COUNTS: 5, COUNT 6, COUNT 10, COUNT 12, COUNT 13

73. MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

74. MR. POLO and STU were engaged in the performance of their agreement until STU was just weeks away from graduation when JUDGE BERNSTEIN interfered with the contract and influenced STU to breach the contract.

75. Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU, and he was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

76. MR. POLO was over 43 years old, with an untreated attention deficit, and Neurocognitive impairments before he began law school; nevertheless, he performed at his best being an excellent student who received (1) the CALI Excellence for the Future Award; (2) Excellence in Academic Studies (Dean List) spring 2017; (3) Excellence in Academic Studies (Dean List) Fall 2017; (4) Pro Bono Commendation; (5) was a member of the Tax Law Society; (6) Student Member of Florida Bar's Tax Division; and (7) a member of Hon. Peter T. Fay American Inn of Court (on multiple occasions).

77. MR. POLO participated in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

78. JUDGE BERNSTEIN, in the clear absence of all jurisdictions, sent a letter to DEAN LAWSON, which contained false allegations and manipulated facts, which DEAN LAWSON, MR. SILVER and DEAN MOORE needed to proceed with the plan they had to terminate the Plaintiffs' property and liberty interest in MR. POLO'S continued enrollment at ST. THOMAS UNIVERSITY, INC., and to interfere with MR. POLO'S contract with STU.

79. The order of recusal was carefully drafted before the hearing on MR. POLO'S Motion to Recuse, and was maliciously drafted in violation of Florida Law, which prohibits a Judge from engaging in discussions of the merits of the Motion of Recusal.

80. Two days after the January 29, 2019 hearing, on January 31, 2019, JUDGE BERNSTEIN sent a letter to STU's DEAN LAWSON. The letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal, and

called for the schools to act upon it. Therefore, JUDGE BERNSTEIN and his co-conspirators were acting under color of state law.

81. STU's DEFENDANT EMPLOYEES prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter and order of recusal the DEFENDANT JUDGE BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing.

82. After DEFENDANT JUDGE BERNSTEIN sent the letter to STU, the school initiated an honor proceeding to end MR. POLO'S Career in Law based on the false allegations contained in DEFENDANT JUDGE BERNSTEIN Order of Recusal more specifically, on the following allegations:

83. "The court's order mentions various violations of court rules, and most specifically alleges 'at least two direct misrepresentations: 1) that [Judge Scott Bernstein] had an ex parte communication with DEFENDANT MR. SEGARRA, and 2) that MR. POLO was a "member" of the Bar. Each of these misrepresentations constitutes bad faith.' The court's order further articulates that you abused the court system by filing repetitive and frivolous motions, as well as interfered with the functioning of the judge's office by incessantly calling the judicial assistant."

84. On February 7, 2019, MR. POLO received an email containing a letter in which Ms. Lawson, basically was saying that MR. POLO was guilty of the above-mentioned allegations, of which Ms. Lawson did not have personal knowledge.

85. On February 8, 2019, MR. POLO sent an email, with a copy of his objection, to DEAN LAWSON, and MR. SILVER. In the email, MR. POLO outlined the illegality and unethical actions of DEFENDANT JUDGE BERNSTEIN and asked the school to revert their decision to invoke Sections 1.03(B) & 2.03 of the honor code based on the personal and biased character of the actions of DEFENDANT JUDGE BERNSTEIN.

86. The proceeding was an inquisitorial proceeding, in which STU held the functions of a prosecutor and a judge at the same time. The first hearing in front of the Honor Council was held on or about Tuesday, February 26, 2019.

87. Before, and at the hearing, MR. POLO submitted evidence showing that (1) MR. POLO was, in fact, a Student Member of the Florida Bar; (2) that MR. POLO did not claim DEFENDANT

JUDGE BERNSTEIN was having ex-parte communication in bad faith; (3) that DEFENDANT JUDGE BERNSTEIN had interfered with the production of a transcript, and tried to mutilate the record; (4) that the Court Reporter had attempted to set MR. POLO to commit forgery acting as BERNSTEIN'S co-conspirator; (5) that MR. POLO did not interfere with the functioning of the judge's office by incessantly calling the judicial assistant; and (6) that MR. POLO did not abuse the court system by filing repetitive and frivolous motions.

88. Dean Moore had already planned with the other members of the Honor Council Committee to blame MR. POLO, not only for his acts but also for the acts of his attorney. During the hearing, MR. SILVER tried to accuse MR. POLO of filing the motion to recuse DEFENDANT JUDGE

89. BERNSTEIN while Polo knew it was not legally sufficient but for the allegations of ex-parte communication. The following day MR. POLO submitted evidence showing his attorney had reviewed and found the motion legally sufficient before filing it.

90. During the hearing MR. SILVER called Mr. Planas to testify, and he asked MR. POLO to leave the room and wait outside while Ms. Planas was testifying. After the testimony of Mr. Planas, MR. SILVER summarized for MR. POLO what Mr. Planas, allegedly, had said about DEFENDANT JUDGE BERNSTEIN Reputation, and that MR. POLO was a good student.

91. Nevertheless, in an email that Mr. Jay Silver sent to the Members of the honor council, which was not supposed to fall into MR. POLO'S hands, MR. SILVER stated "J.C. Planas, who is familiar from practice with both Judge Bernstein and Mr. Polo and will provide us with relevant information at the hearing…" "Please remember that all the attachments to this email and the body of the email are highly confidential communications."

92. The only information Mr. Planas had from practice, as the attorney of a then-candidate for U.S. Congress Maria Elvira Salazar ("Salazar"), was that MR. POLO'S, publicly accused Salazar and State Representative Daniel Perez of having ties with the Cuban Dictatorship, and that MR. POLO promised to fight judicial corruption in the Family Court system on the campaign trail and social media. Moreover, MR. POLO had also accused publicly Nelson Diaz (the then chair of the Republican party in Miami), who was friends with Mr. Planas, of corruption in the Miami GOP.

93. MR. POLO'S political views were brought up by MR. SILVER when he stated to MR. POLO: "There was a post in your political campaign social media account in which you posted a picture depicting a group of Democrats in Congress dressing in white, on one side, and another

group of Nazis dressing in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

94. When MR. POLO heard this, he researched the member of the Honor Council and found that all of them were all democrats.

95. The Members of the committee, all, knew that (1) DEFENDANT JUDGE BERNSTEIN was the real accuser behind the Honor Council's proceeding; (2) they knew MR. POLO was innocent of the allegations DEFENDANT JUDGE BERNSTEIN made on his order of recusal; (3) they knew they were acting under color of state law; (4) they knew that DEFENDANT JUDGE BERNSTEIN was, maliciously, coming after MR. POLO career as MR. POLO had predicted in his affidavit.

96. At the end of the hearing, MR. SILVER told MR. POLO that they were going to deliberate and give him the results later that night. The following day, at 4:21 AM, MR. SILVER sent an email to MR. POLO said that they were going to resume deliberations on the following Tuesday, March 5, 2019.

97. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

98. "(1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote."

99. After the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things DEFENDANT JUDGE BERNSTEIN alleged in his Order of Recusal. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to initiate a second honor council proceeding.

100.     As of March 23, 2019, STU had already decided to remove Mr. Polo from the school even before the proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

101.     On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council proceeding to take place on April 4, 2018.

102.     This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

103.     On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

104.     STU's management knew that the new allegation could be a result of Mr. Polo's lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA"). STU Defendant Employees knew the symptoms of MR. POLO'S condition included memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms which may have produced those results they were complaining about.

105.     When MR. POLO asked who his accuser was, MR. SILVER refused to disclose to MR. POLO that DEFENDANT JUDGE BERNSTEIN was the accuser promoting the initiation of an honor proceeding against MR. POLO. Nevertheless, the committee was already in possession of DEFENDANT JUDGE BERNSTEIN'S letter with the attached Order of Recusal.

106.     Professor Silver identified the accuser as DEAN LAWSON, who did not have personal knowledge of any of the raised accusations.

107.     STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had

forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

108.      No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

109.      STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

110.      STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

111.      Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

112.      Even when the Fla. Rules Regulating the Florida Bar 4-8.3 mandates that "[a] lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority" none of STU Defendant Employees (all attorneys) reported Judge Bernstein for coming out of his jurisdiction to initiate a political witch-hunt against Mr. Polo and for making comments in his Order of recusal against the Fla. Sup. Ct. mandate which prohibits such conduct.

113.      The appeal was a meeting with DEAN LAWSON and DEAN MOORE, which lacked any safeguards included in due process. During the appeal, MR. POLO'S incursion into politics came again. Dean Moore asked MR. POLO why he ran for office. MR. POLO told Ms. Moore that his political activities had nothing to do with the school, and she replied "Yes it does. Because you challenged the authority of Dean Hernandez when he told you not to engage in any employment or external activities." That was another misrepresentation and a pretext because the requirement not to engage in employment or external activities was until MR. POLO had improved his GPA, and STU had even employed MR. POLO as a research assistant.

114.      During the meeting, MR. POLO explained once more that he may have forgotten to disclose information in his application because of his diagnosed cognitive disability and Ms.

Lawson responded "I, don't think your problem is cognitive, but think your problem is one of honesty," when she knew that MR. POLO'S wife who was seating right next to the door. Mr. Polo suffered humiliation in front of his wife.

115.     STU's honor code, Section 3.03 (A)(3), states in pertinent part "The Honor Council SHALL not be used to resolve personal conflicts."

116.     However, because of the influence that JUDGE BERNSTEIN exercised on STU, STU used the Honor Council to resolve JUDGE BERNSTEIN'S personal conflicts with MR. POLO, as MR. POLO'S political speech about corruption in the family court system.

117.     STU and STU DEFENDANT EMPLOYEES had also political motivations to get MR. POLO out of Mr. Planas' client's way in retaliation for the accusations MR. POLO was publicly making about Mr. Planas' client,  now congresswoman Maria Elvira Salazar, and his friends State Representative Daniel Perez, and Nelson D. Diaz (then chair of the Miami-Dade County Republican Party) corrupt acts and possible ties with the Cuban Intelligence Services during MR. POLO'S political campaigns and as part of protected political speech.

118.     JUDGE BERNSTEIN falsely accused MR. POLO of claiming to be a member of the Florida Bar, which was a manipulation of the statement MR. POLO had made which was that MR. POLO was a Student Member of the Florida Bar, and St. Thomas knew that Mr. Polo was required to become Student Member of the Florida Bar as part of a class to obtain access to continued Legal Education ("CLE") courses.

119.     STU did not have "clear and convincing evidence" to proof that MR. POLO was not a Student Member of the Florida Bar or that Mr. Polo didn't have a reasonable belief to say that MR. BERNSTEIN was having ex parte communication with MR. SEGARRA." Moreover, becoming a student member of the Florida Bar was a requirement for one of the classes MR. POLO was enrolled in to obtain access to continued Legal Education ("CLE") courses.

120.     Moreover, MR. POLO never had an opportunity to have his case hear by an impartial jury, never have access to the evidence STU DEFENDANT EMPLOYEES were going to present at the hearing, never had an opportunity to confront and cross-examine his accuser, never had an opportunity to be represented by an attorney at the hearing.

121.     STU knew that DEFENDANT MR. SEGARRA, acting on behalf of JUDGE BERNSTEIN, while he was also performing as the attorney/Agent for Ms. Hernandez, and under

color of Law, stepped out of his role of advocate for Ms. Hernandez and stepped into the role of investigator for the ST. THOMAS UNIVERSITY, INC., to provide DEAN LAWSON, MR. SILVER, and DEAN MOORE with the pretext STU needed to continue with the unconstitutional proceeding to arbitrarily, capriciously, and maliciously breach the contract STU had with Mr.Polo.

## F. FACTS APPLYING TO COUNTS 6, COUNT 10, COUNT 12

122.    As the result of the implied in-law agreement MR. POLO had with ST. THOMAS UNIVERSITY, INC., MR. POLO and his children had a property interest in the continued enrollment of MR. POLO at STU. They also had a liberty interest in their good name, reputation, honor, and integrity.

123.    STU, through their agents, STU DEFENDANT EMPLOYEES, capriciously, arbitrarily, and maliciously breached the contract STU had with MR. POLO, and deprived the Plaintiffs of their property interest in the continued enrollment at STU, and of the liberty interest in their family name, reputation, honor, and integrity without affording Mr. Polo due process of law.

124.    DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, and MR. SEGARRA, acting as agents of the DEFENDANT JUDGE BERNSTEIN; therefore, acting under color of state law, commenced and maintained the Honor Council proceeding against MR. POLO.

125.    As an inquisitory proceeding initiated on behalf of a government actor, the proceeding (1) did not have an impartial adjudicator, (2) did not provide access to evidence that was being used against MR. POLO, (3) did not provide an opportunity to confront Mr. Planas and Mr. Bernstein, (4) did not permit MR. POLO to be present during Mr. Planas' testimony, (5) did not provide a summary of Mr. Planas' testimony before the hearing, (6) was politically motivated, and (7) used pretexts to deprive the Plaintiffs of their interest in property and liberty without due process of law.

126.    Private institutions do not have to follow the same requirements of due process as government institutions must when depriving individuals of interest in property or liberties.

127.    STU initiated the proceeding on behalf of Judge Bernstein to accomplish what Judge Bernstein could have not accomplished without STU's intervention, depriving Mr. Polo of

his interest right in the continued enrollment at STU and his liberty interests in their good name, reputation, honor, and integrity without due process of law.

128.     The expulsion of MR. POLO from STU resulted in a permanent record of dishonorable expelling in Mr. Polo's academic file. Such a record creates a stain, not only on Mr. Polo's good name, reputation, honor, and integrity but also on MR. POLO'S family's good name, reputation, honor, and integrity which will follow him and his family for life.

129.     But for JUDGE BERNSTEIN'S act of sending the letter to ST. THOMAS UNIVERSITY, INC., and the participation of MR. SEGARRA providing misleading information/filings, in conspiracy with STU DEFENDANT EMPLOYEES, the unconstitutional proceeding had never taken place, and the Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and liberty interests in their good name, reputation, honor, and integrity.

130.     But for the acts of DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS of instituting, maintaining, and continuing the proceeding without providing MR. POLO Due Process of Law before Depriving the Plaintiffs of their property and liberty interest, Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and liberty interests in their good name, reputation, honor, and integrity.

131.     As the President of STU, DAVID A. ARMSTRONG had a duty to act to prevent the violations of MR. POLO and his children's constitutional rights when he found out that the procedure was instituted for political reasons and personal reasons under color of state law. However, MR. ARMSTRONG breached his duty when he failed to act to prevent further dames to the plaintiffs

### G. FACTS APPLYING TO COUNTS 7, COUNT 10, COUNT 12.

132.     The lower court lost jurisdiction as of September 14, 2018, after the Court rendered a final judgment without reserving jurisdiction to adjudicate attorney's fees, and after the time to file for rehearing had lapsed; however, JUDGE DEL REY continued exercising Jurisdiction in clear absence of all clear jurisdiction with the intent of harming MR. POLO and his children in retaliation for Mr. Polo's Political Speech and to protect Judge Bernstein from civil liability.

133.     On or about January 18, 2019, Polo's attorney, Mr. Ceballos file a motion to withdraw, which JUDGE DEL REY granted on or about March 6, 2019.

134.     JUDGE DEL REY, intentionally and maliciously allowed Mr. Ceballos to withdraw knowing that she was leaving MR. POLO without an attorney when there was a current order preventing MR. POLO from filing ANYTHING in the docket.

135.     Additionally, MR. POLO asked to get an evidentiary hearing to vacate the two orders Preventing MR. POLO from filing anything. To which JUDGE DEL REY responded, "Given the history of this Case, I would not vacate the current order on file."

136.     The only history of the case was that Mr. Polo had publicly denounced the corruption in the family court system, and Judge Bernstein fabricated a case against Mr. Polo to come after Mr. Polo for his political speech.

### H. FACTS APPLYING TO COUNTS 8, COUNT 10, COUNT 12

137.     MR. POLO'S attorney Mr. Genova filed a motion to withdraw, which JUDGE DEL REY heard on or about April 15, 2021, and she finally granted on May 5, 2021.

138.     MR. POLO opposed Mr. Genova's withdrawal on the basis that the Second Vexatious Order dated October 2, 2018 (the second order), was preventing MR. POLO access to the court and that the order on file was unconstitutional.

139.     JUDGE DEL REY answered similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw."

140.     During the hearing, Polo told the judge: "there is no evidence on the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and JUDGE DEL REY responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?"

141.     DEFENDANT MR. SEGARRA knew that MR. POLO was about to file in Federal court through a Cease-and-Desist letter that MR. POLO sent to DEFENDANT MR. SEGARRA'S client. Therefore, during the hearing DEFENDANT MR. SEGARRA tried on different occasions to get JUDGE DEL REY to reinstate the First Vexatious Order, which she never realized he was trying.

142.     Upon information and belief after the hearing, the opposing counsel, DEFENDANT MR. SEGARRA, engaged in ex parte communication and coordinated with Judge's del Rey behind MR. POLO'S back, to change her oral holding in the new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting MR. POLO'S access to the court.

143.     JUDGE DEL REY entered an order amending Mr. Polo's right to access the court after she had said she would not do it, and she rendered the order amending Mr. Polo's rights to file without a hearing and an opportunity to be heard.

144.     The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change MR. POLO'S access to the court, MR. POLO was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered.

## I.  FACTS APPLYING TO COUNTS 9, COUNT 10, COUNT 12

145.     The lower court lost jurisdiction as of September 14, 2018; after the Court rendered a final judgment without reserving jurisdiction to adjudicate attorney's fees, and after the time to file for rehearing had lapsed; however, JUDGE DEL REY continued exercising Jurisdiction in the clear absence of all jurisdiction with the intent of harming MR. POLO and his children in retaliation for Mr. Polo's Political Speech and to protect Judge Bernstein from civil liability.

146.     On July 29, 2019, MR. POLO timely filed and served his exception to the General Magistrate's report.

147.     MR. POLO'S attorney, influenced by the court and MR. SEGARRA intentionally failed to ask for a hearing on the timely filed exceptions, to allow the other side to have a frivolous argument to continue delaying the case.

148.     On September 10, 2019, forty-five (45) days after the filing of the exceptions, JUDGE DEL REY intentionally violated MR. POLO'S right to due process by entering an order ignoring the exceptions, and saying that the exceptions were never filed.

149.     Moreover, MR. POLO'S attorney filed a motion to vacate the September 10, 2019, order, and JUDGE DEL REY intentionally, once more, violated MR. POLO'S right to due process by denying MR. POLO'S attorney motion to vacate Judgment.

150.    JUDGE DEL REY was maliciously creating additional procedural loops to make MR. POLO lose his case and generate unnecessary appeals. However, MR. POLO appealed her decision, and the decision was reversed.

151.    Moreover, she intentionally engaged in retaliatory acts outside all clear jurisdiction when she continued to exercise jurisdiction with the malicious intent to harm the plaintiffs.

152.    JUDGE DEL REY prevented Mr. Polo from having a fair and just trial, with an impartial adjudicator, when she prevented Mr. Polo's Timely Filed Exceptions from being heard, and when she exercised jurisdiction over a case she knew was precluded by res judicata.

## J.  FACTS APPLYING TO COUNTS 10, COUNT 12,

153.    The DEFENDANTS engaged in a retaliatory scheme to prevent MR. POLO from engaging in free speech, and they did accomplish this when Mr. Polo had to publicly refrain from talking about the corruption in the family court during his political campaigns.

154.    During Lilliana Real's (the "GAL") first visit to Mr. Polo's house, Ms. Real insinuated to MR. POLO that she was friends with JUDGE BERNSTEIN and that JUDGE BERNSTEIN was going to do in the case what she was going to tell him. Even though MR. POLO understood this as an offer to buy her illegal services, MR. POLO ignored it.

155.    Thereafter Ms. Real started twisting the balance of the law, by first falsely creating an emergency and pretending that she was worried about Mr. Polos' children's safety without having probable cause.

156.    Ms. Real, Ms. Hernandez, Ms. Hernandez's attorneys, and Judge Bernstein to take Mr. Polo's children without a court order, a hearing, and an opportunity to be heard with the malicious intent of making Mr. Polo to act in reliance of his legal right and make things worse for him. However, Mr. Polo waited for 7 days until Judge Bernstein decided to hear the matter and found no probable cause.

157.    Then, Ms. Real filed a late report which contained false allegations to justify not giving MR. POLO the 50% timesharing he had requested from the beginning of the case. DEFENDANT JUDGE BERNSTEIN frivolous denied a motion for continuance, so that MR. POLO did not have time to prepare against the false allegations contained in Ms. Real's report.

158.     Ms. Real claimed in the report that Mr. Polo was building a case against Ms. Hernandez and in support thereof, she said that Mr. Polo had sent pictures of the children with bruises and rashes which did not have dates and/or the children's face.

159.     Ms. Real testified under oath to the truthfulness of the report. Both attorneys, in the case at that time, intentionally failed to have a court reporter in the courtroom to prevent Ms. Real testimony from being recorded and to prevent an appeal. As a result of the report, Mr. Polo was denied 50% timesharing he had requested from the beginning of the case. Moreover, Judge Bernstein gave Ms. Hernandez child support not supported by the law and the facts of the case to prevent Ms. Hernandez from having to pay child support to her children.

160.     MR. POLO obtained evidence showing Ms. Real had lied in court and in her report.

161.     On or about May 26, 2015, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

162.     The Motion to Vacate forced Ms. Hernandez and her attorneys to enter into an Agreed Final Judgment (the "AFJ") to settle the case for 50/50 timesharing.

163.     JUDGE BERNSTEIN quietly signed an illegal Agreed Final Judgment which did not specify what party was to pay Child Support, knowing that Child support cannot be contracted away by the parties.

164.     Nevertheless, JUDGE BERNSTEIN, Ms. Hernandez, and her attorneys began to plan to retaliate against Mr. Polo, for exposing the corruption of Ms. Real, and her co-conspirators.

165.     On or about June 6, 2018, MR. POLO registered to run for a State Representative. During the campaign, and thereafter, Polo engaged in core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System from the State Legislature level, creating thereby interactive communication concerning political change in the court system.

166.     Ms. Hernandez was closely following MR. POLO'S social media, and she reported to DEFENDANT MR. SEGARRA, and thereby to JUDGE BERNSTEIN, about MR. POLO'S open statements about fighting Judicial Corruption in the Family Court System.

167.     Thereafter, DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN became more aggressive in coming after MR. POLO, livelihood, degree in Law, and

career in law in retaliation for MR. POLO'S political speech and affiliation. and political speech against the corruption in the Family Court System, led by JUDGE BERNSTEIN.

168.     To retaliate and deprive MR. POLO of the legal custody of his children without due process of law, the DEFENDANT JUDGE BERNSTEIN substituted the original Order of Referral by another judge, which was sending MR. POLO and Ms. Hernandez to a Co-parenting Coordinator to resolve a school registration issue, by his own order that was talking about a "history of domestic violence."

169.     DEFENDANT JUDGE BERNSTEIN never served MR. POLO with the Order of Referral and domestic violence was never an issue in front of DEFENDANT JUDGE BERNSTEIN. He did so to terminate MR. POLO'S custodial rights by using an outside co-parenting coordinator, which was colluding with DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN to terminate MR. POLO'S parental rights with her "independent" recommendation without due process of law.

170.     Moreover, Defendant JUDGE BERNSTEIN ordered MR. POLO to pay 100% of two years of unwarranted co-parenting sections knowing that MR. POLO, for being indigent, was going to have to be in contempt of court for not having the money to pay the co-parenting fees. Moreover, two years of an unwarranted co-parenting section would have resulted on additional two years in the court system for no reason.

171.     MR. SEGARRA and JUDGE BERNSTEIN entrapped MR. POLO by taking his constitutional right to access the court without notice and opportunity to be heard, knowing that MR. POLO was indigent and was not going to be able to afford to have an attorney to review his filings. They harassed MR. POLO to the point at which MR. POLO was forced to file a Motion to recuse JUDGE BERNSTEIN, which would have allowed JUDGE BERNSTEIN to put MR. POLO in Jail.

172.     The Defendants MR. SEGARRA proposed to Defendant JUDGE BERNSTEIN to issue an order to show cause when Mr. Polo shouldn't be found in criminal contempt and asked Judge Bernstein to Put Mr. Polo in Jail. That attempt failed because Mr. Polo did not have the mental state to be in contempt of court.

173.     After failing in their attempt to put MR. POLO in Jail, DEFENDANT MR. SEGARRA and JUDGE BERNSTEIN, through the other member of the enterprise, Ms. Camacho,

tried to entrap MR. POLO to commit forgery on a transcript signature to put MR. POLO in prison and terminate MR. POLO'S custodial rights.

174.     The STU DEFENDANT EMPLOYEES expelled Mr. Polo from law school without clear and convincing evidence of the allegations made by Judge Bernstein in his Order Granting Disqualification, they allowed JUDGE BERNSTEIN to use the honor proceeding to retaliate against Mr. Polo, and they in fact retaliated against MR. POLO for his political speech.

175.     MAGISTRATE SINGER, in retaliation for MR. POLO exposing the corruption in the family court system, dismissed Mr. Polo petition for Modification of Child Support, sua sponte, based on affirmative defenses not raised by proper pleadings, without notice and opportunity to be heard. Additionally, he engaged in acting adjudicating matters in the case, after a final judgment was rendered, the court had failed to retain jurisdiction to adjudicate attorney's fees, and the time for rehearing had lapsed.

176.     Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO had an obligation to pay child support. Moreover, such a decision was to be made once a bankruptcy case was filed and there was no pending Bankruptcy case.

177.     DEFENDANT JUDGE BERNSTEIN dismissed MS. HERNANDEZ petition to dismiss the action. Therefore, there was no petition to dismiss pending.

178.     JUDGE BERNSTEIN, on multiple occasions, maliciously removed or altered the Plaintiffs' access to the court without notice and opportunity to be heard.

179.     JUDGE BERNSTEIN intended to put Mr. Polo in Jail on multiple occasions using a court reporter to entrap Mr. Polo for forgery, forcing Mr. Polo to be in contempt by removing his right to file documents knowing that Mr. Polo did not have any reasonable access to the court.

180.     JUDGE BERNSTEIN sent the case to a pre-arranged co-parenting coordinator with the purpose of getting a report supporting the removal of Mr. Polo's children when there were no pending issues to be resolved by the co-parenting coordinator.

181.     STU DEFENDANT EMPLOYEES (DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG), initiated and permitted the honor proceeding to start

with no other intent than to intimidate MR. POLO to make him drop the case he had against BERNSTEIN'S co-conspirators, to prevent MR. POLO to bring federal charges against all of them and other co-conspirators, and to silence MR. POLO'S political speech.

182.    MR. SEGARRA and MS. HERNANDEZ coordinated/planned to bring the case back to court with the pretext of getting the children registered in a B-rated school when Mr. Polo had A-rated schools in his zip code when the Mediated Agreement called for the children to be registered in the zip code with the best school.

183.    While JUDGE BERNSTEIN was absent, JUDGE JUDITH KREEGER entered an order of referral sending the case to Family Court Services ("FCS") to schedule a co-parenting coordinator to resolve the issue in front of the court, school registration issue. Upon a finding that MR. POLO was indigent, Judge Kreeger sent the case to the FCS to get pro bono in-house services for six (6) meetings.

184.    After JUDGE BERNSTEIN returned, Ms. Aileen Alvarez (hereinafter "Ms. Alvarez"), the case worker in MR. POLO'S case since 2013, called to tell Mr. Polo she couldn't find a Hispanic-speaking in-house (pro-bono) coordinator in Miami, so she said she was going to call him later. Ms. Alvarez never called MR. POLO but sent the case back to DEFENDANT JUDGE BERNSTEIN.

185.    On April 03, 2017, DEFENDANT JUDGE BERNSTEIN, filed a new and different, order of referral to the parenting coordinator without a hearing, Without MR. POLO consent or knowledge, and without serving MR. POLO with the new order of Referral.

186.    The New order stated that there was a history of allegations of domestic violence, that the parties had an opportunity to consult with an attorney or domestic violence advocate, and that the Parenting coordinator was "with the prior consent of the parties and approval of the court." Moreover, the order extended the six (6) meetings initially scheduled by Judge Kreeger to 24 months of co-parenting coordinator services.

187.    MR. POLO did not have an attorney at that moment, MR. POLO did not consult with any domestic violence advocate, MR. POLO never consented to that referral and there were no allegations of domestic violence, or anything else, pending to be resolved or heard in any court.

188.    On August 01, 2017, DEFENDANT JUDGE BERNSTEIN, on his own motion, called for a Case Management Conference ("CMC"). At the CMC, DEFENDANT JUDGE

BERNSTEIN asks MR. POLO if the issue with the school was resolved. Then MR. POLO responded "Yes, your honor, but..." and DEFENDANT JUDGE BERNSTEIN pretended to be furious and said, "but nothing, I am sending you to a co-parenting coordinator, and you are going to pay 100% of the fees."

189.     MR. POLO told DEFENDANT JUDGE BERNSTEIN that he was indigent, and DEFENDANT JUDGE BERNSTEIN asked, "What school do you go to?" MR. POLO replied, "To St. Thomas, your honor" and DEFENDANT JUDGE BERNSTEIN replied, "Well if you can pay for a private school you can pay for the fees." MR. POLO explained that he pays with student loans, but DEFENDANT JUDGE BERNSTEIN did not care.

190.     On August 1, 2017, MR. POLO went to register with Family Court Services ("FCS"). There, MR. POLO overheard a conversation between the intake worker, and Ms. Aileen Alvarez, in which Aileen told the intake worker, when she handled the case file to Ms. Alvarez, "No, I transferred this case to Nancy Canate [hereinafter "Ms. Canate"], the mother, in this case, is best friends with Nancy's aunt." MR. POLO knew that Ms. Hernandez did not have any friends in Family Court services.

191.     When MR. POLO finished completing the intake, the intake worker told him that his case manager was not there and that he had to return later. MR. POLO concerned about what he had heard told the lady, "I know what you are all up to, you are referring this case to an outside co-parenting coordinator to return a report saying that I am not a good fit for my children and, thereby, remove the custody of my children from me. I overheard your conversation with Ailing Alvarez."

192.     Five months later Ms. Canate contacted MR. POLO for him to register with an outside co-parenting coordinator. On or about January 2, 2018, MR. POLO called Lisette Beraja ("Ms. Beraja" or the "Coordinator") to register. MR. POLO told the coordinator that he was indigent and did not have the resources to pay. Then, MR. POLO told her that he was concerned about what he had heard in the FCS's office and that he knew everything was arranged for her to return an unfavorable report against MR. POLO.

193.     After that, MR. POLO sent an email summarizing what was said over the phone to Ms. Beraja, she answered denying any knowledge of MR. POLO'S allegations. Ms. Beraja sent

the case back to the court, and the court and the other side remained silent with regard to enforcing the co-parenting coordinator meetings.

194.     MR. SEGARRA coordinated with JUDGE BERNSTEIN to bring the case to court on October 24, 2017, noticing the hearing as a hearing on competing orders; however, the real intent was of removing the Plaintiffs' constitutional right to access the court without due process.

195.     For this MR. SEGARRA generated a list of motions he said were opened in the system, and show this to JUDGE BERNSTEIN and JUDGE BERNSTEIN played along pretending to be angry for this he removed the Plaintiffs' access to the court without notice or opportunity to be heard.

196.     MR. SEGARRA and MS. HERNANDEZ, knowing that there were no pending issues to bring to the co-parenting coordinator, continue with the plan they had with Judge Bernstein and MS. HERNANDEZ registered with family court system knowing that the referral was a setup to remove Mr. Polo's children without due process of law.

197.     MR. SEGARRA, maliciously, also participated in the honor council proceeding, while he was being paid by MS. HERNANDEZ, as an investigator for STU by providing misleading information to STU, in order for STU to deprive Mr. Polo of his property interest on the continued enrollment at STU.

198.     After September 14, 2018, when the court lost jurisdiction, JUDGE DEL REY AND JUDGE SPENCER MULTACK, continued to exercise jurisdiction and to file orders while there was a clear absence of Jurisdiction and MR. SEGARRA continued to harass Mr. Polo with motions for attorney's fees not warranted by facts of law.

199.     JUDGE DEL REY continued the harassment JUDGE BERNSTEIN had initiated and maliciously removed or/and altered the Plaintiffs' access to the court on multiple occasions without notice and opportunity to be heard. Moreover, she allowed Mr. Polo's attorneys to withdraw, knowing that Mr. Polo could not file anything in court.

200.     JUDGE DEL REY entered orders without having jurisdiction and prevented Mr. Polo from filing anything in the docket without having a notice issued and the opportunity to be heard on multiple occasions to intimidate MR. POLO and silence him about the corruption in the Family Court.

201.     JUDGE DEL REY, despite the simple command of the law denying judicial discretion when it comes to holding a hearing on timely filed objections to general magistrate report, denied a hearing on the timely filed objections.

202.     Judge del Rey Engaged in dilatory tactics to give Mr. Segarra additional argument to day MR. POLO had delayed the case.

203.     On July 11, 2022, JUDGE MULTACK maliciously entered an ex parte order, without notice or opportunity to be heard stating that MR. POLO was in violation of Rules Regulating the Florida Bar Rule 4-3.5(a) and Rules Regulating The Florida Bar Rule 4-35.5(b), which are applicable to attorneys only, with the objective of providing bases for Mr. Segarra to continue attacking MR. POLO in two pending motions for attorney's fees, for which JUDGE MULTACK did not have jurisdiction to hear.

204.     On the same date, July 11, 2022, JUDGE MULTACK issued another order limiting MR. POLO'S access to the court. However, during the hearing JUDGE MULTACK said he was going to remove MR. POLO'S restrictions on accessing the court; nevertheless, he filed a different order limiting access to file. The hearing was never noticed as a motion to show cause why MR. POLO'S rights shouldn't be limited, removed, or altered, and MR. POLO did not get an opportunity to be heard.

205.     The acts of JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES' DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG intimidated MR. POLO on multiple occasions and forced MR. POLO to change the speech to other subjects, but the corruption in the Family Court System.

### K. FACTS APPLYING TO COUNT: 11

206.     On the same date, JUDGE MULTACK issued another order limiting MR. POLO'S access to the court. However, during the hearing, JUDGE MULTACK said he was going to remove MR. POLO'S restrictions on accessing the court; nevertheless, he filed a different order limiting MR. POLO'S right to file documents.

207.     After the hearing there was no notice or opportunity to be heard before JUDGE MULTACK changed his ruling, and no opportunity to be heard. There was never noticed as a

motion to show cause why MR. POLO'S rights shouldn't be limited, removed, or altered, and MR. POLO did not get an opportunity to be heard.

## L.  FACTS APPLYING TO COUNT: 12

208.      After DEFENDANT JUDGE BERNSTEIN and Segarra failed to put MR. POLO in Jail with the initial plan, on February 22, 2019, MS. CAMACHO tried to entrap MR. POLO to commit forgery by asking him to sign the transcripts for her, which MR. POLO refused to do.

209.      Mr. Ceballos refused to file the motion to recuse and told MR. POLO that if MR. POLO was to proceed with the motion to recuse, DEFENDANT JUDGE BERNSTEIN, and any judge coming after Bernstein would come after Polo and destroy his life.

210.      Moreover, during a personal conversation at Mr. Ceballos' office, Mr. Ceballos told MR. POLO that if MR. POLO was to call him to testify about what he had just said, he would say that MR. POLO was lying and threatened MR. POLO with withdrawing representation if MR. POLO was to file the Motion to recuse.

211.      Thereafter, MR. POLO sent an email summarizing the above-mentioned conversation and demanding that Mr. Ceballos file the motion to recuse, which forced Mr. Ceballos to file the motion.

## M. FACTS APPLYING TO COUNT: 17

212.      Upon information and belief, the GAL, Lilli J. Real, moved out of Miami-Dade Country to file for Bankruptcy in Jacksonville where DEFENDANT JUDGE BERNSTEIN'S friend and Law School peer, JUDGE BRIAN DAVIS, was going to facilitate Ms. Real's bankruptcy and prevent MR. POLO from bringing any claims in federal court against Ms. Real.

213.      The claims MR. POLO had against Ms. Real were those willful and malicious injuries described as non-dischargeable in bankruptcy under § 523(a)(6). Nevertheless, JUDGE FUNK, with the intent of preventing MR. POLO'S success ruled that MR. POLO'S causes of actions against Ms. Real were dischargeable.

214.      The Federal court and the State Court had concurrent jurisdiction to decide the issue of Dischargeability under §523.

215.     MR. POLO filed with the state Court, where MR. POLO had an open case against Ms. Real, a Motion for Declaratory Judgment asking the Court to determine whether MR. POLO'S claims against Ms. Real were exempt from discharge.

216.     Ms. Real's attorney filed a motion for sanctions in the Middle District of Florida for MR. POLO filing his Motion for Declaratory Judgement and JUDGE FUNK granted the motion when MR. POLO'S petition for determination of dischargeability did not violate any law.

217.     Moreover, the evidence presented in the Federal court shows that Ms. Real knew MR. POLO'S actual place of abode; nevertheless, Ms. Real served MR. POLO at MR. POLO'S mother's address, leaving the court without personal jurisdiction over MR. POLO.

218.     MR. POLO filed a timely motion to dismiss for lack of personal jurisdiction, which Judge Jerry A. Funk (hereinafter "JUDGE FUNK"), denied against U.S. Supreme Court rulings.

219.     JUDGE FUNK prevented MR. POLO from testifying by telling MR. POLO that he was going to allow all evidence in and by cutting off MR. POLO'S testimony to prevent MR. POLO from entering further verbal testimony.

220.     JUDGE FUNK ruled that MR. POLO'S testimony was not credible, to prevent success in any further appeal. Nevertheless, the evidence in front of JUDGE FUNK showed that Ms. Real was the only one lacking credibility for filing a false and misleading report in the Family Court case.

221.     MR. POLO appealed the case to the District Court for the Middle District of Florida, and the appeal was handled by JUDGE DAVIS, who, upon information and belief, was DEFENDANT JUDGE BERNSTEIN'S Law School peer.

222.     JUDGE DAVIS denied the appeal and ruled that because the "Creditor has consistently listed 1475 SW 8th Street as his address, including in the state court proceedings and the bankruptcy case [which is factually wrong]. He cannot now claim that he did not receive adequate notice and service by being contacted at that address" and he cites Van Brunt, 158 (S.D.N.Y. 1994).

223.     Every document MR. POLO filed with the Jacksonville Court contained MR. POLO'S actual place of abode and not the 1475 SW 8th Street address. Nevertheless, JUDGE

FUNK served most, if not all, appealable orders to MR. POLO'S mother until MR. POLO failed to timely appeal due to the fact that he received the filing too late.

224.     When MR. POLO was taken to the honor council, the appeal with JUDGE DAVIS was still pending. Nevertheless, Professor Jay Silver asked MR. POLO about the case, and when MR. POLO said that he expected to win the case on appeal, Professor Silver Sarcastically smiled at MR. POLO and said, "year right."

225.     Professor Silver also used JUDGE FUNK'S credibility statement in his opinion to put MR. POLO'S credibility in doubt in front of the honor council.

226.     JUDGE ROY K. ALTMAN

227.     On October 8, 2021, MR. POLO filed (1) an Emergency Petition For Ex Parte Application for Temporary Restraining Order; Order To Show Cause Why A Preliminary Injunction Should Not Issue, And Memorandum In Support Thereof; (2) and a Motion for Leave to Proceed in Forma Pauperis. MR. POLO asked the Ex-Parte TRO to be issued, along with the Order to show cause, by 4:00 PM October 8, 2021. The petition stated, under §9, that MR. POLO had a hearing on October 12, 2021, where the state court was going to violate MR. POLO'S access to the court without due process once more.

228.     On the same day, Judge William P. Dimitrouleas was assigned to the case, then Judge Federico A. Moreno, and finally JUDGE ROY K. ALTMAN.

229.     On the same date, the 11th District Court's Clerk stated that "Summons(es) cannot be issued. The motion to proceed in forma pauperis is pending."

230.     October 12, 2021, came by and JUDGE ALTMAN had not heard the Emergency motion, and MR. POLO was forced to appear in State court without access to the court in an evidentiary hearing where he had to file evidence, but the State Court rejected every single document MR. POLO submitted into evidence.

231.     On Oct 19, 2021, JUDGE ROY K. ALTMAN, issued an order Referring Case to Magistrate Judge AND Order Referring Motion. Doc. 10.

232.     On or about Oct 21, 2021, MR. POLO filed an amended Petition for Temporary Restraining Order Relief and Petition for Order to Show cause, where he was leaving out the emergency request because MR. POLO'S and his children's rights were already violated on

October 12, 2021. The new petition was asking for expedited issuance of the TRO by November 26, 2021. Doc. 11.

233.    On Nov 2, 2021, the Magistrate files her Report and Recommendations, recommending the petition for injunctive relief to be denied based on nonapplicable law.

234.    On Nov 10, 2021, MR. POLO filed his "Objections to Report and Recommendations."

235.    On Jan 14, 2022, MR. POLO files a motion to expedite requesting the Judge to expedite the issuing of the injunction to prevent being further damaged by the State court, and to issue this by January 20, 2019.

236.    On January 27, the court had not issued the TRO and order to show cause; therefore, MR. POLO was forced once more to litigate without access to the court in State Court.

237.    As of February 6, 2022, four months after the initial filing, Judge Kalman had not ruled on the petition for TOR, and petition to Proceed in Forma Pauperis. Consequently, MR. POLO had to withdraw his (1) Amended Petition For Ex Parte Application For Temporary Restraining Order; Order To Show Cause Why A Preliminary Injunction Should Not Issue, And Memorandum In Support Thereof; (2) and the Motion for Leave to Proceed in Forma Pauperis.

## § 6. COMPLAINT

### COUNT: 1.    DEPRIVATION OF PLAINTIFFS' CONSTITUTIONAL RIGHT TO ACCESS THE COURT IN VIOLATION OF FLORIDA AND THE US CONSTITUTION WITHOUT DUE PROCESS OF LAW, UNDER 42 U.S.C. § 1983.

238.    Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (the "DEFENDANTS" throughout this Count), did the following:

239.    The DEFENDANTS JUDGE BERNSTEIN, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

240.    After Judge Bernstein name Lilliana Real as the Guardian Ad Litem in Mr. Polo's case, Judge Bernstein engaged in a series of acts resulting in depravation of the Plaintiffs' right to access the court. Such depravation persists until today.

241.     On February 10, 2014, MR. POLO sent Ms. Real an email stating, among other things, "[T]omorrow will be the last time I will see my children. I am giving them to Merlin [Ms. Hernandez] after that."

242.     On February 11, 2014, when MR. POLO had legal custody of his children, MS. GRANDA, MS. REAL, MR. LOSA asked MS. HERNANDEZ to remove the children from the daycare without a court order. MS. HERNANDEZ, and MR. MARTINEZ removed MR. POLO'S children from Polo's custody and detained the children until seven days later with the malicious consent and approval of JUDGE BERNSTEIN and without a court order.

243.     MERLIN HERNANDEZ and RANDOLPH MARTINEZ physically removed the children from the daycare without MR. POLO'S consent and they harbored the children for seven (7) days without ever returning the children, knowing there was no judicial order granting them the right to remove the children, nor probable cause to remove the children.

244.     MR. POLO never consented to anyone removing the children, and MS. GRANDA, MS. REAL, MR. LOSA, MR. MARTINEZ and JUDGE BERNSTEIN were all parties outside the relationship of MR. POLO with his children.

245.     When Ms. Hernandez's attorneys filed the emergency motion to remove timesharing, they intentionally and maliciously left out exculpatory language when they drafted the Emergency Motion for Removal of Custody (the "Emergency Motion").

246.     Additionally, Ms. Real, knew that MR. POLO had a legal right to custody, and legal right to be with his children on February 11, 2014; however, she sent an email to the daycare inciting the daycare to call the Police if MR. POLO was to exercise his legal right to custody.

247.     At least, as of February 13, 2014, Judge Bernstein knew that Mr. Polo's children were removed without notice and opportunity to be heard, and MR. POLO never received a notice of a hearing before the Plaintiffs were deprived of their constitutionally protected right of MR. POLO to freely exercises the care, custody, and control of his children, and The children freely receive the care, custody, and control of their father.

248.     On February 18, 2014, the day of the hearing, Judge Bernstein filed a copy of the Emergency Motion, with a note stating that it was not an emergency.

249.     The facts observed by DEFENDANT JUDGE BERNSTEIN, on February 13, 2014 when he received the Amended Emergency Motion and its attachment, would have warranted a reasonable person to believe that there was NOT probable cause to remove the children. Nevertheless, DEFENDANT JUDGE BERNSTEIN intentionally, maliciously, and in conspiracy with Ms. Real and all other involved attorneys, delayed the return of the children without probable cause expecting to provoke Polo's impulsive (without thinking) reaction, which never occurred. MR. POLO remained calm, and DEFENDANT JUDGE BERNSTEIN had to dismiss the motion to remove custody for lack of probable cause.

250.     Because of the deprivation of Mr. Polo's right to access the court, without notice and opportunity to be heard, MR. POLO'S custodial relationship was harmed when the relationship was broken, MR. POLO was unable to exercise, and the children were unable to enjoy custody and companionship of each other for seven (7) days.

251.     Therefore, the DEFENDANTS JUDGE BERNSTEIN, deprived the plaintiffs of their constitutional right to access the Courts before the liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO'S children were removed without notice, hearing, and opportunity to be heard. The Plaintiffs suffered deprivation of access to the court in violation of the Plaintiffs' 5th and 14th Amendment right to Due Process of Law.

252.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

253.     If not enjoined by this Court, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN will continue to, or will conspire with others to deprive the plaintiffs, without due process of law, of their right to Access the court before the plaintiffs' right to MR. POLO freely exercises the care, custody, and control of MR. POLO'S children, and the children freely receive the care, custody, and control of their father is removed.

254.     The Plaintiffs are entitled, pursuant to 42 U.S.C. § 1988, to recover their costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

255.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

256.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN as follows:

Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN, from violating, or conspiring to violate with anyone, the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding attorney's fees, and costs, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988 for the deprivation of MR. POLO'S protected rights without due process of law.

Awarding attorney's fees, and costs, against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1988.

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

### COUNT: 2.        DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS, WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983 AND FLORIDA CONSTITUTION.

257.       Plaintiffs re-alleges paragraphs 44 through 237 and further state that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

258.       The DEFENDANT JUDGE BERNSTEIN, in all his actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

259.       After MR. POLO subpoenaed information showing that JUDGE BERNSTEIN'S appointed Guardian Ms. Real, lied in her report and perjured herself under oath, Ms. Hernandez was forced to settle, and DEFENDANT JUDGE BERNSTEIN signed an illegal order not to pay child support to silence MR. POLO, depriving, thereby, MR. POLO'S children of their right to parental support.

260.       In retaliation for exposing JUDGE BERNSTEIN'S GAL, DEFENDANT JUDGE BERNSTEIN decided to damage MR. POLO'S career in law.

261.       After the case was already closed, taking advantage of an honest dispute over the interpretation of the MSA, JUDGE BERNSTEIN, maliciously, arranged with Ms. Granda, with

who he was having ex-parte communication with, and thereby, with MS. HERNANDEZ, to bring the case back to court to begin damaging MR. POLO'S career in law.

262.     On November 23, 2015, Ms. Hernandez's attorney, Ms. Granda, set a hearing to "Enforcer the MSA." On that hearing, DEFENDANT JUDGE BERNSTEIN refused to address the disputed terms of the agreement and maliciously waited until after MR. POLO had taken the children to Orlando to file an order which did not address the issue of interpretation and contained vague language which did not put MR. POLO on notice of any consequences for taking the children on vacation.

263.     Once MR. POLO returned from vacation with his children, Ms. Hernandez and Ms. Granda maliciously filed a Motion for Contempt with the only purpose of damaging MR. POLO'S career in law with the help of JUDGE BERNSTEIN.

264.     In a non-evidentiary telephonic hearing held on February 2, 2016, MR. POLO explained that the MSA did not provide a clear and definite statement, making MR. POLO aware of the court's command giving Ms. Hernandez's holiday schedule priority over MR. POLO'S vacations. Nevertheless, DEFENDANT JUDGE BERNSTEIN did not care and granted Ms. Granda attorney's fees without an evidentiary hearing as to the reasonableness of the hours or rates of the attorney's fees as required by Florida law and did not provide MR. POLO with a meaningful hearing and proper notice. Therefore, JUDGE BERNSTEIN violated the plaintiff(s) right to access the court without due process of law.

265.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

266.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN through other judges, will continue to deprive the plaintiffs, without due process of law.

267.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s)

suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

268.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN as follows:

Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and JUDGE BERNSTEIN from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 3.        DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

269.        Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

270.        The DEFENDANT JUDGE BERNSTEIN, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

271.        On ***October 3rd, 2017***, the DEFENDANT MR. SEGARRA noticed a hearing for ***October 24, 2017***, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties."

272.        On ***October 24, 2017***, the hearing was held, but the hearing was not so much about competing orders, but about removing MR. POLO'S right to access the court by naming MR. POLO vexatious without notice and opportunity to be heard.

273.        DEFENDANT JUDGE BERNSTEIN named MR. POLO a vexatious litigant preventing him from filing any "further pleadings, motions, or letters to the court ...." without "having the same reviewed by a Member of the Florida Bar."

274.        However, the DEFENDANT JUDGE BERNSTEIN ordered the Clerk's office not to accept any filing from MR. POLO, despite his order which did not prevent MR. POLO from entering other documents but pleadings, motions, or letters to the court.

275.        JUDGE BERNSTEIN knew MR. POLO was declared Indigent by the court and, therefore, was unable to retain counsel.

276.        JUDGE BERNSTEIN'S hearing held on August 24, 2017, was never noticed as a hearing to remove MR. POLO'S access to the court.

277.      MR. POLO never received an order to show cause why he shouldn't be named vexatious. Therefore, MR. POLO never had a meaningful opportunity to be heard.

278.      Therefore, DEFENDANT JUDGE BERNSTEIN, deprived MR. POLO and his children of access to the court in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

279.      The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

280.      If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, through other judges, and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

281.      As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10)  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

282.      **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN as follows:

Declaring that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining MR. SEGARRA, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and DEFENDANT JUDGE BERNSTEIN from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 4.      DEPRIVATION OF PLAINTIFFS' RIGHT TO ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

283.      Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

284.      The DEFENDANTS JUDGE BERNSTEIN, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, (all together referred to as the "DEFENDANTS" throughout this Count), in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

285.     There was a hearing held on October 2, 2018, which was **never noticed** as a hearing to remove or alter MR. POLO'S access to the court rights.

286.     However, on October 2, 2018, DEFENDANT JUDGE BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order prevented MR. POLO from filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. These allegations contained in the order were later used by Judge Bernstein to get STU to expel Mr. Polo.

287.     MR. POLO never received an order to show cause why he shouldn't have his rights to file were to be totally removed on the October 2, 2018 hearing.

288.     Therefore, DEFENDANT JUDGE BERNSTEIN violated, the plaintiff's Federal and Florida State Constitutional Rights to Access the Court, without Due Process of Law in direct violation of 42 U.S.C. Section 1983, in violation of Plaintiff's Fifth and Fourteenth Amendment Rights to Due Process.

289.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

290.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, DEFENDANT JUDGE BERNSTEIN, and DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

291.     As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and

MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10)  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

292.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and DEFENDANT MS. HERNANDEZ as follows:

Declaring that, DEFENDANT JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA and DEFENDANT MS. HERNANDEZ, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANT JUDGE BERNSTEIN , and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 5.     ARBITRARY, CAPRICIOUS, AND MALICIOUS BREACH OF IMPLIED IN LAW CONTRACT

293.     Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC., through its agents, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, did the following:

294.    MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

295.    MR. POLO and STU were engaged in the performance of their agreement until STU was just weeks away from graduation when JUDGE BERNSTEIN interfered with the contract and influenced STU to breach the contract.

296.    Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU, and he was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

297.    MR. POLO was over 43 years old, with an untreated attention deficit, and Neurocognitive impairments before he began law school; nevertheless, he performed at his best being an excellent student who received (1) the CALI Excellence for the Future Award; (2) Excellence in Academic Studies (Dean List) spring 2017; (3) Excellence in Academic Studies (Dean List) Fall 2017; (4) Pro Bono Commendation; (5) was a member of the Tax Law Society; (6) Student Member of Florida Bar's Tax Division; and (7) a member of Hon. Peter T. Fay American Inn of Court (on multiple occasions).

298.    MR. POLO participated in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

299.    JUDGE BERNSTEIN, in the clear absence of all jurisdictions, sent a letter to DEAN LAWSON, which contained false allegations and manipulated facts, which DEAN LAWSON, MR. SILVER and DEAN MOORE needed to proceed with the plan they had to terminate the Plaintiffs' property and liberty interest in MR. POLO'S continued enrollment at ST. THOMAS UNIVERSITY, INC., and to interfere with MR. POLO'S contract with STU.

300.     The order of recusal was carefully drafted before the hearing on MR. POLO'S Motion to Recuse, and was maliciously drafted in violation of Florida Law, which prohibits a Judge from engaging in discussions of the merits of the Motion of Recusal.

301.     Two days after the January 29, 2019 hearing, on January 31, 2019, JUDGE BERNSTEIN sent a letter to STU's DEAN LAWSON. The letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal, and called for the schools to act upon it. Therefore, JUDGE BERNSTEIN and his co-conspirators were acting under color of state law.

302.     STU's DEFENDANT EMPLOYEES prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter and order of recusal the DEFENDANT JUDGE BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing.

303.     After DEFENDANT JUDGE BERNSTEIN sent the letter to STU, the school initiated an honor proceeding to end MR. POLO'S Career in Law based on the false allegations contained in DEFENDANT JUDGE BERNSTEIN Order of Recusal more specifically, on the following allegations:

> "The court's order mentions various violations of court rules, and most specifically alleges 'at least two direct misrepresentations: 1) that [Judge Scott Bernstein] had an ex parte communication with DEFENDANT MR. SEGARRA, and 2) that MR. POLO was a "member" of the Bar. Each of these misrepresentations constitutes bad faith.' The court's order further articulates that you abused the court system by *filing repetitive and frivolous motions, as well as interfered with the functioning of the judge's office* by incessantly calling the judicial assistant."

304.     On ***February 7, 2019***, MR. POLO received an email containing a letter in which Ms. Lawson, basically was saying that MR. POLO was guilty of the above-mentioned allegations, of which Ms. Lawson did not have personal knowledge.

305.     On ***February 8, 2019***, MR. POLO sent an email, with a copy of his objection, to DEAN LAWSON, and MR. SILVER. In the email, MR. POLO outlined the illegality and unethical actions of DEFENDANT JUDGE BERNSTEIN and asked the school to revert their

decision to invoke Sections 1.03(B) & 2.03 of the honor code based on the personal and biased character of the actions of DEFENDANT JUDGE BERNSTEIN.

306.     The proceeding was an inquisitorial proceeding, in which STU held the functions of a prosecutor and a judge at the same time. The first hearing in front of the Honor Council was held on or about Tuesday, February 26, 2019.

307.     Before, and at the hearing, MR. POLO submitted evidence showing that (1) MR. POLO was, in fact, a Student Member of the Florida Bar; (2) that MR. POLO did not claim DEFENDANT JUDGE BERNSTEIN was having ex-parte communication in bad faith; (3) that DEFENDANT JUDGE BERNSTEIN had interfered with the production of a transcript, and tried to mutilate the record; (4) that the Court Reporter had attempted to set MR. POLO to commit forgery acting as BERNSTEIN'S co-conspirator; (5) that MR. POLO did not interfere with the functioning of the judge's office by incessantly calling the judicial assistant; and (6) that MR. POLO did not abuse the court system by filing repetitive and frivolous motions.

308.     Dean Moore had already planned with the other members of the Honor Council Committee to blame MR. POLO, not only for his acts but also for the acts of his attorney. During the hearing, MR. SILVER tried to accuse MR. POLO of filing the motion to recuse DEFENDANT JUDGE BERNSTEIN while Polo knew it was not legally sufficient but for the allegations of ex-parte communication. The following day MR. POLO submitted evidence showing his attorney had reviewed and found the motion legally sufficient before filing it.

309.     During the hearing MR. SILVER called Mr. Planas to testify, and he asked MR. POLO to leave the room and wait outside while Ms. Planas was testifying. After the testimony of Mr. Planas, MR. SILVER summarized for MR. POLO what Mr. Planas, allegedly, had said about DEFENDANT JUDGE BERNSTEIN Reputation, and that MR. POLO was a good student.

310.     Nevertheless, in an email that Mr. Jay Silver sent to the Members of the honor council, which was not supposed to fall into MR. POLO'S hands, MR. SILVER stated "J.C. Planas, who is familiar *from practice* with both Judge Bernstein and Mr. Polo and will provide us with relevant information at the hearing…" "Please remember that all the attachments to this email and the body of the email are *highly confidential communications*."

311.     The only information Mr. Planas had from practice, as the attorney of a then-candidate for U.S. Congress Maria Elvira Salazar ("Salazar"), was that MR. POLO'S, publicly

accused Salazar and State Representative Daniel Perez of having ties with the Cuban Dictatorship, and that MR. POLO promised to fight judicial corruption in the Family Court system on the campaign trail and social media. Moreover, MR. POLO had also accused publicly Nelson Diaz (the then chair of the Republican party in Miami), who was friends with Mr. Planas, of corruption in the Miami GOP.

312.     MR. POLO'S political views were brought up by MR. SILVER when he stated to MR. POLO: "There was a post in your political campaign social media account in which you posted a picture depicting a group of Democrats in Congress dressing in white, on one side, and another group of Nazis dressing in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

313.     When MR. POLO heard this, he researched the member of the Honor Council and found that all of them were all democrats.

314.     The Members of the committee, all, knew that (1) DEFENDANT JUDGE BERNSTEIN was the real accuser behind the Honor Council's proceeding; (2) they knew MR. POLO was innocent of the allegations DEFENDANT JUDGE BERNSTEIN made on his order of recusal; (3) they knew they were acting under color of state law; (4) they knew that DEFENDANT JUDGE BERNSTEIN was, maliciously, coming after MR. POLO career as MR. POLO had predicted in his affidavit.

315.     At the end of the hearing, MR. SILVER told MR. POLO that they were going to deliberate and give him the results later that night. The following day, at 4:21 AM, MR. SILVER sent an email to MR. POLO said that they were going to resume deliberations on the following Tuesday, March 5, 2019.

316.     STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> "(1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote."

317.     After the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things DEFENDANT JUDGE BERNSTEIN alleged in his Order of Recusal. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to initiate a second honor council proceeding.

318.     As of March 23, 2019, STU had already decided to remove Mr. Polo from the school even before the proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

319.     On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council proceeding to take place on April 4, 2018.

320.     This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

321.     On or about **September 27, 2018**, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

322.     STU's management knew that the new allegation could be a result of Mr. Polo's lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA"). STU Defendant Employees knew the symptoms of MR. POLO'S condition included memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms which may have produced those results they were complaining about.

323.    When MR. POLO asked who his accuser was, MR. SILVER refused to disclose to MR. POLO that DEFENDANT JUDGE BERNSTEIN was the accuser promoting the initiation of an honor proceeding against MR. POLO. Nevertheless, the committee was already in possession of DEFENDANT JUDGE BERNSTEIN'S letter with the attached Order of Recusal.

324.    Professor Silver identified the accuser as DEAN LAWSON, who did not have personal knowledge of any of the raised accusations.

325.    STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

326.    No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

327.    STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

328.    STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

329.    Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

330.    Even when the Fla. Rules Regulating the Florida Bar 4-8.3 mandates that "[a] lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office must inform the appropriate authority" none of STU Defendant Employees (all attorneys) reported Judge Bernstein for coming out of his jurisdiction to initiate a political witch-hunt against Mr. Polo and for making comments in his Order of recusal against the Fla. Sup. Ct. mandate which prohibits such conduct.

331.     The appeal was a meeting with DEAN LAWSON and DEAN MOORE, which lacked any safeguards included in due process. During the appeal, MR. POLO'S incursion into politics came again. Dean Moore asked MR. POLO why he ran for office. MR. POLO told Ms. Moore that his political activities had nothing to do with the school, and she replied "Yes it does. Because you challenged the authority of Dean Hernandez when he told you not to engage in any employment or external activities." That was another misrepresentation and a pretext because the requirement not to engage in employment or external activities was until MR. POLO had improved his GPA, and STU had even employed MR. POLO as a research assistant.

332.     During the meeting, MR. POLO explained once more that he may have forgotten to disclose information in his application because of his diagnosed cognitive disability and Ms. Lawson responded "I, don't think your problem is cognitive, but think your problem is one of honesty," when she knew that MR. POLO'S wife who was seating right next to the door. Mr. Polo suffered humiliation in front of his wife.

333.     STU's honor code, Section 3.03 (A)(3), states in pertinent part "The Honor Council *SHALL* not be used to resolve personal conflicts."

334.     However, because of the influence that JUDGE BERNSTEIN exercised on STU, STU used the Honor Council to resolve JUDGE BERNSTEIN'S personal conflicts with MR. POLO, as MR. POLO'S political speech about corruption in the family court system.

335.     STU and STU DEFENDANT EMPLOYEES had also political motivations to get MR. POLO out of Mr. Planas' client's way in retaliation for the accusations MR. POLO was publicly making about Mr. Planas' client, now congresswoman Maria Elvira Salazar, and his friends State Representative Daniel Perez, and Nelson D. Diaz (then chair of the Miami-Dade County Republican Party) corrupt acts and possible ties with the Cuban Intelligence Services during MR. POLO'S political campaigns and as part of protected political speech.

336.     JUDGE BERNSTEIN falsely accused MR. POLO of claiming to be a member of the Florida Bar, which was a manipulation of the statement MR. POLO had made which was that MR. POLO was a Student Member of the Florida Bar, and St. Thomas knew that Mr. Polo was required to become Student Member of the Florida Bar as part of a class to obtain access to continued Legal Education ("CLE") courses.

337.     STU did not have "clear and convincing evidence" to proof that MR. POLO was not a Student Member of the Florida Bar or that Mr. Polo didn't have a reasonable belief to say that MR. BERNSTEIN was having ex parte communication with MR. SEGARRA." Moreover, becoming a student member of the Florida Bar was a requirement for one of the classes MR. POLO was enrolled in to obtain access to continued Legal Education ("CLE") courses.

338.     Moreover, MR. POLO never had an opportunity to have his case hear by an impartial jury, never have access to the evidence STU DEFENDANT EMPLOYEES were going to present at the hearing, never had an opportunity to confront and cross-examine his accuser, never had an opportunity to be represented by an attorney at the hearing.

339.     STU knew that DEFENDANT MR. SEGARRA, acting on behalf of JUDGE BERNSTEIN, while he was also performing as the attorney/Agent for Ms. Hernandez, and under color of Law, stepped out of his role of advocate for Ms. Hernandez and stepped into the role of investigator for the ST. THOMAS UNIVERSITY, INC., to provide DEAN LAWSON, MR. SILVER, and DEAN MOORE with the pretext STU needed to continue with the unconstitutional proceeding to arbitrarily, capriciously, and maliciously breach the contract STU had with Mr.Polo.

340.     For everything explained herein this Count, ST. THOMAS UNIVERSITY, INC. breached the agreement they had with MR. POLO by expelling MR. POLO in a capricious, arbitrary, and malicious manner.

341.     As a direct, natural, and proximate result of DEFENDANTS' ST. THOMAS UNIVERSITY, INC., JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, SEGARRA & ASSOCIATES, P.A., MS. HERNANDEZ, and MR. SEGARRA'S actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because

of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

342.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC., as follows:

A)     Declaring that DEFENDANT ST. THOMAS UNIVERSITY, INC., violated the Plaintiff(s)' constitutional rights to a property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., without due process of law, arbitrarily and capriciously terminated MR. POLO'S career in law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)     Enjoining DEFENDANT ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and Florida Common law.

D)     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 6.     DEPRIVATION OF PROPERTY AND LIBERTY INTEREST IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

343.     Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS JUDGE BERNSTEIN, DAVID A. ARMSTRONG, DEAN LAWSON, MR.

SILVER, DEAN MOORE, JUAN CARLOS PLANAS, and DEFENDANT MR. SEGARRA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

344.     The DEFENDANTS JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA in all their actions described in this complaint deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

345.     MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete not only his JD in Law, but also a Tax Law Certificate.

346.     As the result of the implied in-law agreement MR. POLO had with ST. THOMAS UNIVERSITY, INC., MR. POLO and his children had a property interest in the continued enrollment of MR. POLO at STU. They also had a liberty interest in their good name, reputation, honor, and integrity.

347.     STU, through their agents, STU DEFENDANT EMPLOYEES, capriciously, arbitrarily, and maliciously breached the contract STU had with MR. POLO, and deprived the Plaintiffs of their property interest in the continued enrollment at STU, and of the liberty interest in their family name, reputation, honor, and integrity without affording Mr. Polo due process of law.

348.     Disguised under the premises that private schools do not have to provide the same level of due process that governmental institutions have to offer when depriving individuals of interest in property or liberties, STU initiated the proceeding to accomplish what Judge Bernstein could have not accomplished without STU's intervention, depriving Mr. Polo of his interest right in the continued enrollment at STU and his liberty interests in their good name, reputation, honor, and integrity.

349.     DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, and MR. SEGARRA, acting as agents of the DEFENDANT JUDGE BERNSTEIN; therefore, acting under color of state law, commenced and maintained the Honor Council proceeding against MR. POLO.

350.     As an inquisitory proceeding initiated on behalf of a government actor, the proceeding was violative of Due Process because it (1) did not have an impartial adjudicator, (2) did not provide access to evidence that was being used against MR. POLO, (3) did not provide an opportunity to confront Mr. Planas and Mr. Bernstein, (4) did not permit MR. POLO to be present during Mr. Planas' testimony, (5) did not provide a summary of Mr. Planas' testimony before the hearing, (6) was politically motivated, and (7) used pretexts to deprive the Plaintiffs of their interest in property and liberty without due process of law.

351.     The proceeding was disguised as a private institution going after Mr. Polo to prevent Mr. Polo from having access to the guarantees of due process under the 5th and 14th amendment of the U.S. Constitution, which don't have to be followed by private institutions when depriving individuals of interest in property or liberties. STU initiated the proceeding on behalf of Judge Bernstein to accomplish what Judge Bernstein could have not accomplished without STU's intervention, depriving Mr. Polo of his interest right in the continued enrollment at STU and his liberty interests in their good name, reputation, honor, and integrity without due process of law.

352.     The expulsion of MR. POLO from STU resulted in a permanent record of dishonorable expelling in Mr. Polo's academic file. Such a record creates a stain, not only on Mr. Polo's good name, reputation, honor, and integrity but also on MR. POLO'S family's good name, reputation, honor, and integrity which will follow him and his family for life.

353.     But for JUDGE BERNSTEIN'S act of sending the letter to ST. THOMAS UNIVERSITY, INC., and the participation of MR. SEGARRA providing misleading information/filings, in conspiracy with STU DEFENDANT EMPLOYEES, the unconstitutional proceeding had never taken place, and the Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and liberty interests in their good name, reputation, honor, and integrity.

354.     But for the acts of DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS of instituting, maintaining, and continuing the proceeding without providing MR. POLO Due Process of Law before Depriving the Plaintiffs of their property and liberty interest, Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and liberty interests in their good name, reputation, honor, and integrity.

355.     As the President of STU, DAVID A. ARMSTRONG had a duty to act to prevent the violations of MR. POLO and his children's constitutional rights when he found out that the procedure was instituted for political reasons and personal reasons under color of state law. However, MR. ARMSTRONG breached his duty when he failed to act to prevent further dames to the plaintiffs.

356.     As a direct, natural, and proximate result of the unconstitutional proceeding and the actions of the DEFENDANTS, the Plaintiffs lost their property interest in the continued enrollment of MR. POLO at STU, and a liberty interest in their good name, reputation, honor, and integrity.

357.     Therefore, DEFENDANTS JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA deprived the Plaintiffs of their property interest in the continued enrollment of MR. POLO at STU, and liberty interest in their good name, reputation, honor, and integrity in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

358.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, DEAN MOORE, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG, and DEFENDANT MR. SEGARRA, through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

359.     As a direct, natural, and proximate result of DEFENDANTS' JUDGE BERNSTEIN'S, DEAN LAWSON'S, MR. SILVER'S, DEAN MOORE'S, JUAN CARLOS PLANAS', DAVID A. ARMSTRONG'S, and DEFENDANT MR. SEGARRA'S actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because

of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

360.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA as follows:

A)     Declaring that JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, violated the Plaintiff(s)' constitutional rights to property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., and their liberty interest in their good name, reputation, honor and integrity without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)     Enjoining JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against JUDGE BERNSTEIN, DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DEAN MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

D)     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 7.        DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

361.    Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

362.    The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint, deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

363.    The lower court lost jurisdiction as of **_September 14, 2018_** after the Court rendered a final judgment without reserving jurisdiction to adjudicate attorney's fees, and after the time to file for rehearing had lapsed; however, judge Del Rey continued exercising Jurisdiction in clear absence of all clear jurisdiction with the intent of harming MR. POLO and his children in retaliation for Mr. Polo's Political Speech and to protect Judge Bernstein from civil liability.

364.    On or about January 18, 2019, Polo's attorney, Mr. Ceballos file a motion to withdraw, which JUDGE DEL REY granted on or about March 6, 2019.

365.    Judge DEL REY, intentionally and maliciously allowed Mr. Ceballos to withdraw knowing that she was leaving MR. POLO without an attorney when there was a current order preventing MR. POLO from filing ANYTHING in the docket.

366.    Additionally, MR. POLO asked to get an evidentiary hearing to vacate the two orders Preventing MR. POLO from filing anything. To which JUDGE DEL REY responded, "Given the history of this Case, I would not vacate the current order on file."

367.    The only history of the case was that Mr. Polo had publicly denounced the corruption in the family court system, and Judge Bernstein fabricated a case against Mr. Polo to come after Mr. Polo for his political speech.

368.    Therefore, JUDGE DEL REY left MR. POLO without an attorney, thereby, without access to the court violating MR. POLO'S Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

369.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

370.     As a direct, natural, and proximate result of DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. MR. POLO has suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

371.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

A)     Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to access the courts, property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)     Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from

retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)    Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

D)    Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

E)    Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 8.    DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

372.    Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

373.    The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

374.    The lower court lost jurisdiction as of **_September 14, 2018;_** after the Court rendered a final judgment without reserving jurisdiction to adjudicate attorney's fees, and after the time to file for rehearing had lapsed; however, judge Del Rey continued exercising Jurisdiction in clear absence of all clear jurisdiction with the intent of harming MR. POLO and his children in retaliation for Mr. Polo's Political Speech and to protect Judge Bernstein from civil liability.

375.    MR. POLO'S attorney Mr. Genova filed a motion to withdraw, which JUDGE DEL REY heard on or about **_April 15, 2021_**, and she finally granted on **_May 5, 2021._**

376.    MR. POLO opposed Mr. Genova's withdrawal on the basis that the Second Vexatious Order dated **_October 2, 2018_** (the second order), was preventing MR. POLO access to the court and that the order on file was unconstitutional.

377.     JUDGE DEL REY answered similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw."

378.     During the hearing, Polo told the judge: "there is no evidence on the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and JUDGE DEL REY responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?"

379.     DEFENDANT MR. SEGARRA knew that MR. POLO was about to file in Federal court through a Cease-and-Desist letter that MR. POLO sent to DEFENDANT MR. SEGARRA'S client. Therefore, during the hearing DEFENDANT MR. SEGARRA tried on different occasions to get JUDGE DEL REY to reinstate the First Vexatious Order, which she never realized he was trying.

380.     After the hearing, the opposing counsel, DEFENDANT MR. SEGARRA, engaged in ex parte communication and coordinated with Judge's del Rey behind MR. POLO'S back, to change her holding with a new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting MR. POLO'S access to the court.

381.     The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change MR. POLO'S access to the court, MR. POLO was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered.

382.     Therefore, DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA left MR. POLO without access to the court violating MR. POLO'S Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

383.     As a direct, natural, and proximate result of DEFENDANTS' JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. The Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s)

suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

384.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 9.    DEPRIVATION OF ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS UNDER 42 U.S.C. SECTION 1983.**

385.    Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

386.    The DEFENDANT JUDGE DEL REY, in all her actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

387.    The lower court lost jurisdiction as of ***September 14, 2018;*** after the Court rendered a final judgment without reserving jurisdiction to adjudicate attorney's fees, and after the time to file for rehearing had lapsed; however, Judge Del Rey continued exercising Jurisdiction in the clear absence of all jurisdiction with the intent of harming MR. POLO and his children in retaliation for Mr. Polo's Political Speech and to protect Judge Bernstein from civil liability.

388.    On July 29, 2019, MR. POLO timely filed and served his exception to the General Magistrate's report.

389.    MR. POLO'S attorney, influenced by the court and MR. SEGARRA, intentionally failed to ask for a hearing on the timely filed exceptions, to allow the other side to have a frivolous argument to continue delaying the case.

390.    On September 10, 2019, forty-five (45) days after the filing of the exceptions, Judge Del Rey intentionally violated MR. POLO'S right to due process[1] by entering an order ignoring the exceptions, and saying that the exceptions were never filed.

---

[1] Fla. R. Fam. P. 12.490 (f) establishes a mandatory hearing for timely filed objections. "If exceptions are filed, they ***shall*** be heard on reasonable notice by either party or the court." Therefore, Judge Del Rey had no discretion to deny a hearing on timely filed exceptions.

391.     Moreover, MR. POLO'S attorney filed a motion to vacate the September 10, 2019, order, and Judge Del Rey intentionally, once more, violated MR. POLO'S right to due process by denying MR. POLO'S attorney motion to vacate Judgment.

392.     Judge del Rey was maliciously creating additional procedural loops to make MR. POLO lose his case and generate unnecessary appeals. However, MR. POLO appealed her decision, and the decision was reversed.

393.     Moreover, she intentionally engaged in retaliatory acts outside all clear jurisdiction when she continued to exercise jurisdiction with the malicious intent to harm the plaintiffs.

394.     Therefore, JUDGE DEL REY violated MR. POLO'S right to access the court without due process of law, by preventing a fair and just trial, with an impartial adjudicator, by denying MR. POLO'S right to hearing on the Timely Filed Exceptions, and by exercising jurisdiction over a case she knew was precluded by res judicata.

395.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

396.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

Declaring that DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANT JUDGE DEL REY, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE DEL REY pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 10.      DEPRIVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION, IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983

397.      Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK, GM. ROBERT S. SINGER, DEFENDANT MR. SEGARRA, and STU DEFENDANT EMPLOYEES, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and DAVID A. ARMSTRONG (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

398.      The DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK, GM. ROBERT S. SINGER, DEFENDANT MR. SEGARRA, and STU DEFENDANT EMPLOYEES, in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

399.     The DEFENDANTS engaged in a retaliatory scheme to prevent MR. POLO from engaging in free speech, and they did accomplish this when Mr. Polo had to publicly refrain from talking about the corruption in the family court during his political campaigns.

400.     During Lilliana Real's (the "GAL") first visit to Mr. Polo's house, Ms. Real insinuated to MR. POLO that she was friends with JUDGE BERNSTEIN and that JUDGE BERNSTEIN was going to do in the case what she was going to tell him. Even though MR. POLO understood this as an offer to buy her illegal services, MR. POLO ignored it.

401.     Thereafter Ms. Real started twisting the balance of the law, by first falsely creating an emergency and pretending that she was worried about Mr. Polos' children's safety without having probable cause.

402.     Ms. Real, Ms. Hernandez, Ms. Hernandez's attorneys, and Judge Bernstein to take Mr. Polo's children without a court order, a hearing, and an opportunity to be heard with the malicious intent of making Mr. Polo to act in reliance of his legal right and make things worse for him. However, Mr. Polo waited for 7 days until Judge Bernstein decided to hear the matter and found no probable cause.

403.     Then, Ms. Real filed a late report which contained false allegations to justify not giving MR. POLO the 50% timesharing he had requested from the beginning of the case. DEFENDANT JUDGE BERNSTEIN frivolous denied a motion for continuance, so that MR. POLO did not have time to prepared against the false allegations contained in Ms. Real report.

404.     Ms. Real claimed in the report that Mr. Polo was building a case against Ms. Hernandez and in support thereof, she said that Mr. Polo had sent pictures of the children with bruises and rashes which did not have dates and/or the children's face.

405.     Ms. Real testified under oath to the truthfulness of the report. Both attorneys, in the case at that time, intentionally failed to have a court reporter in the courtroom to prevent Ms. Real testimony from being recorded and to prevent an appeal. As a result of the report, Mr. Polo was denied 50% timesharing he had requested from the beginning of the case. Moreover, Judge Bernstein gave Ms. Hernandez child support not supported by the law and the facts of the case to prevent Ms. Hernandez from having to pay child support to her children.

406.     MR. POLO obtained evidence showing Ms. Real had lied in court and in her report.

407.    On or about ***May 26, 2015***, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

408.    The Motion to Vacate forced Ms. Hernandez and her attorneys to enter into an Agreed Final Judgment (the "AFJ") to settle the case for 50/50 timesharing.

409.    JUDGE BERNSTEIN quietly signed an illegal Agreed Final Judgment which did not specify what party was to pay Child Support, knowing that Child support cannot be contracted away by the parties.

410.    Nevertheless, JUDGE BERNSTEIN, Ms. Hernandez and her attorneys began to plan to retaliate against Mr. Polo, for exposing the corruption of Ms. Real, and her co-conspirators.

411.    On or about June 6, 2018, MR. POLO registered to run for a State Representative. During the campaign, and thereafter, Polo engaged in core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System from the State Legislature level, creating thereby interactive communication concerning political change in the court system.

412.    Ms. Hernandez was closely following MR. POLO'S social media, and she reported to DEFENDANT MR. SEGARRA, and thereby to JUDGE BERNSTEIN, about MR. POLO'S open statements about fighting Judicial Corruption in the Family Court System.

413.    Thereafter, DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN became more aggressive in coming after MR. POLO, livelihood, degree in Law, and career in law in retaliation for MR. POLO'S political speech and affiliation. and political speech against the corruption in the Family Court System, led by JUDGE BERNSTEIN.

414.    To retaliate and deprive MR. POLO of the legal custody of his children without due process of law, the DEFENDANT JUDGE BERNSTEIN substituted the original Order of Referral by another judge, which was sending MR. POLO and Ms. Hernandez to a Co-parenting Coordinator to resolve a school registration issue, by his own order that was talking about a "history of domestic violence."

415.    DEFENDANT JUDGE BERNSTEIN never served MR. POLO with the Order of Referral and domestic violence was never an issue in front of DEFENDANT JUDGE BERNSTEIN. He did so to terminate MR. POLO'S custodial rights by using an outside co-

parenting coordinator, which was colluding with DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN to terminate MR. POLO'S parental rights with her "independent" recommendation without due process of law.

416.     Moreover, Defendant JUDGE BERNSTEIN ordered MR. POLO to pay 100% of two years of unwarranted co-parenting sections knowing that MR. POLO, for being indigent, was going to have to be in contempt of court for not having the money to pay the co-parenting fees.

417.     MR. SEGARRA and JUDGE BERNSTEIN entrapped MR. POLO by taking his constitutional right to access the court without notice and opportunity to be heard, knowing that MR. POLO was indigent and was not going to be able to afford to have an attorney to review his filings. They harassed MR. POLO to the point at which MR. POLO was forced to file a Motion to recuse JUDGE BERNSTEIN, which would have allowed JUDGE BERNSTEIN to put MR. POLO in Jail.

418.     The Defendants MR. SEGARRA proposed to Defendant JUDGE BERNSTEIN to issue an order to show cause when Mr. Polo shouldn't be found in criminal contempt and asked Judge Bernstein to Put Mr. Polo in Jail. That attempt failed because Mr. Polo did not have the mental state to be in contempt of court.

419.     After failing in their attempt to put MR. POLO in Jail, DEFENDANT MR. SEGARRA and JUDGE BERNSTEIN, through the other member of the enterprise, Ms. Camacho, tried to entrap MR. POLO to commit forgery on a transcript signature to put MR. POLO in prison and terminate MR. POLO'S custodial rights.

420.     The STU DEFENDANT EMPLOYEES expelled Mr. Polo from law school without clear and convincing evidence of the allegations made by Judge Bernstein in his Order Granting Disqualification, they allowed JUDGE BERNSTEIN to use the honor proceeding to retaliate against Mr. Polo, and they in fact retaliated against MR. POLO for his political speech.

421.     MAGISTRATE SINGER, in retaliation for MR. POLO exposing the corruption in the family court system, dismissed Mr. Polo petition for Modification of Child Support, sua sponte, based on affirmative defenses not raised by proper pleadings, without notice and opportunity to be heard. Additionally, he engaged in acting adjudicating matters in the case, after a final judgment was rendered, the court had failed to retain jurisdiction to adjudicate attorney's fees, and the time for rehearing had lapsed.

422.     Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO had an obligation to pay child support. Moreover, such a decision was to be made once a bankruptcy case was filed and there was no pending Bankruptcy case.

423.     DEFENDANT JUDGE BERNSTEIN had dismissed a previous petition to dismiss the action. Therefore, there was no petition to dismiss pending from the other side.

424.     JUDGE BERNSTEIN on multiple occasions, maliciously removed or altered the Plaintiffs' access to the court without notice and opportunity to be heard.

425.     JUDGE BERNSTEIN intended to put Mr. Polo in Jail on multiple occasions using a court reporter to entrap Mr. Polo for forgery, forcing Mr. Polo to be in contempt by removing his right to file documents knowing that Mr. Polo did not have any reasonable access to the court.

426.     JUDGE BERNSTEIN sent the case to a pre-arranged co-parenting coordinator with the purpose of getting a report supporting the removal of Mr. Polo's children when there were no pending issues to be resolved by the co-parenting coordinator.

427.     STU DEFENDANT EMPLOYEES (DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG), initiated and permitted the honor proceeding to start with no other intent than to intimidate MR. POLO to make him drop the case he had against BERNSTEIN'S co-conspirators, to prevent MR. POLO to bring federal charges against all of them and other co-conspirators, and to silence MR. POLO'S political speech.

428.     MR. SEGARRA and MS. HERNANDEZ coordinated/planned to bring the case back to court with the pretext of getting the children registered in a B-rated school when Mr. Polo had A-rated schools in his zip code when the Mediated Agreement called for the children to be registered in the zip code with the best school.

429.     While JUDGE BERNSTEIN was absent, JUDGE JUDITH KREEGER entered an order of referral sending the case to Family Court Services ("FCS") to schedule a co-parenting coordinator *to resolve the issue in front of court, the school registration issue*. Upon a finding that MR. POLO was indigent, Judge Kreeger sent the case to the FCS to get pro bono in-house services for *six (6) meetings.*

430.     After JUDGE BERNSTEIN returned, Ms. Aileen Alvarez (hereinafter "Ms. Alvarez"), the case worker in MR. POLO'S case since 2013, called to tell Mr. Polo she couldn't find a ***Hispanic-speaking in-house (pro-bono) coordinator in Miami***, so she said she was going to call him later. Ms. Alvarez never called MR. POLO but sent the case back to DEFENDANT JUDGE BERNSTEIN.

431.     On *April 03, 2017*, DEFENDANT JUDGE BERNSTEIN, filed a new and different, order of *referral to the parenting* coordinator *without a hearing, Without MR. POLO consent or knowledge*, and *without serving MR. POLO* with the new order of Referral.

432.     The New order stated that there was a *history of allegations of domestic violence*, that the parties had an *opportunity to consult with an attorney* or *domestic violence advocate*, and that the Parenting coordinator was "with the *prior consent* of the parties and approval of the court." Moreover, the order extended the six (6) meetings initially scheduled by Judge Kreeger to *24 months of co-parenting coordinator services*.

433.     MR. POLO did not have an attorney at that moment, MR. POLO did not consult with any domestic violence advocate, MR. POLO never consented to that referral and there were no allegations of domestic violence, or anything else, pending to be resolved or heard in any court.

434.     On *August 01, 2017*, DEFENDANT JUDGE BERNSTEIN, on his own motion, called for a Case Management Conference ("CMC"). At the CMC, DEFENDANT JUDGE BERNSTEIN asks MR. POLO if the issue with the school was resolved. Then MR. POLO responded "Yes, your honor, but…" and DEFENDANT JUDGE BERNSTEIN pretended to be furious and said, "but nothing, I am sending you to a co-parenting coordinator, and *you are going to pay 100% of the fees*."

435.     MR. POLO told DEFENDANT JUDGE BERNSTEIN that he was indigent, and DEFENDANT JUDGE BERNSTEIN asked, "What school do you go to?" MR. POLO replied, "To St. Thomas, your honor" and DEFENDANT JUDGE BERNSTEIN replied, "Well if you *can pay for a private school you can pay for the fees*." MR. POLO explained that he pays with student loans, but DEFENDANT JUDGE BERNSTEIN did not care.

436.     On *August 1, 2017*, MR. POLO went to register with Family Court Services ("FCS"). There, MR. POLO overheard a conversation between the *intake worker, and Ms. Aileen Alvarez*, in which Aileen told the intake worker, when she handled the case file to Ms. Alvarez,

"No, I transferred this case to Nancy Canate [hereinafter "Ms. Canate"], the mother, in this case, is best friends with Nancy's aunt." MR. POLO knew that Ms. Hernandez did not have any friends in Family Court services.

437.     When MR. POLO finished completing the intake, the intake worker told him that his case manager was not there and that he had to return later. MR. POLO concerned about what he had heard told the lady, "I know what you are all up to, you are referring this case to an outside co-parenting coordinator to return a report saying that I am not a good fit for my children and, thereby, remove the custody of my children from me. I overheard your conversation with Ailing Alvarez."

438.     Five months later Ms. Canate contacted MR. POLO for him to register with an outside co-parenting coordinator. On or about ***January 2, 2018***, MR. POLO called Lisette Beraja ("Ms. Beraja" or the "Coordinator") to register. MR. POLO told the coordinator that he was indigent and did not have the resources to pay. Then, MR. POLO told her that he was concerned about what he had heard in the FCS's office and that he knew everything was arranged for her to return an unfavorable report against MR. POLO.

439.     After that, MR. POLO sent an email summarizing what was said over the phone to Ms. Beraja, she answered denying any knowledge of MR. POLO'S allegations. Ms. Beraja sent the case back to the court, and the court and the other side remained silent with regard to enforcing the co-parenting coordinator meetings.

440.     MR. SEGARRA coordinated with JUDGE BERNSTEIN to bring the case to court on October 24, 2017, noticing the hearing as a hearing on competing orders; however, the real intent was of removing the Plaintiffs' constitutional right to access the court without due process.

441.     For this MR. SEGARRA generated a list of motions he said were opened in the system, and show this to JUDGE BERNSTEIN and JUDGE BERNSTEIN played along pretending to be angry for this he removed the Plaintiffs' access to the court without notice or opportunity to be heard.

442.     MR. SEGARRA and MS. HERNANDEZ, knowing that there were no pending issues to bring to the co-parenting coordinator, continue with the plan they had with Judge Bernstein and MS. HERNANDEZ registered with family court system knowing that the referral was a setup to remove Mr. Polo's children without due process of law.

443.     MR. SEGARRA, maliciously, also participated in the honor council proceeding, while he was being paid by MS. HERNANDEZ, as an investigator for STU by providing misleading information to STU, in order for STU to deprive Mr. Polo of his property interest on the continued enrollment at STU.

444.     After September 14, 2018, when the court lost jurisdiction, JUDGE DEL REY AND JUDGE SPENCER MULTACK, continued to exercise jurisdiction and to file orders while there was a clear absence of Jurisdiction and MR. SEGARRA continued to harass Mr. Polo with motions for attorney's fees not warranted by facts of law.

445.     JUDGE DEL REY continued the harassment JUDGE BERNSTEIN had initiated and maliciously removed or/and altered the Plaintiffs' access to the court on multiple occasions without notice and opportunity to be heard. Moreover, she allowed Mr. Polo's attorneys to withdraw, knowing that Mr. Polo could not file anything in court.

446.     JUDGE DEL REY entered orders without having jurisdiction and prevented Mr. Polo from filing anything in the docket without having a notice issued and opportunity to be heard on multiple occasions to intimidate MR. POLO and silence him about the corruption in the Family Court.

447.     JUDGE DEL REY, despite the simple command of the law denying judicial discretion when it comes to holding a hearing on timely filed objections to general magistrate report, denied a hearing on the timely filed objections.

448.     Judge del Rey Engaged in dilatory tactics to give Mr. Segarra additional argument to day MR. POLO had delayed the case.

449.     On July 11, 2022, JUDGE MULTACK maliciously entered an ex parte order, without notice or opportunity to be heard stating that MR. POLO was in violation of Rules Regulating the Florida Bar Rule 4-3.5(a) and Rules Regulating The Florida Bar Rule 4-35.5(b), which are applicable to attorneys only, with the objective of providing bases for Mr. Segarra to continue attacking MR. POLO in two pending motions for attorney's fees, for which JUDGE MULTACK did not have jurisdiction to hear.

450.     On the same date, July 11, 2022, JUDGE MULTACK issued another order limiting MR. POLO'S access to the court. However, during the hearing, JUDGE MULTACK said he was

going to remove MR. POLO'S restrictions on accessing the court; nevertheless, he filed a different order limiting MR. POLO'S right to file documents.

451.    Before the July 11, 2022 hearing, there was never a notice saying that the hearing was about limiting, removing, or altering MR. POLO'S right.  After the hearing, there was no notice or opportunity to be heard before JUDGE MULTACK changed his oral ruling.

452.    The acts of JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES' DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG intimidated MR. POLO on multiple occasions and forced MR. POLO to change the speech to other subjects, but the corruption in the Family Court System.

453.    When STU DEFENDANT EMPLOYEES, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG came after Plaintiff's property interest in continued enrollment at STU, their livelihood, MR. POLO'S degree, the reputation, prestige, and goodwill that having a career in law would represent in MR. POLO'S political career and future. MR. POLO felt even more intimidated; therefore, not only he stopped the political speech, but he also dropped the case in the State Court against other co-conspirators and reframed from bringing federal causes of action against DEFENDANT JUDGE BERNSTEIN and all his co-conspirators for a period of more than two (2) years.

454.    If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, the Defendants JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, MR. SEGARRA, STU DEFENDANT EMPLOYEES DEAN LAWSON, DEAN MOORE, MR. SILVER, and DAVID A. ARMSTRONG, through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

455.    As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s)

suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

456.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT MR. SEGARRA, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and MR. SEGARRA as follows:

Declaring that JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, DAVID A. ARMSTRONG from, directly or indirectly, violating the Plaintiffs' constitutional rights, from retaliating against the Plaintiffs for seeking to remedy their inappropriate and unlawful conduct; and

Award judgement against DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988, and demands trial by jury on all issues so triable.

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering,

treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, JUDGE MULTACK and GM ROBERT S. SINGER, and MR. SEGARRA pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment and post judgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 11.        DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

457.     Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANT JUDGE MULTACK, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

458.     The DEFENDANT JUDGE MULTACK, in all her actions described in this complaint, deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

459.     On July 11, 2022, JUDGE MULTACK issued a verbal order saying that he was removing Mr. Polo limitation to file motions and pleadings.

460.      However, after JUDGE MULTACK found out that Mr. Polo was brining Civil suit against JUDGE DEL REY, he sua sponte issued a different order limiting MR. POLO'S access to the court.

461.     The hearing was never noticed as a hearing to show cause why MR. POLO'S rights shouldn't be limited, removed, or altered, and MR. POLO did not get an opportunity to be heard.

462.     The DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA negligently failed to supervise and train its employees to prevent the kind of harm suffered by the Plaintiff(s) in this case.

463.     As a direct, natural, and proximate result of DEFENDANT JUDGE MULTACK, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. MR. POLO has suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

464.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT JUDGE MULTACK, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

F)     Declaring that DEFENDANT JUDGE MULTACK, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional rights to access the courts, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

G)     Enjoining DEFENDANT JUDGE MULTACK, and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

H)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages,

pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, DEFENDANT JUDGE MULTACK pursuant to 42 U.S.C. Sections 1983 and 1988.

I)      Awarding attorney's fees and cost, against ALL the DEFENDANTS pursuant to 42 U.S.C. Sections 1983 and 1988.

J)      Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 12.      CIVIL CONSPIRACY

465.      Plaintiffs re-alleges paragraphs 44 through 237 and further state that in furtherance of the agreement/understanding all the defendants had, the Defendants, ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, DEAN LAWSON, DEAN MOORE, MR. SILVER, MR. SEGARRA, DAVID A. ARMSTRONG, JUAN CARLOS PLANAS, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, GM SINGER, o, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

466.      There was an agreement among all co-conspirators with the common objective (hereinafter the "Objectives") of:  (1) intimidating MR. POLO'S to silence his political speech against the corruption in the Family Court System (2) intimidating MR. POLO'S to silence his political speech about the possible ties of State and Federal candidates with the Cuban dictatorship; (3) intimidating MR. POLO to prevent him from bringing civil federal causes of actions against the Defendants in Federal Court; (4) intimidating MR. POLO to force him to drop the State Civil case against Ms. Real and other members of the family Court RICO Enterprise; (5) intimidating MR. POLO to prevent him from reporting violations or possible violations of Federal Law to federal law enforcement officials; (6) and preventing MR. POLO from testifying in Federal Court against some/all members of the criminal enterprise.

467.      To accomplish their Objectives, the defendants engaged the following methods (hereinafter the "Methods"): (1) destroying MR. POLO'S and his children livelihood, (2) Depriving MR. POLO of his degree in Law, (3) Destroying MR. POLO'S reputation, (4) Destroying Polo's prestige, (5) Destroying MR. POLO'S career in Politics, (6) destroying the

goodwill that having a career in law would represent in MR. POLO'S political career, (5) inflicting severe emotional distress on MR. POLO, (6) removing MR. POLO'S children without due process of law, (7) conspiring to putting MR. POLO in Jail without due process of law, (8) removing Plaintiffs' access to the court, without due process of law, (9) depriving the Plaintiffs of Property interest in property and liberty without due process of law, (10) depriving Plaintiff(s) of First Amendment right to engage in political speech, (11) malicious prosecution, and (12) inflicting financial damages to MR. POLO and his family.

### A. MR. SEGARRA, SEGARRA & ASSOCIATES, P.A. MS. HERNANDEZ, and MR. MARTINEZ

468.      The DEFENDANT MR. SEGARRA, acting in the course and scope of his duties as an attorney employed by the SEGARRA & ASSOCIATES, P.A. and by MS. HERNANDEZ and MR. MARTINEZ, and acting in furtherance of the agreement/understanding he had with DEFENDANT JUDGE BERNSTEIN and the other co-conspirators, instructed his client, MERLIN HERNANDEZ, to create a nonsense dispute over the clear and unambiguous term of the MSA to force MR. POLO to bring the case to the court, so that DEFENDANT JUDGE BERNSTEIN had an opportunity to send the case to a biased Co-parenting coordinator to remove MR. POLO'S custody of his children without Due Process of Law.

469.      DEFENDANT MR. SEGARRA, intentionally engaged in furtherance of the agreement/understanding he had with JUDGE BERNSTEIN and his client MS. HERNANDEZ in

470.      harassing and intimidating MR. POLO with unproper process of service while Mr. Polo was already under the jurisdiction of the court and registered to receive electronic filing

471.      harassing Mr. Polo with unwarranted deposition when he knew that Mr. Polo had provided everything that was in his possession, and using the deposition as an excuse to delay the case;

472.      trying to entrap MR. POLO with DEFENDANT JUDGE BERNSTEIN and the court reporter, Katia Camacho, to commit forgery when Ms. Camacho, right contemporarily with their failure to put Mr. Polo in Jail, asked Mr. Polo to sign a transcript as if he was her;

473.       providing a list of motions to give JUDGE BERNSTEIN any excuse to remove the Plaintiffs' access to the court without due process of law. He alleged that the motions were open, but most of them were not open.

474.     Entrapping MR. POLO pushing him to the point in which he was going to be forced to file something, so that JUDGE BERNSTEIN, could put MR. Polo in Jail.

475.     arranging with Katia Camacho and DEFENDANT JUDGE BERNSTEIN to alter and mutilate the production of a transcript;

476.     DEFENDANT MR. SEGARRA continued litigating motions for attorney's fees knowing that they were going to be granted by JUDGE MULTACK, regardless the fact that the Court had lost jurisdiction to adjudicate motions for attorney's fees.

477.     Serving in the investigator role for STU DEFENDANT EMPLOYEES to produce misleading information to deprive MR. POLO of his property right to continuing enrollment at STU;

478.     MR. SEGARRA, filed a motion for attorney's fees not supported by law, or facts, and colluded with MR. POLO'S attorney Mr. Genova, and JUDGE DEL REY, and JUDGE MULTACK to maintain the motion open for a period of about 5 years with the only objective of creating damages on MR. POLO with never ending hearing retrying issues that were heard before, and engaged in dilatory tactics to prevent the case from advancing, and then blame MR. POLO for the delay in the case and collect attorney's fees he knew the court lacked jurisdiction to grant, and the law and facts did not support his claim for attorney's fees.

479.     Defendant MERLIN HERNANDEZ, in furtherance of her agreement throughout 10 years of litigation has keep harassing MR. POLO with (1) Malicious and improper legal procedure no supported by law, (2) she hired Mr. Segarra to come after MR. POLO'S career in law, (3) as the employer of Mr. Segarra, Ms. Hernandez consented to Mr. Segarra's actions to entrap MR. POLO, to put MR. POLO in jail, and to harass MR. POLO with motions for attorney's fees not supported by law or facts, (4) deprived the plaintiffs of their constitutional right to liberty, of MR. POLO to exercise and the children to receive the care, custody, and control of MR. POLO'S children by taking the children without due process of law, (5) she paid MR. SEGARRA, not only to harass MR. POLO, but also to maliciously interfere with MR. POLO'S property right in the continued enrollment at STU.

480.     MR. MARTINEZ acted in concert with all other defendants, and he (1) financed the 10 years of malicious prosecution and harassment (2) provoked confrontation with MR. POLO at the Police station, and (3) took Mr. Polo's children and kept them for 7 days without a court

order, knowing that Mr. Polo had legal custody of the children, without Mr. Polo's consent, and without probable cause.

**B.  JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and GM SINGER**

481.     The DEFENDANTS JUDGE BERNSTEIN, JUDGE DEL REY, and JUDGE MULTACK acted in clear absence of all jurisdiction engaged in the conspiracy.

482.     DEFENDANT JUDGE BERNSTEIN, frivolously, in furtherance of the agreement/understanding he had with DEFENDANT MR. SEGARRA and other co-conspirators, engaged in acts like, but not limited to:

483.     allowing his co-conspirators Ms. Hernandez, Mr. Martinez, and Ms. Real to took Mr. Polo's children and kept them for 7 days without a court order, knowing that Mr. Polo had legal custody of the children, without Mr. Polo's consent, and without probable cause;

484.     issuing an Order of Referral to Co-parenting Coordinator alleging a history of domestic violence when DEFENDANT MR. SEGARRA and JUDGE BERNSTEIN knew there was not a pending domestic violence allegations; moreover, JUDGE BERNSTEIN never serve Mr. Polo with the new order of referral with such allegations.

485.     Failing to provided MR. POLO with notice, and opportunity to be heard before naming Mr. Polo vexatious with the intent of preventing the plaintiffs to succeed in their case.

486.     Sending the case to co-parenting coordinator knowing that MR. POLO was indigent and had not other choice than to be in contempt, with the intent to use contempt to destroy Mr. Polo's career in law.

487.     Sending the case to a prearranged co-parenting coordinator who was going to return a recommendation to remove MR. POLO'S Custody of his children due to JUDGE BERNSTEIN'S fabricated "Allegations of Domestic Violence" which were never pending in front of JUDGE BERNSTEIN, and were never an issue in the case.

488.     (6) DEFENDANT JUDGE BERNSTEIN and DEFENDANT MR. SEGARRA planned and execute a plan to name MR. POLO a vexatious litigant without due process of Law, with the objective of forcing MR. POLO to file a motion to recuse, and thereby forcing MR. POLO

to be in criminal contempt of court, to have an pretext to put MR. POLO in Jail and end his parental rights without due process of law, and they in fact tried to put Mr. Polo in jail.

489.    Filing a second order preventing Mr. POLO from filing anything in the docket without first serving Mr. Polo with notice and giving Polo an opportunity to be heard.

490.    Preparing the record to send later to STU saying that Mr. Polo had claimed to be an attorney in his court,

491.    Filing and order of recusal making comments about the merits of the motion for recusal, which goes against Fla. Sup. Ct. Mandate, with the intent of sending this two days later to STU to give STU DEFENDANT EMPLOYEES pretexts for them to terminate Mr. Polo career in law.

492.    Influencing a court reporter to mutilate the transcript to prevent part of the record to be presented in Federal Court;

493.    interfering (through DEFENDANT MR. SEGARRA) to prevent the State Attorney's office to appoint a pro-bono attorney to MR. POLO

494.    planning with STU management a year and a half before Mr. Polo graduation to terminate Mr. Polo's career in law when Mr. Polo was a bout to graduate, as he did.

### C. TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and JUAN CARLOS PLANAS

495.    The defendants TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, DAVID A. ARMSTRONG, and JUAN CARLOS PLANAS, acting in the course and scope of their duties as employees of ST. THOMAS UNIVERSITY, INC, and acting under color of state Law, planed the termination of MR. POLO with DEFENDANT JUDGE BERNSTEIN, and MR. SEGARRA way before DEFENDANT JUDGE BERNSTEIN sent the letter providing the school with pretexts to terminate MR. POLO'S career in law.

496.    On *October 23, 2017,* the day before DEFENDANT JUDGE BERNSTEIN deprived MR. POLO of access to the court without Due Process of Law for the first time, DEFENDANT JUDGE BERNSTEIN visited STU where he met, among others, with DEAN LAWSON, and DEAN MOORE.

497.     DEAN LAWSON, MR. SILVER, JUAN CARLOS PLANAS, DAVID A. ARMSTRONG and DEAN MOORE ("STU DEFENDANT EMPLOYEES") knew that DEFENDANT JUDGE BERNSTEIN was (1) in violation of Fla. Sup. Ct. mandate which prohibited JUDGE BERNSTEIN to make comments about the merits of a motion to disqualify a judge, (2) that DEFENDANTS JUDGE BERNSTEIN, and JUAN CARLOS PLANAS were acting in retaliation for MR. POLO'S engagement in Political Speech, (3) that MR. POLO had never represented to be an Attorney, or a licensed Member of the Florida Bar, but a student Member of the Florida Bar, and (4) that MR. POLO did not abuse any court proceeding, (5) that JUDGE BERNSTEIN was colluding with MR. SEGARRA and with STU DEFENDANT EMPLOYEES to retaliate against MR. POLO (6) that JUDGE BERNSTEIN, MR. SEGARRA, and Katia Camacho were conspiring to mutilate evidence that could be presented in Federal Court, and entrapping MR. POLO to get him to commit forgery, and (7) STU DEFENDANT EMPLOYEES knew that those pretexts in JUDGE BERNSTEIN'S Order of Recusal were, nothing else bu pretexts STU's Defendants Employees needed to put into action the plan they had with JUDGE BERNSTEIN to accomplish their common Objectives.

498.     The Defendant JUAN CARLOS PLANAS, in furtherance of the agreement/understanding he had with all other defendants, testified in close doors, after MR. SILVER asked MR. POLO to wait outside the room, about MR. POLO engagement in protected political speech during MR. POLO'S 2018 campaign. Moreover, JUAN CARLOS PLANAS engaged the Florida department of Election to harass MR. POLO and to initiate a malicious prosecution against MR. POLO. Moreover, Mr. Planas had tried, during classes, to entrap MR. POLO by asking MR. POLO if he had coordinated with a PAC to send an advertisement on his behalf and against Mr. Planas' friend Daniel Perez, which is illegal under the laws of campaign financing.

499.     Contemporary with the honor proceeding the FLORIDA DIVISION OF ELECTIONS began a proceeding against Mr. Polo, which later was dismissed for lack of probable cause.

500.     Upon information, MR. PLANAS worked for the FLORIDA DIVISION OF ELECTIONS and maintained a working relationship with the division. The department was harassing Mr. Polo for about a year.

501.     Moreover, MR. PLANA maliciously testify about MR. POLO'S protective speech, and MR. SILVER questioned MR. POLO about his political speech during the honor council hearing, and them Den Lawson also question Mr. Polo about his incursion into politics.

502.     Finally, all STU DEFENDANT EMPLOYEES capricious and arbitrary terminated MR. POLO, despite the fact that they have evidence in their hands showing that Mr. Polo had not done any of the things Judge Bernstein was accusing him of doing in his order of disqualification.

503.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

504.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

505.     Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

506.     STU was acting under color of law by conspiring with judge Bernstein, and they ended Mr. Polo's property interest right to Continued Enrollment at STU without Due Process of Law.

507.     The DEFENDANT JUDGE DEL REY, JUDGE MULTACK and GM SINGER, acting in the course and scope of their duties as employees of the ELEVENTH JUDICIAL DISTRICT COURT OF FLORIDA, acting under color of state Law, and acting in clear absence of all jurisdiction engaged in the conspiracy.

508.     In furtherance of the agreement/understanding/understanding and the common objectives all conspirators had, JUDGE DEL REY did the following: (1) knowing that previous entered orders were unconstitutionally preventing MR. POLO from accessing the Court, JUDGE DEL REY continued to enforce those orders to prevent MR. POLO'S case from succeeding and to inflict, economic and financial damages on MR. POLO, and his children; (2) Judge Del Rey entered orders limiting, and preventing MR. POLO'S access to the court without Notice or Opportunity to be heard; (3) Judge Del Rey engaged in repetitive hearings and delay tactics to delay the case, and then blame MR. POLO for the delay, (4) Judge Del Rey ignored multiple claims of MR. POLO in which MR. POLO expressed that his constitutional rights to access the court

were being violated and she forced MR. POLO to litigate without access to the court; (5) Judge Del Rey prevented the Clerk of Courts from allowing MR. POLO to file an amended notice of appeal, so that MR. SEGARRA could ask the 3d DCA to dismiss the appeal based on failure to file Amended notice of Appeal in the lower court; (6) Judge Del Rey ordered the clerk of Court not to allow MR. POLO to file transcripts that he would need on Appeal; (7) JUDGE DEL REY allowed Mr. Ceballos to withdraw representation knowing that the withdrawal was detrimental to MR. POLO and knowing that there was an unconstitutional order preventing MR. POLO from entering ANYTHING on the court's docket; thereby, leaving MR. POLO without access to the court without due process of law.

509.    JUDGE DEL REY allowed Mr. Genova to withdraw representation knowing that was detrimental to MR. POLO and knowing that there was an unconstitutional order preventing MR. POLO from entering anything on the court's docket. Additionally, she admitted on the record that she had no intent to vacate the unconstitutional order preventing MR. POLO'S access to the court.

510.    Additionally, JUDGE DEL REY, behind MR. POLO'S back, allowed DEFENDANT MR. SEGARRA to change her oral order, from preventing all access to the court, to allow some access to the court, and then she signed the order, without notice and opportunity to be heard.

511.    Even when this new Order was allowing MR. POLO to file other things, but motions, pleadings, and letters to the court, JUDGE DEL REY ordered the Clerk of court, as her predecessor did, to prevent MR. POLO from filing ANYTHING, and she directly ordered the Appeals Clerk of court to refuse MR. POLO'S filing of transcripts needed for an appeal.

### D. IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE

512.    The 3d DCA Judges IVAN F. FERNANDEZ, KEVIN EMAS, NORMA S. LINDSEY, ERICK WM. HENDON, FLEUR J. LOBREE, MONICA GORDO; ALEXANDER S. BOKOR; and TOMAS LOGUE, (hereinafter "3d DCA JUDGES") acting in the course and scope of their duties as employees of FLORIDA THIRD DISTRICT COURT OF APPEAL, acting under color of state Law, and acting in clear absence of all jurisdiction engaged in the conspiracy.

513.    In furtherance of the agreement/understanding/understanding and the common objectives all conspirators had, all 3d DCA JUDGES engaged in a scheme to protect JUDGE BERNSTEIN, DEL REY, and MULTACK from Civil liability, to prevent MR. POLO from having a hearing and access to the court, to prevent MR. POLO from successfully appealing any of the illegal actions of the lower court to a higher court by either (1) denying the appeals without an opinion, (2) denying the appeals citing to wrong case law unrelated to MR. POLO'S appeal, (3) denying the appeal with any pretextual argument, or (4) entering false comments in the only opinion they issued with the intent of building a case against MR. POLO to say MR. POLO is vexatious and remove MR. POLO'S access to file anything in future appeal and foreclose any access to the court of appeal.

514.    On September 14, 2022, Judges FERNANDEZ, GORDO and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders".

515.    Fla. R. App. P. 9.130 (a)(3)(B) Limits the Appeals to the District Courts of Appeal of non-final orders to those orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions."

516.    The others MR. POLO appealed were, in fact, order Continuing, Modifying, and imposing injunctions without due process of law and injunctive in nature. However, Judges FERNANDEZ, GORDO and LOBREE maliciously denied MR. POLO'S appeal and motion to issue a written opinion to prevent MR. POLO from having access to the court and to prevent the case from being dismissed for lack of jurisdiction.

517.    The order was entered without an opinion to foreclosures review of the Florida Supreme Court, and it does not set a precedent for lack of opinion.

518.    Moreover, Fla. R. App. P. 9.040(c) creates a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought. ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought....")

519.    However, MR. POLO asked the court to issue a writ of prohibition, in the alternative, to prevent the lower court from exercising jurisdiction when it had lost all jurisdiction, but the court also denied that option with the malicious intent of forcing MR. POLO to file another pleading so they could have a pretext to say MR. POLO is a vexatious litigant.

520.     On March 01, 2023, Judges LINDSEY, HENDON and LOBREE rendered an order denying a writ of prohibition and citing wrong law that does not apply to MR. POLO'S case, with the malicious intent of preventing the case from being dismissed for lack of jurisdiction to allow the lower court to continue with the harassment and prevent MR. POLO from appealing to a higher court.

521.     The court dismissed the case citing *Rorrer v. Orban*, 215 So. 3d 148 (Fla. 3d DCA 2017); *Juhl v. Juhl*, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous to MR. POLO'S case.

522.     MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different and that the facts of MR. POLO case were more like this in their own case from the 3d DCA *Frumkes v. Frumkes*, 328 So. 2d 34 (Fla. 3d DCA 1976) in which the 3d DCA held that Court loses jurisdiction of a cause after a judgment or final decree has been entered and the time for filing petition for rehearing or motion for new trial has expired.

523.     Moreover, a month before issuing this order, in *Padron v. Padron*, No. 3D22-2146 (Fla. Dist. Ct. App. Feb. 8, 2023) the 3d DCA (judges EMAS, LINDSEY and GORDO) used the same rule stipulated in *Frumkes* to dismiss a case for lack of jurisdiction with extremely similar facts to MR. POLO'S case.

524.     However, the aforementioned judges denied the motion for reconsideration knowing that they were citing two wrong inapplicable laws.

525.     On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismiss a Writ of Mandamus as moot, when the issue of access to the court and to file documents was not moot at all. However, even if it was moot, mootness does not defeat appellate jurisdiction, in Florida.

526.     There was still a controversy to be resolved by the 3d DCA, and the issues continue to exist, the unlawful denial of MR. POLO'S access to the court without due process of law.

527.     The Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and he is obliged to accept motions presented for filing in pending cases.

528.     MR. POLO had a clear legal constitutional right (under Article I, Section 21 of the Florida Constitution) to access the court and file documents in the lower court, and that right was being violated.

529.     And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts.

530.     Therefore, Judges FERNANDEZ, EMAS, and HENDON dismissed the Petition for writ of Mandamus to prevent MR. POLO from having access to the court to file proper filings.

531.     On April 6, 2022, the Judges LOGUE (adjunct professor of law at St. Thomas University), HENDON, and BOKOR, rendered an opinion, granting the only appeal ever to MR. POLO with the malicious intent of using the opinion to record incorrect statements stating that MR. POLO had appeal the final judgement and this was affirmed on appeal which was totally incorrect. Moreover, the order accenting that MR. POLO was found to be vexatious knowing that such a statement was not supported by competent evidence in the record. Additionally, the judges knew that MR. POLO'S right to file was removed unconstitutionally without notice and opportunity to be heard.

532.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) The Plaintiff(s) sustained severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) Plaintiff, MR. POLO has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

533.     **WHEREFORE**, Plaintiff(s) demand judgment for damages against, and DEFENDANT MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

534. Moreover, the Plaintiffs demand Declaring that DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER discriminated against the Plaintiff(s), violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

535. Enjoining DEFENDANTS JUDGE BERNSTEIN, JUDGE MARCIA DEL REY, and GM ROBERT S. SINGER from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

536. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against ST. THOMAS UNIVERSITY, INC., **SEGARRA & ASSOCIATES, P.A.**, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, **MR. SEGARRA**, **JUDGE BERNSTEIN**, JUDGE DEL REY, JUDGE MULTACK, GM SINGER, **MERLIN HERNANDEZ**, and RANDOLPH MARTINEZ pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against DEFENDANT, DEAN LAWSON, DEAN MOORE, MR. SILVER, DAVID A. ARMSTRONG, JUAN CARLOS PLANAS, pursuant to 42 U.S.C. Sections 1983 and 1988.

537. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 13.   TORTUOUS INTERFERENCE WITH CONTRACT (AGAINST JUDGE BERNSTEIN)

538. Plaintiffs re-alleges paragraphs 44 through 237 and further state that JUDGE BERNSTEIN (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

539. MR. POLO was a student at STU, and STU had implied contractual legal obligations to the Plaintiff to grant Plaintiff a Degree upon completion of Plaintiff's course of study and any other requirement contained in the 2015 student handbook.

540.     In exchange for obtaining the Degree, MR. POLO had to pay STU tuition, for which STU provided access to the campus and enrollment in the school. MR. POLO was in good standing at STU before the acts complained of herein.

541.     The ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, JAY SILVER, MERLIN HERNANDEZ, AND RANDOLPH MARTINEZ knew that MR. POLO had a contractual relation with STU and a legal right to obtain, upon completion of all required courses of study, a Juris Doctor Degree and a Tax Law Certificate from STU where MR. POLO was studying Law.

542.     DEFENDANT JUDGE BERNSTEIN was a Judge in the family court and was an Agent of defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA. JUDGE BERNSTEIN'S jurisdiction over the Plaintiffs extended only to hearing and adjudicating matters related to the Family Court case. When the acts complained off occurred, JUDGE BERNSTEIN was acting within his capacity and scope as an agent of ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA.

543.     DEFENDANT MR. SEGARRA was the attorney for Ms. Hernandez, and was an Agent of defendant SEGARRA & ASSOCIATES, P.A., and of Ms. Hernandez, and his duties to Ms. Hernandez were in regard to the Family Court Proceeding for which he was hired. Nevertheless, he was acting within his capacity and scope as an agent of SEGARRA & ASSOCIATES, P.A. and thereby of MS. HERNANDEZ who had hired SEGARRA & ASSOCIATES, P.A. to represent her, when he engaged in providing misleading information to STU in furtherance of the agreement/understanding DEFENDANT MR. SEGARRA had with STU DEFENDANT EMPLOYEES, JUDGE BERNSTEIN and MS. HERNANDEZ, to breach their contractual obligations intentionally and unjustifiably with MR. POLO..

544.     The Defendants DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER were professors, and/or managers of ST THOMAS UNIVERSITY, INC., and they were acting withing their capacity and scope as agents of ST THOMAS UNIVERSITY, INC., when they engaged in conspiring with DEFENDANT JUDGE

BERNSTEIN to intentionally and unjustifiably breach the contractual obligation STU had to MR. POLO.

545.     ST. THOMAS UNIVERSITY, INC., and the STU DEFENDANT EMPLOYEES were engaged in "training and graduating lawyers capable of applying legal principles to address and solve problems of an increasingly complex and changing society." Neither the defendants ST. THOMAS UNIVERSITY, INC., or STU DEFENDANT EMPLOYEES were engaged in "regulating the practice of law in Florida; ensuring the highest standards of legal professionalism in Florida; or protect the public by prosecuting unethical attorneys and preventing the unlicensed practice of law."

546.     The DEFENDANTS' intentional interference disrupts the contractual relationship MR. POLO had with STU when on October 23, 2017, DEFENDANT JUDGE BERNSTEIN JUDGE BERNSTEIN began the plan with STU to damage MR. POLO career at ST. THOMAS UNIVERSITY, INC., the day before JUDGE BERNSTEIN unconstitutionally Deprived MR. POLO of access to the Court without due process of law.

547.     There DEFENDANT JUDGE BERNSTEIN, maliciously, got the STU DEFENDANT EMPLOYEES to agree with his plan to end MR. POLO'S career in law when MR. POLO was about to graduate but never before graduation. For this JUDGE BERNSTEIN, and STU DEFENDANT EMPLOYEES, maliciously, willfully, and wantonly, prepared the conditions necessary for the school to intervene.

548.     MS. HERNANDEZ and MR. MARTINEZ were, paying SEGARRA & ASSOCIATES, P.A., and MR. SEGARRA not only to represent her, but to come after MR. POLO'S livelihood, degree in law, to put MR. POLO in Jail, to illegally terminate MR. POLO'S parental rights, and to interfere with MR. POLO'S contractual relation with STU.

549.     On *September 25, 2018*, MR. POLO filed an affidavit in support of the *Order to Show Cause* and the *Oral Second Motion to Recuse* that Polo planned to enter in open court. In the affidavit MR. POLO claimed that he was *a Student Member of the Florida Bar Tax Section*.

550.     On *October 2, 2018*, JUDGE BERNSTEIN, frivolously, and maliciously tried on multiple occasions to enter into the record false allegations indicating that MR. POLO *had represented to be an attorney* in his court. MR. POLO repeatedly corrected DEFENDANT JUDGE BERNSTEIN telling him that Polo never said to be licensed to practice or an attorney.

What MR. POLO stated in the affidavit was that he was a *Student Member of the Florida Bar*. As it is shown in the ***September 25, 2018,*** hearing's transcript, and the affidavit itself.

551.     After multiple malicious attempts to put on the record that MR. POLO represented to be an attorney, DEFENDANT JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney would be "*a gross misrepresentation.*"

552.     DEFENDANT MR. SEGARRA maliciously said on the record that MR. POLO was even engaged in ***an illegal practice of law by representing himself*** in court, which was factually and legally incorrect.

553.     All, aforementioned allegations were made with the intent of creating the excuse STU needed to start an Honor Council proceeding against MR. POLO, and after DEFENDANT JUDGE BERNSTEIN'S and DEFENDANT MR. SEGARRA'S attempt to put MR. POLO in Jail had failed for lack of intent.

554.     On ***January 29, 2019***, during the hearing for recusal, DEFENDANT JUDGE BERNSTEIN entered an order of recusal which he had, maliciously and premeditatedly, already drafted. At the hearing JUDGE BERNSTEIN stated: "I'm aware of the fact that I am not permitted under Florida law to challenge the allegations raised in the motion to recuse without triggering your recusal, so I haven't before now."

555.     DEFENDANT JUDGE BERNSTEIN Order of Recusal contained false accusation saying that MR. POLO (1) falsely representing to be a "Member of the Florida Bar;" (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra and accusing MR. POLO of being disrupting judicial the functioning of the office by calling his judicial assistant, which was also false. Moreover, the order did not contain any evidence of JUDGE BERNSTEIN'S allegations.

556.     Then, two days later, acting in clear absence of all jurisdiction, DEFENDANT JUDGE BERNSTEIN sent a letter to STU, which contained the Order of Recusal containing the allegations necessary for STU to act against MR. POLO to breach STU's contractual obligation to STU had to MR. POLO.

557.     DEFENDANT MR. SEGARRA, intentionally and maliciously, actively engaged in depriving MR. POLO and his children of access to the court without due process of law, taking MR. POLO'S liberty right to the care and custody of his children without due process of law, and

in entrapping MR. POLO to deprive MR. POLO of liberty (Putting MR. POLO in Jail) without due process and in collusion with JUDGE BERNSTEIN. JUDGE BERNSTEIN had arranged with STU to provide STU with fabricated bases for STU to terminate intentionally and maliciously the Plaintiffs' property interest in the continued enrollment of MR. POLO at STU. Moreover, MR. SEGARRA, colluded with STU DEFENDANT EMPLOYEES by providing Jay S. Silver with "numerous filings" to use those as pretexts to breach STU's contractual obligation to MR. POLO, and to deprive, thereby, MR. POLO of his property right interest in the continued enrollment at STU without due process of law.

558.    DEFENDANT MR. SEGARRA and DEFENDANT JUDGE BERNSTEIN had an interest in maliciously terminating MR. POLO career law because of MR. POLO'S Political speech against the family Court Enterprise. Polo's promises to fight corruption in the family court represented a threat to DEFENDANT MR. SEGARRA, DEFENDANT JUDGE BERNSTEIN and the continued operation of the Family Court RICO enterprise. MR. POLO'S accusations of corruption against JUDGE BERNSTEIN and his co-conspirators made in the campaign trail against the Family Court Judicial System, along with MR. POLO'S accusations of possible ties of a State Representative, an ex-congressperson, and a then candidates to U.S. Congress with the Cuban dictatorship, were additional motivations for all the defendants to come after MR. POLO to silence his political speech. Therefore, they joined forces with a well-known attorney for political figures, Juan Carlos Planas.

559.    DEFENDANTS, ST THOMAS UNIVERSITY, INC., DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, intentionally, maliciously and wantonly initiated an honor proceeding against MR. POLO with JUDGE BERNSTEIN'S fabricated pretests, with the intent of capriciously and arbitrarily terminating MR. POLO'S Political and legal career, silence MR. POLO'S speech against the local political figures, and the RICO enterprise organized and operated within the Miami-Dade Family Court (ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA).

560.    DAVID A. ARMSTRONG, knew that MR. POLO was retaliated against for his political position, speech, and that ST. THOMAS UNIVERSITY, INC. was acting in collusion with JUDGE BERNSTEIN, and under color of law, to deprive the Plaintiffs' of their property interest without due process of law.

561.     MR. POLO felt humiliated and embarrassed when he had to ask his peers, and professors, for letters of recommendations and had to explain to them what he was falsely being accused of.

562.     Ms. Lawson humiliated MR. POLO, intentionally knowing that MR. POLO'S wife was sitting right outside the door when she was conducting the appeal meeting with her and Dean Moore.

563.     MR. POLO'S wife witnesses when DEAN LAWSON told MR. POLO "I, don't think your problem is cognitive, but I think your problems is one of honesty" when Polo explained that he may have forgot to disclose information in his application because of his cognitive diagnosed problem, which was well known to DEAN LAWSON and everyone at STU management.

564.     Therefore, the Contract MR. POLO had with STU, would have never been breached but for the interference of the DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, tortuously and intentionally interference with MR. POLO'S contractual relation with STU.

565.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to

continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

566. **WHEREFORE**, Plaintiff(s) demand judgment for damages against DEFENDANT, TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, JUAN CARLOS PLANAS, and DEFENDANT MR. SEGARRA, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

567. Moreover, the Plaintiffs demand Declaring that ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, and PATRICIA MOORE discriminated against the Plaintiff(s), violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

568. Enjoining DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER, and PATRICIA MOORE from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct;

569. Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., DEFENDANT MR. SEGARRA, ST THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of

attorney's fees and cost, against DAVID A. ARMSTRONG, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and JAY SILVER pursuant to 42 U.S.C. Sections 1983 and 1988; and

570.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 14.     NEGLIGENT HIRING UNDER 42 U.S.C. SECTION 1983

571.     Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

572.     The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

573.     Defendants, ST. THOMAS UNIVERSITY, INC., and negligently knew or should have known that the DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG were dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida.

574.     Defendants, ST. THOMAS UNIVERSITY, INC., failed to conduct a reasonable investigation regarding the competence of the DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, AND DAVID A. ARMSTRONG to be retained as their, president, management staff/employees, and to be assigned with the duty of handling the honor council against MR. POLO.

575.     Defendants, ST. THOMAS UNIVERSITY, INC., during the course of employment of STU DEFENDANT EMPLOYEES became aware or should have become aware of problems with STU DEFENDANT EMPLOYEES, and STU's president DAVID A. ARMSTRONG that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Bar.

576.     Defendants, ST. THOMAS UNIVERSITY, INC, owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent managers, professors.

577.    Defendant, ST. THOMAS UNIVERSITY, INC., breached their duty of care to the Plaintiffs by hiring and retaining incompetent employees, as the Defendants, DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG.

578.    Defendant, SEGARRA & ASSOCIATES, P.A., negligently knew or should have known that the DEFENDANT MR. SEGARRA was dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida.

579.    Defendant, SEGARRA & ASSOCIATES, P.A., failed to conduct a reasonable investigation regarding the competence of THE DEFENDANT MR. SEGARRA to be retained as its managing director/president, and/or attorney.

580.    The Defendant, SEGARRA & ASSOCIATES, P.A., during the course of employment of MR. SEGARRA became aware or should have become aware of problems with MR. SEGARRA indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging, or reassignment of MR. SEGARRA.

581.    Defendant, SEGARRA & ASSOCIATES, P.A., owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent Lawyers.

582.    Defendant, SEGARRA & ASSOCIATES, P.A., breached its duty of care to the Plaintiffs by retaining incompetent attorneys such as DEFENDANT MR. SEGARRA.

583.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, failed to conduct a reasonable investigation regarding the competence of THE DEFENDANT JUDGES (MARCIA DEL REY, JUDGE BERNSTEIN, JUDGE MULTACK, and GM SINGER) to be retained as judges.

584.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, during the course of employment of DEFENDANT JUDGES became aware or should have become aware of problems with DEFENDANT JUDGES that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Judicial Qualification Commission.

585.    Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, owed MR. POLO, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent Judges.

586. Defendant, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, breached its duty of care to the Plaintiffs by retaining incompetent Judges such as DEFENDANT JUDGES, MARCIA DEL REY, JUDGE BERNSTEIN, JUDGE MULTACK, and GM SINGER.

587. As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

588. **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

Declaring that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT: 15.    NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983

589.    Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

590.    The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

591.    Defendants, DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, individually, owed the public, including Plaintiffs, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when dealing with the public in a way that could result in deprivations of any member of the public' constitutional rights without due process of law.

592.    DEFENDANTS, ST. THOMAS UNIVERSITY, INC., and breached their duty of care to Plaintiff by STU failing to provide each of the STU DEFENDANT EMPLOYEES (DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, and MR. SILVER), and DAVID A. ARMSTRONG, with proper and special training and/or supervision so that they could be prepared to execute the duties the STU reasonably could expect them to perform during the course and scope of their employment.

593.     As a proximate result of lack of training and supervision, STU DEFENDANT EMPLOYEES deprived the plaintiffs of their constitutional rights, without due process of law by cutting short the Plaintiffs' property right to MR. POLO'S continued enrollment at STU, and by depriving the Plaintiffs of liberty interest in their good name, reputation, honor and integrity, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

594.     DEFENDANT, SEGARRA & ASSOCIATE, P.A., breached its duty of care to Plaintiff by failing to provide the DEFENDANT MR. SEGARRA with proper and special training and/or supervision so that he could be prepared to execute the duties Segarra & Associates, P.A., reasonably could expect MR. SEGARRA to perform during the course and scope of his employment.

595.     As a proximate result of lack of training and supervision, DEFENDANT MR. SEGARRA deprived the plaintiffs of their constitutional rights, without due process of law and tried to entrap MR. POLO to commit felony crimes he had no predisposition to commit, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

596.     DEFENDANT, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, breached its duty of care to Plaintiff by failing to provide each of the DEFENDANT JUDGES (JUDGE BERNSTEIN, Judge Del Rey, and GM SINGER) with proper and special training and/or supervision so that they could be prepared to execute the duties the Court reasonably could expect them to perform during the course and scope of their employment.

597.     As a proximate result of lack of training and supervision, DEFENDANT JUDGES (Judge Del Rey, JUDGE BERNSTEIN, and GM SINGER) deprived the plaintiffs of their constitutional rights, without due process of law and tried to entrap MR. POLO to commit felony crimes he had no predisposition to commit, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing toll against corruption in the Judicial system, and for his political speech.

598.     As a direct, natural, and proximate result of DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., AND THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

599.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA as follows:

Declaring that DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT: 16.      GROSS NEGLIGENCE UNDER FLORIDA LAW

600.      Plaintiffs re-alleges paragraphs 44 through 237 and further state that DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ;  (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ;  (9) JAY S. SILVER ;  (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ;  (12) DAVID A. ARMSTRONG ;  (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;  (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ; (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

601.      DEFENDANTS ST. THOMAS UNIVERSITY, INC., employed DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG, and was engaged in the exercise of providing legal education to member of our community.

602.      DEFENDANT SEGARRA & ASSOCIATES, P.A. employed DEFENDANT MR. SEGARRA, and was engaged in the exercise of legal services.

603.      The ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, which employed Defendants JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, and DEFENDANT JUDGE BERNSTEIN, was engaged in the exercise of discharge of a governmental function, the administration of justice.

604.     The conduct of the DEFENDANTS ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, individually, amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of their respective employees, and the that were the proximate cause of Polo's and his children's damages.

605.     The DEFENDANTS DEAN LAWSON, DEAN MOORE, JUAN CARLOS PLANAS, MR. SILVER, and DAVID A. ARMSTRONG were working for ST. THOMAS UNIVERSITY, INC., at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

606.     The DEFENDANT MR. SEGARRA was working for SEGARRA & ASSOCIATES, P.A., and thereby for MS. HERNANDEZ and MR. MARTINEZ; at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, MR. POLO'S Children and his family.

607.     The DEFENDANTS JUDGE DEL REY, JUDGE MULTACK, GENERAL MAGISTRATE SINGER, and DEFENDANT JUDGE BERNSTEIN were working for the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to MR. POLO, his Children and his family.

608.     The DEFENDANTS MERLIN HERNANDEZ, and RANDOLPH MARTINEZ, HAD a duty to engage in litigation so as not to endanger or harm MR. POLO, his children and his family.

609.     The conduct of the DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;   (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ;    (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;  (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ;  individually, amounted to gross

negligence through its wanton and reckless disregard the Plaintiffs' right under the law, and the that their individual acts were the proximate cause of Polo's and his children's damages.

610.　　Notwithstanding these duties, DEFENDANTS ST. THOMAS UNIVERSITY; INC.; SEGARRA & ASSOCIATES, P.A.; and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA breached these duties with deliberate indifference and gross negligence and without regard to MR. POLO'S and his children's rights and welfare through creating an environment in which the unconstitutional depravations conducted by, DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ; (5) NUSHIN G. SAYFIE; (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ; (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ, were viewed as acceptable to their respective employers, which caused serious injuries and damages to the plaintiffs.

611.　　Notwithstanding abovementioned duties, DEFENDANTS, DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ; (5) NUSHIN G. SAYFIE; (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ; (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ breached these duties with deliberate indifference and gross negligence and without regard to MR. POLO'S and his children's rights and welfare through creating an environment in which their unconstitutional depravations of rights without due process conduct were viewed as acceptable to all them, which caused serious injuries and damages to the plaintiffs.

612.　　DEFENDANTS ST. THOMAS UNIVERSITY INC.; SEGARRA & ASSOCIATES, P.A.; and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, along with their respective employees/supervisees; knew or should have known that by breaching these duties they would injure the Plaintiffs.

613.      DEFENDANTS, DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;   (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ;    (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;  (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ, knew or should have known that by breaching these duties they would injure the Plaintiffs.

614.      All the aforementioned DEFENDANTS had a duty to exercise reasonable care through sufficient training and supervision, and/or just by using reasonable care not to harm MR. POLO, his Children and his family. Their breach of those duties was reckless and amounts to gross negligence.

615.      The actions of DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;  (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ;  (9) JAY S. SILVER ;  (10) PATRICIA MOORE ;  (11) JUAN CARLOS PLANAS ;   (12) DAVID A. ARMSTRONG ;    (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (14) SEGARRA & ASSOCIATES, P.A.;  (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ were so egregious that MR. POLO'S and his children's damages were heightened and made more severe, thus entitling Plaintiff to exemplary damages.

616.      As a direct, natural, and proximate result of the indifferent and grossly negligent acts and/or omissions committed by DEFENDANTS and their actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a

loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10)  The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

617.        **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;  (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ;  (9) JAY S. SILVER ;  (10) PATRICIA MOORE ;  (11) JUAN CARLOS PLANAS ;  (12) DAVID A. ARMSTRONG ;   (13) ELEVENTH  JUDICIAL  CIRCUIT  COURT  OF  FLORIDA;     (14) SEGARRA  & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ as follows:

A) Declaring that (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;   (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;   (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ;  (9) JAY S. SILVER ;  (10) PATRICIA MOORE ;  (11) JUAN CARLOS PLANAS ;  (12) DAVID A. ARMSTRONG ;   (13) ELEVENTH  JUDICIAL  CIRCUIT  COURT  OF  FLORIDA;     (14) SEGARRA  & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution, without due process of law intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY;  (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;   (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ;  (7) ROBERT S. SINGER ;  (8) TAMARA F. LAWSON ;  (9) JAY S. SILVER ;  (10) PATRICIA MOORE ;  (11) JUAN CARLOS PLANAS ;  (12) DAVID A. ARMSTRONG ;  (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;  (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH

MARTINEZ; from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ; (5) NUSHIN G. SAYFIE; (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ; (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (14) SEGARRA & ASSOCIATES, P.A.;   (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ; pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

D) The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the Defendants in accordance with law.

E) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT: 17.       18 USC § 1961 (RICO)**

618.       Plaintiffs re-alleges paragraphs 44 through 237 and further state that THE DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ;   (5) NUSHIN G. SAYFIE; (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ; (12) DAVID A. ARMSTRONG ; (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (14) SEGARRA & ASSOCIATES, P.A.; (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ, (all together referred to as the "DEFENDANTS" throughout this Count), did the

following: are all associated with the Family court Enterprise (hereinafter the "Enterprise"), and as members of the enterprise they did the following:

619.    The Defendants in all their actions described in this complaint deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

620.    Since at least 2012, and until the present day (January 5, 2022), the above-mentioned Defendants engaged in a series of continuous and interrelated predicate acts with the common objective of (1) intimidating MR. POLO'S to silence his political speech against the corruption in the Family Court System and the relation of State and Federal candidates with the Cuban dictatorship; (2) intimidating MR. POLO to prevent him from bringing federal causes of actions against the Defendants in Federal Court; (3) intimidating MR. POLO to force him to drop the Civil case against Ms. Real and other co-conspirators; (4) intimidating MR. POLO to prevent him from reporting violations of Federal Law to federal law enforcement officials; (5) preventing MR. POLO from testifying in Federal Court against all members of the criminal enterprise.

621.    To accomplish their objectives, the defendants planned to intimidate MR. POLO used the following methods: (1) destroying MR. POLO'S and his children livelihood; (2) destroying MR. POLO'S degree in Law; (3) destroying MR. POLO'S reputation and credibility; (4) destroying Polo's prestige; (5) destroying MR. POLO'S career in Politics; (6) destroying the goodwill that having a career in law would represent in MR. POLO'S political career; (5) inflicting severe emotional distress on MR. POLO; (6) inflicting financial damages to MR. POLO and his family; (7) illegally depriving MR. POLO liberty to exercise his Parental rights, without due process of law; (8) and putting MR. POLO in Jail as an alternative method to deprive MR. POLO of his parental rights.

622.    A criminal enterprise exists, which is run from, and corrupts the operation of, the Miami-Dade County family court system. The enterprise is an association-in-fact composed of, but it is not limited to: Federal and State judges and magistrates, social workers, guardian ad litem, co-parenting coordinators, attorneys, state attorneys, politicians (in both parties, Republican and Democrat), psychologists, Court Reporters, Federal Judges, and police officers.

623.    As the Administrative Judge, DEFENDANT JUDGE BERNSTEIN ran, at least, part of the Family Court enterprise, which traffics with influence and power to illegally adjudicate

cases to benefit members of the enterprise. Judge Bertila Soto, (the "Chief Judge"), supervised all the judges in the Family court system, and she received multiple letters from multiple parents making her aware of the operation of a criminal enterprise within the Court system. However, she never acted upon the allegations contained in those letters with the objective of protecting the members of the enterprise.

624.     It was not until MR. POLO sent a cease-and-desist letter to Ms. Hernandez, making her aware of his intent to file sue in Federal Court that THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA removed DEFENDANT BERTILA SOTO and DEFENDANT JUDGE BERNSTEIN of their positions; nevertheless, the threat of continuing criminal activity that extends beyond the initial period of time when the predicate acts were originally committed were not removed.

625.     JUDGE DEL REY and JUDGE MULTACK continued to retaliate and violate MR. POLO'S constitutional rights without due process of law. Moreover, those judges act in representation of the enterprise to ensure that MR. POLO is unable to file documents needed present a successful defense on appeal, continue to deny motions knowing she had not legal bases in violation of due process, and continued to prevent MR. POLO from accessing the court without due process.

### A.  VIOLATIONS OF 18 U.S. Code §1503

626.     DEFENDANT JUDGE BERNSTEIN, JUDGE DAVIS, JUDGE FUNK, JUDGE ROY K. ALTMAN, JUDGE DEL REY, and GM SINGER violated 18 U.S. Code §1503 when JUDGE BERNSTEIN corruptly and maliciously endeavored to influence and in fact influenced his law school peer, JUDGE BRIAN DAVIS, and thereby also JUDGE FUNK to impede the due administration of law and to get, thereby, a favorable outcome in a pending Bankruptcy Case that Ms. Real, a member of the family Court Enterprise, had opened in Jacksonville to escape legal liability to MR. POLO.

627.     DEFENDANT JUDGE BERNSTEIN, JUDGE DAVIS, JUDGE FUNK, JUDGE ROY K. ALTMAN, JUDGE DEL REY, and GM SINGER agreed to participate in BERNSTEIN plan to impede the due administration of law, and in furtherance of their agreement they did the following:

628.     JUDGE DAVIS, and JUDGE FUNK, corruptly and maliciously, violated 18 U.S. Code §1503 when JUDGE DAVIS endeavored to and influenced JUDGE JERRY FUNK to prevented MR. POLO from having fair access to the Federal court system, and JUDGE FUNK accepted.

629.     JUDGE FUNK, corruptly and maliciously, used sanction no supported by law to intimidate MR. POLO for filing a petition for a Declaratory and injunctive relief in a court which had concurrent Jurisdiction to issue such a declaratory judgement.

630.     JUDGE FUNK, corruptly and maliciously, denied MR. POLO'S motion to dismiss for lack of personal Jurisdiction when the record showed that Ms. Real had served MR. POLO in a place that she actually knew not to be MR. POLO'S actual place of residency (abode).

631.     Moreover, JUDGE FUNK, corruptly and maliciously and with the intent of preventing a successful appeal, continued to send appealable orders to the wrong address until MR. POLO failed to timely file his Notice of Appeal.

632.     JUDGE FUNK, corruptly and maliciously, cut off MR. POLO testimony to prevent MR. POLO from further testifying, and stated in the opinion that MR. POLO was not credible to prevent MR. POLO'S oral testimony from being considered on appeal and for STU DEFENDANT EMPLOYEES to use the comment against MR. POLO during the honor council hearing, as STU DEFENDANT EMPLOYEES did.

633.     JUDGE FUNK, corruptly and maliciously, prevented MR. POLO from filing a direct appeal to the U.S. THE ELEVENTH CIRCUIT COURT OF APPEALS, to prevent MR. POLO from circumventing JUDGE DAVIS' review and reaching, thereby, the court of appeals before JUDGE DAVIS' review.

634.     JUDGE DAVIS denied the appeal and ruled that because the "Creditor has consistently listed 1475 SW 8th Street as his address, including in the state court proceedings and the bankruptcy case [which is factually wrong]. He cannot now claim that he did not receive adequate notice and service by being contacted at that address." Dist. CT: Doc: 26, and he cites Van Brunt, 158 (S.D.N.Y. 1994).

635.     Van Brunt, as many other U.S. Supreme Court cases, establishes a multifactor determination of place of abode. Nevertheless, Judge Davis used only one factor with the clear intent of preventing MR. POLO'S success in the case, and to protect the members of the Family

Court Enterprise MS. REAL. Therefore, Judge Funk and JUDGE DAVIS exercised illegal personal jurisdiction over MR. POLO who was never served at his actual place of abode, which was well known to MS. REAL at the time of service.

636.    JUDGE FUNK, knowing that MR. POLO was an indigent party, corruptly and maliciously refused MR. POLO to proceed in forma pauperis to prevent the case from reaching the court of appeals.

637.    JUDGE FUNK, corruptly and maliciously, allowed Ms. Real to discharge a non-dischargeable debt to prevent MR. POLO and his children from obtaining a judgement against Ms. Real for her tortious acts against MR. POLO and his children.

638.    JUDGE ROY K. ALTMAN, corruptly and maliciously, prevented the Plaintiffs from obtaining a summon by retaining and not granting the Plaintiffs petition to proceed in forma pauperis, and prevented the plaintiff from obtaining temporary emergency, and expedited injunctive reliefs by delaying the grant of the petitions for injunctive relief and to proceed in forma pauperis.

639.    JUDGE ALTMAN, with the intent of delaying the case requested recommendations from Judge Magistrate LISETTE REID, who recommended the petition for injunctive relief to be denied, and she used pure non-applicable law expecting MR. POLO to fail to file his objection within the 14 days allowed by law.

640.    Nevertheless, despite the Plaintiff(s) rapid and timely file of objections, JUDGE ALTMAN intentionally and maliciously failed to promptly process the petition to allow the state court to continue violating the Plaintiff(s) constitutional rights and, to facilitate JUDGE DEL REY'S continue violations of the Plaintiffs' constitutional rights, JUDGE ALTMAN delayed the processing of the two pending petitions he had in front of him for injunctive relief and to proceed in forma pauperis for a period of four months.

641.    JUDGE ALTMAN knew that failing to timely hear the Plaintiffs motion was going to result in the State of Florida to continue violating the Plaintiff(s) constitutional right. Nevertheless, he corruptly and intentionally delayed the resolution of those petitions.

642.    JUDGE BERNSTEIN influenced, obstructed and prevented the due administration of justice by convincing and influencing JUDGE DEL REY, JUDGE MULTACK, and GM SINGER, even when they did not have continue jurisdiction to act on the case, participate in his

plan to impede the due administration of justice by continuing the pattern of harassment JUDGE BERNSTEIN had maintained for many years, which included but was not limited to violations of MR. POLO'S constitutional rights without due process, preventing MR. POLO from obtaining a fair and just trial, and devastating MR. POLO and his family's future. In furtherance of the agreement/understanding, JUDGE DEL REY left MR. POLO without attorney knowing that MR. POLO didn't have access to file anything (emphasis added), on multiple occasions and refused to vacate unconstitutional orders that were depriving MR. POLO from accessing the courts without due process of law.

643.     MR. SEGARRA and JUDGE DEL REY engaged in delaying tactics with MR. POLO'S attorney to delay the resolution of two attorney's fees motion for over four years as a harassment technique. Moreover, MR. SEGARRA used unnecessary deposition, and service of process with the intent of harassing MR. POLO.

644.     GM SINGER, maliciously and in conspiracy with JUDGE BERNSTEIN violated MR. POLO'S right to due process by sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings to prevent MR. POLO from entering evidence int the record.

645.     Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO was had an obligation to pay child support. Moreover, such a determination was to be due once a bankruptcy case was ready for resolution, which was not the case.

646.     Therefore, JUDGE BERNSTEIN, JUDGE ALTMAN, JUDGE FUNK, JUDGE DAVIS, JUDGE DEL REY, and GM SINGER violated 18 U.S. Code §1503, by influencing, obstructing, and impeding the due administration of Justice.

### B. VIOLATIONS OF 18 U.S. Code § 1512 (b).

647.     The defendants JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and DEFENDANT JUDGE BERNSTEIN knowingly violated 18 U.S. Code § 1512 (b).

648.     JUDGE FUNK prevented MR. POLO from giving his full testimony in Federal court against a Member of the Family Court Enterprise, MS. REAL when he cut off MR. POLO'S

testimony before finishing with the intent of preventing the testimony of MR. POLO to be recorded in the record. Moreover, JUDGE FUNK allowed all the evidence into evidence to mislead MR. POLO into thinking that because the evidence was in the record, he did not have to testify anymore.

649.     STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, and DEAN MOORE), while acting under color of state law, knowingly intimidated MR. POLO by depriving the plaintiffs of their constitutional property interest in MR. POLO'S continued enrollment at STU; (1) knowingly violated MR. POLO'S First Amendment right to free speech without due process of law; and (2) knowingly conspired with the enterprise to intimidate and to prevent MR. POLO from reporting to the federal investigators that JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and Kathia Camacho had corruptly conspired to alter the transcript of the hearing on the Motion to recuse DEFENDANT JUDGE BERNSTEIN with intent to impair the transcript's integrity and availability for use in this official proceeding.

650.     DEFENDANT JUDGE BERNSTEIN, and DEFENDANT MR. SEGARRA planned, and executed an intimidatory scheme in conspiracy with all other defendants to silence MR. POLO, by which scheme they deprived MR. POLO and his children of their constitutional right to access the court, to interest in property, to liberty, to free speech.

651.     JUDGE BERNSTEIN, and DEFENDANT MR. SEGARRA unconstitutionally removed MR. POLO'S filing rights to force MR. POLO to be in contempt of court and have an excuse, thereby, to put MR. POLO in jail and remove MR. POLO'S custody of his children, knowing that MR. POLO did not have the predisposition to be in contempt.

652.     All Defendants knowingly engaged in aforementioned acts, and they delayed, prevented MR. POLO'S testimony in Federal court against Ms. Real, and prevented communication to a law enforcement officer of information relating to the commission or possible commission of criminal Federal offenses under Title 18, U.S.C., § 241 (Conspiracy Against Rights), Title 18, U.S.C., § 242 (Deprivation of Rights Under Color of Law), Ms. Hernandez's and her employer's violations of 26 U.S. Code § 7201 (Attempt to evade or defeat tax), Title 18 USC § 1961 and Fla. Stat. § 895.01 - 895.06 (Federal and State Racketeer Influenced and Corrupt Organizations) (hereinafter the "Federal Offenses").

653.     JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;

and DEFENDANT JUDGE BERNSTEIN, through intimidation, caused MR. POLO'S withholding of testimony against the Family Court Enterprise, in State and Federal Court, and they prevented MR. POLO from reporting, to federal officers the abovementioned Federal Offenses.

654.     JUDGE DAVIS, JUDGE FUNK, JUDGE ALTMAN, MR. SEGARRA, STU DEFENDANT EMPLOYEES, STU, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; and DEFENDANT JUDGE BERNSTEIN, knowingly, intimidated MR. POLO by using intimidating legal harassment, and they hindered, delayed, and prevented MR. POLO'S communication to a law enforcement officer of the United States of information relating to the commission or possible commission of aforementioned federal Criminal Offenses.

655.     Therefore, all the Defendants violated 18 U.S. Code §1512 (b)

### C.  VIOLATIONS OF 18 U.S. Code § 1512 (c)

656.     DEFENDANTS MR. SEGARRA, JUDGE BERNSTEIN, and KATHIA CAMACHO, corruptly engaged in altering, and mutilating a transcript of the hearing on the Motion to Recuse DEFENDANT JUDGE BERNSTEIN with the intent to impair the transcript's integrity and availability for use in this official proceeding.

657.     When MR. POLO found out that the transcript did not reflect the whole content of the hearing, he asked MS. CAMACHO to provide the audio which she had made. After refusing many times, MS. CAMACHO sent the audio to MR. POLO and in fact the content of the transcript was altered, and part of the words showing JUDGE BERNSTEIN'S bias against MR. POLO removed. MS. CAMACHO refused to correct the transcript, and she never corrected the transcript.

658.     Consequently, the DEFENDANTS MR. SEGARRA, JUDGE BERNSTEIN, and KATHIA CAMACHO violated **18 U.S. Code § 1512**.

### D.  VIOLATIONS OF 18 U.S. Code § 1512 (d)

659.     DEFENDANTS MR. SEGARRA, JUDGE DEL REY, GM SINGER, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES, DAVID A. ARMSTRONG, and ST. THOMAS UNIVERSITY, INC., violated 18 U.S. Code § 1512 (d), when they intentionally harassed MR. POLO, with the objective of hindering, delaying, and preventing MR. POLO from reporting to a law enforcement officer the commission or possible commission of abovementioned Federal Offenses, and causing a criminal prosecution to be sought or instituted.

660.      DEFENDANT DAVID A. ARMSTRONG intentionally permitted his subordinate to harass, and thereby hindered, delayed, and dissuaded MR. POLO from reporting to a law enforcement officer the commission of possible commission of abovementioned Federal Offenses.

661.      DAVID A. ARMSTRONG knew that their subordinates were violating MR. POLO'S rights in conspiracy with a state actor to harass MR. POLO by violating the Plaintiffs' property right to continued enrollment at STU without due process. MR. ARMSTRONG was protecting his and STU's political power, and monetary interest. MR. ARMSTRONG used deliberate indifference to protect STU's and his own political interest and intentionally failed to act to protect MR. POLO'S constitutional rights.

662.      JUDGE BERNSTEIN agree with STU DEFENDANT EMPLOYEES to provide the pretext for STU DEFENDANT EMPLOYEES to initiate an honor council proceeding to destroy MR. POLO'S political and legal career year and a half before MR. POLO graduation, and STU agreed to terminate MR. POLO'S career in law if Mr. Bernstein was to provide the pretexts. In furtherance of their agreement JUDGE BERNSTEIN tried on multiple occasions to entrap MR. POLO to put him in jail, tried to illegally take MR. POLO'S children's custody from him, tried to entrap MR. POLO with MS. CAMACHO for MR. POLO to commit forgery.

663.      STU DEFENDANT EMPLOYEES had in their possession the audio file and the transcripts that JUDGE BERNSTEIN, DEFENDANT MR. SEGARRA, and MS. CAMACHO conspired to mutilate. The STU DEFENDANT EMPLOYEES knew that DEFENDANT JUDGE BERNSTEIN'S order of recusal was a violation of Fla. Sup. Court's mandate, and they knew the allegations contained in the order of recusal were false. Moreover, STU DEFENDANT EMPLOYEES knew they were acting in violation of their own code of conduct that says that the Honor Council shall not be used to resolve personal problems. Nevertheless, they used the Honor Council proceeding to resolve JUDGE BERNSTEIN personal interest in destroying MR. POLO'S political and legal career, to silence MR. POLO'S political speech, and to retaliate to intimidate MR. POLO, to prevent MR. POLO from reporting to a U.S. law enforcement officer the commission or possible commission of abovementioned Federal Offenses.

664.      The STU DEFENDANT EMPLOYEES intentionally harassed and intimidated MR. POLO by using the false allegations contained in JUDGE BERNSTEIN'S order of recusal to continue with the fraudulent unconstitutional honor council proceeding against MR. POLO and

his family's future economic wellbeing to prevent MR. POLO from testifying in state and federal court.

665.     JUDGE DEL REY, and GM SINGER, agreed with JUDGE BERNSTEIN to harass MR. POLO and to violate MR. POLO'S constitutional rights without due process. In furtherance of the agreement/understanding JUDGE DEL REY left MR. POLO without attorney knowing that MR. POLO was being left without access to the court, on multiple occasions and refused to vacate unconstitutional orders that were depriving MR. POLO from accessing the courts without due process of law.

666.     MR. SEGARRA and JUDGE DEL REY engaged in delaying tactics with MR. POLO'S attorney to delay the resolution of two attorney's fees motion for over four years as a harassment technique. Moreover, MR. SEGARRA used unnecessary deposition, and service of process with the intent of harassing MR. POLO.

667.     GM SINGER, maliciously and in conspiracy with JUDGE BERNSTEIN violated MR. POLO'S right to due process by sua sponte dismiss an action based on affirmative defenses not raised by proper pleadings to prevent MR. POLO from entering evidence int the record.

668.     Moreover, GM SINGER granted attorney's fees to MR. SEGARRA no supported by law, or by fact, and classified the fees for enforcing compliance with a subpoena, as non-dischargeable in Bankruptcy child support attorney's fees, when they were not Child Support fees, and neither MR. POLO was had an obligation to pay child support. Moreover, such a determination was to be due once a bankruptcy case was filed, which was not the case.

669.     Aforementioned actions were done with the objective of harassing MR. POLO, creating emotional distress, depriving MR. POLO of his constitutional rights without due process of law, and thereby hindered, delayed, and dissuaded MR. POLO, from reporting to a law enforcement officer the commission of possible commission of abovementioned Federal Offenses.

670.     As a result, MR. POLO was harassed and intimidated, and he got afraid to report to a U.S. law enforcement officer the DEFENDANTS' commission or possible commission of Federal Offenses.

671.     Therefore, the DEFENDANTS MR. SEGARRA, JUDGE DEL REY, GM SINGER, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES, DAVID A. ARMSTRONG, and ST. THOMAS UNIVERSITY, INC., violated 18 U.S. Code § 1512 (d).

672.     The corrupt acts of all the Defendants members of the enterprise resulted in STU preventing MR. POLO from obtaining a Juris Doctor degree, which was one of the requirements for MR. POLO to enter into an intrastate agreement to continue his Tax Law education at Boston University. Boston University is located in Boston, the state of Massachusetts.

673.     At least one more father had to escape the state of Florida for DEFENDANT JUDGE BERNSTEIN'S retaliatory and unconstitutional violations to that Father.

674.     As a direct, natural, and proximate result of Defendants' actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) MR. POLO suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) the Plaintiff, MR. POLO lost his career at STU in 2019 because of Defendant's common scheme and the acts of ALL the DEFENDANTS in this in this case, and MR. POLO has student loan obligations of about $350,000 plus accumulated interest; (10) The plaintiff, MR. POLO, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) MR. POLO will incur attorney's fees and/or court costs.

675.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against the DEFENDANTS STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., as follows:

A) Declaring that the DEFENDANTS STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free

from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining THE DEFENDANT MR. SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, GENERAL MAGISTRATE SINGER, JUDGE FUNK, JUDGE DAVIS, JUDGE ROY K. ALTMAN, STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG, SEGARRA & ASSOCIATES, PA., ST THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against; THE DEFENDANT MR. SEGARRA, JUDGE BERNSTEIN, STU DEFENDANT EMPLOYEES (DEAN LAWSON, MR. SILVER, DEAN MOORE, and JUAN CARLOS PLANAS), DAVID A. ARMSTRONG, SEGARRA & ASSOCIATES, PA., and ST THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against JUDGE BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

D) The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the applicable Defendants for violation of RICO Federal Law.

E) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## § 7.PRAYER FOR RELIEF

676.     FRANK E. POLO, SR., Individually and as the next friend to FP, and HP, both minors, FP, and HP, demands a trial by jury, and judgement against (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ; (4) BERTILA SOTO ; (5) NUSHIN G. SAYFIE; (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS

PLANAS ;  (12) DAVID A. ARMSTRONG ;  (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;   (14) SEGARRA & ASSOCIATES, P.A.;  (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ; (collectively the "DEFENDANTS" in the amount of $12,742,800, for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages, loss of past earnings, and impairment of future earning capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper.

677.     Additionally, the Plaintiffs demand a Declaratory and injunctive relief against injucting the DEFENDANTS (1) SCOTT MARCUS BERNSTEIN; (2) MARCIA DEL REY; (3) SPENCER MULTACK ;  (4) BERTILA SOTO ;  (5) NUSHIN G. SAYFIE;  (6) MANUEL A. SEGARRA III ; (7) ROBERT S. SINGER ; (8) TAMARA F. LAWSON ; (9) JAY S. SILVER ; (10) PATRICIA MOORE ; (11) JUAN CARLOS PLANAS ;  (12) DAVID A. ARMSTRONG ;   (13) ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA;    (14) SEGARRA & ASSOCIATES, P.A.;  (15) ST. THOMAS UNIVERSITY, INC.; (16) MERLIN HERNANDEZ; (17) RANDOLPH MARTINEZ, from violating, or conspiring to violate with anyone, the Plaintiffs' and the witnesses' constitutional rights, or from retaliating against the Plaintiffs and witnesses, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and declaring that the DEFENDANTS violated the Plaintiff's Federal Protective rights, enumerating those rights.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1ᵀᴴ ST APT 411
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com