United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Frank Polo, Sr., individually and on behalf of FP and HP, his minor children, Plaintiff, <br><br> v. <br><br> Scott Marcus Bernstein, in his individual and personal capacity and others, Defendants. | Civil Action No. 23-21684-Civ-Scola |

## Second Order Striking Complaint

This matter is before the Court upon an independent review of the record. Proceeding pro se, Plaintiff Frank Polo, Sr., individually and on behalf of FP and HP, his minor children, is suing nearly twenty defendants, including several judges from the Eleventh Judicial Circuit Court of Florida along with the Eleventh Judicial Circuit Court itself; St. Thomas University and some of its employees; his former girlfriend (the mother of his children) and her boyfriend; a law firm and one of its attorneys; and Miami-Dade County. (Am. Compl. ECF No. 9.) He seeks monetary damages of over $12 million and various other forms of declaratory and injunctive relief. Previously, the Court struck Polo's first complaint because it was a shotgun pleading but afforded him an opportunity to replead his case if he believed he could address the identified shortcomings. (1st Order, ECF No. 6, 2–3.) Polo has timely filed an amended complaint which is marginally better but still far from adequate. Accordingly, the Court **strikes** Polo's amended complaint (**ECF No. 9**), for the reasons set forth below, but allows him one final chance to replead his case.

Polo has eliminated a dozen defendants from his case and reduced his complaint from 147 pages to 121. While this helps, incrementally, his complaint is nonetheless still "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." (1st Order at 2 (quoting *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (cleaned up)).) Indeed, much of Polo's complaint is unchanged. He continues to present a meandering and non-linear narrative of events and grievances, in mainly conclusory terms, through nearly 700 paragraphs, encompassing over a decade of history. For example, he complains that various judges and other actors "misused their power" "under color of state law" and prevented him from accessing the court system (*e.g.*, ¶¶ 28–29, 44). He also accuses his former

girlfriend, her boyfriend, the former girlfriend's attorney and associated law firm, a guardian ad litem, and various St. Thomas employees of all generally conspiring with various state and federal-court judges against him. (*e.g.*, ¶¶ 31, 33, 34, 37, 221.) He repeatedly accuses all the Defendants, in broad strokes, of "breaching their obligations to Plaintiffs"; committing "wrongful acts"; harassing Polo; violating his constitutional rights; intentionally humiliating him; and retaliating against him when he sought political office (*e.g.* ¶¶ 39–42, 43, 167, 178, 205). He also complains about adverse rulings in his state-court-custody proceedings (including that court's labeling him a vexatious litigant), contending the court, a guardian ad litem, and his former girlfriend were all acting out of malice, rather than addressing the merits of his case, thereby depriving him of due process at every turn (*e.g.*, ¶¶ 48–72).

In addition to his dissatisfaction with the outcome of his state-court proceeding, another main thrust of Polo's complaint revolves around his expulsion from St. Thomas Law School. Polo complains that the state-court judge handling his custody dispute improperly prompted the law school to initiate an honor-council proceeding against him which ultimately resulted in his separation from the school (*e.g.*, ¶¶ 73–88). Polo maintains that, as a result of the state-court judges and other individuals' personal vendettas against him, he was treated unfairly by St. Thomas's honor council, in violation of its own rules (*e.g.*, ¶¶ 89–121). Matters were compounded, Polo says, when another judge was reassigned his state-court case and then that judge, too, began retaliating against Polo for Polo's political speech and in an attempt to protect the prior judge (*e.g.*, ¶¶ 198–205).

Although Polo has reduced the number of counts in his complaint from nineteen to seventeen, many of them with subparts and spanning dozens of paragraphs, the range of allegations, many overlapping and intermingled, remains dizzying: various § 1983 claims (counts one through four, six through eleven, and fourteen through fifteen), "arbitrary, capricious, and malicious" breach of an implied contract (count five), civil conspiracy (count twelve), tortious interference with a contract (count thirteen), gross negligence (count sixteen), and violation of the Racketeer Influenced and Corrupt Organizations Act (count seventeen). Despite the Court's admonishments, Polo's complaint is still replete with conclusory statements and hundreds of vaguely factual allegations that are not directly tethered to a discernable cause of action. Polo also crams multiple causes of action into many of his counts. Though Polo has "sorted" 200 of his factual allegations into 13 different groups, many overlapping, purportedly limiting their applicability to only certain counts, the Court, without expending considerable and undue effort is nonetheless not able to correlate those allegations with the required elements for any of Polo's

causes of action. Once again, Polo's complaint "is replete with conclusory, vague, and immaterial allegations," such that "a defendant who reads the complaint would be hard-pressed to understand the grounds upon which each claim against him rests." *Barmapov*, 986 F.3d at 1326.

Regardless, the Court will afford Polo one more chance to address these deficiencies. Once again, to the extent Polo believes he can fix his pleading's shortcomings, he may file a second amended complaint. In doing so, as before, Polo must (1) address the shortcomings noted in this order; (2) comply with the pleading requirements in Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure; (3) include a separate factual background section setting forth, in *a linear and methodical way, specific factual allegations directly correlated to each count*; (4) separate each cause of action into a different, sequentially numbered count which clearly identifies the relevant cause of action or claim for relief, identifying each of the required elements of those claims; (5) *refrain from relying on conclusory or speculative allegations to support his claims*; and (6) identify with specificity which factual allegations and acts or omissions pertain to which count in a way that would allow the defendants (and the Court) to readily ascertain if he has adequately stated a claim for relief.

For the reasons set forth above, the Court **strikes** Polo's amended complaint (**ECF No. 9**). Polo may file an amended complaint by **June 22, 2023**, provided it complies with this order, Federal Rules of Civil Procedure 8(a) and 10(b), and the standards otherwise described above. Polo is forewarned that his **failure to comply with or timely respond to this order will result in the dismissal of his case**.

**Done and ordered**, in Miami, Florida, on June 8, 2023.

Robert N. Scola, Jr.
United States District Judge

*Copy via email mail to*:
**Frank Polo, Sr.**
frank.polo@msn.com