# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (Miami Division)

FRANK E. POLO, SR. (Pro Se);
FP; HP.
    Plaintiffs,

    v.

SCOTT MARCUS BERNSTEIN (in his Personal
and official capacity);
ST. THOMAS UNIVERSITY, INC.
               Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED BY _____ D.C.

AUG 2 1 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

CASE NO: **1:23-cv-21684**

**JURY TRIAL IS DEMANDED**

## § 1.SECOND AMENDED COMPLAINT

1.  Plaintiffs, FRANK E. POLO SR., individually and as natural father and next friend for FP, and HP, both minors, file this complaint against the defendants, SCOTT MARCUS BERNSTEIN (in his Personal and official capacity) ST. THOMAS UNIVERSITY, INC.; for the Defendants' violation of the Plaintiffs' Federal and state constitutional rights as secured by the United States Constitution, the Florida Constitution, the Laws of the U.S. and Florida common laws without due process of law. Consequently, the Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983, and under Florida Law. The Plaintiffs also have viable state law claims, and allege as follows:

## § 2.SUMMARY OF THE CASE

2.  This action is for damages, for declaratory judgment, and for injunctive relief arising from the Defendants' violations of the Plaintiffs' constitutional rights without due process of law in retaliation for Frank Polo's ("**MR. POLO**") protected speech for denouncing corruption in the Miami Dade Family Court system.

3.  In All the Defendants, acting under color of State Law, engaged in deprivation of the Plaintiffs' constitutionally protected rights, including but not limited to, continuous and repeated deprivation of access to the court, without first having a hearing and a meaningful opportunity to be heard. Additionally, SCOTT BERNSTEIN maliciously came out of his jurisdiction by sending a letter to St. Thomas University's Dean, when he was not even the judge in the case, with the intent of getting **MR. POLO** expelled from Law School only about 4 weeks before graduation and conspiring with ST. Thomas University, Inc.'s ("STU") employees, with the intent of interfering with the Implied Contract at law STU had with **MR. POLO**. STU breach their contract arbitrarily, and capriciously to allow SCOTT BERNSTEIN to retaliate against **MR. POLO** using STU's Honor Council. As a result, STU maliciously deprived the Plaintiffs of their interest in **MR. POLO'S** continued enrollment at STU, without due process of law.

4.  The defendants engaged in the aforementioned deprivation and subjected the Plaintiffs to Severe Emotional Distress, and harassment in utter disregard for the rights guaranteed her under the First and Fourteenth Amendments of the United States Constitution, in violation of, Title 42 U.S.C. SS. 1983.

## § 3. JURISDICTION, VENUE & STANDING

5.   Jurisdiction is proper in this court under 42 U.S.C. §1983, 42 U.S.C. §1961 - §1968, and 42 U.S.C. §1985. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a), and attorneys' fees and costs under 42 U.S.C. § 1988. Moreover, this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

6.   Venue is proper under 28 U.S.C. §1391(b) as most Defendants are residents of Miami-Dade County, which is located in the U.S. Southern District of Florida (this judicial district) and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County.

7.   All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiffs for which the Plaintiffs are seeking relief. Therefore, the Plaintiffs, have "standing" to bring this cause of action.

## § 4. PARTIES

8.   Plaintiff, FRANK E. POLO, SR., individually, (hereinafter "**MR. POLO**" or "Polo") and as the next friend to FP (10 years old), and HP (10 years old), both minors, (hereinafter, the "Children," and collectively with **MR. POLO**, the "Plaintiffs") are residents of Miami-Dade County, Florida.

9.   Defendant, SCOTT M. BERNSTEIN, (hereinafter "SCOTT BERNSTEIN") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief, he is a resident of Miami-Dade County, Florida, and

10. Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "STU"), is a Florida Not for Profit Corporation organized and existing under the laws of the State of Florida, the corporation has its principal place of business at 16401 NW 37th Avenue, Miami Gardens, FL 33054, Miami-Dade County, Florida.

## A.  AGENCY AND CONCERT OF ACTION

11. At all times abovementioned Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in committing the acts listed herein in the statement of fact section. In taking action to aid and abet and substantially assist the commission of the wrongful acts and other wrongdoings contained in the statement of facts section and as applied in each independent court, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing complained off herein.

## § 5.GENERAL FACTS APPLYING TO ALL COUNTS

12. ST. THOMAS UNIVERSITY, INC., and all other Defendants, individually, are "persons" for purposes of 42 U.S.C. Section 1983.

13. At all times relevant in all counts, sections, and subsections, is the fact that **MR. POLO** and his Children were parties in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA for Miami-Dade Country, Case No.: 2012-017787-FC-04 (the "Family Case"), where the defendant SCOTT M. BERNSTEIN was the presiding judge from about July 7, 2012, until on or about January 31, 2019.

14. At all times relevant in all counts, sections, and subsection is the fact that DEFENDANTS SCOTT BERNSTEIN is a Fla. Const. Art. 5 Judges, and their Jurisdiction is obtained from, state statutory law, common law, and the authority granted under the Fla. Const. Art. 5 §5 and are limited to heard and adjudicated cases raised under Florida Law, so long as they have subject matter jurisdiction to adjudicate those cases.

15. At all times relevant in all counts, sections, and subsections, is the fact that DEFENDANT SCOTT BERNSTEIN was an employee of one of the twenty (20) judicial circuit courts organized under the Office of the State Courts Administrators (OSCA), which is the administrative arm of the Florida Supreme Court in the Florida court system, namely, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and therefore, he was acting under color of state law.

16. At all times relevant herein in all counts is the fact that the DEFENDANTS' JUDGES BERNSTEIN, acts described in this complaint were done while he was acting in the performance of their official duties, but in the clear absence of all jurisdictions.

17. ST. THOMAS UNIVERSITY, INC. was at all relevant times responsible for its employees. ST. THOMAS UNIVERSITY, INC., is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Florida Laws.

## § 6.STATEMENT OF FACTS

### SCOTT BERNSTEIN

18. On or about July 15, 2015, MR. POLO won his family case after he force the other side to settle when he discover that the guardian, Lilliana Real ("MS. REAL") had filed a false report and had perjured herself at the final hearing. MS. REAL falsely claimed that MR. POLO was building a case against the mother and in support thereof, she said that MR. POLO had sent her pictures without the face of the children and that, none of the pictures had dates on them.

19. Mr. Polo subpoenaed emails from Microsoft Corporation which showed that (1) some pictures contained, in fact, faces of the children, and most of them had the date imprinted on them.

20. On or about May 26, 2015, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

21. On or about July 15, 2015, DEFENDANT JUDGE BERNSTEIN signed off on the Agreed Final Judgement ("AFJ") which was illegal for contracting away the right of the children to child support.

22. Thereafter, SCOTT BERNSTEIN built a case against MR. POLO to later get STU involved and get MR. POLO expelled from law school.

23. On multiple occasions, the clerk of courts determined that MR. POLO was indigent and SCOTT BERNSTEIN knew this fact.

24. On February 2, 2016, DEFENDANT JUDGE BERNSTEIN declared MR. POLO in content over an order that did not contain a clear and definite statement, intentionally ignoring the rule of law in Florida which does not support such an act.

25. On October 24, 2017, SCOTT BERNSTEIN restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed. Therefore, there was no notice and opportunity to be heard before the Plaintiffs' access to the courts was removed.

26. SCOTT BERNSTEIN, behind MR. POLO'S back ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

27. On or about **_June 06, 2018_**, Polo registered to **_run for a State Representative_** with an agenda against judicial corruption. During the campaign, and thereafter, Polo engaged in **_core political speech_** which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

28. On October 2, 2018, DEFENDANT SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed MR. POLO'S right to access the court/filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

29. MR. POLO filed a motion to recuse SCOTT BERNSTEIN. Before the hearing on MR. POLO'S motion, held on January 29, 2019, DEFENDANT JUDGE BERNSTEIN had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

30. The order was in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. Moreover, the order was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "incessantly" calling his Judicial Assistant. Moreover, DEFENDANT JUDGE BERNSTEIN stated in pertinent part:

31. MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

32. Two days after BERNSTEIN'S hearing of January 29, 2019, DEFENDANT JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with whom DEFENDANT JUDGE BERNSTEIN had met on October 23, 2017, the day before he named MR. POLO vexatious litigant.

33. DEFENDANT JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with DEFENDANT JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

34. The allegations contained in Judge Bernstein's Order of Recusal were false and MR. POLO provide relevant evidence to STU to show he was lying. However, STU look the other way and side with JUDGE BERSTEIN without offering MR. POLO a fair opportunity.

35. BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor (F) General Unfitness, and he misrepresented the truth by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

## ST. THOMAS UNIVERSITY, INC.

36. STU has a custom/policy of allowing their employees not to follow the rules established by STU and fail to take disciplinary actions against their employees even when those create harm to the students or other employees as shown by their employees' total disregard for the truth in MR. POLO'S case.

37. Two days after the January 29, 2019 hearing, On January 31, 2019, SCOTT BERNSTEIN sent a letter to DEAN LAWSON, which contained his motion of recusal, which was full of false allegations and manipulated facts.

38. As of January 31, 2019, MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit

and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

39. At that time, MR. POLO and STU were engaged in the performance of their agreement and MR. POLO was just weeks away from graduation when SCOTT BERNSTEIN interfered with the contract and, using the power of his office influenced STU to breach the contract.

40. Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU, and he was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

41. STU's decision to terminate MR. POLO was not based on substantial evidence but on the influence exerted by Judge Bernstein using the power of his office. Moreover, STU disregarded the weight of the evidence MR. POLO presented to them, and they substantially disregarded their own rules with the intent of finding any pretext to breach the contract they had with MR. POLO.

42. STU allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

43. That was precisely what Judge Bernstein was doing, he was bringing his personal interest in retaliating against MR. POLO for MR. POLO speech against the corruption in the family court where he was granting cases based on his relationship with the GAL and not based on the fair and just application of the law.

44. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

45. "(1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote."

46. By the end of the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things DEFENDANT SCOTT BERNSTEIN alleged in his Order of Recusal. They did not have clear and convincing evidence to support the breach of contract.

Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to initiate a second honor council proceeding.

47. As of March 23, 2019, STU had already decided to remove MR. POLO from the school even before the proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

48. On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council proceeding to take place on April 4, 2018.

49. This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

50. On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

51. Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

52. In preparation to take MR. POLO to an honor council hearing, the DEAN MORE prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter and order of recusal the DEFENDANT SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR.

POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

53. Moreover, the document contained the malicious plan of DEAN MOORE, not to blame MR. POLO for his own acts, but to blame MR. POLO for the acts of his attorney.

54. STU's management knew that the new allegation could be a result of MR. POLO'S lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA"). THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms which may have produced those results they were complaining about.

55. STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

56. No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

57. STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

58. STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

59. Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

## § 7. COMPLAINT

**COUNT 1.        DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

### AGAINST THE DEFENDANT SCOTT BERNSTEIN

60. Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS SCOTT BERNSTEIN, (referred to as the "DEFENDANT" throughout this Count), did the following:

61. The DEFENDANT SCOTT BERNSTEIN, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

62. At the time of the acts complained of in this pleading, MR. POLO was declared indigent by the court; therefore, was unreasonable to retain counsel.

63. On ***October 3rd, 2017***, the DEFENDANT MR. SEGARRA noticed a hearing for ***October 24, 2017***, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties."

64. On ***October 24, 2017***, the hearing was held, but the hearing was not so much about competing orders, but it was an ambush to remove **MR. POLO'S** right to access the court by naming **MR. POLO** vexatious without notice and opportunity to have a meaningful hearing, because the hearing was never noticed as a hearing to show cause why **MR. POLO** shouldn't be named vexatious.

65. In that hearing, the DEFENDANT SCOTT BERNSTEIN named **MR. POLO** a vexatious litigant preventing him from filing any "further pleadings, motions, or letters to the court …." without "having the same reviewed by a Member of the Florida Bar."

66. Furthermore, the DEFENDANT SCOTT BERNSTEIN ordered the Clerk's office not to accept ANY filing from **MR. POLO**; even though, BERNSTEIN'S order did not prevent **MR. POLO** from entering other documents but pleadings, motions, or letters to the court.

67. Therefore, DEFENDANT SCOTT BERNSTEIN, deprived **MR. POLO** and his children of access to the court in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

68. If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE DEFENDANT SCOTT BERNSTEIN, through other judges, and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

69. As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

70. **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, the DEFENDANT SCOTT BERNSTEIN as follows:

Declaring that the DEFENDANT SCOTT BERNSTEIN, deprived **MR. POLO** and his children of access to the court in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

Enjoining the DEFENDANT SCOTT BERNSTEIN from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against SCOTT BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT 2. DEPRIVATION OF PLAINTIFFS' RIGHT TO ACCESS TO THE COURT IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

71. Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS SCOTT BERNSTEIN, (referred to as the "DEFENDANT" throughout this Count), did the following:

72. The DEFENDANT SCOTT BERNSTEIN, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

73. At the time of the acts complained of in this pleading, MR. POLO was declared indigent by the court; therefore, was unreasonable to retain counsel.

74. There was a hearing held on October 2, 2018, which was **never noticed** as a hearing to remove or alter **MR. POLO'S** access to the court rights.

75. However, on October 2, 2018, DEFENDANT SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order prevented **MR. POLO** from filing "anything further in the court's file." Moreover, the order prohibited **MR. POLO** from calling, emailing, or texting the Judicial Assistant.

76. **MR. POLO** never received an order to show cause why he shouldn't have his rights to file were to be totally removed on the October 2, 2018 hearing.

77. Therefore, DEFENDANT SCOTT BERNSTEIN violated, the plaintiff's Federal and Florida State Constitutional Rights to Access the Court, without Due Process of Law in direct violation of 42 U.S.C. Section 1983, in violation of Plaintiff's Fifth and Fourteenth Amendment Rights to Due Process.

78. If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, THE DEFENDANT SCOTT BERNSTEIN, through other judges, and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

79. As a direct, natural, and proximate result of Defendant(s) actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

80. **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against, DEFENDANT SCOTT BERNSTEIN, as follows:

Declaring that, DEFENDANT SCOTT BERNSTEIN, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANT SCOTT BERNSTEIN , and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against SCOTT BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT 3.    ARBITRARY, CAPRICIOUS, AND MALICIOUS BREACH OF IMPLIED IN LAW CONTRACT

81. Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC., through its agents, DEAN LAWSON, MR. SILVER, **DEAN MOORE, JUAN CARLOS PLANAS,** (all together referred to as the STU EMPLOYEES) did the following:

82. Two days after the January 29, 2019 hearing, On January 31, 2019, SCOTT BERNSTEIN sent a letter to DEAN LAWSON, which contained his motion of recusal, which was full of false allegations and manipulated facts.

83. As of January 31, 2019, MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

84. At that time, MR. POLO and STU were engaged in the performance of their agreement and MR. POLO was just weeks away from graduation when SCOTT BERNSTEIN interfered with the contract and, using the power of his office influenced STU to breach the contract.

85. Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU, and he was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

86. STU's decision to terminate MR. POLO was not based on substantial evidence but on the influence exerted by Judge Bernstein using the power of his office. Moreover, STU disregarded

the weight of the evidence MR. POLO presented to them, and they substantially disregarded their own rules with the intent of finding any pretext to breach the contract they had with MR. POLO.

87. STU allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

88. That was precisely what Judge Bernstein was doing, he was bringing his personal interest in retaliating against MR. POLO for MR. POLO speech against the corruption in the family court where he was granting cases based on his relationship with the GAL and not based on the fair and just application of the law.

89. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

90. "(1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote."

91. By the end of the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things DEFENDANT SCOTT BERNSTEIN alleged in his Order of Recusal. They did not have clear and convincing evidence to support the breach of contract. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to initiate a second honor council proceeding.

92. As of March 23, 2019, STU had already decided to remove MR. POLO from the school even before the proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

93. On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council proceeding to take place on April 4, 2018.

94. This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2)

Failing to notify the school of failure to inform the Law School of subsequent litigation. (3) Failing to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

95. On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

96. Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

97. STU's management knew that the new allegation could be a result of MR. POLO'S lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA"). THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms which may have produced those results they were complaining about.

98. STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

99. No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO

found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

100.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

101.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

102.     Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

103.     For all the facts contained in this court, it is clear that STU's decision to terminate MR. POLO was not based on substantial evidence but on the influence exerted by Judge Bernstein using the power of his office. Moreover, STU disregarded the weight of the evidence MR. POLO presented to them, and they substantially disregarded their own rules.

104.     In preparation to take MR. POLO to an honor council hearing, the DEAN MORE prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter and order of recusal the DEFENDANT SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

105.     Moreover, the document contained the malicious plan of DEAN MOORE, not to blame MR. POLO for his own acts, but to blame MR. POLO for the acts of his attorney.

106.     For everything explained herein, ST. THOMAS UNIVERSITY, INC. breached the agreement they had with MR. POLO by expelling MR. POLO in a capricious, arbitrary, and malicious manner.

107.     As a direct, natural, and proximate result of DEFENDANTS' ST. THOMAS UNIVERSITY, INC., SCOTT BERNSTEIN, DEAN LAWSON, MR. SILVER, **DEAN MOORE**, **JUAN CARLOS PLANAS**, SEGARRA & ASSOCIATES, P.A., MS. HERNANDEZ, and MR.

SEGARRA'S actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

108.      **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC., as follows:

A) Declaring that DEFENDANT ST. THOMAS UNIVERSITY, INC., violated the Plaintiff(s)' constitutional rights to a property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., without due process of law, arbitrarily and capriciously terminated **MR. POLO'S** career in law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining DEFENDANT ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem

just and proper, against ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and Florida Common law.

D) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT 4.      DEPRIVATION OF PROPERTY AND LIBERTY INTEREST IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

109.      Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. (all together referred to as the "DEFENDANTS" throughout this Count), did the following:

110.      The DEFENDANTS SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC.in all their actions described in this complaint deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

111.      **MR. POLO** had an implied contract in law with STU, in which **MR. POLO** was to pay for STU legal education program, and STU was to confer **MR. POLO** a JD, and a Tax Law Certificate. When **MR. POLO** was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete not only his JD in Law, but also a Tax Law Certificate.

112.      As the result of the implied in-law agreement **MR. POLO** had with ST. THOMAS UNIVERSITY, INC., **MR. POLO** and his children had a property interest in the continued enrollment of **MR. POLO** at STU. They also had a liberty interest in their good name, reputation, honor, and integrity.

113.      The DEFENDANTS' JUDGES BERNSTEIN, acts described in this herein were done while he were acting in the performance of their official duties. Judge BERNSTEIN used the power of his office to send a letter to ST. THOMAS UNIVERSITY with the intent of using his office to get STU to terminate the PLAINTIFFS' abovementioned Liberties without due process of law. JUDGES BERNSTEIN sent the letter in Court's letter head and he was identifying himself as the Judge when he sent the letter. Therefore, JUDGE BERNSTEIN WAS ACTING UNDER COLOR OF STATE LAW.

114.      As of January 31, 2019, the Date in which JUDGE BERNSTEIN sent the letter to STU, Judge Bernstein was not the judge in the case anymore, and his duties as a judge did not include going after litigants to retaliate against them. Therefore, Judge Bernstein was acting in clear absence of all jurisdiction.

115.      As an inquisitory proceeding initiated on behalf of a government actor, the proceeding was violative of Due Process because it (1) did not have an impartial adjudicator, (2) did not provide access to evidence that was being used against MR. POLO, (3) did not provide an opportunity to confront Mr. Planas and Mr. Bernstein, (4) did not permit MR. POLO to be present during Mr. Planas' testimony, (5) did not provide a summary of Mr. Planas' testimony before the hearing, (6) was politically motivated, and (7) used pretexts to deprive the Plaintiffs of their interest in property and liberty without due process of law.

116.      The proceeding was disguised as a private institution going after Mr. Polo to prevent Mr. Polo from having access to the guarantees of due process under the 5th and 14th amendment of the U.S. Constitution, which don't have to be followed by private institutions when depriving individuals of interest in property or liberties. STU initiated the proceeding on behalf of Judge Bernstein to accomplish what Judge Bernstein could have not accomplished without STU's intervention, depriving Mr. Polo of his interest right in the continued enrollment at STU and his liberty interests in their good name, reputation, honor, and integrity without due process of law.

117.      The expulsion of MR. POLO from STU resulted in a permanent record of dishonorable expelling in Mr. Polo's academic file. Such a record creates a stain, not only on Mr. Polo's good name, reputation, honor, and integrity but also on MR. POLO'S family's good name, reputation, honor, and integrity which will follow him and his family for life.

## **JUDGE BERNSTEIN**

118.      On January 31, 2019, Judge BERNSTEIN sent a letter with an Order of Recusal, with the intent of providing STU a pretext to get expelled MR. POLO from Law School.

119.      By sending the Letter with the Order of Recusal to STU, Judge Bernstein deprived the plaintiffs the Plaintiffs of property interest in the continued enrollment of **MR. POLO** at STU. They also had a liberty interest in their good name, reputation, honor, and integrity.

120.      There was not pending procedure at STU against Mr. Polo; therefore, but for JUDGE BERNSTEIN'S act of sending the letter with the order of recusal to ST. THOMAS

UNIVERSITY, INC., the unconstitutional proceeding had never taken place, and the Plaintiffs had never lost their property interest in the continued enrollment of MR. POLO at STU, and liberty interests in their good name, reputation, honor, and integrity.

## ST. THOMAS UNIVERSITY, INC.

121.    STU has a custom/policy of allowing their employees not to follow the rules established by STU and fail to take disciplinary actions against their employees even when those create harm to the students or other employees as shown by their employees' total disregard for the truth in MR. POLO'S case.

122.    STU allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

123.    STU's code § 3.04(E) honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. STU after the first hearing was concluded, went on a fishing expedition to dig more dirt, after STU did not find MR. POLO guilty by clear and convincing evidence.

124.    STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process. However, in the second hearing STU brought charges for failure release the information I was still able to release like other students do.

125.    STU was acting under color of law, STU allowed their employees, to initiate a proceeding against MR. POLO, for MR. BERNSTEIN to resolve his personal bias against MR. POLO and to intimidate MR. POLO. initiated the proceeding to accomplish what SCOTT BERNSTEIN could have not accomplished without STU's intervention, depriving **MR. POLO** of his interest right in the continued enrollment at STU and his liberty interests in their good name, reputation, honor, and integrity.

126.    STU was acting as an agents of the DEFENDANT SCOTT BERNSTEIN to carry out JUDGE BERNSTEIN'S' malicious acts of retaliating to silence Mr. Polo; therefore, acting

under color of state law, commenced and maintained the Honor Council proceeding against **MR. POLO**.

127.     STU look the other way knowing that the risk of harm in this case was objectively serious. As a natural consequence of the acts of STU's employees, STU knew that they were about to bring about financial and emotional devastation to a whole family as result of them allowing the Honor council to be used to resolve MR. BERNSTEIN'S personal vendetta against MR. POLO against their own rules which prohibit the Honor Council to be used to resolve personal conflicts. STU consciously knew of, but disregarded that serious risk of harm by allowing MR. BERNSTEIN to use the Honor council to harm the Plaintiffs.

128.     For allowing JUDGE BERNSTEIN to use the honor council to resolve his personal matters against MR. POLO, for depriving MR. POLO of a fair procedure,

129.     But for the acts of DEAN LAWSON, MR. SILVER, **DEAN MOORE, JUAN CARLOS PLANAS** of instituting, maintaining, and continuing the proceeding without providing **MR. POLO** Due Process of Law before Depriving the Plaintiffs of their property and liberty interest, Plaintiffs had never lost their property interest in the continued enrollment of **MR. POLO** at STU, and liberty interests in their good name, reputation, honor, and integrity.

130.     As a direct, natural, and proximate result of the unconstitutional proceeding and the actions of the DEFENDANTS, the Plaintiffs lost their property interest in the continued enrollment of **MR. POLO** at STU, and a liberty interest in their good name, reputation, honor, and integrity.

131.     Therefore, DEFENDANTS SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., deprived the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and liberty interest in their good name, reputation, honor, and integrity in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

132.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of access to the court without due process of law.

133.     As a direct, natural, and proximate result of DEFENDANTS' SCOTT BERNSTEIN'S and ST. THOMAS UNIVERSITY, INC., actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

134.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. as follows:

A)     Declaring that SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., violated the Plaintiff(s)' constitutional rights to property interest in the continued enrollment at ST. THOMAS UNIVERSITY, INC., and their liberty interest in their good name, reputation, honor and integrity without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)     Enjoining SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem

just and proper, against, SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against SCOTT BERNSTEIN pursuant to 42 U.S.C. Sections 1983 and 1988.

D)    Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT 5.    DEPRIVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION, IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983

135.    Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS SCOTT BERNSTEIN (the "DEFENDANT" throughout this Count), did the following:

136.    The DEFENDANTS SCOTT BERNSTEIN, in all their actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

137.    The DEFENDANT, maliciously and intentionally engaged in a retaliatory scheme to silence MR. POLO and prevent him from exercising is 1st Amendment right to engage in protected speech against corruption in the family Court System, more specifically, in retaliation for the Plaintiff(s)' (1) filing of the Motion to Vacate of May 26, 2015 exposing the corruption in the family Court System (the "Motion to Vacate), (2) filing of a Civil Case, on February 13, 2017, against Members of the Family Enterprise and the DEFENDANTS' Coconspirators exposing the corruption in the family Court System, and for (3) **MR. POLO** running for State Representative and engaging ***core political speech*** intended to rally public support for fighting judicial corruption in the Miami-Dade Family Court System. In furtherance of their objective of silencing **MR. POLO'S** protected speech, the DEFENDANTS did the following:

### SCOTT BERNSTEIN

138.    SCOTT BERNSTEIN built a case against MR. POLO to later get STU involved and get MR. POLO was expelled from law school.

139.    On February 2, 2016, DEFENDANT JUDGE BERNSTEIN declared MR. POLO in content over an order that did not contain a clear and definite statement, intentionally ignoring the rule of law in Florida which does not support such an act.

140.    On *October 24, 2017*, SCOTT BERNSTEIN restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed. Therefore, there was no notice and opportunity to be heard before the Plaintiffs' access to the courts was removed.

141.    SCOTT BERNSTEIN, behind **MR. POLO'S** back ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

142.    On October 2, 2018, DEFENDANT SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed **MR. POLO'S** right to access the court/filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

143.    MR. POLO filed a motion to recuse SCOTT BERNSTEIN. Before the hearing on **MR. POLO'S** motion, held on ***January 29, 2019***, DEFENDANT JUDGE BERNSTEIN had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with **MR. POLO'S** contract with STU, to cut short the Plaintiffs' property interest right in **MR. POLO'S** continued enrollment at STU.

144.    The order was in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. Moreover, the order was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "***incessantly***" calling his Judicial Assistant. Moreover, DEFENDANT JUDGE BERNSTEIN stated in pertinent part:

> MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

145.    Two days after BERNSTEIN'S hearing of **January 29, 2019**, DEFENDANT JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas

School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with whom DEFENDANT JUDGE BERNSTEIN had met on ***October 23, 2017***, the day before he named MR. POLO vexatious litigant.

146.     DEFENDANT JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with DEFENDANT JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

147.     BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor (F) General Unfitness, and he misrepresented the truth by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

## STU

148.     STU, Intentionally and maliciously, allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

149.     STU, Intentionally and maliciously, allowed MR. BERNSTEIN to interfere with the agreement knowing that MR. BERSTEIN'S allegations were all false.

150.     STU, Intentionally and maliciously, made decision to terminate MR. POLO was not based on clear and convincing evidence as STU'S code of conduct requires.

151.     STU, Intentionally and maliciously, disregarded its own rules with the intent of finding any pretext to breach the contract it had with MR. POLO.

152.     STU's honor Code § 3.04(E) provides for a single hearing against a student subject to the honor code proceeding. However, when STU, Intentionally and maliciously, terminated MR. POLO without finding evidence supporting the expelling of MR. POLO, they went for a second bite of the apple.

153.     As of March 23, 2019, STU, Intentionally and maliciously, had already decided to remove **MR. POLO** from the school even before the second proceeding was over. STU deactivated **MR. POLO'S** Id card to access the campus removed **MR. POLO** from the security access list at the gate, and removed **MR. POLO'S** access to STU's network.

154.     DEAN MOORE, Intentionally and maliciously, behind MR. POLO'S back and full of misleading conclusory statements created a memorandum that she never provided to MR. Polo.

155.     DEAN MOORE, Intentionally and maliciously, sent the memorandum the same day of the hearing with the intent of not giving the panel time to question her conclusions.

156.     Moreover, DEAN MOORE, Intentionally and maliciously, realizes that MR. SEGARRA was harassing MR. POLO with the unnecessary process of service; however, she did not comment about the unethical ramifications of this, but downplayed it.

157.     STU, Intentionally and maliciously, produced a second round of evidence that was just a plain and simple pretext to get rid of MR. POLO. STU had a process to amend their application which was offered to ALL students in preparation for applying for the Florida Bar. Never did STU expelled students for failing to report the things they were complaining about.

158.     STU, Intentionally and maliciously, knew that SCOTT BERNSTEIN'S behavior was unethical and even probably criminal. However, they did not care, they allowed the judge to use the power of his office to influence the panel.

159.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., as follows:

Declaring that SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC.,, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from, directly or indirectly, violating the Plaintiffs' constitutional rights, from retaliating against the Plaintiffs for seeking to remedy their inappropriate and unlawful conduct; and

Award judgement against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988, and demands trial by jury on all issues so triable.

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees and cost, against TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment and post judgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

### COUNT 6.        CIVIL CONSPIRACY

160.        Plaintiffs re-alleges paragraphs 18 through 59 and further state that in furtherance of the agreement/understanding, all the defendants had, the Defendants, ST. THOMAS UNIVERSITY, INC., and SCOTT BERNSTEIN (the "DEFENDANT" throughout this Count), did the following:

161.        There was an agreement among all co-conspirators with three common objective (hereinafter the "Objective") of: (1) bringing about sever emotional distress, (2) silencing **MR. POLO'S** speech for first filing a Motion to vacate in which **MR. POLO** exposed the corrupt acts of SCOTT BERNSTEIN'S appointed Guardian Ad litem (written speech), and for later **MR. POLO** exposing the corruption in the family court system during his 2018 political campaign (Political speech), and (3) Protecting the Members of the Family Court Enterprise and the other coconspirators.

162.        The manner and methods (hereinafter the "Methods") used by the plaintiff to silence **MR. POLO** protected speech, and to protect the Members of the Family Court Enterprise) are, among others, as follow:

A)        Destroying **MR. POLO'S** and his children livelihood by first getting the case back in court after a final judgment was rendered on ***July 15, 2015***, to start building a record against **MR. POLO**, with the malicious intent of later using it to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU.

B)      Destroying **MR. POLO'S** reputation and prestige by building a case against **MR. POLO** in which the DEFENDANTS were falsely accusing in the public record false statements accusing **MR. POLO**, among other things, of lying, of acting in bad faith, and of acting vexatiously, without notice and opportunity to be heard.

C)      Depriving **MR. POLO** of the goodwill that having a career in law would represent in **MR. POLO'S** political career by building a case against **MR. POLO** and maliciously, getting **MR. POLO** expelled from law school.

D)      Inflicting severe emotional distress on **MR. POLO** by keeping a litigation open for many years, knowing that the litigation was not supported by facts or law.

E)      Inflicting financial damages to **MR. POLO'S** family by (1) naming **MR. POLO** vexatious to without notice and opportunity to be heard forcing, thereby, **MR. POLO** to hire attorneys which the DEFENDANTS knew the plaintiff could not afford, then later influencing those attorneys to withdraw and leaving **MR. POLO** without representation; (2) by granting attorney's fees to the other no warranted by facts or law, and by (3) preventing the Plaintiffs from getting child support.

F)      Depriving **MR. POLO** and his children of their liberty right (the "Liberty Right") to, **MR. POLO**, exercise care, custody, and control of his children, and the children's liberty right of the children to receive care, custody, and control from **MR. POLO**, by allowing **MR. POLO'S** children to be taken from him, in a day in which **MR. POLO** had legal custody of the children, (2) and by referring the case to a coparenting coordinator that was pre-arranged to return a report recommending to deprive the plaintiffs of their Liberty Right, (3) removing **MR. POLO'S** right to access the court knowing that **MR. POLO** could not afford to have a lawyer, to force **MR. POLO** into filing a motion to recuse to perverse his right, and then put **MR. POLO** in jail to take the Custody of the children, and (4) entrapping **MR. POLO** to commit forgery to put **MR. POLO** in jail and thereby, deprive **MR. POLO** of his Custody's right.

163.    The DEFENDANTS, did the following overt act in pursuance of the conspiracy:

## A. BERNSTEIN

164.    SCOTT BERNSTEIN, Intentionally and maliciously, built a case against MR. POLO to later get STU involved and get MR. POLO expelled from law school.

165.      In furtherance of that scheme, to build the record, on February 2, 2016, DEFENDANT JUDGE BERNSTEIN, Intentionally and maliciously, declared MR. POLO in content over an order that did not contain a clear and definite statement, intentionally ignoring the rule of law in Florida which does not support such an act.

166.      On October 24, 2017, SCOTT BERNSTEIN, Intentionally and maliciously, restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed. Therefore, there was no notice and opportunity to be heard before the Plaintiffs' access to the courts was removed.

167.      SCOTT BERNSTEIN, Intentionally and maliciously, behind MR. POLO'S back ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

168.      On October 2, 2018, DEFENDANT SCOTT BERNSTEIN, Intentionally and maliciously, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed MR. POLO'S right to access the court/filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

169.      MR. POLO filed a motion to recuse SCOTT BERNSTEIN. Before the hearing on MR. POLO'S motion, held on January 29, 2019, DEFENDANT JUDGE BERNSTEIN, Intentionally and maliciously, had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

170.      SCOTT BERNSTEIN'S ORDER was, Intentionally and maliciously, drafted in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. Moreover, the order was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney, which he had done before); (2) of not having good faith basics to say DEFENDANT JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR.

POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "incessantly" calling his Judicial Assistant. Moreover, DEFENDANT JUDGE BERNSTEIN stated in pertinent part:

171.     MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

172.     Two days after BERNSTEIN'S hearing of January 29, 2019, DEFENDANT JUDGE BERNSTEIN did not contact the Florida Bar, but he, Intentionally and maliciously, contacted the Dean of St. Thomas School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with whom DEFENDANT JUDGE BERNSTEIN had met on October 23, 2017, the day before he named MR. POLO vexatious litigant.

173.     DEFENDANT JUDGE BERNSTEIN'S, Intentionally and maliciously, drafted the letter on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with DEFENDANT JUDGE BERNSTEIN'S official signature block and signature, with the intent of using the power of his office. Additionally, the letter contained, attached to it, the illegal Order of Recusal.

174.     BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor (F) General Unfitness, and he misrepresented the truth by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

### B.  ST. THOMS UNIVERSITY, INC.

175.     STU, Intentionally and maliciously, allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

176.     STU, Intentionally and maliciously, allowed MR. BERNSTEIN to interfere with the agreement knowing that MR. BERSTEIN'S allegations were all false.

177.     STU, Intentionally and maliciously, made decision to terminate MR. POLO was not based on clear and convincing evidence as STU'S code of conduct requires.

178.     STU, Intentionally and maliciously, disregarded its own rules with the intent of finding any pretext to breach the contract it had with MR. POLO.

179.     STU's honor Code § 3.04(L) provides for a single hearing against a student subject to the honor code proceeding. However, when STU, Intentionally and maliciously, terminated MR. POLO without finding evidence supporting the expelling of MR. POLO, they went for a second bite of the apple.

180.     As of March 23, 2019, STU, Intentionally and maliciously, had already decided to remove MR. POLO from the school even before the second proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

181.     DEAN MOORE, Intentionally and maliciously, behind MR. POLO'S back and full of misleading conclusory statements created a memorandum that she never provided to MR. Polo.

182.     DEAN MOORE, Intentionally and maliciously, sent the memorandum the same day of the hearing with the intent of not giving the panel time to question her conclusions.

183.     Moreover, DEAN MOORE, Intentionally and maliciously, realizes that MR. SEGARRA was harassing MR. POLO with the unnecessary process of service; however, she did not comment about the unethical ramifications of this, but downplayed it.

184.     STU, Intentionally and maliciously, produced a second round of evidence that was just a plain and simple pretext to get rid of MR. POLO. STU had a process to amend their application which was offered to ALL students in preparation for applying for the Florida Bar. Never did STU expelled students for failing to report the things they were complaining about.

185.     STU, Intentionally and maliciously, knew that SCOTT BERNSTEIN'S behavior was unethical and even probably criminal. However, they did not care, they allowed the judge to use the power of his office to influence the panel.

### COUNT 7.          TORTIOUS INTERFERENCE WITH CONTRACT

186.     Plaintiffs re-alleges paragraphs 18 through 59 and further state that SCOTT BERNSTEIN (the "DEFENDANT" throughout this Count), did the following:

187.     **MR. POLO** was a student at STU, and STU had implied contractual legal obligations (the "Contract") to the Plaintiff, **MR. POLO**, to grant Plaintiff a Degree upon completion of Plaintiff's course of study and any other requirement contained in the 2015 student handbook.

188.     In exchange for obtaining the Degree, **MR. POLO** had to pay STU tuition, for which STU provided access to the campus and enrollment in the school. **MR. POLO** was in good standing at STU before the acts complained of herein.

189.     The SCOTT BERNSTEIN knew that **MR. POLO** had a contractual relation with STU and a legal right to obtain, upon completion of all required courses of study, a Juris Doctor Degree and a Tax Law Certificate from STU where **MR. POLO** was studying Law.

190.     DEFENDANT SCOTT BERNSTEIN was a Judge in the family court and was an Agent of defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA. SCOTT BERNSTEIN'S jurisdiction over the Plaintiffs extended only to hearing and adjudicating matters related to the Family Court case while he was the assigned to the Plaintiffs' family case. When the acts complained off occurred, SCOTT BERNSTEIN was acting within his capacity and scope as an agent of ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, but was not assigned to the the Plaintiffs case anymore. Therefore, BERNSTEIN'S acts complained of herein were al in clear absences of jurisdiction.

## SCOTT BERNSTEIN

191.     SCOTT BERNSTEIN, in clear absence of all jurisdiction, intentionally, maliciously, willfully, and wantonly, prepared the conditions necessary for STU to pretextually beach STU's contract with **MR. POLO**. In furtherance of his malicious intent, SCOTT BERNSTEIN on October 23, 2017, met with STU's management to influence and plan STU's breach of contract.

192.     In furtherance of the agreement SCOTT BERNSTEIN reached with STU's management, SCOTT BERNSTEIN engaged in building a case against MR. POLO, a series of acts designed to provide STU with pretextual bases to breach their contract. Those actions include but are not limited to (1) removing **MR. POLO'S** right to file documents without first affording **MR. POLO** notice an opportunity to be heard (the next day after his meeting with STU management), (2) attempts to maliciously put **MR. POLO** in jail, (3) attempts to take **MR. POLO'S** custody of his children without due process of law, (4) intentionally entering into the record misleading facts stating **MR. POLO** pretended to be an attorney in his court, when he knew this to be factually incorrect, (5) making false comments in an order of recusal about the merits of the Motion to Recuse, an act prohibited by the Florida Supreme Court, with the intent of later

providing these to STU, and (6) sending a letter and the order of recusal to STU's management two days after entering his Order of Recusal. The letter included his order of recusal containing the abovementioned Florida Supreme Court's prohibited misleading and false comments, for STU to use those as pretextual basis to breach STU agreement with **MR. POLO**.

193.     545.     At the time SCOTT BERNSTEIN sent the letter to the school, STU was not investigating **MR. POLO** for anything, or were there pending honor procedures against **MR. POLO**. The investigation and honor proceeding were triggered, according to STU's management, by the allegations contained in SCOTT BERNSTEIN'S Order of Recusal, which SCOTT BERNSTEIN provided to STU as an attachment to the letter he sent two days after filing the order of recusal.

194.     Therefore, but for the interference of SCOTT BERNSTEIN, STU would never have breached the agreement they had with **MR. POLO**. SCOTT BERNSTEIN intentional interference disrupted the contractual relationship **MR. POLO** had with STU.

195.     **WHEREFORE**, Plaintiff(s) demand judgment for damages against DEFENDANT, SCOTT BERNSTEIN, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

196.     Moreover, the Plaintiffs demand Declaring that SCOTT BERNSTEIN tortiously interfered with **MR. POLO'S** contract with STU.

197.     Enjoining SCOTT BERNSTEIN from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct;

198.     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against SCOTT BERNSTEIN, pursuant to 42 U.S.C. Sections 1983 and 1988; and

199.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT 8.        NEGLIGENT HIRING AND RETENTION UNDER 42 U.S.C.
SECTION 1983 AND FLORIDA LAW**

200.     Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS ST. THOMAS UNIVERSITY, INC., (the "DEFENDANT" throughout this Count), did the following:

201.     The Defendant in all their actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

202.     Defendants, ST. THOMAS UNIVERSITY, INC., and negligently knew or should have known that the DEAN LAWSON, **DEAN MOORE**, and MR. SILVER ("THE STU EMPLOYEES") were dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida, including but not limited to **MR. POLO** who was a student at ST. THOMAS UNIVERSITY, INC. and his children who would had benefit from **MR. POLO** obtaining a degree in law.

203.     Defendants, ST. THOMAS UNIVERSITY, INC., failed to conduct a reasonable investigation regarding the competence of their employees DEAN LAWSON, **DEAN MOORE**, and MR. SILVER to be retained as its management staff/employees, and to be assigned with the duty of handling the honor council against **MR. POLO**.

204.     Defendants, ST. THOMAS UNIVERSITY, INC., during the course of employment of THE STU EMPLOYEES became aware or should have become aware of problems with THE STU EMPLOYEES that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Bar.

205.     Defendants, ST. THOMAS UNIVERSITY, INC, owed **MR. POLO**, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent managers, and professors.

206.     Defendant, ST. THOMAS UNIVERSITY, INC., breached their duty of care to the Plaintiffs by hiring and retaining incompetent employees, as the Defendants, DEAN LAWSON, **DEAN MOORE**, and MR. SILVER.

207.     As a direct, natural, and proximate result of Defendant's actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

208.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT ST. THOMAS UNIVERSITY, INC. as follows:

Declaring that the DEFENDANT ST. THOMAS UNIVERSITY, had a duty of care not to injure the Plaintiffs, they breached their duty of care by negligently hiring and/or retained abovementioned employees, and as a result the Plaintiffs' property interest right in the continued enrollment of **MR. POLO** at STU was injured.

Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

**COUNT 9.**      **NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983 AND FLORIDA LAW**

209.    Plaintiffs re-alleges paragraphs 18 through 59 and further state that DEFENDANTS ST. THOMAS UNIVERSITY (the "DEFENDANT" throughout this Count), did the following:

210.    The Defendant in all their actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

211.    Defendants, DEFENDANT ST. THOMAS UNIVERSITY, INC., individually, owed the public, including Plaintiffs, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when dealing with the public in a way that could result in deprivations of any member of the public' constitutional rights without due process of law.

212.    DEFENDANTS, ST. THOMAS UNIVERSITY, INC., and breached their duty of care to Plaintiffs by STU failing to provide each of the STU employees (TAMARA F. LAWSON; JAY S. SILVER ; and PATRICIA MOORE, with proper and special training and/or supervision so that they could be prepared to execute the duties the STU reasonably could expect them to perform during the course and scope of their employment.

213.    As a proximate result of lack of training and supervision, THE STU EMPLOYEES deprived the plaintiffs of their constitutional rights, without due process of law by cutting short the Plaintiffs' property right to **MR. POLO'S** continued enrollment at STU without affording **MR. POLO** a meaningful opportunity to be heard by an impartial tribunal. STU and by depriving the Plaintiffs of liberty interest in their good name, reputation, honor and integrity, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

214.    As a direct, natural, and proximate result of DEFENDANTS ST. THOMAS UNIVERSITY, INC. actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s)

suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

215.      **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT ST. THOMAS UNIVERSITY, INC., as follows:

Declaring that DEFENDANT ST. THOMAS UNIVERSITY, INC., by negligently hiring, violated violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

Enjoining DEFENDANTS ST. THOMAS UNIVERSITY, INC. from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT ST. THOMAS UNIVERSITY, INC., , pursuant to 42 U.S.C. Sections 1983 and 1988.

Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## COUNT 10.      GROSS NEGLIGENCE UNDER FLORIDA LAW

216.     Plaintiffs re-alleges paragraphs 18 through 59 and further state that ST. THOMAS UNIVERSITY, INC.; (the "DEFENDANT" throughout this Count), did the following:

217.     DEFENDANTS ST. THOMAS UNIVERSITY, INC., employed TAMARA F. LAWSON ; JAY S. SILVER ; and PATRICIA MOORE, and was engaged in the exercise of providing legal education to member of our community.

218.     The conduct of the DEFENDANT ST. THOMAS UNIVERSITY, INC., amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of their respective employees, and the that were the proximate cause of Polo's and his children's damages.

219.     DEAN LAWSON, **DEAN MOORE, and** MR. SILVER were working for ST. THOMAS UNIVERSITY, INC., at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to **MR. POLO**, his Children and his family.

220.     The conduct of the TAMARA F. LAWSON; JAY S. SILVER ; PATRICIA MOORE, and ST. THOMAS UNIVERSITY, INC.; individually, amounted to gross negligence through its wanton and reckless disregard the Plaintiffs' right under the law, and the that their individual acts were the proximate cause of Polo's and his children's damages.

221.     Notwithstanding these duties, DEFENDANT ST. THOMAS UNIVERSITY; INC.; breached these duties with deliberate indifference and gross negligence and without regard to **MR. POLO'S** and his children's rights and welfare through creating an environment in which the unconstitutional depravations conducted by, TAMARA F. LAWSON; JAY S. SILVER ; and PATRICIA MOORE, were viewed as acceptable to STU, which caused serious injuries and damages to the plaintiffs.

222.     Notwithstanding abovementioned duties, TAMARA F. LAWSON; JAY S. SILVER ; and PATRICIA MOORE breached these duties with deliberate indifference and gross negligence and without regard to **MR. POLO'S** and his children's rights and welfare through creating an environment in which their unconstitutional depravations of rights without due process conduct were viewed as acceptable to all them, which caused serious injuries and damages to the plaintiffs.

223.     DEFENDANTS ST. THOMAS UNIVERSITY INC., along with their employees/supervisees; knew or should have known that by breaching these duties they would injure the Plaintiffs.

224.     DEFENDANT ST. THOMAS UNIVERSITY, INC., knew or should have known that by breaching these duties they would injure the Plaintiffs.

225.     THE DEFENDANT had a duty to exercise reasonable care through sufficient training and supervision, and/or just by using reasonable care not to harm **MR. POLO**, his Children and his family. Their breach of those duties was reckless and amounts to gross negligence.

226.     The actions of DEFENDANTS TAMARA F. LAWSON; JAY S. SILVER ; and PATRICIA MOORE were so egregious that **MR. POLO'S** and his children's damages were heightened and made more severe, thus entitling Plaintiff to exemplary damages.

227.     As a direct, natural, and proximate result of the indifferent and grossly negligent acts and/or omissions committed by DEFENDANT ST. THOMAS UNIVERSITY, INC. and their actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

228.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC. as follows:

A) Declaring that ST. THOMAS UNIVERSITY, INC. violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution, without due process of law intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining ST. THOMAS UNIVERSITY, INC. from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against (1) ST. THOMAS UNIVERSITY, INC. pursuant to 42 U.S.C. Sections 1983 and 1988.

D) The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the Defendants in accordance with law.

E) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demands trial by jury on all issues so triable.

## § 8.PRAYER FOR RELIEF

229.      FRANK E. POLO, SR., Individually and as the next friend to FP, and HP, both minors, FP, and HP, demands a trial by jury, and judgement against SCOTT MARCUS BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. (collectively the "DEFENDANTS" in the amount of $12,742,800, for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and impairment of future earning capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper.

230.      Additionally, the Plaintiffs demand a Declaratory and injunctive relief against SCOTT MARCUS BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from violating, or conspiring to violate with anyone, the Plaintiffs' and the witnesses' constitutional rights, and/or

from retaliating against the Plaintiffs and witnesses, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and declaring that the DEFENDANTS violated the Plaintiff's Federal Protective rights, enumerating those rights.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1^{8TH} ST APT 411
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com