# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (Miami Division)

FRANK E. POLO, SR. (Pro Se);  )
FP; HP.                        )
    Plaintiffs,            )
                                        )

      v.                   )    CASE NO: **1:23-cv-21684**

SCOTT MARCUS BERNSTEIN (in his Personal   )
and official capacity);        )
ST. THOMAS UNIVERSITY, INC.    )    **JURY TRIAL IS DEMANDED**
                Defendants,   )
_____/  )

FILED BY _____ D.C.

OCT 23 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## § 1.THIRD AMENDED COMPLAINT

1.   Plaintiffs, FRANK E. POLO SR., individually and as natural father and next friend for FP, and HP, both minors, file this complaint against the defendants, SCOTT MARCUS BERNSTEIN (in his Personal and official capacity) ST. THOMAS UNIVERSITY, INC.; for the Defendants' violation of the Plaintiffs' Federal and state constitutional rights as secured by the United States Constitution, the Florida Constitution, the Laws of the U.S. and Florida common laws without due process of law. Consequently, the Plaintiffs have a viable claim for damages under 42 U.S.C. § 1983, and under Florida Law. The Plaintiffs also have viable state law claims, and allege as follows:

## § 2.SUMMARY OF THE CASE

2.   This action is for damages, for declaratory judgment, and for injunctive relief arising from the Defendants' violations of the Plaintiffs' constitutional rights without due process of law in retaliation for Frank Polo's ("**MR. POLO**") First Amendment right to petition the Government for a redress of grievances, and for MR. POLO'S practice of protected speech for denouncing corruption in the Miami Dade Family Court system.

3.   All the Defendant(s), engaged in acts conceived to deprive the Plaintiffs of their constitutionally protected rights by, directly or indirectly (through a conspiracy scheme), (1) continuously and repeatedly depriving the Plaintiffs of their access to the court, without first having a hearing and a meaningful opportunity to be heard; (2) retaliating against the Plaintiffs for MR. POLO'S engagement in protected speech against corruption in the Family Court System; (3) cutting short **the Plaintiffs'** property interest in **MR. POLO'S** continued enrollment at ST.

Thomas University, Inc.'s ("STU") by expelling MR. POLO from Law School only about 4 weeks before graduation without an opportunity to be heard; and (4) interfering with the Implied Contract at Law STU had with MR. POLO.

4.   SCOTT BERNSTEIN, maliciously conspired with STU (through its employees), and when he was not the Judge of the Case anymore and had no jurisdiction to act in the case anymore (*in the clear absence of all jurisdiction*), BERNSTEIN performed a non-judicial act of interfering with Mr. Polo's contractual interest by sending a letter to St. Thomas University's Dean in furtherance of the agreement he had with STU in which he was to provide STU and its employees with a pretext to invoke a sham Honor Council proceeding against Mr. Polo.

5.   STU agreed to breach its contract arbitrarily and capriciously with the malicious intent of allowing SCOTT BERNSTEIN to retaliate against **the Plaintiffs** for MR. POLO'S exercise of his First Amendment Right. To accomplish the breach, STU invoked the Honor Council solely based on the pretextual motives provided by SCOTT BERNSTEIN. As a result, STU maliciously deprived the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, without due process of law.

6.   The defendants engaged in the aforementioned deprivation and subjected the Plaintiffs to Severe Emotional Distress, and harassment in utter disregard for the rights guaranteed to the Plaintiffs under the First and Fourteenth Amendments of the United States Constitution, in violation of, Title 42 U.S.C. SS. 1983.

7.   The plaintiffs suffered damages as a direct and proximate cause of the DEFENDANTS' acts.

### § 3. JURISDICTION, VENUE & STANDING

8.   Jurisdiction is proper in this court under 42 U.S.C. §1983, 42 U.S.C. §1961 - §1968, and 42 U.S.C. §1985. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a), and attorneys' fees and costs under 42 U.S.C. § 1988. Moreover, this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

9.  Venue is proper under 28 U.S.C. §1391(b) as most Defendants are residents of Miami-Dade County, which is located in the U.S. Southern District of Florida (this judicial district) and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County.

10. All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiffs for which the Plaintiffs are seeking relief. Therefore, the Plaintiffs, have "standing" to bring this cause of action.

## § 4. PARTIES

11. Plaintiff, FRANK E. POLO, SR., individually, (hereinafter "**MR. POLO**" or "Polo") and as the next friend to FP (11 years old), and HP (11 years old), both minors, (hereinafter, the "Children," and collectively with **MR. POLO**, the "Plaintiffs") are residents of Miami-Dade County, Florida.

12. Defendant, SCOTT M. BERNSTEIN, (hereinafter "SCOTT BERNSTEIN") was/is a Judge and employee of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, a dependency of the Florida Supreme Court (a State Agency), and upon information and belief, he is a resident of Miami-Dade County, Florida, and

13. Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "STU"), is a Florida Not for Profit Corporation organized and existing under the laws of the State of Florida, the corporation has its principal place of business at 16401 NW 37th Avenue, Miami Gardens, FL 33054, Miami-Dade County, Florida.

## § 5.GENERAL FACTS APPLYING TO ALL COUNTS

14. ST. THOMAS UNIVERSITY, INC., and all other Defendants, individually, are "persons" for purposes of 42 U.S.C. Section 1983.

15. ST. THOMAS UNIVERSITY, INC., willfully participated in a joint conspiracy with JUDGE SCOTT M. BERNSTEIN (a State agent), by entering into an agreement with SCOTT BERNSTEIN to retaliate against MR. POLO for his exercise of First Amendment rights, taking steps in furtherance of the agreement, and causing damages to the Plaintiffs.

16. At all times relevant in all counts, sections, and subsections, is the fact that **MR. POLO** and his Children were parties in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT

OF FLORIDA for Miami-Dade Country (a government Agency), Case No.: 2012-017787-FC-04 (the "Family Case"), where the defendant SCOTT M. BERNSTEIN was the presiding judge from about July 7, 2012, until on or about January 31, 2019. Therefore, after January 31, 2019, the defendant SCOTT M. BERNSTEIN did not have subject matter, personal, or continuing Jurisdiction over MR. POLO'S case.

17. At all times relevant in all counts, sections, and subsections is the fact that SCOTT BERNSTEIN is a Fla. Const. Art. 5 Judges, and his Jurisdiction is obtained from, state statutory law, common law, and the authority granted under the Fla. Const. Art. 5 §5 and are limited to heard and adjudicated cases raised under Florida Law, so long as they have subject matter jurisdiction to adjudicate those cases.

18. At all times relevant in all counts, sections, and subsections, is the fact that SCOTT BERNSTEIN was an employee of one of the twenty (20) judicial circuit courts organized under the Office of the State Courts Administrators (OSCA), which is the administrative arm of the Florida Supreme Court in the Florida court system, namely, THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and therefore, he was acting under color of state law.

19. At all times relevant herein in all counts is the fact that the DEFENDANTS' JUDGES BERNSTEIN, acts described in this complaint were done while he was acting in the performance of their official duties, but in the clear absence of all jurisdictions.

20. ST. THOMAS UNIVERSITY, INC. was at all relevant times responsible for its employees. ST. THOMAS UNIVERSITY, INC., is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to both the laws of the United States and the Florida Laws.

## A. AGENCY AND CONCERT OF ACTION

21. At all times abovementioned Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in committing the acts listed herein in the statement of fact

section. In taking action to aid and abet and substantially assist the commission of the wrongful acts and other wrongdoings contained in the statement of facts section and as applied in each independent court, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing complained off herein.

## § 6.STATEMENT OF FACTS

### A. SCOTT BERNSTEIN

22. On or about July 15, 2015, MR. POLO won his family case after he forced the other side to settle when he discovered that the guardian, Lilliana Real ("MS. REAL") had filed a false report and had perjured herself at the final hearing. MS. REAL falsely claimed that MR. POLO was building a case against the mother and in support thereof, she said that MR. POLO had sent her pictures without the faces of the children and none of the pictures had dates on them.

23. Mr. Polo subpoenaed emails from Microsoft Corporation which showed that (1) some pictures contained, in fact, faces of the children, and most of them had the date imprinted on them.

24. On or about May 26, 2015, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

25. On or about July 15, 2015, JUDGE BERNSTEIN signed off on the Agreed Final Judgement ("AFJ") which was illegal for contracting away the right of the children to child support.

26. Thereafter, the SCOTT BERNSTEIN, with the intent of building a case against Mr. Polo, and then later providing STU with pretexts to expel Mr. Polo from law school, engaged in a series of acts designed to build a case against Mr. Polo.

27. On February 2, 2016, JUDGE BERNSTEIN declared MR. POLO is in contempt over an order that was not clear and definite, so as to make Mr. Polo aware of its command and direction.

28. While JUDGE BERNSTEIN was absent when JUDGE JUDITH KREEGER entered an order of referral sending the Family Case to Family Court Services ("FCS") to schedule a co-parenting coordinator to resolve the issue in front of the court, the school registration issue.

29. After JUDGE BERNSTEIN returned, Ms. Aileen Alvarez (hereinafter "Ms. Alvarez"), the caseworker in MR. POLO'S case since 2013, returned the case to JUDGE BERNSTEIN.

30. On April 03, 2017, JUDGE BERNSTEIN, filed a new and different, order of referral to the parenting coordinator without a hearing, Without MR. POLO consent or knowledge, and without serving MR. POLO with the new order of Referral.

31. The new order stated that there was a history of allegations of domestic violence, that the parties had an opportunity to consult with an attorney or domestic violence advocate, and that the Parenting coordinator was "with the prior consent of the parties and approval of the court." Moreover, the order extended the six (6) meetings initially scheduled by Judge Kreeger to 24 months of co-parenting coordinator services.

32. MR. POLO did not have an attorney at that moment, MR. POLO did not consult with any domestic violence advocate, MR. POLO never consented to that referral and there were no allegations of domestic violence, or anything else, pending to be resolved or heard in any court.

33. On August 01, 2017, DEFENDANT JUDGE BERNSTEIN, on his own motion, called for a Case Management Conference ("CMC"). At the CMC, DEFENDANT JUDGE BERNSTEIN asks MR. POLO if the issue with the school was resolved. Then MR. POLO responded "Yes, your honor, but..." and DEFENDANT JUDGE BERNSTEIN pretended to be furious and said, "but nothing, I am sending you to a co-parenting coordinator, and you are going to pay 100% of the fees."

34. MR. POLO told DEFENDANT JUDGE BERNSTEIN that he was indigent, and DEFENDANT JUDGE BERNSTEIN asked, "What school do you go to?" MR. POLO replied, "To St. Thomas, your honor" and DEFENDANT JUDGE BERNSTEIN replied, "Well if you can pay for a private school you can pay for the fees." MR. POLO explained that he pays with student loans, but DEFENDANT JUDGE BERNSTEIN did not care.

35. On August 1, 2017, MR. POLO went to register with Family Court Services ("FCS"). There, MR. POLO overheard a conversation between the intake worker, and Ms. Aileen Alvarez, in which Aileen told the intake worker, when she handled the case file to Ms. Alvarez, "No, I transferred this case to Nancy Canate [hereinafter "Ms. Canate"], the mother, in this case, is best friends with Nancy's aunt." MR. POLO knew that Ms. Hernandez did not have any friends in Family Court services.

36. When MR. POLO finished completing the intake, the intake worker told him that his case manager was not there and that he had to return later. MR. POLO concerned about what he had

heard told the lady, "I know what you are all up to, you are referring this case to an outside co-parenting coordinator to return a report saying that I am not a good fit for my children and, thereby, remove the custody of my children from me. I overheard your conversation with Ailing Alvarez."

37. Five months later Ms. Canate contacted MR. POLO for him to register with an outside co-parenting coordinator. On or about January 2, 2018, MR. POLO called Lisette Beraja ("Ms. Beraja" or the "Coordinator") to register. MR. POLO told the coordinator that he was indigent and did not have the resources to pay. Then, MR. POLO told her that he was concerned about what he had heard in the FCS's office and that he knew everything was arranged for her to return an unfavorable report against MR. POLO.

38. After that, MR. POLO sent an email summarizing what was said over the phone to Ms. Beraja, she answered denying any knowledge of MR. POLO'S allegations. Ms. Beraja sent the case back to the court, and the court and the other side remained silent with regard to enforcing the co-parenting coordinator meetings.

39. On October 3, 2017, the opposing counsel, Mr. Segarra, noticed a hearing for "Resolution of Competing Orders Submitted by the Parties". *See* Notice of Hearing [APPX: 12].

40. After Judge Bernstein Found out that Mr. Polo was going to St. Thomas University at the hearing held on August 01, 2017, Judge Bernstein went to St. Thomas University in person to meet with Dean Lawson and other Members of STU management, on October 23, 2017.

41. On October 24, 2017, JUDGE SCOTT BERNSTEIN restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) without issuing first an order to show cause why the Plaintiffs' right to access the court shouldn't be altered or removed.

42. According to the Statements of the employees at the Clerk of Courts, JUDGE SCOTT BERNSTEIN ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs, and in fact, MR. POLO was denied access to filing every time he tried to file anything.[1]

43. Mr. Polo was determined to be indigent on multiple occasions even before Judge Scott Bernstein filed his order preventing MR. POLO from filing without having an attorney review MR. POLO'S filing first, which Judge Bernstein knew was not reasonably available to Mr. Polo.

---

[1] With a limited exception made by another judge.

44. On or about **_June 06, 2018_**, Polo registered to **run for a State Representative** with an agenda against judicial corruption. During the campaign, and thereafter, Polo engaged in **core political speech** which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

45. On October 2, 2018, SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed MR. POLO'S right to file "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

46. On *September 25, 2018*, MR. POLO filed an affidavit. In the affidavit MR. POLO claimed that he was *a Student Member of the Florida Bar Tax Section*.

47. On October 2, 2018, JUDGE BERNSTEIN, frivolously, and maliciously tried on multiple occasions to enter into the record false allegations indicating that MR. POLO had represented to be an attorney in his court. MR. POLO repeatedly corrected JUDGE BERNSTEIN telling him that Polo never said to be licensed to practice or an attorney. What MR. POLO stated in the affidavit that he was a *Student Member of the Florida Bar*. As it is shown in the September 25, 2018, hearing's transcript, and the affidavit itself.

48. After multiple malicious attempts to put on the record that MR. POLO represented to be an attorney, JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney would be "a gross misrepresentation."

49. MR. SEGARRA, another co-conspirator, maliciously said on the record that MR. POLO was even engaged in an illegal practice of law by representing himself in court, which was factually and legally incorrect.

50. MR. POLO had to hire an attorney to file a motion to recuse SCOTT BERNSTEIN. Before the hearing on MR. POLO'S motion, held on January 29, 2019, JUDGE BERNSTEIN had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

51. The order was in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. Moreover, the order

was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "incessantly" calling his Judicial Assistant. Moreover, JUDGE BERNSTEIN stated in pertinent part: "MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO."

52. Two days after BERNSTEIN'S recusal of January 29th, on January 31, 2019, JUDGE BERNSTEIN did not contact the Florida Bar but contacted the Dean of St. Thomas School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with whom JUDGE BERNSTEIN had met on October 23, 2017, the day before he named MR. POLO vexatious litigant.

53. Judge BERNSTEIN did not have any other choice than to send the letter immediately because Mr. Polo was about 4 weeks away from graduation, and STU needed time to put together the sham honor proceeding.

54. JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

55. The allegations contained in Judge Bernstein's Order of Recusal were false and MR. POLO provided relevant evidence to STU to show he was lying.

56. STU looked the other way and sided with JUDGE BERSTEIN without offering MR. POLO a fair opportunity to be heard by deciding the case even before it began.

57. BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor Section 2.01 (F) titled "General Unfitness" by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

## B. ST. THOMAS UNIVERSITY, INC.

58. STU has a custom/policy of allowing their employees not to follow the rules established by STU and fail to take disciplinary actions against their employees even when those create harm to the students or other employees as shown by their employees' total disregard for the truth in MR. POLO'S case.

59. Two days after the January 29, 2019 hearing, when Judge Bernstein was not the judge in the Family case, on January 31, 2019, SCOTT BERNSTEIN sent a letter to DEAN LAWSON, which contained his motion of recusal, which was full of false allegations and manipulated facts.

60. As of January 31, 2019, MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

61. When Scott Bernstein sent the January 31, 2019 letter, MR. POLO and STU were engaged in the performance of their agreement and MR. POLO was just weeks away from graduation.

62. Before MR. BERNSTEIN sent the letter on January 31, 2019 to STU, MR. POLO was not under investigation by STU and was never reprimanded for insubordination or for violating the school's code of ethics, rules, and/or regulations.

63. STU's Honor Code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

64. STU knew that Judge BERNSTEIN was bringing his personal conflicts with Mr. Polo to use the Honor Council in retaliation for MR. POLO speech against the corruption in the family court.

65. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> (1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds *by clear and convincing evidence* that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote.

66. STU's decision to terminate MR. POLO was not based on substantial evidence as demanded by STU's own Honor Code § 3.04(E).

67. In preparation to take MR. POLO to an honor council hearing, DEAN MORE prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, and the letter and order of recusal the SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

68. By the end of the deliberation on February 26, 2019, the evidence in front of the committee showed that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal and STU disregarded the weight of the evidence MR. POLO presented to them.

69. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to have a second hearing on issues never raised in the original complaint.

70. As of March 23, 2019, STU had already decided to remove MR. POLO from the school even before the 2nd proceeding was over. STU deactivated MR. POLO'S ID card to access the campus, removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

71. On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd hearing with the Honor Council which was to take place on April 4, 2018.

72. This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the Law School of subsequent litigation. (3) Failing to list all employment including internships for failing to list SITA, INC., (4) Failing to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

73. STU's management knew that the new allegation could be a result of MR. POLO'S involuntary lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA").

74. THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included involuntary neurocognitive problems such as memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms that may have produced those results they were complaining about.

75. On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

76. Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic. It was never a problem that Mr. Polo had those pending cases.

77. STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

78. No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

79. STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

80. STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

81. Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which Dean Alfredo Garcia was aware when he received a call past midnight from Campus Security.

82. ARTICLE IV. APPEALS of STU's honor code, give the accused a right to an appeal before a decision is final, and Mr. Polo appealed the decision of the panel on or about April 16, 2019.

83. Dean Lawson, with the intent of making appear that STU was giving Mr. Polo an opportunity to appeal, initiated an appeal process.

84. During the appeal, MR. POLO'S incursion into politics came again. Dean Moore asked MR. POLO why he ran for office. MR. POLO told Ms. Moore that his political activities had nothing to do with the school, and she replied "Yes it does. Because you challenged the authority of Dean Hernandez when he told you not to engage in any employment or external activities."

85. However, the requirement not to engage in employment or external activities was until MR. POLO had improved his GPA, and STU had even employed MR. POLO as a research assistant.

86. During the meeting, MR. POLO explained once more that he may have forgotten to disclose information in his application because of his diagnosed cognitive disability.

87. Ms. Lawson, humiliated Mr. Polo in front of his wife who was seated right next to the door where the appeal took place and was able to hear the hearing, by saying "I, don't think your problem is cognitive, but think your problem is one of honesty."

88. With the intent of making the appeal decision official and making it seem that Mr. Polo had a real opportunity to be heard, on May 17, 2019, Lawson sent Mr. Polo an official letter making official and final the expulsion and saying that she had reconsidered all the evidence and the allegations in the case.

89. It was not until May 20, 2019, that Mr. Polo discovered the letter of Judge Bernstein to STU and the conspiracy between STU and SCOTT BERNSTEIN when Mr. Polo discovered all the documents that Dean Moore had prepared for the honor council, including but not limited to the letter of JUDGE BERNSTEIN to STU, the Order of recusal and the fact that JUDGE BERNSTEIN was, in fact, Mr. Polo's accuser.

## C. THE JUDGES IN THE THIRD DCA OF FLORIDA

90. The Florida Third District Court of Appeals repeatedly refuses to apply the correct principle of law to the Admitted Facts in MR. POLO'S case as shown in the following sequential narrative of the history on the Appellate Court.

## I.     APPELLATE CASE NO. 3D2021-2179 Fla. R. App. P. 9.130 (c)(iii)(a) Orders Determining the Right to Immediate Monetary Relief

91. On November 04, 2021, Mr. Polo filed an appeal.

92. On April 6, 2022, the Judges LOGUE (adjunct professor of law at St. Thomas University, Inc., where Mr. Polo was studying), HENDON, and BOKOR, issued an order stating in the footnote, with the intent of preventing Mr. Polo from further filing in the 3d DCA that:

> "In July 2015, the trial court rendered an amended final judgment of paternity and holding that the 2013 mediated settlement agreement was to remain in full force and effect, which was affirmed on appeal.
>
> Citing **Polo v. Hernandez**, 224 So. 3d 229 (Fla. 3d DCA 2017)"

93. The previous statement was factually wrong and irrelevant to the issue in front of the court, in **Polo v. Hernandez**, 224 So. 3d 229 (Fla. 3d DCA 2017) the only thing that was appealed was "a final order entered after a final judgment, finding the father in Contempt and granting Attorney's fees to the appellee" but never the "Amended Final Judgment of Paternity". Moreover, STU had raised the same statement in the Honor Proceeding and the Opposing Counsel Manuel Segarra ("MR. SEGARRA") had also repeatedly raised the same false allegation throughout the length of the litigation.

94. Moreover, the April 6, 2022 order conclusively, irrelevantly, and without evidence on the record stated:

> because of the Father's excessive and frivolous post-judgment filings and history of vexatious conduct, the trial court precluded him from filing any additional pro se pleadings, motions, or letters without the assistance of a member of the Florida Bar.

95. Id. The court knew that such a statement was not supported by competent evidence on the record.

## II.   APPELLATE CASE NO. 3D2022-1475, JUDGES FERNANDEZ, GORDO and LOBREE

96. On August 9, 2022, Mr. Polo filed an appeal pursuant to Fla. R. App. P. 9.130 (a)(3)(B) for orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions," and under Fla. R. App. P. 030(b)(3) invoking the Authority of the Court to, alternatively, enter a writ of Prohibition to prevent the lower court to act without Jurisdiction.

97. On July 5, 2022, Mr. Polo objected to continuing to be without access to file ANYTHING in the record when the order preventing MR. POLO from filing was obtained without notice and opportunity to be heard and without supporting evidence as to any vexatious acting to what Judge Multack ruled that he was "going to direct the Clerk to accept pleadings on [Mr. Polo's] behalf, any motions on your behalf,"

98. However, on July 11, 2022, Judge Multack rendered an order totally different order than what he had orally ruled in the hearing held on July 5, 2022.

99. The new order of July 11, 2022, imposed an injunction limiting Mr. Polo's filing as follows:

> Mr. Polo is granted access to file limited pleadings in relation to the Petitioner's Mother's Motion for Attorney's Fees and Costs to be Paid by Respondent Father. Any pleading must be limited to the one pending motion before the Court.

100.      MR. POLO also requested to treat the petition as a writ of prohibition based on the fact of his case in which the lower court (1) entered a final judgment in the case, (2) without retaining jurisdiction to adjudicate attorney's fees, and (3) the time to file for rehearing had passed; therefore, Mr. Polo argued, the court had lost jurisdiction to adjudicate motions for attorney's fees that were never filed before the court had lost jurisdiction over the case.

101.      Even though the Fla. Const. art. V, § 2(a), and Fla. R. App. P. 9.040(c) creates a right for Mr. Polo to have his case treated as if the right remedy had been thought, and a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought, the 3d DCA did not entertain Mr. Polo's request to treat the appeal as a writ of Prohibition.   Creating thereby the need for Mr. Polo to file a subsequent writ of prohibition which was also ignored.

102.      The Court acted as if Mr. Polo had never asked the Court to issue a writ of Prohibition preventing the lower court from acting in the absence of jurisdiction.

103.    Florida Courts have held that "restriction imposed on the litigant with respect to further filing in the court's docket" is appealable under Fla. R. App. P. 9.130(a)(3)(B).

104.    However, on September 14, 2022, Judges FERNANDEZ, GORDO, and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders" without addressing the Jurisdictional issues or the failure of Judge Multack to reduce his oral order to writing.

105.    The order was entered without an opinion, which prevented further appeal, and it failed to address the jurisdictional arguments Mr. Polo had raised.

### III.    APPELLATE CASE NO. 3D2022-2071 (A PETITION FOR WRIT OF PROHIBITION), Judges LINDSEY, HENDON, and LOBREE

106.    On December 01, 2022, Mr. Polo filed a Petition for Writ of Prohibition, also based on the facts that (1) the lower court entered a final judgment in the case, (2) without retaining jurisdiction to adjudicate attorney's fees, and (3) the time to file for rehearing had passed; therefore, Mr. Polo argued, the court had lost jurisdiction to adjudicate motions for attorney's fees that were never filed before the court had lost jurisdiction over the case. See [APPX: 24].

107.    However, on March 01, 2023, Judges LINDSEY, HENDON, and LOBREE rendered an order denying a writ of prohibition filed by Mr. Polo on December 01, 2022. The court's decision totally ignored the facts of the case and applied the incorrect principle of law to the case.

108.    The opinion was citing wrong distinguishable nonapplicable case law, which did not apply to MR. POLO'S case. The court dismissed the case citing **Rorrer v. Orban**, 215 So. 3d 148 (Fla. 3d DCA 2017); **Juhl v. Juhl**, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous or applicable to MR. POLO'S case, and not elaborating on their reasoning for doing so.

109.    **Rorrer**, 215 So. 3d 148 was irrelevant to MR. POLO'S case because the parties in **Rorrer** "each filed additional fee motions shortly before the final hearing" Id at 155., in other words, before the court had lost jurisdiction over the case and even before the final hearing.

110.    In Polo's case, the Mother moved for attorney's fees twenty-four (24) days after the final judgment was rendered. Way beyond the fifteen (15) days Fla. R. Civ. P. 12.530 statutory limit to ask for rehearing.

111.     **Juhl**, 328 So. 3d 1031 was also inapplicable to the undisputed facts of MR. POLO'S case at bar because, contrary to Mr. Polo's case, the court in **JUHL** did retain jurisdiction to adjudicate attorney's fees and says in pertinent part:

> "The trial court entered a final judgment, then issued an amended judgment four days later to correct an error regarding the restoration of Garza's surname. Both judgments included language reserving jurisdiction to consider fee claims and a number of other issues."

112.     Yet, MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different and that the facts of MR. POLO case were more like these in their own case from the 3d DCA **Frumkes**, 328 So. 2d 34, in which the 3d DCA held that:

> The reservation clause in the final judgment involved in this appeal, did not have the effect of reserving or retaining the judge's jurisdiction to award attorneys fees and grant to it jurisdiction that otherwise is lost after the time for filing a petition for rehearing had passed.

113.     Moreover, a month before the 3d DCA rendered the order in Mr. Polo's Writ of Prohibition, one of the same Judges in this case, the honorable Judge LINDSEY, was among the Judges deciding a case with extremely similar facts to MR. POLO'S case, **Padron v. Padron**, 356 So. 3d 306 (Fla. 3d DCA 2023) (judges EMAS, LINDSEY and GORDO) and they held that:

> "after entry of a final judgment and expiration of time to file a motion for rehearing or for a new trial, the trial court loses jurisdiction of the case ... unless jurisdiction was reserved to address that matter or the issue is allowed to be considered post-judgment by statute or under a provision of the Florida Rules of Civil Procedure."

114.     However, the Judges LINDSEY, HENDON, and LOBREE denied the motion for reconsideration, knowing that they were citing two wrong inapplicable cases and did not elaborate on their opinion, which deprived the Fla. Sup. Ct. of Jurisdiction to hear an appeal from that order.

115.     Moreover, the motion to stay to prevent the lower court from acting without jurisdiction, filed on January 5, 2023, was denied.

### IV.     APPELLATE CASE NO. 3D2022-2212 (A PETITION FOR WRIT OF MANDAMUS), FERNANDEZ, EMAS, and HENDON.

116.     On December 22, 2022, MR. POLO filed a petition for writ of Mandamus asking the 3d DCA to mandate Judge Multack to perform his ministerial duty of reducing his oral ruling to writing and the Clerk of Courts to perform his ministerial duty to accept filings from Mr. Polo

pursuant to Fla. Sup. Ct. case **Fischer v. Knuck**, 497 SO. 2D 240 243 (FLA 1986) where the Fla. Sup. Ct. held that:

> When a judge has heard the testimony and arguments and rendered an oral ruling in a proceeding, the judge retains the authority to perform the ministerial act of reducing that ruling to writing. [Citation Omitted]. However, any substantive change in the trial judge's ruling would not be a ministerial act (emphasis added).

117.     On July 5, 2022, Mr. Polo objected to continuing to be without access to file ANYTHING in the docket when the order preventing MR. POLO from filing was obtained without notice and opportunity to be heard and without supporting evidence as to any vexatious acting to what Judge Multack ruled that he was "going to direct the Clerk to accept pleadings on [Mr. Polo's] behalf, any motions on your behalf,"

118.     However, on July 11, 2022, Judge Multack rendered an order totally different order than what he had orally ruled in the hearing held on July 5, 2022.

119.     The new order imposed an injunction limiting Mr. Polo's filing as follows:

> Mr. Polo is granted access to file limited pleadings in relation to the Petitioner's Mother's Motion for Attorney's Fees and Costs to be Paid by Respondent Father. Any pleading must be limited to the one pending motion before the Court.

120.     On April 3, 2023, Mr. Polo filed with the 3d DCA a NOTICE OF FILING A TIMELY MOTION FOR REHEARING AND TO VACATE JUDGMENT WITH THE LOWER COURT pursuant to the new Fla. Fam. L. R. P. 12.530, to make the 3d DCA aware that the lower court was still preventing Mr. Polo from filing a necessary motion to preserve Mr. Polo's right to challenge the sufficiency of findings in the lower court's final judgment.

121.     On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismissed a Writ of Mandamus as moot because a judgment was rendered, while the three fundamental elements of a writ of mandamus were still in existence and in controversy.

122.      On April 10, 2023, Mr. Polo filed a Motion for Reinstatement Rehearing and/or Clarification which was denied two days later.

123.     Under the amended rule Fla. Fam. R. App. 12.530, MR. POLO was required to challenge the final judgment that is required to include specific findings, which MR. POLO knew that the lower court was going to intentionally fail to include specific findings of need and ability to pay attorney's fees.

124.     The 3d DCA ignored that Mr. Polo had a clear constitutional right to access the court, and to file legal documents in the lower court, pursuant to Article I, Section 21 of the Fla. Cons., and the U.S. Constitution First Amendment Petition Clause, and the court ignored that Mr. Polo's right was being violated without due process of law (notice and opportunity to be heard) when judge Multack failed to reduce his oral ruling to writing after the hearing.

125.     Judge Multack had a clear duty to reduce his oral ruling to writing permitting Mr. Polo to file what Mr. Polo needed to preserve his rights to an appeal including but not limited to motions, pleadings, affidavits, notices, evidence, etc., etc.

126.     The Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and the Clerk is obliged to accept motions presented for filing in pending cases.

127.     And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts, because of being indigent and not having access to the court to file a motion under Fla. Fam. L. R. P. 12.540 or Rule 12.530.

### V.     APPELLATE CASE NO. 3D2023-0249 (MOT. FOR REHEARING/ REHEARING IN BANC) , SCALES, HENDON, and MILLER.

128.     Pending in the 3d DCA is Mr. Polo's "MOTION FOR REHEARING EN BANC, REQUESTS REHEARING, CLARIFICATION, AND/OR THE ISSUANCE OF A NEW WRITTEN OPINION," which was filed on September 14, 2023.

129.     On August 30, 2023, the 3d DCA rendered an order on MR. POLO'S appeal in which MR. POLO, once more was claiming that the lower court did not have jurisdiction to entertain motions for attorney's fees. However, the 3d DCA, once more ignored the fact that the trial court did not have jurisdiction to entertain motions for attorney's fees filed after the trial court issued a final judgment on February 7, 2017, without reserving jurisdiction to adjudicate attorney's fees, and the time for rehearing had lapsed.

130.     The August 30, 2023 order did not address the merits arguments and failed to apply to admitted facts a correct principle of law. Moreover, the order ignored the actual facts of the case and raised a new erroneous affirmative defense never raised by proper pleadings/brief, and facts never in dispute in the appeal. The court stated in pertinent part:

> Notwithstanding the fact that the reservation contained in the operative final judgment was sufficient to vest the trial court with jurisdiction to award post-

judgment fees, it is axiomatic that fees in family law cases may be awarded "from time to time" in accord with the considerations set forth in section 61.16(1)

131.    The reservation on the "Operative Final Judgment" is a reservation to enforce the terms of the "Operative Final Judgment" and contains a waiver of rights to attorney's fees stating that each party is responsible for their own attorney's fees.

132.    Moreover, the case in front of the court was a new proceeding for modification filed by Mr. Polo on February 7, 2017, and not a proceeding to enforce the Operative Final Judgment.

133.    The 3d DCA continued to state irrelevant facts when it says that:

> "As to the second point, competent, substantial evidence in the form of billing records and testimony bearing on the reasonable hours expended, hourly rate, and available resources support the fee award."

134.    Mr. Polo's argument was that the "Competent Substantial Evidence" needed is evidence of facts supporting a finding of <u>Ms. Hernandez's need for attorney's fees, and Mr. Polo's ability to pay attorney's fees</u>, which do not exist on the record, which is what is required because in Florida "it is well established in dissolution cases that attorneys' fees and costs are to be borne by the party who has the superior or greater financial ability to pay".

135.    Additionally, the order makes another error of fact not contained in the record by saying:

> Hence, the thirty-day limitation contained within Florida Rule of Civil Procedure 1.525 is inapplicable, and there was no jurisdictional impediment to awarding fees. See **Juhl v. Juhl**, 328 So. 3d 1031, 1032–33 (Fla. 2d DCA 2021).

136.    MR. POLO never raised any argument about the court not having jurisdiction based on Fla. R. Civ. P. 1.525. The law is clear regarding Rule 1.525 which does not apply to family cases.

137.    Mr. Polo's claim for lack of jurisdiction arises out of well stablished case law in the 3d DCA as **Padron v. Padron**, 356 So. 3d 306 (Fla. 3d DCA 2023), **Richards v. Bennett**, 642 So. 2d 668 (Fla. 3d DCA 1994), **Berlin v. Berlin**, 395 So.2d 1260 (Fla. 3d DCA 1981); **Church v. Church**, 338 So.2d 544 (Fla. 3d DCA 1976); **Frumkes v. Frumkes**, 328 So.2d 34 (Fla. 3d DCA 1976).

138.     Moreover, the 3d DCA continued citing to **Juhl**, 328 So. 3d 1031, 1032–33 (Fla. 2d DCA 2021), when Juhl is irrelevant to Mr. Polo's case, in which the trial court failed to reserve jurisdiction. In contrast to Mr. Polo's case, in **JUHL**, the court reserved jurisdiction to adjudicate attorney's fees.

## VI.     APPELLATE CASE NO. 3D2023-0681 (APPEAL OF FINAL JUDGMENT PENDING IN THE LOWER COURT)

139.     An appeal of the final judgment rendered on March 13, 2023, the "FINAL JUDGMENT ON PETITIONER / MOTHER'S MOTION FOR ATTORNEY'S FEES AND COSTS TO BE PAID BY RESPONDENT / FATHER" is pending in the 3D DCA. See the Amended Initial Brief of Mr. Polo.

140.     There are 6 issues pending resolution in the lower court which are based on the failure of the trial court to apply to admitted facts a correct principle of law and failure to follow the requirements of the law of the State of Florida, the Florida Constitution, and of the U.S. Constitution.

ISSUE NO. 1: Whether All The Orders Rendered after September 14, 2018 Are Void for Lack of Procedural, and Subject Matter Jurisdiction.

ISSUE NO. 2: Whether Res Judicata precludes the Mother and her attorney from raising issues of Attorney's fees.

ISSUE NO. 3: Whether the Successor Judge, Judge Multack, could have relied on evidence heard by Judge Del Rey, in the previous proceeding, without a retrial or the parties' stipulation.

ISSUE NO. 4: Whether the court failed to observe the requirements of the law under the inherent authority of the Court (Moakley).

ISSUE NO. 5: Whether the court failed to observe the requirement of the law under STOCKMAN and Fla. Stat. § 61.16.

ISSUE NO. 6: Whether the lower court failed to follow the requirements of the law under Fla. Stat. § 742.045 / Fla. Stat.  § 61.16, by failing to find that MR. POLO had a superior or greater financial ability to pay.

ISSUE NO. 7: Whether Mr. Polo and his children were deprived of equal protection of the law and access to the court, without due process of law. .

### § 7.COMPLAINT

### COUNT 1.     DEPRIVATION OF PROPERTY AND LIBERTY INTEREST IN VIOLATION OF PLAINTIFFS' 5TH AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

141.     Plaintiffs re-alleges paragraphs 22 through 140 and further state that the DEFENDANTS SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. through its agents DEAN LAWSON, MR. SILVER, and DEAN MOORE ("STU AGENTS" or the "AGENTS") (and all together referred to as the "DEFENDANTS" throughout this Count), did the following:

142.     The DEFENDANTS, SCOTT BERNSTEIN and ST. THOMAS UNIVERSITY, INC., through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their constitutional rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

143.     **MR. POLO** had an implied contract in law with STU, in which **MR. POLO** was to pay for STU legal education program, and STU was to confer **MR. POLO** a JD, and a Tax Law Certificate. When **MR. POLO** was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete not only his JD in Law, but also a Tax Law Certificate.

144.     As the result of the implied in-law agreement **MR. POLO** had with ST. THOMAS UNIVERSITY, INC., **MR. POLO** and his children had a property interest in the continued enrollment of **MR. POLO** at STU. They also had a liberty interest in their good name, reputation, honor, and integrity.

145.     JUDGE BERNSTEIN'S acts complaint off herein is the act of interfering with litigants' contractual rights with the intent of depriving the Plaintiffs of their constitutionally protected rights without due process of law, which is not a judicial act. Therefore, JUDGE BERNSTEIN does not enjoy absolute immunity.

146.     Moreover, after JUDGE BERNSTEIN recused himself from the family case on January 29, 2019, he lost subject matter jurisdiction and personal jurisdiction over the Plaintiff(s) and the family case. Therefore, JUDGE BERNSTEIN was acting in the clear absence of all Jurisdiction. The actions of JUDGE BERNSTEIN complained of in this count are those that he took in the clear absence of all jurisdiction after January 29, 2019, when he ceased to have any jurisdiction over the family court case after he recused himself from the family court case.

147.     Judge BERNSTEIN was acting within the scope of his official duties when he used the power of his office by sending a letter to ST. THOMAS UNIVERSITY on State Court's

letterhead, and with BERNSTEIN'S judicial signature block identifying himself as a State Judge with the intent of using the power of his office to get STU to act as his agent to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, and with the intent of intimidating Mr. Polo for his exercise of First Amendment Right to ask the government for redress of grievances and right to engage in Political Speech. Therefore, JUDGE BERNSTEIN was a state actor, and the STU agency can be fairly characterized as state action. Therefore, STU was acting under color of law by conspiring[2] with and acting on behalf of JUDGE BERNSTEIN.

148.     STU initiated a sham inquisitory proceeding which put more emphasis on ensuring the punishment of MR. POLO than on finding the truth. The proceeding was initiated on behalf of a government actor, namely JUDGE SCOTT BERNSTEIN, the proceeding was violative of Due Process because as an inquisitory proceeding, it (1) did not have an impartial adjudicator, (2) did not provide access to evidence that was being used against MR. POLO, (3) did not provide an opportunity to confront Mr. Planas and Mr. Bernstein, (4) did not permit MR. POLO to be present during Mr. Planas' testimony, (5) did not provide a summary of Mr. Planas' testimony before the hearing, (6) the proceeding was initiated with the intent of silencing MR. POLO'S speech, and to intimidate him to drop the charges against JUDGE BERNSTEIN'S co-conspirators in state court, (7) the outcome was decided even before a hearing was conducted, and (8) the proceeding was designed to deprive the Plaintiffs of their interest in property and liberty without a fair opportunity to be heard.

149.     Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU and was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

## A.  AGAINST STU

150.     STU failed to provide due process by making the decision to terminate Mr. Polo even before the proceeding was conducted.

151.     STU failed to provide due process by assuming that Mr. Polo was guilty until proven innocent as shown by the initial letter from Dean Lawson to Mr. Polo was already affirming

---

[2] See conspiracy section hereunder.

that Mr. Polo was guilty of all the allegations contained in JUDGE BERNSTEIN'S order of recusal.

152.     STU failed to provide due process by substantially disregarding the weight of the evidence by ignoring that by the end of the deliberation on February 26, 2019, the evidence in front of the committee showed that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal and showed that Judge Bernstein was personally coming after Mr. Polo.

153.     STU failed to provide due process by substantially disregarding its own rules by allowing Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

154.     STU failed to provide due process by substantially disregarding its own rules by engaging in a fishing expedition after the Honor Council proceeding was over. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> (1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote.

155.     STU failed to provide due process failing to dismiss the honor council proceeding after the deliberation on February 26, 2019, when the committee found out that MR. POLO had not done any of the acts SCOTT BERNSTEIN alleged in his Order of Recusal.

156.     STU failed to provide due process by failing to follow their own rules by failing to find MR. POLO guilty by clear and convincing evidence

157.     STU failed to provide due process by failing to follow their own rules by allowing MR. SILVER to go on a fishing expedition to find more excuses to terminate MR. POLO when STU Honor Council rules establish a single hearing before sanctioning a student.

158.     STU failed to provide due process by having made a decision to terminate MR. POLO before the hearing of March 23, 2019 had even begun when STU deactivated MR. POLO'S

ID card to access the campus, removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

159.     STU failed to provide due process by ignoring the well-known, to STU, involuntary medical conditions of MR. POLO, which may have involuntarily produced those results they were complaining about, conditions that included, but were not limited to, involuntary neurocognitive problems such as memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms.

160.     STU failed to provide due process by ignoring MR. POLO'S involuntary lack of knowledge of English along with his involuntary neurocognitive impairments may have made MR. POLO misunderstood some questions in the application process.

161.     STU failed to provide due process by failing to provide Mr. Polo with the same opportunity it gave other students who also failed to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process.

162.     STU failed to provide due process by using Mr. Polo's involuntary failure to disclose as a pretext to terminate MR. POLO when (1) STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute (a felony for which the student was suspended on a temporary basis and then later allowed to continue his career); (2) STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee; (3) Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence.

163.     STU failed to provide due process by failing to provide MR. POLO with the materials that the honor council was going to use against MR. POLO, including the evidence against MR. POLO and the name of the real accuser, namely JUDGE BERNSTEIN.

164.     STU failed to provide due process by failing to give MR. POLO and opportunity to confront his accuser and cross-examine him.

165.     STU failed to provide due process by failing to give MR. POLO and opportunity to confront the only witness STU presented, Juan Carlos Planas, and to cross-examine him.

166.     STU failed to provide due process by putting a biased witness, Juan Carlos Planas, to testify against Mr. Polo and not allowing MR. POLO to be present while MR. PLANAS was testifying.

167.     STU failed to provide due process by, all members of the Honor Council and the STU management knowledge that they were acting on behalf of a state actor and failing to provide MR. POLO with the due process safeguards provided by the U.S. and Florida Constitutions.

168.     STU failed to provide due process by allowing DEAN MOORE to plan to blame MR. POLO not for his own acts, but to blame MR. POLO for the acts of his attorney.

169.     STU failed to provide due process by allowing Dean Lawson to use the proceeding to humiliate MR. POLO and not to weigh the evidence presented by MR. POLO, or the application of STU rules to MR. POLO'S case.

170.     But for the acts of ST. THOMAS UNIVERSITY, INC., through its AGENTS DEAN LAWSON, MR. SILVER, and DEAN MOORE of instituting, maintaining, and continuing the sham proceeding to participate in the Conspiracy with SCOTT BERNSTEIN, and failing to enforce the honor code's Section 3.03 (A)(3) to prevent JUGE BERNSTEIN from using the Honor Council proceeding for his personal interest of retaliating against MR. POLO, the plaintiffs would have never lost their property interest in the continued enrollment of **MR. POLO** at STU, or the liberty interests in their good name, reputation, honor, and integrity.

## B.  AGAINST JUDGE BERNSTEIN

171.     Two days after BERNSTEIN'S recusal of January 29th, on January 31, 2019, JUDGE BERNSTEIN, intentionally and maliciously, contacted the Dean of St. Thomas School of Law, Tamara Lawson (hereinafter "Ms. Lawson" or "DEAN LAWSON"), with whom JUDGE BERNSTEIN had met on October 23, 2017, the day before he named MR. POLO vexatious litigant.

172.     Judge BERNSTEIN did not have any other choice than to send the letter immediately because Mr. Polo was about 4 weeks away from graduation, and STU needed time to put together the sham honor proceeding.

173.     JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

174.     But for the interference of Judge Bernstein, ST. THOMAS UNIVERSITY, INC., would have never started a sham Honor Proceeding against MR. POLO, which was designed to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and liberty interest in their good name, reputation, honor, and integrity without due process of law.

175.     The expulsion of MR. POLO from STU resulted in a permanent record of dishonorable expelling in MR. POLO'S academic file. Such a record creates a stain, not only on MR. POLO'S good name, reputation, honor, and integrity but also on MR. POLO'S family's good name, reputation, honor, and integrity which will follow him and his family for life.

176.     Therefore, SCOTT BERNSTEIN and ST. THOMAS UNIVERSITY, INC., intentionally deprived the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and liberty interest in their good name, reputation, honor, and integrity without due process of law, in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

177.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, JUDGE BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of his constitutional rights without due process of law, and due to the powerful influence of JUDGE BERNSTEIN, being the son-in-law of an ex-Florida Bar President, MR. POLO will not have any remedy at law because the courts of the State of Florida will not provide him with proper remedy at law, and believing that appealing to the U.S. Supreme Court is feasible when the U.S. Supreme Court takes about 1% of the cases presented to it, it's a fiction.

178.     As a direct, natural, and proximate result of DEFENDANTS JUDGE BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., and its agents' actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The

Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

179.       **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. as follows:

A)       Declaring that SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., violated the Plaintiffs' constitutionally protected property interest in the continued enrollment of MR. POLO at ST. THOMAS UNIVERSITY, INC., and their liberty interest in their good name, reputation, honor, and integrity without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)       Enjoining SCOTT BERNSTEIN and ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)       Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988.

D)       Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

**COUNT 2.       DEPRIVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION, IN VIOLATION OF PLAINTIFFS' 5TH**

### AND 14TH AMENDMENTS RIGHTS TO DUE PROCESS OF LAW UNDER 42
### U.S.C. SECTION 1983

### A.  AGAINST THE DEFENDANT ST. THOMAS UNIVERSITY, INC.

180.      Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC. through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE (the "STU AGENTS" or the "AGENTS" throughout this Count) did the following:

181.      The DEFENDANT ST. THOMAS UNIVERSITY, INC. through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE, in all their actions described in this complaint, deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

182.      JUDGE BERNSTEIN'S acts complaint off herein is the act of interfering with litigants' contractual rights with the intent of depriving the Plaintiffs of their constitutionally protected rights without due process of law, which is not a judicial act. Therefore, JUDGE BERNSTEIN does not enjoy absolute immunity.

183.      Moreover, after JUDGE BERNSTEIN recused himself from the family case on January 29, 2019, he lost subject matter jurisdiction and personal jurisdiction over the Plaintiff(s) and the family case. Therefore, JUDGE BERNSTEIN was acting in the clear absence of all Jurisdiction. The actions of JUDGE BERNSTEIN complained of in this count are those that he took in the clear absence of all jurisdiction after January 29, 2019, when he ceased to have any jurisdiction over the family court case after he recused himself from the family court case.

184.      Any actions referred to about JUDGE BERNSTEIN'S acts while he had subject matter jurisdiction are used to show a plan and/or a common scheme.

185.      Judge BERNSTEIN was acting within the scope of his official duties when he used the power of his office by sending a letter to ST. THOMAS UNIVERSITY on State Court's letterhead, and with BERNSTEIN'S judicial signature block identifying himself as a State Judge with the intent of using the power of his office to get STU to act as his agent to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, and with the intent of intimidating Mr. Polo for his exercise of first Amendment Right to ask the government for

redress of grievances and right to engage in Political Speech. Therefore, JUDGE BERNSTEIN was a state actor, and the STU agency can be fairly characterized as state action. Therefore, STU was acting under color of law by conspiring[3] with and acting on behalf of JUDGE BERNSTEIN.

186.     MR. POLO had a right to petition the Government for a redress of grievances without fear of retaliation under the First Amendment of the U.S. Constitution, and MR. POLO engaged in such conduct when he (1) filed a Motion to Vacate on May 26, 2015 exposing the corruption in the family Court System (the "Motion to Vacate), and when he (2) filed a Civil Case, on February 13, 2017, against JUDGE BERNSTEIN'S co-conspirators.

187.     MR. POLO also had a First Amendment right to engage in ***core political speech*** intended to rally public support for fighting judicial corruption in the Miami-Dade Family Court System when he ran for office.

188.     The DEFENDANTS maliciously and intentionally engaged in a retaliatory scheme with the intent of silencing MR. POLO and prevent him from exercising his 1st Amendment right to engage in a protected speech against corruption in the Family Court System, and the First Amendment right to petition the government.

## I.     JUDGE BERNSTEIN'S RETALIATORY SCHEME

189.     On or about May 26, 2015, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

190.     Thereafter, SCOTT BERNSTEIN created a retaliatory scheme by building a case against MR. POLO with the malicious intent of (1) later getting STU involved and getting MR. POLO expelled from law school through a sham Honor Proceeding, destroying thereby, Mr. Polo's career in law, financial stability and future, and destroying MR. POLO'S and his family's good name.

191.     In furtherance of his retaliatory scheme, and with the intent of building a case against Mr. Polo, SCOTT BERNSTEIN engaged in the following acts:

192.     On February 2, 2016, JUDGE BERNSTEIN declared MR. POLO in contempt over an order that did not contain a clear and definite command sufficient to notify MR. POLO of his

---

[3] See conspiracy section hereunder.

required conduct, intentionally ignoring, thereby, the rule of law in Florida which does not support such an act.

193.     On August 01, 2017, behind Mr. Polo's back, Judge BERNSTEIN filed an order of referral to the co-parenting coordinator alluding to a history of allegations of domestic violence when that was not a pending issue in front of the court, and as a matter of fact, there was no pending issue to be resolved by the co-parenting coordinator.

194.     The referral was made with the intent of getting a recommendation from the pre-arranged Coparenting coordinator to remove MR. POLO'S custody of his children without due process of law. However, Judge BERNSTEIN and MR. SEGARRA refrained from continuing with the plan once Mr. Polo put it in writing in an email to the Coparenting coordinator.

195.     After Judge Bernstein found out that Mr. Polo was going to STU at the hearing held on August 1, 2017, BERNSTEIN met with Dean Lawson and other Members of the STU management at STU School of Law on October 23, 2017, with the intent of getting STU to participate in his retaliatory scheme.

196.     The day after, on *October 24, 2017*, SCOTT BERNSTEIN restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed. Therefore, there was no notice and opportunity to be heard before the Plaintiffs' access to the courts was removed.

197.     SCOTT BERNSTEIN, behind **MR. POLO'S** back, ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

198.     On or about ***June 06, 2018***, Polo registered to ***run for a State Representative*** with an agenda against judicial corruption. During the campaign, and thereafter, Polo engaged in ***core political speech*** which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

199.     Thereafter JUDGE BERNSTEIN'S retaliation increased, and on October 2, 2018, SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed **MR. POLO'S** right to access the court/filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the

Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

200.     On the same date, October 2, 2018, Judge BERNSTEIN issued an order to show cause why MR. POLO was not to be found in criminal contempt of court, and Segarra was asking Judge Bernstein to put Mr. Polo in Jail, even though he knew that Mr. Polo did not have the state of mind to be criminal contempt.

201.     On *September 25, 2018*, MR. POLO filed an affidavit. In the affidavit MR. POLO claimed that he was *a Student Member of the Florida Bar Tax Section*, which was a true statement.

202.     On October 2, 2018, JUDGE BERNSTEIN, tried on multiple occasions to enter into the record false allegations indicating that MR. POLO had represented to be an attorney in his court. MR. POLO repeatedly corrected JUDGE BERNSTEIN telling him that Polo never said to be licensed to practice or an attorney. What MR. POLO stated in the affidavit that he was a *Student Member of the Florida Bar*. As it is shown in the September 25, 2018, hearing's transcript, and the affidavit itself.

203.     After multiple malicious attempts to put on the record that MR. POLO represented to be an attorney, JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney would be "a gross misrepresentation."

204.     MR. SEGARRA, another co-conspirator, maliciously said on the record that MR. POLO was even engaged in an illegal practice of law by representing himself in court, which was factually and legally incorrect.

205.     MR. POLO had to hire an attorney he couldn't afford to filed a motion to recuse SCOTT BERNSTEIN. Before the recusal hearing held on January 29, 2019, JUDGE BERNSTEIN had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

206.     The order was in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. However, Judge Bernstein needed the Statement contained in that Order to later provide those as pretext for STU to expel Mr. Polo.

207.    The order was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by *"incessantly"* calling his Judicial Assistant. Moreover, JUDGE BERNSTEIN stated in pertinent part:

> MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

208.    Bernstein was right, he did not need to contact the Florida Bar, because he had already arranged with Dean Lawson to use the Order of Recusal as the basis for expelling Mr. Polo. Therefore, two days later on **January 31, 2019**, JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas School of Law, Tamara Lawson, with whom JUDGE BERNSTEIN had met on ***October 23, 2017***, the day before he named MR. POLO vexatious litigant.

209.    Judge BERNSTEIN did not have any other choice than to send the letter immediately because Mr. Polo was about 4 weeks away from graduation, and STU needed time to put together the sham honor proceeding.

210.    JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

211.    BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor Section 2.01 (F) titled "General Unfitness" by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

## II.    STU PARTICIPATION IN THE SCHEME

212.    STU allowed MR. BERNSTEIN to interfere with the agreement STU had with MR. POLO knowing that MR. BERSTEIN'S allegations were all false.

213.    STU's decision to terminate MR. POLO was not based on clear and convincing evidence as the STU's code of conduct requires because the evidence presented to STU exonerated Mr. Polo of Judge Bernstein's accusations.

214. STU disregarded the weight of the evidence by ignoring that by the end of the deliberation on February 26, 2019, the evidence in front of the committee showed that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal and showed that Judge Bernstein was personally coming after Mr. Polo.

215. STU substantially disregarded its own rules by allowing Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

216. STU substantially disregarded its own rules by engaging in a fishing expedition after the Honor Council proceeding was over. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> (1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote.

217. By the end of the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal. They did not have clear and convincing evidence to support their breach of contract. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to continue the honor council proceeding in a second hearing.

218. On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council hearing which was to take place on April 4, 2018. As of March 23, 2019, STU, intentionally and maliciously, had already decided to remove **MR. POLO** from the school even before the second hearing had even begun. STU deactivated **MR. POLO'S** ID card to access the campus, removed **MR. POLO** from the security access list at the gate, and removed **MR. POLO'S** access to STU's network.

219. On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council hearing which was to take place on April 4, 2018.

220.     This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

221.     On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

222.     Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

223.     STU's management knew that the new allegation could be a result of MR. POLO'S involuntary lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA").

224.     THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included involuntary neurocognitive problems such as memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms that may have involuntarily produced those results they were complaining about.

225.     STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had

forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

226.     No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

227.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

228.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

229.     Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

230.     In preparation to take MR. POLO to the first honor council hearing, the DEAN MORE prepared a memorandum containing, among other things, internal emails among the members of the honor council and STU's management, the letter, and the order of recusal the SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

231.     Moreover, the memorandum contained the malicious plan of DEAN MOORE, not to blame MR. POLO for his own acts, but to blame MR. POLO for the acts of his attorney, and t was full of misleading conclusory statements that she never provided to MR. Polo.

232.     DEAN MOORE sent the memorandum to the panel, the same day of the hearing with the intent of not giving the panel time to question her conclusory statements.

233.     Moreover, DEAN MOORE realizes that MR. SEGARRA was harassing MR. POLO with the unnecessary process of service; however, she did not comment about the unethical ramifications of this but downplayed it.

234.     During the appeal process, Dean Lawson used the proceeding to humiliate MR. POLO and not to weigh the evidence presented by MR. POLO, or the application of their rules to MR. POLO'S case, and with the intent of saying that Mr. Polo received due process, but not with the intent of affording Mr. Polo a real opportunity to be heard.

235.     STU, produced a second round of evidence that was just a plain and simple pretext to get rid of MR. POLO. STU had a process to amend their application which was offered to ALL students in preparation for applying for the Florida Bar. Never did STU expelled students for failing to report the things they were complaining about.

236.     STU, knew that SCOTT BERNSTEIN'S behavior was unethical and even probably criminal. However, they did not care, they allowed the judge to use the power of his office to influence the panel by using Judge Bernstein's order.

237.     The retaliatory scheme resulted in Mr. Polo being intimidated and intermittently refrained from engaging in Political Speech against Corruption in the Family Court. Moreover, the terror of seeing his career on the line due to the retaliatory scheme forced Mr. Polo to dismiss the causes of action Mr. Polo had initiated against JUDGE BERNSTEIN'S coconspirators in state court.

238.     Therefore, ST. THOMAS UNIVERSITY, INC., intentionally deprived MR. POLO of his First Amendment Right to Petition the government for redress of his grievances and the right to engage in Political Speech without the fear of retaliation without due process, in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

239.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, JUDGE BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of his constitutional rights without due process of law, and due to the powerful influence of JUDGE BERNSTEIN, being the son-in-law of an ex-Florida Bar President, MR. POLO will not have any remedy at law because the courts of the State of Florida will not provide him with proper remedy at law, and believing that appealing to the U.S. Supreme Court is feasible when the U.S. Supreme Court takes about 1% of the cases presented to it, it's a fiction.

240.     As a direct, natural, and proximate result of DEFENDANTS' SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., and its agents' actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

241.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC. as follows:

242.     Declaring that ST. THOMAS UNIVERSITY, INC., violated the Plaintiffs' constitutionally protected First Amendment right to petition the Government for a redress of grievances without fear of retaliation, and the First Amendment right to engage in ***core political speech*** intended to rally public support for fighting judicial corruption in the Miami-Dade Family Court System, without due process of law, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

E)     Enjoining ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

F)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity,

together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988.

243.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

## COUNT 3.          CONSPIRACY UNDER § 1983 AND STATE LAW

244.     Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANTS SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE (the "STU AGENTS" or the "AGENTS" throughout this Count) did the following:

245.     JUDGE BERNSTEIN'S acts complaint off herein is the act of interfering with litigants' contractual rights with the intent of depriving the Plaintiffs of their constitutionally protected rights without due process of law, which is not a judicial act. Therefore, JUDGE BERNSTEIN does not enjoy absolute immunity.

246.     Moreover, after JUDGE BERNSTEIN recused himself from the family case on January 29, 2019, he lost subject matter jurisdiction and personal jurisdiction over the Plaintiff(s) and the family case. Therefore, JUDGE BERNSTEIN was acting in the clear absence of all Jurisdiction. The actions of JUDGE BERNSTEIN complained of in this count are those that he took in the clear absence of all jurisdiction after January 29, 2019, when he ceased to have any jurisdiction over the family court case after he recused himself from the family court case.

247.     Any actions referred to about JUDGE BERNSTEIN'S acts while he had subject matter jurisdiction are used to show a plan and/or a common scheme.

248.     Judge BERNSTEIN was acting within the scope of his official duties when he used the power of his office by sending a letter to ST. THOMAS UNIVERSITY on State Court's letterhead, and with BERNSTEIN'S judicial signature block identifying himself as a State Judge with the intent of using the power of his office to get STU to act as his agent to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, and with the intent of intimidating Mr. Polo for his exercise of first Amendment Right to ask the government for redress of grievances and right to engage in Political Speech. Therefore, JUDGE BERNSTEIN

was a state actor, and the STU agency can be fairly characterized as state action. Therefore, STU was acting under color of law by conspiring[4] with and acting on behalf of JUDGE BERNSTEIN.

249.    There was an agreement among all co-conspirators with four common objectives (hereinafter the "Objective") of: (1) Deprive the Plaintiffs of their Constitutional Rights without due process of law, (2) bringing about severe emotional distress, (3) retaliating against MR. POLO for exposing the corruption in the family court system during his 2018 political campaign speech and in numerous court filings while Mr. Polo was asking the government for redress of his grievances, and (4) Protecting JUDGE BERNSTEIN'S co-conspirators from Civil and possibly Criminal Liability.

250.    The manner and methods (hereinafter the "Methods") used by the plaintiffs to silence **MR. POLO'S** protected speech, and to protect the other coconspirators are, among others, as follow:

A)  Destroying **MR. POLO'S** and his children livelihood by MS, HERNANDEZ first getting the case back in court after a final judgment was rendered on ***July 15, 2015***, to start building a record against **MR. POLO**, with the malicious intent of later using it to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU.

B)  Destroying **MR. POLO'S** reputation and prestige by building a case against **MR. POLO** in which the DEFENDANTS were falsely accusing MR. POLO, in the public record, among other things, of lying, of acting in bad faith, of acting vexatiously, and of professional misconduct, without notice and opportunity to be heard.

C)  Depriving **MR. POLO** of the goodwill that having a career in law would represent in **MR. POLO'S** political career by building a case against **MR. POLO** and maliciously, getting **MR. POLO** expelled from law school without due process of law.

D)  Inflicting severe emotional distress on **MR. POLO** by keeping litigation open for many years, knowing that the litigation was not supported by facts or law.

---

[4] See conspiracy section hereunder.

E) Inflicting financial damages to **MR. POLO'S** family by (1) naming **MR. POLO** vexatious to without notice and opportunity to be heard forcing, thereby, **MR. POLO** to hire attorneys which the DEFENDANTS knew the plaintiff could not afford, then later influencing those attorneys to withdraw and leaving **MR. POLO** without representation; (2) by granting attorney's fees to the other no warranted by facts or law, and by (3) preventing the Plaintiffs from getting child support.

F) Depriving **MR. POLO** and his children of their liberty right (the "Liberty Right") to, **MR. POLO** exercise care, custody, and control of his children, and the children's liberty right of the children to receive care, custody, and control from **MR. POLO**, by allowing **MR. POLO'S** children to be taken from him, in a day in which **MR. POLO** had legal custody of the children, (2) and by referring the case to a coparenting coordinator that was pre-arranged with the intent of returning a report recommending to deprive the plaintiffs of their Liberty Right, (3) removing **MR. POLO'S** right to access the court knowing that **MR. POLO** could not afford to have a lawyer, to force **MR. POLO** into filing a motion to recuse to protect his legal rights to then have an excuse to put **MR. POLO** in jail to take the Custody of the children, and (4) entrapping **MR. POLO** to commit forgery, by requesting the Court reporter to ask Mr. Polo to sign a court report as the court report to put **MR. POLO** in jail and thereby, deprive **MR. POLO** of his Custody's right.

251.     The DEFENDANTS, did the following overt act in pursuance of the conspiracy:

### A. BERNSTEIN

252.     SCOTT BERNSTEIN, intentionally and maliciously, built a case against MR. POLO with the intent of later getting STU involved and get MR. POLO expelled from law school as follows:

253.     In furtherance of that scheme, to build the record, on February 2, 2016, JUDGE BERNSTEIN, intentionally and maliciously, declared MR. POLO in contempt over an order that did not contain a clear and definite statement indicating the command Mr. Polo had to follow, intentionally ignoring the rule of law in Florida which does not support such an act.

254.     On August 01, 2017, behind Mr. Polo's back, Judge BERNSTEIN filed an order of referral to the co-parenting coordinator alluding to a history of allegations of domestic violence

when that was not a pending issue in front of the court, and as a matter of fact, there was no pending issue to be resolved by the co-parenting coordinator.

255.     The referral was made with the intent of getting a recommendation from the pre-arranged Coparenting coordinator to change custody without due process of law. However, Judge BERNSTEIN and MR. SEGARRA refrained from continuing with the plan once Mr. Polo put it in writing.

256.     After Judge Bernstein found out that Mr. Polo was going to STU at the hearing held on August 1, 2017, JUDGE BERNSTEIN, Intentionally and maliciously, went to STU to meet with Dean Lawson and other Members of the STU management at STU School of Law on October 23, 2017 with the intent of getting them to participate in his conspiracy.

257.     On October 24, 2017, SCOTT BERNSTEIN, intentionally and maliciously, restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed.

258.     SCOTT BERNSTEIN, intentionally and maliciously, behind MR. POLO'S back ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

259.     On October 2, 2018, SCOTT BERNSTEIN, intentionally and maliciously, without notice and opportunity to be heard, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed MR. POLO'S right to access the court/filing by preventing Mr. Polo from filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

260.     MR. POLO filed a motion to recuse SCOTT BERNSTEIN. Before the hearing on MR. POLO'S motion, held on January 29, 2019, JUDGE BERNSTEIN, intentionally and maliciously, had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

261.     SCOTT BERNSTEIN'S ORDER was, intentionally and maliciously, drafted in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. Moreover, the order was falsely accusing MR.

POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney, which he had done before); (2) of not having good faith basics to say JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "incessantly" calling his Judicial Assistant. Moreover, JUDGE BERNSTEIN stated in pertinent part:

> MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

262.     JUDGE BERNSTEIN was right, he did not need to contact the Florida Bar, because he had already arranged with Dean Lawson to use the Order of Recusal as the basis for expelling Mr. Polo. Therefore, two days later on **January 31, 2019**, JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas School of Law, Tamara Lawson, with whom JUDGE BERNSTEIN had met on ***October 23, 2017***, the day before he named MR. POLO vexatious litigant.

263.     Judge BERNSTEIN did not have any other choice than to send the letter immediately after the hearing because Mr. Polo was about 4 weeks away from graduation, and STU needed time to put together the sham honor proceeding before Mr. Polo had graduated.

264.     JUDGE BERNSTEIN'S, intentionally and maliciously, drafted the letter on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature, with the intent of using the power of his office. Additionally, the letter contained, attached to it, the illegal Order of Recusal.

265.     BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor Section 2.01 (F) titled "General Unfitness" by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

### B. ST. THOMAS UNIVERSITY, INC.

266.     STU, intentionally and maliciously, allowed Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

267.     STU, intentionally and maliciously, allowed MR. BERNSTEIN to interfere with the agreement knowing that MR. BERSTEIN'S allegations were all false.

268.     STU, intentionally and maliciously, decision to terminate MR. POLO was not based on clear and convincing evidence as STU'S code of conduct requires.

269.     STU, intentionally and maliciously, disregarded its own rules with the intent of finding any pretext to breach the contract it had with MR. POLO.

270.     STU's honor Code § 3.04(E) provides for a single hearing against a student subject to the honor code proceeding. However, when STU, intentionally and maliciously, terminated MR. POLO without finding evidence supporting the expelling of MR. POLO, they went for a second bite of the apple.

271.     As of March 23, 2019, STU, intentionally and maliciously, had already decided to remove MR. POLO from the school even before the second proceeding was over. STU deactivated MR. POLO'S Id card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

272.     DEAN MOORE, intentionally and maliciously, behind MR. POLO'S back and full of misleading conclusory statements created a memorandum that she never provided to MR. Polo.

273.     DEAN MOORE, intentionally and maliciously, sent the memorandum the same day of the hearing with the intent of not giving the panel time to question her conclusions.

274.     Moreover, DEAN MOORE, intentionally and maliciously, realizes that MR. SEGARRA was harassing MR. POLO with the unnecessary process of service; however, she did not comment about the unethical ramifications of this, but downplayed it.

275.     STU, intentionally and maliciously, produced a second round of evidence that was just a plain and simple pretext to get rid of MR. POLO. STU had a process to amend their application which was offered to ALL students in preparation for applying for the Florida Bar. Never did STU expelled students for failing to report the things they were complaining about.

276.     STU, intentionally and maliciously, knew that SCOTT BERNSTEIN'S behavior was unethical and even probably criminal. However, they did not care, they allowed the judge to use the power of his office to influence the panel.

277.     With the intent of pretending that Mr. Polo was afforded Due process. Dean Lawson allowed Mr. Polo to appeal, which was nothing more than a meeting with her and Dean Moore.

278.     During the meeting, MR. POLO explained again that he may have forgotten to disclose information in his application because of his diagnosed cognitive disability.

279.     However, Ms. Lawson use the appeal to humiliated Mr. Polo in front of his wife who was seated right next to the door where the appeal took place and was able to hear the hearing, by saying "I, don't think your problem is cognitive, but think your problem is one of honesty."

280.     With the intent of making the appeal·decision official and making it seems that Mr. Polo had a real opportunity to be heard, on May 17, 2019, Lawson sent Mr. Polo an official letter making official and final the expulsion and saying that she had reconsidered all the evidence and the allegations in the case, which was not true.

## C. THE FLORIDA THIRD DCA JUDGES

281.     The Florida Third District Court of Appeals, intentionally and maliciously, repeatedly (1) refuses to apply the correct principle of law to the Admitted Facts in MR. POLO'S case (2) created facts never argued by the parties, (3) fails to address Jurisdictional argument, (4) and filed orders that are not Appealable to the Florida Supreme Court, as shown in the following sequential narrative of the history on the Appellate Court.

**I.    IN APPELLATE CASE NO. 3D2021-2179 Fla. R. App. P. 9.130 (c)(iii)(a) Orders Determining the Right to Immediate Monetary Relief**

282.     On April 6, 2022, the Judges LOGUE (adjunct professor of law at the DEFENDANT St. Thomas University, Inc., where Mr. Polo was studying), HENDON, and BOKOR, issued an order stating in the footnote, with the intent of building a case against Mr. Polo to preventing Mr. Polo from further filing in the 3d DCA that:

> "In July 2015, the trial court rendered an amended final judgment of paternity and holding that the 2013 mediated settlement agreement was to remain in full force and effect, which was affirmed on appeal.
>
> Citing **Polo v. Hernandez**, 224 So. 3d 229 (Fla. 3d DCA 2017)"

283.     The previous statement was factually wrong and irrelevant to the issue in front of the court, in **Polo v. Hernandez**, 224 So. 3d 229 (Fla. 3d DCA 2017) the only thing that was

appealed was "a final order entered after a final judgment, finding the father in Contempt and granting Attorney's fees to the appellee" but never the "Amended Final Judgment of Paternity".

284.　　　Moreover, STU had raised the same statement in the Honor Proceeding and the Opposing Counsel Manuel Segarra ("MR. SEGARRA") had also repeatedly raised the same false allegation throughout the length of the litigation.

285.　　　Additionally, the April 6, 2022 order conclusively, irrelevantly, and without evidence on the record stated:

> because of the Father's excessive and frivolous post-judgment filings and history of vexatious conduct, the trial court precluded him from filing any additional pro se pleadings, motions, or letters without the assistance of a member of the Florida Bar.

286.　　　Id. The court knew that such a statement was not supported by competent evidence on the record because there has never been an order issue to Show Cause Why Mr. Polo's Right to File Should not be Removed pursuant to Florida Law.

## II.　IN APPELLATE CASE NO. 3D2022-1475, JUDGES FERNANDEZ, GORDO and LOBREE

287.　　　On August 9, 2022, Mr. Polo filed an appeal pursuant to Fla. R. App. P. 9.130 (a)(3)(B) for orders that "grant, continue, modify, deny, or dissolve injunctions, or refuse to modify or dissolve injunctions," and under Fla. R. App. P. 030(b)(3) invoking the Authority of the Court to, alternatively, enter a writ of Prohibition to prevent the lower court to act without Jurisdiction.

288.　　　Even though the Fla. Const. art. V, § 2(a), and Fla. R. App. P. 9.040(c) creates a right for Mr. Polo to have his case treated as if the right remedy had been thought, and a duty on the court of appeal to treat a cause that was raised for the improper remedy as if the proper remedy had been sought, the 3d DCA did not entertain Mr. Polo's request to treat the appeal as a writ of Prohibition.　Creating thereby the need for Mr. Polo to file a subsequent writ of prohibition which was also ignored.

289.　　　The Court acted as if Mr. Polo had never asked the Court to issue a writ of Prohibition preventing the lower court from acting in the absence of jurisdiction.

290.　　　Florida Courts have held that "restriction imposed on the litigant with respect to further filing in the court's docket" is appealable under Fla. R. App. P. 9.130(a)(3)(B).

291.    However, on September 14, 2022, Judges FERNANDEZ, GORDO, and LOBREE, dismissed an interlocutory appeal as an appeal "taken from non-final, non-appealable orders" without addressing the Jurisdictional issues or the failure of Judge Multack to reduce his oral order to writing.

292.    The order was entered without an opinion, which prevented further appeal, and it failed to address the jurisdictional arguments Mr. Polo had raised.

### III.    APPELLATE CASE NO. 3D2022-2071 (A PETITION FOR WRIT OF PROHIBITION), Judges LINDSEY, HENDON, and LOBREE

293.    On December 01, 2022, Mr. Polo filed a Petition for Writ of Prohibition, also based on the facts that (1) the lower court entered a final judgment in the case, (2) without retaining jurisdiction to adjudicate attorney's fees, and (3) the time to file for rehearing had passed; therefore, Mr. Polo argued, the court had lost jurisdiction to adjudicate motions for attorney's fees that were never filed before the court had lost jurisdiction over the case. See [APPX: 24].

294.    However, on March 01, 2023, Judges LINDSEY, HENDON, and LOBREE rendered an order denying a writ of prohibition filed by Mr. Polo on December 01, 2022. The court's decision totally ignored the facts of the case and applied the incorrect principle of law to the case.

295.    The opinion was citing wrong distinguishable nonapplicable case law, which did not apply to MR. POLO'S case. The court dismissed the case citing **Rorrer v. Orban**, 215 So. 3d 148 (Fla. 3d DCA 2017); **Juhl v. Juhl**, 328 So. 3d 1031 (Fla. 2d DCA 2021); § 61.16, Fla. Stat. (2022) which are not (emphasis added) analogous or applicable to MR. POLO'S case, and not elaborating on their reasoning for doing so.

296.    **Rorrer**, 215 So. 3d 148 was irrelevant to MR. POLO'S case because the parties in **Rorrer** "each filed additional fee motions shortly before the final hearing" Id at 155., in other words, before the court had lost jurisdiction over the case and even before the final hearing.

297.    In Polo's case, the Mother moved for attorney's fees twenty-four (24) days after the final judgment was rendered. Way beyond the fifteen (15) days Fla. R. Civ. P. 12.530 statutory limit to ask for rehearing.

298. **Juhl**, 328 So. 3d 1031 was also inapplicable to the undisputed facts of MR. POLO'S case at bar because, contrary to Mr. Polo's case, the court in **JUHL** did retain jurisdiction to adjudicate attorney's fees and says in pertinent part:

> "The trial court entered a final judgment, then issued an amended judgment four days later to correct an error regarding the restoration of Garza's surname. Both judgments included language reserving jurisdiction to consider fee claims and a number of other issues."

299. Yet, MR. POLO filed a motion for reconsideration and to recall mandate pointing out that the two cases were totally different and that the facts of MR. POLO case were more like these in their own case from the 3d DCA **Frumkes**, 328 So. 2d 34, in which the 3d DCA held that:

> The reservation clause in the final judgment involved in this appeal, did not have the effect of reserving or retaining the judge's jurisdiction to award attorneys fees and grant to it jurisdiction that otherwise is lost after the time for filing a petition for rehearing had passed.

300. Moreover, a month before the 3d DCA rendered the order in Mr. Polo's Writ of Prohibition, one of the same Judges in this case, the honorable Judge LINDSEY, was among the Judges deciding a case with extremely similar facts to MR. POLO'S case, **Padron v. Padron**, 356 So. 3d 306 (Fla. 3d DCA 2023) (judges EMAS, LINDSEY and GORDO) and they held that:

> "after entry of a final judgment and expiration of time to file a motion for rehearing or for a new trial, the trial court loses jurisdiction of the case ... unless jurisdiction was reserved to address that matter or the issue is allowed to be considered post-judgment by statute or under a provision of the Florida Rules of Civil Procedure."

301. However, the Judges LINDSEY, HENDON, and LOBREE denied the motion for reconsideration, knowing that they were citing two wrong inapplicable cases and did not elaborate on their opinion, which deprived the Fla. Sup. Ct. of Jurisdiction to hear an appeal from that order.

302. Moreover, the motion to stay to prevent the lower court from acting without jurisdiction, filed on January 5, 2023, was denied.

### IV. APPELLATE CASE NO. 3D2022-2212 (A PETITION FOR WRIT OF MANDAMUS), FERNANDEZ, EMAS, and HENDON.

303. On December 22, 2022, MR. POLO filed a petition for writ of Mandamus asking the 3d DCA to mandate Judge Multack to perform his ministerial duty of reducing his oral ruling to writing and the Clerk of Courts to perform his ministerial duty to accept filings from Mr. Polo

pursuant to Fla. Sup. Ct. case **Fischer v. Knuck**, 497 SO. 2D 240 243 (FLA 1986) where the Fla. Sup. Ct. held that:

> When a judge has heard the testimony and arguments and rendered an oral ruling in a proceeding, the judge retains the authority to perform the ministerial act of reducing that ruling to writing. [Citation Omitted]. However, any substantive change in the trial judge's ruling would not be a ministerial act (emphasis added).

304.     On July 5, 2022, Mr. Polo objected to continuing to be without access to file ANYTHING in the docket when the order preventing MR. POLO from filing was obtained without notice and opportunity to be heard and without supporting evidence as to any vexatious acting to what Judge Multack ruled that he was "going to direct the Clerk to accept pleadings on [Mr. Polo's] behalf, any motions on your behalf,"

305.     However, on July 11, 2022, Judge Multack rendered an order totally different order than what he had orally ruled in the hearing held on July 5, 2022.

306.     The new order imposed an injunction limiting Mr. Polo's filing as follows:

> Mr. Polo is granted access to file limited pleadings in relation to the Petitioner's Mother's Motion for Attorney's Fees and Costs to be Paid by Respondent Father. Any pleading must be limited to the one pending motion before the Court.

307.     On April 3, 2023, Mr. Polo filed with the 3d DCA a NOTICE OF FILING A TIMELY MOTION FOR REHEARING AND TO VACATE JUDGMENT WITH THE LOWER COURT pursuant to the new Fla. Fam. L. R. P. 12.530, to make the 3d DCA aware that the lower court was still preventing Mr. Polo from filing a necessary motion to preserve Mr. Polo's right to challenge the sufficiency of findings in the lower court's final judgment.

308.     On April 06, 2023, Judges FERNANDEZ, EMAS, and HENDON dismissed a Writ of Mandamus as moot because a judgment was rendered, while the three fundamental elements of a writ of mandamus were still in existence and in controversy.

309.     On April 10, 2023, Mr. Polo filed a Motion for Reinstatement Rehearing and/or Clarification which was denied two days later.

310.     Under the amended rule Fla. Fam. R. App. 12.530, MR. POLO was required to challenge the final judgment that is required to include specific findings, which MR. POLO knew that the lower court was going to intentionally fail to include specific findings of need and ability to pay attorney's fees.

311.    The 3d DCA ignored that Mr. Polo had a clear constitutional right to access the court, and to file legal documents in the lower court, pursuant to Article I, Section 21 of the Fla. Cons., and the U.S. Constitution First Amendment Petition Clause, and the court ignored that Mr. Polo's right was being violated without due process of law (notice and opportunity to be heard) when judge Multack failed to reduce his oral ruling to writing after the hearing.

312.    Judge Multack had a clear duty to reduce his oral ruling to writing permitting Mr. Polo to file what Mr. Polo needed to preserve his rights to an appeal including but not limited to motions, pleadings, affidavits, notices, evidence, etc., etc.

313.    According to Florida Law, the Florida Article I Section 21 and the U.S. Constitution First Amendment Petition Clause, the Clerk of Courts had a clear ministerial duty to perform and receive and file notices of appeal, and the Clerk is obliged to accept motions presented for filing in pending cases.

314.    And lastly, MR. POLO did not have any other adequate legal remedy to prevent the wrongful deprivation of access to the courts, because of being indigent and not having access to the court to file a motion under Fla. Fam. L. R. P. 12.540 or Rule 12.530.

## V.    APPELLATE CASE NO. 3D2023-0249 (MOT. FOR REHEARING/ REHEARING IN BANC) , SCALES, HENDON, and MILLER.

315.    Pending in the 3d DCA is Mr. Polo's "MOTION FOR REHEARING EN BANC, REQUESTS REHEARING, CLARIFICATION, AND/OR THE ISSUANCE OF A NEW WRITTEN OPINION," which was filed on September 14, 2023.

316.    On August 30, 2023, the 3d DCA rendered an order on MR. POLO'S appeal in which MR. POLO, once more was claiming that the lower court did not have jurisdiction to entertain motions for attorney's fees. However, the 3d DCA, once more ignored the fact that the trial court did not have jurisdiction to entertain motions for attorney's fees filed after the trial court issued a final judgment on February 7, 2017, without reserving jurisdiction to adjudicate attorney's fees, and the time for rehearing had lapsed.

317.    The August 30, 2023 order did not address the merits arguments and failed to apply to admitted facts a correct principle of law. Moreover, the order ignored the actual facts of the case and raised a new erroneous affirmative defense never raised by proper pleadings/brief, and facts never in dispute in the appeal. The court stated in pertinent part:

Notwithstanding the fact that the reservation contained in the operative final judgment was sufficient to vest the trial court with jurisdiction to award post-judgment fees, it is axiomatic that fees in family law cases may be awarded "from time to time" in accord with the considerations set forth in section 61.16(1)

318. The reservation on the "Operative Final Judgment" is a reservation to enforce the terms of the "Operative Final Judgment" and contains a waiver of rights to attorney's fees stating that each party is responsible for their own attorney's fees.

319. Moreover, the case in front of the court was a new proceeding for modification filed by Mr. Polo on February 7, 2017, and not a proceeding to enforce the Operative Final Judgment.

320. The 3d DCA continued to state irrelevant facts when it says that:

"As to the second point, competent, substantial evidence in the form of billing records and testimony bearing on the reasonable hours expended, hourly rate, and available resources support the fee award."

321. Mr. Polo's argument was that the "Competent Substantial Evidence" needed is evidence of facts supporting a finding of <u>Ms. Hernandez's need for attorney's fees, and Mr. Polo's ability to pay attorney's fees,</u> which do not exist on the record, which is what is required because in Florida "it is well established in dissolution cases that attorneys' fees and costs are to be borne by the party who has the superior or greater financial ability to pay".

322. Additionally, the order makes another error of fact not contained in the record by saying:

Hence, the thirty-day limitation contained within Florida Rule of Civil Procedure 1.525 is inapplicable, and there was no jurisdictional impediment to awarding fees. See **Juhl v. Juhl**, 328 So. 3d 1031, 1032–33 (Fla. 2d DCA 2021).

323. MR. POLO never raised any argument about the court not having jurisdiction based on Fla. R. Civ. P. 1.525. The law is clear regarding Rule 1.525 which does not apply to family cases.

324. Mr. Polo's claim for lack of jurisdiction arises out of well stablished case law in the 3d DCA as **Padron v. Padron**, 356 So. 3d 306 (Fla. 3d DCA 2023), **Richards v. Bennett**, 642 So. 2d 668 (Fla. 3d DCA 1994), **Berlin v. Berlin**, 395 So.2d 1260 (Fla. 3d DCA 1981); **Church v. Church**, 338 So.2d 544 (Fla. 3d DCA 1976); **Frumkes v. Frumkes**, 328 So.2d 34 (Fla. 3d DCA 1976).

325.     Moreover, the 3d DCA continued citing to **Juhl**, 328 So. 3d 1031, 1032–33 (Fla. 2d DCA 2021), when Juhl is irrelevant to Mr. Polo's case, in which the trial court failed to reserve jurisdiction. In contrast to Mr. Polo's case, in **JUHL**, the court reserved jurisdiction to adjudicate attorney's fees.

### VI.   APPELLATE CASE NO. 3D2023-0681 (APPEAL OF FINAL JUDGMENT PENDING IN THE LOWER COURT)

326.     An appeal of the final judgment rendered on March 13, 2023, the "FINAL JUDGMENT ON PETITIONER / MOTHER'S MOTION FOR ATTORNEY'S FEES AND COSTS TO BE PAID BY RESPONDENT / FATHER" is pending in the 3D DCA. See the Amended Initial Brief of Mr. Polo.

327.     There are 6 issues pending resolution in the lower court which are based on the failure of the trial court to apply to admitted facts a correct principle of law and failure to follow the requirements of the law of the State of Florida, the Florida Constitution, and of the U.S. Constitution.

> ISSUE NO. 1: Whether All The Orders Rendered after September 14, 2018 Are Void for Lack of Procedural, and Subject Matter Jurisdiction.
>
> ISSUE NO. 2: Whether Res Judicata precludes the Mother and her attorney from raising issues of Attorney's fees.
>
> ISSUE NO. 3: Whether the Successor Judge, Judge Multack, could have relied on evidence heard by Judge Del Rey, in the previous proceeding, without a retrial or the parties' stipulation.
>
> ISSUE NO. 4: Whether the court failed to observe the requirements of the law under the inherent authority of the Court (Moakley).
>
> ISSUE NO. 5: Whether the court failed to observe the requirement of the law under STOCKMAN and Fla. Stat. § 61.16.
>
> ISSUE NO. 6: Whether the lower court failed to follow the requirements of the law under Fla. Stat. § 742.045 / Fla. Stat. § 61.16, by failing to find that MR. POLO had a superior or greater financial ability to pay.

328.     ISSUE NO. 7: Whether Mr. Polo and his children were deprived of equal protection of the law and access to the court, without due process of law.

329.     As shown herein, there is an ongoing conspiracy to deprive Mr. Polo of access to the Court without due process of law. Mr. Polo cannot reasonably expect to have a remedy at law when the 3d DCA is the courts of last resort (the court to which MR. POLO can appeal as a right) and the Florida Third District Court of Appeals, intentionally and maliciously, repeatedly (1)

refuses to apply the correct principle of law to the Admitted Facts in MR. POLO'S case (2) created facts never argued by the parties, (3) fails to address Jurisdictional argument, (4) and filed orders that are not Appealable to the Florida Supreme Court, as shown in the following sequential narrative of the history on the Appellate Court.

330.     As a direct, natural, and proximate result of DEFENDANTS' SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., and its agents' actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

331.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. as follows:

332.     Declaring that SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., conspired to (1) Deprive the Plaintiffs of their Constitutional Rights without due process of law, (2) bringing about severe emotional distress, (3) retaliating against MR. POLO for exposing the corruption in the family court system during his 2018 political campaign speech and in numerous court filings while Mr. Polo was asking the government for redress of his grievances, and (4) Protecting JUDGE BERNSTEIN'S co-conspirators from Civil and possibly Criminal Liability, knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

G) Enjoining SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

H) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988.

333. Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

### COUNT 4. ARBITRARY, CAPRICIOUS, AND MALICIOUS BREACH OF IMPLIED IN-LAW CONTRACT

### A. AGAINST ST. THOMAS UNIVERSITY, INC.

334. Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC., through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE, (all together referred to as the "STU EMPLOYEES", "STU AGENTS" or the "AGENTS") did the following:

335. Two days after the January 29, 2019 hearing, On January 31, 2019, SCOTT BERNSTEIN was not the judge in the Family Court case anymore, and he sent a letter to DEAN LAWSON, which contained his motion of recusal, which was full of false allegations and manipulated facts.

336. As of January 31, 2019, MR. POLO had an implied contract in law with STU, in which MR. POLO was to pay for STU's legal education program, and STU was to confer MR. POLO a JD, and a Tax Law Certificate. When MR. POLO was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education using Federal Student Loans, he was about to complete, not only his JD in Law but also a Tax Law Certificate.

337. At that time, MR. POLO and STU were engaged in the performance of their agreement and MR. POLO was just weeks away from graduation when SCOTT BERNSTEIN interfered with the contract and, using the power of his office by sending a letter in his Judicial

Capacity on the State Court's letterhead and with BERNSTEIN'S official State Judge's signature block, BERNSTEIN influenced STU to breach the contract.

338.     Before MR. BERNSTEIN'S interference, MR. POLO was not under investigation by STU, and he was never reprimanded for insubordination or for violating the school's code of ethics, rules, and regulations.

339.     STU disregarded the weight of the evidence by ignoring that by the end of the deliberation on February 26, 2019, the evidence in front of the committee showed that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal and showed that Judge Bernstein was personally coming after Mr. Polo.

340.     STU substantially disregarded its own rules by allowing Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

341.     STU substantially disregarded its own rules by engaging in a fishing expedition after the Honor Council proceeding was over. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> (1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote.

342.     By the end of the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal. They did not have clear and convincing evidence to support their breach of contract. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to continue the honor council proceeding in a second hearing.

343.     As of March 23, 2019, STU had already decided to remove MR. POLO from the school even before the proceeding was over. STU deactivated MR. POLO'S ID card to access the campus removed MR. POLO from the security access list at the gate, and removed MR. POLO'S access to STU's network.

344.     On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council hearing which was to take place on April 4, 2018.

345.     This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4) Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

346.     On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

347.     Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

348.     STU's management knew that the new allegation could be a result of MR. POLO'S involuntary lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA").

349.     THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included involuntary neurocognitive problems such as memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms that may have involuntarily produced those results they were complaining about.

350.     STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

351.     No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

352.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

353.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

354.     Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

355.     In preparation to take MR. POLO to the first honor council hearing, the DEAN MORE prepared a document containing, among other things, internal emails among the members of the honor council and STU's management, the letter, and the order of recusal the SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

356.     Moreover, the document contained the malicious plan of DEAN MOORE, not to blame MR. POLO for his own acts, but to blame MR. POLO for the acts of his attorney.

357.     During the appeal process, Dean Lawson used the proceeding to humiliate MR. POLO and not to weigh the evidence presented by MR. POLO, or the application of their rules to MR. POLO'S case, and with the intent of saying that Mr. Polo received due process, but not with the intent of affording Mr. Polo a real opportunity to be heard.

358.     For all the facts contained in this court, STU's decision to expel MR. POLO from law school was pretextual, premeditated before any hearing had occurred, and was not based on substantial evidence but on the influence exerted by Judge Bernstein using the power of his office. STU proceeding was initiated with the intent of saying that MR. POLO was afforded due process, and so it was the appeal process where STU, once more, disregarded the weight of evidence and its own rules. Moreover, STU disregarded the weight of the evidence MR. POLO presented to them, and they substantially disregarded their own rules. Therefore, ST. THOMAS UNIVERSITY, INC. breached the agreement they had with MR. POLO by expelling MR. POLO in a capricious, arbitrary, and malicious manner.

359.     As a direct, natural, and proximate result of DEFENDANTS' ST. THOMAS UNIVERSITY, INC., SCOTT BERNSTEIN, DEAN LAWSON, MR. SILVER, and DEAN MOORE, actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

360.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC., as follows:

A) Declaring that DEFENDANT ST. THOMAS UNIVERSITY, INC., arbitrarily and capriciously terminated **MR. POLO'S** career in law, knowingly, intentionally, and in

reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining DEFENDANT ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and Florida Common Law.

D) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

**COUNT 5.     TORTIOUS INTERFERENCE WITH CONTRACT**

**A. AGAINST SCOTT BERNSTEIN**

361.     Plaintiffs re-alleges paragraphs 22 through 140 and further state that SCOTT BERNSTEIN (the "DEFENDANT" throughout this Count), did the following:

362.     JUDGE BERNSTEIN'S acts complaint off herein is the act of interfering with litigants' contractual rights with the intent of depriving the Plaintiffs of their constitutionally protected rights without due process of law, which is not a judicial act. Therefore, JUDGE BERNSTEIN does not enjoy absolute immunity.

363.     Moreover, after JUDGE BERNSTEIN recused himself from the family case on January 29, 2019, he lost subject matter jurisdiction and personal jurisdiction over the Plaintiff(s) and the family case. Therefore, JUDGE BERNSTEIN was acting in the clear absence of all Jurisdiction. The actions of JUDGE BERNSTEIN complained of in this count are those that he took in the clear absence of all jurisdiction after January 29, 2019, when he ceased to have any jurisdiction over the family court case after he recused himself from the family court case.

364.     **MR. POLO** was a student at STU, and STU had implied contractual legal obligations (the "Contract") to the Plaintiff, **MR. POLO**, to grant Plaintiff a Degree upon completion of Plaintiff's course of study and any other requirement contained in the 2015 student handbook.

365.     In exchange for obtaining the Degree, **MR. POLO** had to pay STU tuition, for which STU provided access to the campus and enrollment in the school. **MR. POLO** was in good standing at STU before the acts complained of herein.

366.     The SCOTT BERNSTEIN knew that **MR. POLO** had a contractual relation with STU and a legal right to obtain, upon completion of all required courses of study, a Juris Doctor Degree and a Tax Law Certificate from STU where **MR. POLO** was studying Law.

367.     SCOTT BERNSTEIN, in clear absence of all jurisdiction, intentionally, maliciously, willfully, and wantonly, prepared the conditions necessary for STU to pretextually breach STU's contract with **MR. POLO**. In furtherance of his malicious intent, SCOTT BERNSTEIN on October 23, 2017, met with STU's management to influence and plan STU's breach of contract.

368.     545.     At the time SCOTT BERNSTEIN sent the letter to the school, STU was not investigating **MR. POLO** for anything, or were there pending honor procedures against **MR. POLO**. The investigation and honor council was triggered, according to STU's management, by the allegations contained in SCOTT BERNSTEIN'S Order of Recusal, which SCOTT BERNSTEIN provided to STU as an attachment to the letter he sent two days after filing the order of recusal.

369.     Therefore, but for the interference of SCOTT BERNSTEIN, STU would never have breached the agreement they had with **MR. POLO** and would have never have bases to initiate a sham Honor Council Proceeding 4 weeks before Mr. Polo's graduation. SCOTT BERNSTEIN'S intentional interference disrupted the contractual relationship that **MR. POLO** had with STU.

370.     **WHEREFORE**, Plaintiff(s) demand judgment for damages against DEFENDANT, SCOTT BERNSTEIN, for compensatory damages, punitive damages, special damages, exemplary damages costs of this action, and attorney's fees, pursuant to 42 U.S.C. §1983 and §1988.

371.     Moreover, the Plaintiffs demand Declaring that SCOTT BERNSTEIN tortiously interfered with **MR. POLO'S** contract with STU.

372.     Enjoining SCOTT BERNSTEIN from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct;

373.     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against SCOTT BERNSTEIN, pursuant to 42 U.S.C. Sections 1983 and 1988; and

374.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

### COUNT 6.          NEGLIGENT HIRING AND RETENTION UNDER 42 U.S.C. SECTION 1983 AND FLORIDA LAW

### A.  AGAINST ST. THOMAS UNIVERSITY, INC.

375.     Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC., (the "DEFENDANT" throughout this Count), did the following:

376.     The DEFENDANT in all their actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

377.     Judge BERNSTEIN was acting within the scope of his official duties when he used the power of his office by sending a letter to ST. THOMAS UNIVERSITY on State Court's letterhead, and with BERNSTEIN'S judicial signature block identifying himself as a State Judge with the intent of using the power of his office to get STU to act as his agent to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, and with the intent of intimidating Mr. Polo for his exercise of first Amendment Right to ask the government for redress of grievances and right to engage in Political Speech. Therefore, JUDGE BERNSTEIN

was a state actor, and the STU agency can be fairly characterized as state action. Therefore, STU was acting under color of law by conspiring[5] with and acting on behalf of JUDGE BERNSTEIN.

378.     Defendants, ST. THOMAS UNIVERSITY, INC., and negligently knew or should have known that the DEAN LAWSON, **DEAN MOORE**, and MR. SILVER ("THE STU EMPLOYEES") were dangerous and incompetent and liable to do harm to the citizens or residents of Miami-Dade County, Florida, including but not limited to **MR. POLO** who was a student at ST. THOMAS UNIVERSITY, INC. and his children who would had benefit from **MR. POLO** obtaining a degree in law.

379.     Defendants, ST. THOMAS UNIVERSITY, INC., failed to conduct a reasonable investigation regarding the competence of their employees DEAN LAWSON, **DEAN MOORE**, and MR. SILVER to be retained as its management staff/employees, and to be assigned with the duty of handling the honor council against **MR. POLO**.

380.     Defendants, ST. THOMAS UNIVERSITY, INC., during the course of employment of THE STU EMPLOYEES became aware or should have become aware of problems with THE STU EMPLOYEES that indicated their unfitness and/or predisposition to committing wrong, but failed to take further action such as investigating, discharging or reassignment, or reporting them to the Florida Bar.

381.     Defendants, ST. THOMAS UNIVERSITY, INC, owed **MR. POLO**, his children, as well as all residents of Miami-Dade County, a duty of care to retain only competent managers, and professors.

382.     Defendant, ST. THOMAS UNIVERSITY, INC., breached their duty of care to the Plaintiffs by hiring and retaining incompetent employees, as the Defendants, DEAN LAWSON, **DEAN MOORE**, and MR. SILVER.

383.     As a direct, natural, and proximate result of Defendant's actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s)

---

[5] **See** conspiracy section hereunder.

suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

384.     **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT ST. THOMAS UNIVERSITY, INC. as follows:

A) Declaring that the DEFENDANT ST. THOMAS UNIVERSITY, had a duty of care not to injure the Plaintiffs, they breached their duty of care by negligently hiring and/or retained abovementioned employees, and as a result the Plaintiffs' property interest right in the continued enrollment of **MR. POLO** at STU was injured.

B)     Enjoining DEFENDANT ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)     Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988, and award of attorney's fees.

D)     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

**COUNT 7.**        **NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983 AND FLORIDA LAW**

385.      Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC. through its agents, DEAN LAWSON, MR. SILVER, and DEAN MOORE (the "STU AGENTS" or the "AGENTS" throughout this Count) did the following:

386.      The DEFENDANT in all his/her/its actions described in this complaint deprived the Plaintiff(s) of his/their Rights under Color of State Law directly in violation of 42 U.S.C. Section 1983.

387.      Judge BERNSTEIN was acting within the scope of his official duties when he used the power of his office by sending a letter to ST. THOMAS UNIVERSITY on State Court's letterhead, and with BERNSTEIN'S judicial signature block identifying himself as a State Judge with the intent of using the power of his office to get STU to act as his agent to deprive the Plaintiffs of their property interest in the continued enrollment of **MR. POLO** at STU, and the liberty interest in their good name, reputation, honor, and integrity without due process of law, and with the intent of intimidating Mr. Polo for his exercise of first Amendment Right to ask the government for redress of grievances and right to engage in Political Speech. Therefore, JUDGE BERNSTEIN was a state actor, and the STU agency can be fairly characterized as state action. Therefore, STU was acting under color of law by conspiring[6] with and acting on behalf of JUDGE BERNSTEIN.

388.      Defendants, DEFENDANT ST. THOMAS UNIVERSITY, INC., individually, owed the public, including Plaintiffs, a duty to properly train and supervise its personnel regarding the improper use of authority and the appropriate procedures to follow when dealing with the public in a way that could result in deprivations of any member of the public' constitutional rights without due process of law.

389.      DEFENDANTS, ST. THOMAS UNIVERSITY, INC., breached their duty of care to the Plaintiffs by STU failing to provide each of the STU employees (TAMARA F. LAWSON; JAY S. SILVER; and PATRICIA MOORE,  with proper and special training and/or supervision so that they could be prepared to execute the duties the STU reasonably could expect them to perform during the course and scope of their employment.

---

[6] See conspiracy section hereunder.

390.      As a proximate result of lack of training and supervision, THE STU EMPLOYEES deprived the plaintiffs of their constitutional rights, without due process of law by cutting short the Plaintiffs' property right to **MR. POLO'S** continued enrollment at STU without affording **MR. POLO** a meaningful opportunity to be heard by an impartial tribunal. STU and by depriving the Plaintiffs of liberty interest in their good name, reputation, honor and integrity, they humiliated, embarrassed and caused severe emotional distress; physical injuries; and permanent scarring to an unquestionably innocent person for this person standing tall against corruption in the Judicial system, and for his political speech.

391.      As a direct, natural, and proximate result of DEFENDANT ST. THOMAS UNIVERSITY, INC. actions towards the Plaintiffs. The Plaintiff(s) have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10)  The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

392.      **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against DEFENDANT ST. THOMAS UNIVERSITY, INC., as follows:

A) Declaring that DEFENDANT ST. THOMAS UNIVERSITY, INC., by negligently hiring, violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution (under the First Amendment), without due process of law, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B)      Enjoining DEFENDANT ST. THOMAS UNIVERSITY, INC. from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C)      Awarding judgment for special damages, damages for past, prese,, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against DEFENDANT ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988.

D)      Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

## COUNT 8.          GROSS NEGLIGENCE UNDER FLORIDA LAW

393.      Plaintiffs re-alleges paragraphs 22 through 140 and further state that ST. THOMAS UNIVERSITY, INC.; (the "DEFENDANT" throughout this Count), did the following:

394.      DEFENDANT ST. THOMAS UNIVERSITY, INC., employed TAMARA F. LAWSON;  JAY S. SILVER ; and PATRICIA MOORE, and was engaged in the exercise of providing legal education to member of our community.

395.      The conduct of the DEFENDANT ST. THOMAS UNIVERSITY, INC., amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of their respective employees, and the that were the proximate cause of Polo's and his children's damages.

396.      DEAN LAWSON, **DEAN MOORE, and** MR. SILVER were working for ST. THOMAS UNIVERSITY, INC., at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to **MR. POLO**, his Children and his family.

397.      The conduct of the TAMARA F. LAWSON;  JAY S. SILVER ; PATRICIA MOORE, and ST. THOMAS UNIVERSITY, INC.;  individually, amounted to gross negligence through its wanton and reckless disregard the Plaintiffs' right under the law, and the that their individual acts were the proximate cause of Polo's and his children's damages.

398.     Notwithstanding these duties, DEFENDANT ST. THOMAS UNIVERSITY; INC.; breached these duties with deliberate indifference and gross negligence and without regard to **MR. POLO'S** and his children's rights and welfare through creating an environment in which the unconstitutional depravations conducted by, TAMARA F. LAWSON;  JAY S. SILVER ; and PATRICIA MOORE, were viewed as acceptable to STU, which caused serious injuries and damages to the plaintiffs.

399.     Notwithstanding abovementioned duties, TAMARA F. LAWSON;   JAY S. SILVER ; and PATRICIA MOORE breached these duties with deliberate indifference and gross negligence and without regard to **MR. POLO'S** and his children's rights and welfare through creating an environment in which their unconstitutional depravations of rights without due process conduct were viewed as acceptable to all them, which caused serious injuries and damages to the plaintiffs.

400.     DEFENDANTS ST. THOMAS UNIVERSITY INC., along with their employees/supervisees; knew or should have known that by breaching these duties they would injure the Plaintiffs.

401.     DEFENDANT ST. THOMAS UNIVERSITY, INC., knew or should have known that by breaching these duties they would injure the Plaintiffs.

402.     THE DEFENDANT had a duty to exercise reasonable care through sufficient training and supervision, and/or just by using reasonable care not to harm **MR. POLO**, his Children and his family. Their breach of those duties was reckless and amounts to gross negligence.

403.     The actions of DEFENDANTS TAMARA F. LAWSON;  JAY S. SILVER ; and PATRICIA MOORE were so egregious that **MR. POLO'S** and his children's damages were heightened and made more severe, thus entitling Plaintiff to exemplary damages.

404.     As a direct, natural, and proximate result of the indifferent and grossly negligent acts and/or omissions committed by DEFENDANT ST. THOMAS UNIVERSITY, INC. and their actions towards the Plaintiffs, the Plaintiffs have suffered damages, including but not limited to:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The

Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

405.   **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against ST. THOMAS UNIVERSITY, INC. as follows:

A) Declaring that ST. THOMAS UNIVERSITY, INC. violated the Plaintiff(s)' constitutional interest in property rights, and the right to be free from political persecution, without due process of law intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

B) Enjoining ST. THOMAS UNIVERSITY, INC. from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

C) Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against (1) ST. THOMAS UNIVERSITY, INC. pursuant to 42 U.S.C. Sections 1983 and 1988.

D) The Plaintiff(s) in this case requests this honorable court to grant treble damages against ALL the Defendants in accordance with law.

E) Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

**COUNT 9.**          **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

406.     Plaintiffs re-alleges paragraphs 22 through 140 and further state that DEFENDANT ST. THOMAS UNIVERSITY, INC., (the "DEFENDANT" throughout this Count), did the following:

407.     The DEFENDANT ST. THOMAS UNIVERSITY, INC., deliberately, maliciously, and recklessly inflicted mental suffering to MR. POLO and his family by maliciously and intentionally engaging outrageous retaliatory scheme with the intent of silencing MR. POLO and prevent him from exercising his 1st Amendment right to engage in a protected speech against corruption in the Family Court System, and the First Amendment right to petition the government, and to deprive the plaintiffs of their Constitutional protected property interest right in the continued enrollment of **MR. POLO** at STU, and their liberty interest in their good name, reputation, honor, and integrity.

### VII.     JUDGE BERNSTEIN'S RETALIATORY SCHEME

408.     On or about May 26, 2015, MR. POLO filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing Ms. Real of committing fraud upon the court.

409.     Thereafter, SCOTT BERNSTEIN created a retaliatory scheme by building a case against MR. POLO with the malicious intent of (1) later getting STU involved and getting MR. POLO expelled from law school through a sham Honor Proceeding, destroying thereby, Mr. Polo's career in law, financial stability and future, and destroying MR. POLO'S and his family's good name.

410.     In furtherance of his retaliatory scheme, and with the intent of building a case against Mr. Polo, SCOTT BERNSTEIN engaged in the following acts:

411.     On February 2, 2016, JUDGE BERNSTEIN declared MR. POLO in contempt over an order that did not contain a clear and definite command sufficient to notify MR. POLO of his required conduct, intentionally ignoring, thereby, the rule of law in Florida which does not support such an act.

412.     On August 01, 2017, behind Mr. Polo's back, Judge BERNSTEIN filed an order of referral to the co-parenting coordinator alluding to a history of allegations of domestic violence when that was not a pending issue in front of the court, and as a matter of fact, there was no pending issue to be resolved by the co-parenting coordinator.

413.      The referral was made with the intent of getting a recommendation from the pre-arranged Coparenting coordinator to remove MR. POLO'S custody of his children without due process of law. However, Judge BERNSTEIN and MR. SEGARRA refrained from continuing with the plan once Mr. Polo put it in writing in an email to the Coparenting coordinator.

414.      After Judge Bernstein found out that Mr. Polo was going to STU at the hearing held on August 1, 2017, BERNSTEIN met with Dean Lawson and other Members of the STU management at STU School of Law on October 23, 2017, with the intent of getting STU to participate in his retaliatory scheme.

415.      The day after, on *October 24, 2017*, SCOTT BERNSTEIN restricted the Plaintiffs' access to the court (naming Mr. Polo Vexatious) in a hearing that was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties" and not as an order to show cause why the Plaintiffs' right to access the court shouldn't be removed. Therefore, there was no notice and opportunity to be heard before the Plaintiffs' access to the courts was removed.

416.      SCOTT BERNSTEIN, behind **MR. POLO'S** back, ordered the Clerk of Courts not to accept ANY filings from the Plaintiffs.

417.      On or about ***June 06, 2018***, Polo registered to ***run for a State Representative*** with an agenda against judicial corruption. During the campaign, and thereafter, Polo engaged in ***core political speech*** which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

418.      Thereafter JUDGE BERNSTEIN'S retaliation increased, and on October 2, 2018, SCOTT BERNSTEIN, on his own motion, entered an order (hereinafter the "Second Vexatious Order"). The order removed **MR. POLO'S** right to access the court/filing "anything further in the court's file." Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant. The hearing was not noticed as a hearing to remove or alter the Plaintiffs access to the court rights.

419.      On the same date, October 2, 2018, Judge BERNSTEIN issued an order to show cause why MR. POLO was not to be found in criminal contempt of court, and Segarra was asking Judge Bernstein to put Mr. Polo in Jail, even though he knew that Mr. Polo did not have the state of mind to be criminal contempt.

420.     On *September 25, 2018*, MR. POLO filed an affidavit. In the affidavit MR. POLO claimed that he was *a Student Member of the Florida Bar Tax Section*, which was a true statement.

421.     On October 2, 2018, JUDGE BERNSTEIN, tried on multiple occasions to enter into the record false allegations indicating that MR. POLO had represented to be an attorney in his court. MR. POLO repeatedly corrected JUDGE BERNSTEIN telling him that Polo never said to be licensed to practice or an attorney. What MR. POLO stated in the affidavit that he was a *Student Member of the Florida Bar.* As it is shown in the September 25, 2018, hearing's transcript, and the affidavit itself.

422.     After multiple malicious attempts to put on the record that MR. POLO represented to be an attorney, JUDGE BERNSTEIN admitted that to say that MR. POLO said he was an attorney would be "a gross misrepresentation."

423.     MR. SEGARRA, another co-conspirator, maliciously said on the record that MR. POLO was even engaged in an illegal practice of law by representing himself in court, which was factually and legally incorrect.

424.     MR. POLO had to hire an attorney he couldn't afford to filed a motion to recuse SCOTT BERNSTEIN. Before the recusal hearing held on January 29, 2019, JUDGE BERNSTEIN had already carefully drafted the Order of Recusal, which he drafted with the intent of interfering with MR. POLO'S contract with STU, to cut short the Plaintiffs' property interest right in MR. POLO'S continued enrollment at STU.

425.     The order was in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal. However, Judge Bernstein needed the Statement contained in that Order to later provide those as pretext for STU to expel Mr. Polo.

426.     The order was falsely accusing MR. POLO of (1) falsely representing to be a "Member of the Florida Bar" (He was no longer accusing MR. POLO of being an attorney); (2) of not having good faith basics to say JUDGE BERNSTEIN had an ex-parte communication with Segarra; (3) Polo's allegations being raised in bad faith and not based on personal knowledge; (4) of MR. POLO abusing the system by filing repetitive frivolous motions (but never pointed to a specific one), and (5) interfering with the functioning of his office by "***incessantly***" calling his Judicial Assistant. Moreover, JUDGE BERNSTEIN stated in pertinent part:

MR. POLO also claims in his verified motion that I had some kind of objective to prevent his admission to the Florida Bar. To be clear, I have never before spoken to the Florida Bar about MR. POLO.

427.     Bernstein was right, he did not need to contact the Florida Bar, because he had already arranged with Dean Lawson to use the Order of Recusal as the basis for expelling Mr. Polo. Therefore, two days later on **January 31, 2019**, JUDGE BERNSTEIN did not contact the Florida Bar, but contacted the Dean of St. Thomas School of Law, Tamara Lawson, with whom JUDGE BERNSTEIN had met on ***October 23, 2017***, the day before he named MR. POLO vexatious litigant.

428.     Judge BERNSTEIN did not have any other choice than to send the letter immediately because Mr. Polo was about 4 weeks away from graduation, and STU needed time to put together the sham honor proceeding.

429.     JUDGE BERNSTEIN'S letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with JUDGE BERNSTEIN'S official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal.

430.     BERNSTEIN'S LETTER was carefully drafted to match the requirements of STU's Code of Honor Section 2.01 (F) titled "General Unfitness" by saying that Mr. Polo was dishonest and was interfering with the administration of justice.

## VIII.     STU PARTICIPATION IN THE SCHEME

431.     STU allowed MR. BERNSTEIN to interfere with the agreement STU had with MR. POLO knowing that MR. BERSTEIN'S allegations were all false.

432.     STU's decision to terminate MR. POLO was not based on clear and convincing evidence as the STU's code of conduct requires because the evidence presented to STU exonerated Mr. Polo of Judge Bernstein's accusations.

433.     STU disregarded the weight of the evidence by ignoring that by the end of the deliberation on February 26, 2019, the evidence in front of the committee showed that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal and showed that Judge Bernstein was personally coming after Mr. Polo.

434.     STU substantially disregarded its own rules by allowing Judge Bernstein to use STU's honor code to retaliate against Mr. Polo in violation of the honor code's Section 3.03 (A)(3), which states in pertinent part "The Honor Council shall not be used to resolve personal conflicts."

435.     STU substantially disregarded its own rules by engaging in a fishing expedition after the Honor Council proceeding was over. STU's honor Code provides for a single hearing against a student subject to the honor code's rules supported by clear and convincing evidence, but not for fishing expeditions after an honor council proceeding is concluded. The honor code § 3.04(E) states in pertinent part:

> (1) At the conclusion of the hearing, the Council shall deliberate in secret. (2) If a majority of the Council finds by clear and convincing evidence that the accused committed acts violating the Code, the accused shall be found guilty. (3) If the Council finds that the accused is guilty, an appropriate sanction shall be determined by a majority vote.

436.     By the end of the deliberation on February 26, 2019, the committee found out that MR. POLO had not done any of the things SCOTT BERNSTEIN alleged in his Order of Recusal. They did not have clear and convincing evidence to support their breach of contract. Thereafter, MR. SILVER went on a fishing expedition to find more excuses to terminate MR. POLO and to continue the honor council proceeding in a second hearing.

437.     On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council hearing which was to take place on April 4, 2018. As of March 23, 2019, STU, intentionally and maliciously, had already decided to remove **MR. POLO** from the school even before the second hearing had even begun. STU deactivated **MR. POLO'S** ID card to access the campus, removed **MR. POLO** from the security access list at the gate, and removed **MR. POLO'S** access to STU's network.

438.     On March 23, 2019, MR. SILVER came up with new allegations, and he scheduled a 2nd Honor Council hearing which was to take place on April 4, 2018.

439.     This time, they were accusing MR. POLO of: (1) failing to answer "Yes" to a question that asked if MR. POLO was, ever, a party in a civil lawsuit including "Marriage Dissolution." (2) Falling to notify the school of failure to inform the Law School of subsequent litigation. (3) Falling to list all employment including internships for failing to list SITA, INC., (4)

Failure to list being charged with a misdemeanor for "spearfishing" in Monroe County. (5) failure to list civil lawsuits in which MR. POLO was a party in the Law School's Tax Clinic application.

440.     On or about September 27, 2018, Dean Cecile L. Dykas, who was part of STU's management, already knew that MR. POLO had pending cases in State and Federal court, and she even tried to refer MR. POLO to some attorneys, so he could resolve his legal problems. Despite knowing those pending cases in Federal and State Court, in or about January 2019, St. Thomas management invited MR. POLO to be a Guest Speaker during a Career Day event representing the Tax Law Clinic and program.

441.     Despite members of STU management knowing that MR. POLO had a pending case in Family and Federal Court, MR. POLO was allowed to participate in an internship in STU's Tax Clinic, and STU employed MR. POLO as a Research Assistant. During his time at the tax clinic, and during his employment, MR. POLO represented St. Thomas University throughout Miami-Dade offering conferences to diverse groups of underserved individuals. STU trusted MR. POLO to coach those groups about the importance of filing taxes, and to promote St. Thomas' Tax Clinic.

442.     STU's management knew that the new allegation could be a result of MR. POLO'S involuntary lack of knowledge of English and his diagnosed attention deficit, and neurocognitive impairments, from a full independent psychological evaluation they had in their possession since 2016, for which MR. POLO was granted additional time to complete his test, in accordance with the Americans with Disability Act ("ADA").

443.     THE STU EMPLOYEES knew the symptoms of MR. POLO'S condition included involuntary neurocognitive problems such as memory problems, being unable to concentrate, acting impulsively (without thinking), anxiety, and multiple other symptoms that may have involuntarily produced those results they were complaining about.

444.     STU has a process for any student to amend their school application before applying for the Florida Bar, which many students use to amend their application and put things they had forgotten during the application process. Moreover, the school has a dean dedicated to guiding the students through such a process.

445.     No student has ever been taken to a disciplinary proceeding for amending their application, and for putting the information they forgot to put in their original application. When

MR. POLO found out about the information that he had involuntarily failed to disclose. He amended his application with the school.

446.     STU had never terminated a student who was caught by the Police and indicted for possession of stupefacient with the intent to distribute. The student was suspended on a temporary basis and then later allowed to continue his career.

447.     STU never terminated a professor who was charged and found guilty of Felony Battery against another STU employee.

448.     Upon information and belief, STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while driving under the influence, of which then Dean Alfredo Garcia was aware when he received a call past midnight from Campus security.

449.     In preparation to take MR. POLO to the first honor council hearing, the DEAN MORE prepared a memorandum containing, among other things, internal emails among the members of the honor council and STU's management, the letter, and the order of recusal the SCOTT BERNSTEIN had sent to STU. The Document was classified as "Highly Confidential," and MR. POLO was never made aware of the documents or allegations contained in those documents until the day of the hearing, at the hearing.

450.     Moreover, the memorandum contained the malicious plan of DEAN MOORE, not to blame MR. POLO for his own acts, but to blame MR. POLO for the acts of his attorney, and t was full of misleading conclusory statements that she never provided to MR. Polo.

451.     DEAN MOORE sent the memorandum to the panel, the same day of the hearing with the intent of not giving the panel time to question her conclusory statements.

452.     Moreover, DEAN MOORE realizes that MR. SEGARRA was harassing MR. POLO with the unnecessary process of service; however, she did not comment about the unethical ramifications of this but downplayed it.

453.     During the appeal process, Dean Lawson used the proceeding to humiliate MR. POLO and not to weigh the evidence presented by MR. POLO, or the application of their rules to MR. POLO'S case, and with the intent of saying that Mr. Polo received due process, but not with the intent of affording Mr. Polo a real opportunity to be heard.

454.     STU, produced a second round of evidence that was just a plain and simple pretext to get rid of MR. POLO. STU had a process to amend their application which was offered to ALL students in preparation for applying for the Florida Bar. Never did STU expelled students for failing to report the things they were complaining about.

455.     STU, knew that SCOTT BERNSTEIN'S behavior was unethical and even probably criminal. However, they did not care, they allowed the judge to use the power of his office to influence the panel by using Judge Bernstein's order.

456.     The retaliatory scheme resulted in Mr. Polo being intimidated and intermittently refrained from engaging in Political Speech against Corruption in the Family Court. Moreover, the terror of seeing his career on the line due to the retaliatory scheme forced Mr. Polo to dismiss the causes of action Mr. Polo had initiated against JUDGE BERNSTEIN'S coconspirators in state court.

457.     Therefore, ST. THOMAS UNIVERSITY, INC., intentionally deprived MR. POLO of his First Amendment Right to Petition the government for redress of his grievances and the right to engage in Political Speech without the fear of retaliation without due process, in violation of plaintiffs' 5th and 14th amendments rights to due process of law under 42 U.S.C. section 1983.

458.     If not enjoined by this Court to cease its deprivation of Plaintiff(s) right to due process of law, JUDGE BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., through other judges and/or attorneys, will continue to harass and deprive the plaintiffs of his constitutional rights without due process of law, and due to the powerful influence of JUDGE BERNSTEIN, being the son-in-law of an ex-Florida Bar President, MR. POLO will not have any remedy at law because the courts of the State of Florida will not provide him with proper remedy at law, and believing that appealing to the U.S. Supreme Court is feasible when the U.S. Supreme Court takes about 1% of the cases presented to it, it's a fiction.

459.     The above conduct was outrageous as beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

460.     As a direct, natural, and proximate result of DEFENDANT'S ST. THOMAS UNIVERSITY, INC., and its agents' outrageous conduct towards the Plaintiffs. The Plaintiff(s) have suffered severe emotional distress resulting in reduced mental and physical health and additionally the plaintiff suffered the following damages:

(1) The Plaintiff(s) sustained emotional damages; (2) The Plaintiff(s) sustained reliance damages; (3) **MR. POLO** suffered severe mental and emotional distress; (4) The Plaintiff(s) suffered physical pain and suffering; (5) The Plaintiff(s) suffered diminished health; (6) The Plaintiff(s) suffered mental pain and suffering; (7) The Plaintiff(s) suffered loss of earnings and; (8) The Plaintiff(s) suffered diminution and loss of the abilities to earn money which are either permanent or continuing to this day and are likely to continue into the future, which resulted in a loss of more than $3,801,600; (9) damage to a property interest in **MR. POLO'S** continued enrollment at STU in 2019 leaving the Plaintiff(s) with student loan obligations of more than $350,000 plus accumulated interest.; (10) The plaintiff, **MR. POLO**, has medical bills because of the Defendant's actions, which are expected to continue indefinitely; (11) the children's right to parental support was impaired with a value of more than $96,000; and (12) **MR. POLO** will incur attorney's fees and/or court costs.

461.    **WHEREFORE**, the Plaintiffs request that this Court enter judgment in their favor, and against SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. as follows:

462.    Declaring that SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., violated the Plaintiffs' constitutionally protected First Amendment right to petition the Government for a redress of grievances without fear of retaliation, and the First Amendment right to engage in *core political speech* intended to rally public support for fighting judicial corruption in the Miami-Dade Family Court System, without due process of law; knowingly, intentionally, and in reckless disregard of the Plaintiff(s)' federally protected rights, in violation of 42 U.S.C. Sec. 1983, and in violation of Florida laws.

E)    Enjoining SCOTT BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from violating the Plaintiffs' constitutional rights, and/or from retaliating against the Plaintiffs, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and

F)    Awarding judgment for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, ST. THOMAS UNIVERSITY, INC., pursuant to 42 U.S.C. Sections 1983 and 1988.

463.     Awarding any necessary equitable relief including prejudgment interest, and the Plaintiffs demand trial by jury on all issues so triable.

464.

465.     (2); (3); and (4) the distress was severe

## § 8.PRAYER FOR RELIEF

466.     FRANK E. POLO, SR., Individually and as the next friend to FP, and HP, both minors, FP, and HP, demands a trial by jury, and judgement against SCOTT MARCUS BERNSTEIN, and ST. THOMAS UNIVERSITY, INC. (collectively the "DEFENDANTS" in the amount of $12,742,800, for special damages, damages for past, present, and future medical expenses, reliance damage, compensatory damages, exemplary and punitive damages, pain and suffering, treble damages (where applicable), loss of past earnings, and impairment of future earning capacity, together with attorney's fees and/or court costs and such other relief as the Court may deem just and proper.

467.     Additionally, the Plaintiffs demand a Declaratory and injunctive relief against SCOTT MARCUS BERNSTEIN, and ST. THOMAS UNIVERSITY, INC., from violating, or conspiring to violate with anyone, the Plaintiffs' and the witnesses' constitutional rights, and/or from retaliating against the Plaintiffs and witnesses, directly or indirectly, for seeking to remedy their inappropriate and unlawful conduct; and declaring that the DEFENDANTS violated the Plaintiff's Federal Protective rights.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1TH ST APT 41.1
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com