# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR.  )
  Plaintiff,  )
       v.  )  CASE NO: <u>**1:23-cv-21684**</u>
SCOTT MARCUS BERNSTEIN;  )
MARCIA DEL REY;  )
SPENCER MULTACK;  )  **JURY TRIAL IS DEMANDED**
THOMAS LOGUE;  )
MANUEL A. SEGARRA III;  )
MERLIN HERNANDEZ;  )
RANDOLPH MARTINEZ;  )
ST. THOMAS UNIVERSITY, INC.;  )
SEGARRA & ASSOCIATES, P.A.;  )
THIRD DISTRICT COURT OF APPEALS;  )
ELEVENTH JUDICIAL CIRCUIT COURT OF  )
FLORIDA;  )
       Defendants,  )
_____/  )

FILED BY___J6___ D.C.

MAY 06 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## § 1. AMENDED COMPLAINT TO ADD HEADER

1. Plaintiff, FRANK E. POLO SR., files this complaint against the defendants SCOTT MARCUS BERNSTEIN; MARCIA DEL REY; SPENCER MULTACK; THOMAS LOGUE; MANUEL A. SEGARRA III; MERLIN HERNANDEZ; RANDOLPH MARTINEZ; ST. THOMAS UNIVERSITY, INC.; SEGARRA & ASSOCIATES, P.A.; THIRD DISTRICT COURT OF APPEALS; ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (the "DEFENDANTS" in this complaint) and alleges as follows:

## § 2. INTRODUCTION SUMMARY OF THE CASE

2. This case arises from claims under the U.S. Constitution's First and Fourteenth Amendments, the Constitution and laws of the State of Florida, and 42 U.S.C. § 1983.

3. The Plaintiff, Frank Polo, brings this action against all the Defendants who directly, or indirectly, deprived the Plaintiff of constitutional rights, under color of state law. These violations included but were not limited to deprivations of Plaintiff's (1) right to access the Court for redress of his grievances, (2) liberty interest in his good name, reputation, honor, and integrity, (3) and Property Interest in his continued enrolment at Law School.

4. More importantly, those deprivations were in violation of Plaintiff's 14th Amendment rights to due process of law under 42 U.S.C. § 1983.

5. Finding out about corruption and exposing it when MR. POLO put a subpoena on Microsoft to prove that BERNSTEIN'S friend and appointed GAL perjured herself in court and filed a misleading report was costly to MR. POLO. It resulted in Judge Bernstein transforming his corruption scheme into a retaliatory personal vendetta to destroy the life, livelihood, and financial future of an entire family for MR. POLO'S crime of standing up against corruption, and for MR. POLO running for office promising to fight the corruption led by Judge Bernstein.

6. Paradoxically, the Defendants are Judges who intentionally disregarded their simple duty to uphold their oath of supporting the Constitution of the United States and of the State of Florida by abusing their power against decent citizens.

### § 3. JURISDICTION, VENUE & STANDING

7. These claims arise under the First Amendment of the U.S. Constitution, and the the due process clause of the Fifth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1331 and over all other state claims under 28 U.S.C. § 1367, and under 28 U.S.C. §2201.

8. Venue is proper under 28 U.S.C. §1391(b) The claims being sued upon arose in Miami-Dade County, Florida, which is where the defendants at all material times resided or did business.

9. All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiff for which the Plaintiff is seeking relief. Therefore, the Plaintiff has "standing" to bring this cause of action.

### § 4. PARTIES

10. Plaintiff, FRANK E. POLO, SR., individually, ("MR. POLO" or "POLO") is a resident of Miami-Dade County, Florida.

11. Defendants, SCOTT M. BERNSTEIN (Judge "BERNSTEIN"), MARCIA DEL REY (Judge "DEL REY"); and SPENCER MULTACK (Judge "MULTACK") were at all times material, State Judges, and employees of the Defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (the "EJCC"), a dependency of the Florida Supreme Court (a State

Agency), and they acted towards MR. POLO pursuant to the authority bestowed upon them by the State of Florida and under color of state law. JUDGE BERNSTEIN is being sued in his official and individual capacity, and JUDGES DEL REY, and MULTACK in their official capacity.

12. The Defendant Judge THOMAS LOGUE (Judge "LOGUE") was at all times material an employee of the Defendant THIRD DISTRICT COURT OF APPEALS ("3d DCA"), which is a dependency of the Florida Supreme Court (a State Agency) and he acted towards MR. POLO pursuant to the authority bestowed upon him by the State of Florida and under color of state law. He is sued in his official capacity.

13. Defendant MANUEL A. SEGARRA III ("MR. SEGARRA" or "SEGARRA") was an employee, owner, and operator of SEGARRA & ASSOCIATES, P.A. and he acted towards MR. POLO under color of State Law because he and at least JUDGE BERNSTEIN, on behalf of himself and the ELEVENTH JUDICIAL COURT OF FLORIDA, had reached an understanding to deprive MR. POLO of his constitutional rights without due process of law. He is being sued in his official and personal capacity.

14. Defendant, MERLIN HERNANDEZ, ("MS. HERNANDEZ") was the Petitioner in Family Court case 2012-017787-FC-04 in the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA and she acted towards MR. POLO under color of State Law because she and at least JUDGE BERNSTEIN, on behalf of himself and the ELEVENTH JUDICIAL COURT OF FLORIDA, had reached an understanding to deprive MR. POLO of his constitutional rights without due process of law. She is being sued in her personal capacity.

15. Defendant, RANDOLPH MARTINEZ, ("MR. MARTINEZ") was/is Ms. Hernandez's boyfriend. and he acted towards MR. POLO under color of State Law because he and at least JUDGE BERNSTEIN, on behalf of himself and the ELEVENTH JUDICIAL COURT OF FLORIDA, had reached an understanding to deprive MR. POLO of his constitutional rights without due process of law. He is being sued in his personal capacity.

16. Defendant, SEGARRA & ASSOCIATES, P.A., is a Florida for-profit Corporation organized and existing under the laws of the State of Florida, with a principal place of business in Miami Dade County, Florida.

17. Defendant, ST. THOMAS UNIVERSITY, INC. ("STU"), is a Florida Not-for-Profit Corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami Dade County, Florida.

18. Defendant, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA ("EJC") is part of the State of Florida Court System and a subdivision of the State of Florida, and at all times material, operated towards MR. POLO under color of state law.

19. Defendant, FLORIDA THIRD DISTRICT COURT OF APPEAL ("3d DCA") is part of the State of Florida Court System and a subdivision of the State of Florida, and at all times material, operated towards MR. POLO under color of state law.

## § 5. GENERAL FACTS APPLYING TO ALL COUNTS

20. At all relevant times herein in all counts, it is asserted that all other Defendants, individually, are considered "persons" under 42 U.S.C. Section 1983.

21. At all relevant times herein in all counts, it is asserted that MR. POLO was a party in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA for Miami-Dade Country (a government agency), Case No.: 2012-017787-FC-04 (the "Family Case"), where the defendant SCOTT M. BERNSTEIN was the presiding judge from about July 7, 2012, until on or about January 29, 2019, when he recused himself and he lost all jurisdiction over MR. POLO'S case.

22. Throughout all relevant counts, it is asserted that MS. HERNANDEZ and MR. SEGARRA filed two late motions for attorney's fees (Hernandez's on **October 8, 2018**, and Segarra's on **November 1, 2018**). These motions were filed after (1) a final judgment was entered on **September 14, 2018**, (2) without the retention of jurisdiction to adjudicate attorney's fees, and (3) the time to file for rehearing (15 days under Fla. Fam. R. P. 12.530) had lapsed by the time MS. HERNANDEZ and MR. SEGARRA filed for attorney's fees. Therefore, the court didn't have jurisdiction after **September 14, 2018**.

23. Throughout all relevant counts, the Defendants acted collectively as agents, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers, within their designated roles. Each Defendant endorsed and supported the actions of the others, as evidenced by the facts presented in the applicable counts. They collaborated, supported, and significantly contributed to

each other's actions as outlined in the facts presented in the applicable counts, demonstrating awareness of their misconduct and actively working towards achieving their wrongful objectives.

24. Throughout all relevant counts, it is asserted that the acts complained of in this complaint were undertaken intentionally, frivolously, maliciously, and with total disregard for the Plaintiff's protected constitutional rights by all the DEFENDANTS. Those acts were so egregious that MR. POLO'S damages were heightened and made more severe, thus entitling Plaintiff to exemplary (punitive) damages.

## § 6. STATEMENT OF FACTS

### (A) MERLIN HERNANDEZ AND RANDOLPH MARTINEZ[1]

25. After MR. POLO and MS. HERNANDEZ separated in 2012, and MS. HERNANDEZ became obsessed with taking sole custody and parental responsibility for the couple's children.

26. MS. HERNANDEZ initiated the family court case on **July 19, 2012,** seeking sole custody of their children and limiting visitation for MR. POLO to about two (2) hours per week, with supervised visitation with no legal or factual basis.

27. Upon information and belief, Mr. Martinez financed Ms. Hernandez's legal harassment against MR. POLO for over eleven (11) years.

28. JUDGE BERNSTEIN appointed LILLIANA REAL (the "GAL") as a Guardian in the case, who claimed to be friends with BERNSTEIN and suggested to MR. POLO being able to influence his decisions. Thereafter, the GAL engaged in building a case against MR. POLO.

29. Subsequently, Ms. Hernandez began sending the children to MR. POLO with repeated rashes and bruises for which MR. POLO contacted MS REAL.

30. On **February 11, 2014,** the GAL, MS. HERNANDEZ, MR. MARTINEZ, and HERNANDEZ'S attorneys, manufactured a false emergency with no probable cause.

---

[1] Although the names of the Defendants are used in many subsections of this Statement of Fact, it's important to note that this does not imply that the subsections do not apply to other parties mentioned in each subsection.

31. On the same date, MS. HERNANDEZ and MR. MARTINEZ took MR. POLO'S children from MR. POLO'S legal custody without court authorization or MR. POLO'S consent. The Plaintiff was not given an opportunity to access the court before the children were removed.

### (B) JUDGE BERNSTEIN

### (I).    BERNSTEIN'S ACTS BEFORE RECUSAL

32. Aware of the deprivation of MR. POLO'S custody without access to the court and without notice and opportunity to be heard, BERNSTEIN delayed the return of the children for seven days.

33. JUDGE BERNSTEIN allowed the GAL to file her report, which was due 20 days before the final hearing, a day before the final hearing and denied a motion for continuance.

34. During the Final Hearing, The GAL falsely testified that MR. POLO was building a case against Ms. Hernandez.

35. On or about **May 26, 2015**, MR. POLO obtained evidence showing` the GAL was building a case against him and filed a motion to vacate the final Judgment (the "Motion to Vacate") accusing The GAL of committing fraud upon the court and exposing the scheme to corruptively grant MS. HERNANDEZ timesharing and child support not supported by fact and/or law.

36. Towards the end of 2015, a disagreement arose between MR. POLO and MS. HERNANDEZ regarding vacation arrangements with the children.

37. MS. HERNANDEZ brought the case back to court, and on **December 15, 2015**, JUDGE BERNSTEIN declined to address the issue. He waited until MR. POLO was on vacation with the children and issued his order on **December 24, 2015**, which failed to clarify the party's rights.

38. On **February 2, 2016**, upon MR. POLO'S return from vacation, JUDGE BERNSTEIN held him in contempt.

39. On **April 3, 2017**, JUDGE BERNSTEIN filed an order of referral to the parenting coordinator without a hearing, MR. POLO consent or knowledge, and without serving MR. POLO with the new order of Referral.

40. The order stated that there was a history of allegations of domestic violence which was never an issue in front of Bernstein. Additionally, it falsely stated that the parties had an

opportunity to consult with an attorney or a domestic violence advocate and that the Parenting coordinator was "with the prior consent of the parties and approval of the court."

41. On **August 01, 2017**, JUDGE BERNSTEIN, elicited information about what school MR. POLO was attending and ordered the parties to register for co-parenting when there were no pending issues to resolve. However, MS. HERNANDEZ and her attorney did not object to the referral.

42. When MR. POLO learned there was a plan to fraudulently change custody based on the recommendations of the coordinator, he told the coordinator that he knew the plan and her role in it. As a result, the coordinator sent the case back to court and Judge Bernstein, Mr. Segarra, and Ms. Hernandez never tried to enforce meetings of co-parenting coordinators ever again.

43. After the hearing of **August 1, 2017**, in which JUDGE BERNSTEIN elicited from MR. POLO what school he was going to, on **October 23, 2017**, Judge BERNSTEIN went to St. Thomas University in person and met with TAMARA F. LAWSON ("DEAN LAWSON"), PATRICIA MOORE ("DEAN MOORE"), and other Members of STU management.

44. The following day, on **October 24, 2017**, JUDGE BERNSTEIN restricted the Plaintiff's access to the court without notice and opportunity to be heard based on a list of alleged "open motions" that were pending resolution presented by MR. SEGARRA. However, MR. POLO was not only limited to filing certain documents but he was secretly banned from filing anything.

45. On or about **June 06, 2018**, Polo registered to run for a State Representative. During the campaign, and thereafter, Polo engaged in public core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami-Dade Family Court System.

46. On **October 2, 2018**, JUDGE BERNSTEIN, rendered a new order preventing MR. POLO from filing "anything" without notice and opportunity to be heard. Moreover, the order prohibited MR. POLO from calling, emailing, or texting the Judicial Assistant.

47. On **October 2, 2018**, during the hearing, JUDGE BERNSTEIN continuously tried to enter into the record that MR. POLO pretended to be an attorney in his courtroom, and MR. POLO continuously corrected JUDGE BERNSTEIN'S false allegations until he admitted those allegations to be a "gross misrepresentation".

48. At the hearing, MR. POLO realized that JUDGE BERNSTEIN knew the information he had provided to SEGARRA only in a never printed or filed deposition. Consequently, MR. POLO requested his attorney to file a motion to recuse JUDGE BERNSTEIN.

49. On **January 29, 2019**, JUDGE BERNSTEIN issued an Order of Recusal in violation of the Florida Supreme Court's Order which prohibits Judges from engaging in making comments about the merits of a motion for recusal.

50. Moreover, the order falsely accused MR. POLO of misrepresenting to be a "Member of the Florida Bar", when in fact MR. POLO's represented to be a "Student Member of the Florida Bar".

### (II).    BERNSTEIN'S ACTS AFTER HIS RECUSAL

51. Two days after Judge Bernstein's recusal from the Family Court case on **January 31, 2019**, he sent a letter (the "Letter") along with his order of recusal from **January 29th, 2019**, to the Dean of St. Thomas University Law School, DEAN LAWSON.

52. Before Judge Bernstein's letter on **January 31, 2019**, MR. POLO had never been investigated nor had anyone complained to the school management about MR. POLO.

53. As of **January 31, 2019**, JUDGE BERNSTEIN MR. POLO'S case was not pending in front of BERNSTEIN.

54. JUDGE BERNSTEIN was claiming to be performing the official duty of a State Judge by sending the letter to DEAN LAWSON using the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with his official judicial Signature block identifying himself and signing as the Administrative Judge.

55. The letter encouraged STU to act upon the false allegations and manipulated facts that JUDGE BERNSTEIN had stated in his order of recusal which STU knew to be false.

### (C) ST. THOMAS UNIVERSITY, INC.

56. As of **January 31, 2019**, MR. POLO had an implied contract with STU, based on the terms in the "Student Handbook 2014-2015." Under this contract, MR. POLO was to pay for STU's legal education program, and in return, STU would grant him a JD (Juris Doctor) degree and a Tax Law

Certificate. Both MR. POLO and STU were actively fulfilling their agreement as of the **January 31, 2019** letter.

57. When MR. POLO enrolled at STU, paid a deposit, and covered all legal education fees with Federal Student Loans, none of these payments were in default by **January 31, 2019**. He was close to completing his JD in Law and a Tax Law Certificate.

58. DEAN LAWSON, DEAN MOORE, and JAY S. SILVER ("MR. SILVER"), ("STU Management") initiated, supervised, and conducted the Honor Council proceeding on behalf of STU.

59. STU's Honor Code Section 3.03 (A)(3) prohibits the use of the Honor Code to resolve personal conflicts. However, STU Management allowed Bernstein to misuse the Honor Council to resolve personal conflicts and retaliate against MR. POLO.

60. Section 3.04 (E), requires a single hearing and finding the accused student guilty by clear and convincing evidence. Nevertheless, STU Management couldn't prove MR. POLO's guilt by clear and convincing evidence. So MR. SILVER initiated a second proceeding seeking further excuses to terminate MR. POLO after realizing their lack of evidence for expulsion.

61. Section 3.04(D)(3)(a) grants the right to MR. POLO to be present during all testimony. However, MR. POLO was excluded from the hearing when Mr. Planas was set to testify.

62. STU Management and the Honor Council hid from MR. POLO that his real accuser was, JUDGE BERNSTEIN.

63. MR. POLO was never provided with an opportunity to confront JUDGE BERNSTEIN or the only witness against MR. POLO, JUAN CARLOS PLANAS ("MR. PLANAS"), who happened to be the attorney of MR. POLO'S political opponent, MARIA ELVIRA SALAZAR.

64. MR. POLO was never provided with a summary of what Mr. Planas was going to testify about. Moreover, MR. POLO was never allowed to hear MR. PLANAS testimony.

65. DEAN MOORE drafted a "Highly Confidential Memorandum," with JUDGE BERNSTEIN'S letter attached to it, detailing STU Management's plan aimed to attribute MR. POLO'S attorneys' actions to him and to find him guilty without concrete evidence to support any allegations, based on pure conclusory opinion of DEAN MOORE.

66. STU Management hid the evidence and false accusations listed in the Memorandum from MR. POLO until the hearing, where he was only partially informed about the evidence being used against him.

67. Furthermore, MR. SEGARRA, who STU knew was accused by MR. POLO of ex parte communication with JUDGE BERNSTEIN served as the investigator for STU. He selectively collected filings, portraying MR. POLO'S actions as unethical while excluding evidence of his reasonable behavior or legal justifications.

68. Before the second hearing on **March 23, 2019**, STU had already made up their mind to terminate MR. POLO, as shown by the facts that they deactivated MR. POLO'S ID card for campus access at the gate, removed him from the security access list, revoked his network access, and removed MR. POLO'S pro-bono community hours from the system.

69. STU treated MR. POLO differently than other students and students charged with a serious felony or dismissed an employee charged and convicted of a serious felony.

70. MR. POLO appealed the decision of the panel on or about **April 16, 2019**.

71. The Appeal was an informal meeting with DEAN LAWSON and DEAN MOORE which DEAN MOORE and DEAN LAWSON tried to use to force MR. POLO to declare himself guilty of the false accusations of MR. BERNSTEIN.

72. None of the evidence presented against or in favor of MR. POLO was discussed. The meeting was just an interrogatory more than a review of the record on appeal.

73. During the meeting, DEAN MOORE, unreasonably brought up MR. POLO'S political activities by asking MR. POLO why he ran for office.

74. DEAN LAWSON, used the hearing to humiliate MR. POLO. Knowing his wife was sitting outside and able to hear the conversation DEAN LAWSON said "I, don't think your problem is cognitive, but I think your problem is one of honesty" When MR. POLO refused to declare himself guilty of BERNSTEIN'S false accusations.

75. Moreover, STU Management humiliated MR. POLO with his peers, friends, and family members, members of the community that knew MR. POLO to be a law student, when they found out that MR. POLO never graduated for accusations of ethical wrongdoing.

76. On **May 17, 2019,** Lawson sent MR. POLO an official letter making official and final the expulsion and saying that she had reconsidered all the evidence and the allegations in the case. However, DEAN LAWSON and DEAN MOORE substantially disregarded the weight of the evidence presented and didn't even discuss the evidence with MR. POLO.

77. It was not until **May 20, 2019,** that MR. POLO discovered the letter of Judge BERNSTEIN to STU and the conspiracy between STU MANAGEMENT and JUDGE BERNSTEIN.

78. On **May 20, 2019,** MR. POLO gave STU the chance to rectify their error, if it was indeed a mistake. He emailed DEAN LAWSON, DEAN MOORE, and STU president DAVID AMSTRONG ("MR. AMSTRONG") informing them that he discovered Dean MOORE'S "Highly Confidential Memorandum," which he had never received before any hearings. This deprived MR. POLO of a fair chance to defend himself against the baseless and false allegations in the memorandum. However, they declined to seize this opportunity.

79. STU Management, including STU's President, looked the other way and refused to give MR. POLO a fair opportunity to clear his name based on MR. POLO'S newly found evidence that was never available to MR. POLO during the pendency of the Honor Council Proceedings.

### (D) GENERAL MAGISTRATE SINGER

80. On or about **July 11, 2018,** a hearing was held in front of GM SINGER, and GM SINGER, without notice and opportunity to be heard, dismissed the case sua sponte, based on an affirmative defense not raised in the pleading by the opposing party as required under Florida Fla. Fam. Law. R. P. 12.140 (b).

### (E) JUDGE MARCIA DEL REY

81. After Judge BERNSTEIN recused himself, JUDGE MARCIA DEL REY was appointed as the new judge. However, JUDGE DEL REY did not have continued jurisdiction to adjudicate attorney's fees.

82. Despite this, JUDGE MARCIA DEL REY refused to let go of jurisdiction and tried to grant MS. HERNANDEZ attorney's fees not supported by fact and/or law.

83. On **January 6, 2019,** and on **May 5, 2021,** JUDGE DEL REY left MR. POLO without an attorney knowing that there was an order dated **October 2, 2018,** which was preventing the

Plaintiff from having ANY access to the court. MR. POLO never received notice and opportunity to be heard before JUDGE DEL REY left him the ability to file anything.

84. Additionally, JUDGE DEL REY engaged in dilatory tactics, such as rehearing motions that were previously addressed and requesting briefs that had already been submitted to her.

85. Moreover, JUDGE DEL REY prevented MR. POLO from having a hearing about whether his constitutional right to access the court should be reinstated for lack of a valid enforceable constitutional order depriving MR. POLO of such a right.

86. Moreover, upon information and belief, JUDGE DEL REY engaged in ex-parte communication with MR. SEGARRA to alter her ruling after the hearing had concluded.

### (F) JUDGE MULTACK'S

87. On **October 8, 2021**, MR. POLO filed for injunctive relief against JUDGE DEL REY, JUDGE BERNSTEIN, and their employer the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA in Federal Court, prompting DEL REY'S recusal from the family case.

88. During a hearing on **July 5, 2022**, JUDGE MULTACK, on record, announced his intention to lift the injunction preventing Plaintiff's court access.

89. However, before concluding the **July 5, 2022** hearing, JUDGE MULTACK learned that MR. POLO had filed a petition for injunctive relief in Federal Court, naming JUDGE DEL REY as a defendant, resulting in JUDGE DEL REY's forced recusal.

90. Subsequently, on July 11, 2022, without prior notice or opportunity for the Plaintiff to be heard, JUDGE MULTACK issued two orders: one limiting MR. POLO'S filing rights to a single motion and another finding that MR. POLO violated the Florida Bar's Rules of Professional Conduct, which do not apply to non-lawyers.

91. Despite MR. POLO'S multiple jurisdictional objections, JUDGE MULTACK retained jurisdiction and awarded attorney's fees to MS. HERNANDEZ, unsupported by facts or law.

### (G) THE JUDGES IN THE THIRD DCA OF FLORIDA

92. On or about **April 6, 2022**, Judges THOMAS LOGUE (Judge "LOGUE") (who also serves as an adjunct Professor working for Defendant STU), ERIC Wm HENDON (Judge "HENDON"), AND ALEXANDER S. BOKOR (Judge "BOKOR") engaged in fabricating facts not presented in court. They did so by issuing an order falsely and irrelevantly stating, without supporting evidence

on the record, that MR. POLO had appealed the Amended Final Judgment and that he was acting vexatiously by submitting excessive and frivolous post-judgment filings.

93. On **September 14, 2022**, Judges IVAN F. FERNANDEZ (Judge "FERNANDEZ"), MONICA GORDO (Judge "GORDO"), and FLEUR J. LOBREE (Judge "LOBREE") failed to apply the correct legal principles to the admitted facts of MR. POLO'S case. They dismissed the appeal on the grounds that it was taken from a non-appealable order, despite it being an appealable interlocutory order denying MR. POLO access to the court.

94. On or about **March 01, 2023**, Judges NORMA S. LINDSEY (Judge "LINDSEY"), HENDON, and LOBREE rendered an order denying a writ of prohibition. They failed to properly apply the correct principle of law to the admitted facts of the Plaintiff's case and cited non-applicable case law without providing reasoning, which prevented the Plaintiff from appealing to the Fla. Sup. Court. Additionally, the Judges neglected to address other issues raised on appeal.

95. On or about **April 6, 2022**, Judges FERNANDEZ, KEVIN EMAS (Judge "EMAS"), and HENDON dismissed a Writ of Mandamus as moot, citing the rendering of a final judgment in the trial court. However, the Judges ignored the fact that the three elements of Mandamus were still in existence and under dispute.

96. On or about **August 30, 2023**, Judges EDWIN A. SCALES III (Judge "SCALES"), HENDON, and BRONWYN C. MILLER (Judge "MILLER") failed to address all arguments presented to the court and neglected to apply the correct legal principles to MR. POLO'S case. Additionally, they fabricated false facts, used confusing and irrelevant language, introduced facts not in dispute, and distorted MR. POLO'S arguments. Furthermore, they applied an irrelevant statute not argued by MR. POLO and cited irrelevant case law.

97. Around **February 21, 2024**, Judges LOGUE, EMAS, AND FERNANDEZ did not apply the appropriate legal principles to MR. POLO's case. They chose not to address all the issues raised on appeal and issued a Per Curiam Affirm ("PCA") order instead. As a result, the Plaintiff was prevented from appealing the Judge's orders to the Florida Supreme Court.

98. At all times relevant is the fact that MR. POLO allowed the court to remedy their wrongful actions; however, they always refused to.

## § 7.COMPLAINT

**COUNT 1.: DEPRIVATION OF PROPERTY AND LIBERTY INTEREST IN VIOLATION OF PLAINTIFF'S 14TH AMENDMENT RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.**

**AGAINST JUDGE BERNSTEIN**

99. Plaintiff re-alleges all relevant paragraphs under §5, §6(C)(I) through (III) and §6(B)(II), and further states that: The DEFENDANT SCOTT BERNSTEIN, while acting under color of state law, did the following:

100. As of **January 31, 2019**, MR. POLO had an implied contract with STU, based on the terms in the "Student Handbook 2014-2015." Under this contract, MR. POLO was to pay for STU's legal education program, and in return, STU would grant him a JD (Juris Doctor) degree and a Tax Law Certificate. Both MR. POLO and STU were actively fulfilling their agreement as of the **January 31, 2019** letter.

101. Due to the implied in-law agreement MR. POLO had with ST. THOMAS UNIVERSITY, INC., the Plaintiff had a property interest in the continued enrollment of MR. POLO at STU. The Plaintiff also had a liberty interest in his good name, reputation, honor, and integrity (both interests referred to as the "Protected Interests").

102. The abovementioned property and liberty interests are protected by the **U.S. Const., Amend. 14** and **Fla. Const. Art., 1, Sect.** 9 from deprivation of rights by state actors.

103. JUDGE BERNSTEIN, acting as a State Judge but without subject matter jurisdiction over MR. POLO's case, with the intent of damaging Mr. Protected Interests, engaged in the non-judiciary act of sending a letter to STU on **January 31, 2019,** containing as an attachment his order of recusal which contained false allegations of ethical misconduct. Bernstein did not provide MR. POLO with notice and opportunity to be heard before depriving him of his Protected Interests.

104. MR. POLO was about to graduate from Law School and was not under investigation for any misconduct as of **January 31, 2019.** Therefore, had BERNSTEIN refrained from sending the letter, **MR. POLO** would have graduated.

105.     Therefore, SCOTT BERNSTEIN deprived the Plaintiff of protected rights, without due process of law and under color of State law in violation of Plaintiff's 14th Amendment rights to due process of law and 42 U.S.C. section 1983.

106.     As a direct, natural, and proximate result of DEFENDANT JUDGE BERNSTEIN'S actions towards the Plaintiff, Plaintiff suffered damages.

107.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the JUDGE BERNSTEIN as follows:

108.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against JUDGE BERNSTEIN as outlined in the Prayer for Relief section of this complaint;

109.     Award judgment holding JUDGE BERNSTEIN, severally and jointly liable for the Plaintiff's damages, as outlined in the Prayer for Relief section of this complaint.

**COUNT 2.:     PETITION FOR DECLARATORY JUDGEMENT UNDER .
AGAINST JUDGE BERNSTEIN FOR DECLARATORY AND INJUNCTIVE RELIEF
AND DAMAGES.**

110.     Plaintiff re-alleges all relevant paragraphs contained under §5, §6(B)(II) and § 6 (C) and further states that: The DEFENDANT SCOTT BERNSTEIN (the "DEFENDANT" through this count), acting under color of State Law, did the following:

111.     The **U.S. Const., Amend. 1**, and the **Fla. Const. Art., 1, §§ 4 and 5** protect the Plaintiff from government retaliation for MR. POLO's engagement in core political speech and for the Plaintiff petitioning the government for redress of his grievances (both rights hereinafter referred to, in this count, as the "Protected Rights").

112.     The abovementioned protections apply to the States through decisions of the U.S. Supreme Court, the **U.S. Const., Amend. 5th and 14th** and . and **Fla. Const. Art., 1, Sect.** 9 which prohibits state actors from depriving an individual of property and liberty without due process of law.

113.     The Plaintiff exercised their Protected Rights by engaging in Protected Activities, which included (1) requesting the government to vacate the final Judgment based on the corrupt acts of the GAL, (2) pursuing legal action against BERNSTEIN'S co-conspirators for their

wrongful acts, and (3) MR. POLO, as part of his Political Campaign, making public statements, printing materials, and giving interviews, all promising to combat judicial corruption in the 11TH JUDICIAL CIRCUIT OF FLORIDA. These activities are referred to as the "Protected Activities" throughout this Count.

114.    JUDGE BERNSTEIN, while acting as a State Judge and without subject matter jurisdiction, retaliated against the Plaintiff, by engaging in the non-judiciary act of sending a letter to STU on **January 31, 2019,** containing as an attachment his order of recusal.

115.    The DEFENDANT'S exercise of judicial powers to terminate the Plaintiff's property interest in MR. POLO's continued enrollment at STU (representing his legal career) and his financial future, as retaliation for their engagement in the Protected Activities, constitutes an action that would deter a person of ordinary firmness from continuing to engage in such activities.

116.    Therefore, JUDGE BERNSTEIN retaliated against the Plaintiff for their engagement in the abovementioned Protected Activities, in violation of the Plaintiff's constitutional rights under Color of State Law directly in violation of the **U.S. Const. First** (1st), fifth (5th), and **Fourteen (14th) Amendments**, **Fla. Const. Art., 1,** §§ 4 and 5, and in violation of **42 U.S.C.** § 1983.

117.    As a direct, natural, and proximate result of JUDGE BERNSTEIN'S actions toward the Plaintiff, Plaintiff suffered damages.

118.    **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the JUDGE BERNSTEIN as follows:

119.    Awarding attorney's fees, and cost, and issuing a prospective declaratory and injunctive judgment against JUDGE BERNSTEIN as outlined in the Prayer for Relief section of this complaint;

120.    Awarding judgment holding JUDGE BERNSTEIN, severally and jointly liable for the Plaintiff's damages, and enjoining him as outlined in the Prayer for Relief section of this complaint.

**COUNT 3.:    DEPRIVATION OF THE PLAINTIFF'S ACCESS TO THE COURT RIGHT WITHOUT DUE PROCESS OF LAW IN VIOLATION OF 42 U.S.C. § 1983.**

121.     The Plaintiff re-alleges all the paragraphs contained in §5, §6 (A) and further states that the DEFENDANTS MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (collectively referred to as the "DEFENDANTS" throughout this Count), acting under color of State Law, did the following:

122.     The Plaintiff had a constitutional right to access the state court system under **Fla. Const. Art. 1, §§ 5 and 21**, and under the **U.S. Const., Amend. 1**, (in this count the "Protected Rights") which rights are prohibited from being deprived of by the states without due process of law under the **U.S. Const., Amend. 5th and 14th** and by **Fla. Const. Art. 1 § 9**.

123.     Moreover, there is a fundamental liberty interest of natural parents in the care, custody, and management of their child, which was recognized by the **U.S. Sup. Ct.**, and the **U.S. Sup. Ct.** also recognized that such liberty cannot be deprived of without due process of law as protected by the **U.S. Const., Amend. 14**. Therefore, the Plaintiff had a constitutional right to access the courts before being deprived of this liberty interest right.

124.     As of **February 11, 2014**, Ms. Hernandez and Mr. Martinez were already conspiring with JUDGE BERNSTEIN and his appointed Guardian Ad Litem, Lilliana Real, to deprive MR. POLO of custody of his children without due process of law.

125.     On **February 11, 2014**, without a legal right to do so and without notice and opportunity to be heard, MS. HERNANDEZ and MR. MARTINEZ removed the children from MR. POLO's legal custody. In doing so, they deprived the Plaintiff of MR. POLO's liberty right to exercise and the children's right to receive care, custody, and management from MR. POLO, without allowing the Plaintiff to access the court before the deprivation occurred.

126.     As a direct, natural, and proximate result of DEFENDANTS' actions towards the Plaintiff, Plaintiff suffered damages.

127.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against all the DEFENDANTS named in this count as follows:

128.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against all the DEFENDANTS named in this count, as outlined in the Prayer for Relief section of this complaint;

129.     Award judgment holding MERLIN HERNANDEZ and RANDOPH MARTINEZ, severally and jointly liable for the Plaintiff's damages, and enjoining them as outlined in the Prayer for Relief section of this complaint.

### COUNT 4.:     PETITION FOR PROSPECTIVE DECLARATORY JUDGEMENT UNDER 28 U.S.C. § 2201 AND FED. R. CIV. P. 57.

130.     The Plaintiff further states that the DEFENDANTS DEFENDANTS SCOTT BERNSTEIN, MARCIA DEL REY, SPENCER MULTACK (all three together referred to as the EJCC Employees" in this Count), THOMAS LOGUE (along with other 3d DCA Judges are referred to as the "3d DCA Employees" in this count), THIRD DISTRICT COURT OF APPEALS and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA [2] (all State Actors), (collectively referred to as the "DEFENDANTS" through this Count), acting under color of State Law, did the following:

131.     The Plaintiff had a clear constitutional right to access the state court system under **Fla. Const. Art. 1, §§ 5 and 21**, and under the **U.S. Const., Amend. 1**, additionally, had a right under **U.S. Const., Amend. 1**, and the **Fla. Const. Art., 1, §§ 4 and 5** to be protected from government retaliation for his engagement in core political speech and for the Plaintiff petitioning the government for redress of his grievances (the rights hereinafter referred to, in this count, as the "Protected Rights").

132.     The abovementioned protections apply to the States through decisions of the U.S. Supreme Court, the **U.S. Const., Amend. 5th and 14th** and . and **Fla. Const. Art., 1, Sect.** 9 which prohibits state actors from depriving an individual of property and liberty without due process of law.

133.     The Plaintiff exercised their Protected Rights by engaging in Protected Activities, which included (1) requesting the government to vacate the final Judgment based on the corrupt acts of the GAL, (2) pursuing legal action against BERNSTEIN'S co-conspirators for their wrongful acts, and (3) MR. POLO, as part of his Political Campaign, making public statements, printing materials, and giving interviews, all promising to combat judicial corruption in the 11TH

---

[2] Many other co-conspirators are mentioned throughout this count but are not parties to this lawsuit.

JUDICIAL CIRCUIT OF FLORIDA. These activities are referred to as the "Protected Activities" throughout this Count.

134.　　The Defendants' actions described in this Count were taken to harass MR. POLO as retaliatory responses to the Plaintiff's engagement in these Protected Activities and not for other reasons.

135.　　Instead of employing judicial power for fair adjudication, the Defendants utilized it to harass and retaliate against the Plaintiff for engaging in the Protected Activities. This misuse of power introduces fear of reprisal, which would ultimately deter (chill) an ordinary individual from continuing such activities.

**(H)** JUDGE BERNSTEIN'S **RETALIATED AND DEPRIVED THE PLAINTIFF OF ACCESS TO THE COURT RIGHT WITHOUT DUE PROCESS OF LAW UNDER <u>42 U.S.C.</u> § 1983.**

136.　　Plaintiff re-alleges all relevant paragraphs under §5, §6(B)(I) and further states that in retaliation for MR. POLO's engagement in the Protected Activities:

137.　　JUDGE BERNSTEIN**,** who was the Family Court's Administrative Judge, build a case against MR. POLO to destroy MR. POLO career in law without due process of law (the "Retaliatory Scheme") after MR. POLO filed his motion to Vacate Final Judgment on or about **May 26, 2015,** and in furtherance of his retaliatory plan/scheme BERNSTEIN did the following:

138.　　On **December 15, 2015,** JUDGE BERNSTEIN intentionally neglected to determine the rights of the Parties under the Mediated Partial Agreement knowing that MR. POLO was convinced to have a right to take the children on vacation. Then he entered an order that did not clarify the party's rights under the agreement after MR. POLO had taken the children on vacation, and on **February 2, 2016,** BERNSTEIN found MR. POLO in contempt.

139.　　On **April 3, 2017,** BERNSTEIN attempted to strip MR. POLO of his custody rights over his children without affording Polo notice and opportunity to be heard by sending the case to a pre-arranged co-parenting coordinator who was supposed to return recommendations of change of custody based on JUDGE BERNSTEIN'S fabricated allegations of domestic violence which were never part of the proceeding.

140.     On **October 24, 2017,** BERNSTEIN deprived the Plaintiff of access to the court by removing MR. POLO'S right to file documents in the family case without notice and an opportunity to be heard.

141.     Based on information and belief, Judge BERNSTEIN ordered the clerk of courts to prohibit MR. POLO from filing any documents. Consequently, MR. POLO was unable to file anything following the **October 24, 2017** order, and still can't file.

142.     On or about **October 2, 2018,** JUDGE BERNSTEIN rendered another order preventing MR. POLO from filing ANYTHING in the case's docket without notice and opportunity to be heard.

143.     On or about **January 29, 2019,** JUDGE BERNSTEIN wrote an order of recusal containing illegal and false allegations about the merits of MR. POLO'S motion of recusal, with the malicious intent of providing STU Management with a pretext for them to initiate an honor proceeding against MR. POLO to expel MR. POLO from law school, which he later did.

**(I) ROBERT S. SINGER ("GM SINGER") DEPRIVED THE PLAINTIFF OF ACCESS TO THE COURT RIGHT WITHOUT DUE PROCESS OF LAW.**

144.     Plaintiff re-alleges all relevant paragraphs under §5, §6(D) and further states that: On or about **July 11, 2018,** at the final hearing, General Magistrate Singer, in retaliation for MR. POLO's engagement in the Protected Activities, without notice and opportunity to be heard, deprived the Plaintiff of Access to the Court by issuing an order dismissing the Plaintiff's Petition for Modification based on affirmative defenses not raised in the pleading by the opposing party.

**(J) JUDGE DEL REY RETALIATED AND DEPRIVED THE PLAINTIFF OF ACCESS TO THE COURT RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983.**

145.     Plaintiff re-alleges all relevant paragraphs under §5, §6(E) and further states that: On two different occasions, on **January 6, 2019,** and on **May 5, 2021,** in retaliation for MR. POLO's engagement in the Protected Activities, without notice and opportunity to be heard, JUDGE DEL REY deprived the Plaintiff of access to the court by leaving MR. POLO without an attorney knowing that there was an order dated **October 2, 2018,** which was preventing the Plaintiff from having ANY access to the court.

146.     Additionally, JUDGE DEL REY, retaliated against the Plaintiff by continuing to retain Jurisdiction over the Plaintiff's family case after the Court lost jurisdiction to adjudicate attorney's fees with the intent of creating financial harm on MR. POLO by granting attorney's fees not supported by fact and law in retaliation for MR. POLO's engagement in the Protected Activities.

### (K) JUDGE MULTACK RETALIATED AND DEPRIVED THE PLAINTIFF OF ACCESS TO THE COURT RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983.

147.     Plaintiff re-alleges all relevant paragraphs under §5, §6(F) and further states that in retaliation for MR. POLO's engagement in the Protected Activities: On **July 5, 2022**, Judge Multack ruled to lift the injunction that had been preventing the Plaintiff from accessing the court.

148.     When he found out that MR. POLO had filed for injunctive relief in federal court against, among others, JUDGE BERNSTEIN and JUDGE DEL REY, on **July 11, 2022**, JUDGE MULTACK deprived the Plaintiff of his right to access the court by issuing an order that restricted his ability to file motions, limiting them to just one motion. This action was taken without providing the Plaintiff with notice and opportunity to be heard.

149.     Additionally, MULTACK refused to let go of the Jurisdiction, knowing the court had lost jurisdiction to adjudicate attorney's fees and granted attorney's fees not supported by law and/or facts with the intent of retaliating and financially harming MR. POLO for MR. POLO'S engagement in the Protected Activities.

### (L) THOMAS LOGUE, ERIC Wᴹ HENDON, ALEXANDER S. BOKOR, IVAN F. FERNANDEZ, MONICA GORDO, FLEUR J. LOBREE, NORMA S. LINDSEY, KEVIN EMAS, EDWIN A. SCALES III, ᴀɴᴅ BRONWYN C. MILLER

150.     Plaintiff re-alleges all relevant paragraphs under §5, §6(G) and further states that: Judges THOMAS LOGUE, ERIC WM HENDON, ALEXANDER S. BOKOR, IVAN F. FERNANDEZ, MONICA GORDO, FLEUR J. LOBREE, NORMA S. LINDSEY, KEVIN EMAS, EDWIN A. SCALES III, AND BRONWYN C. MILLER (The "3d DCA Employees" here in this count), deprived the Plaintiff of access to the court, by denying them a meaningful opportunity to be heard and creating barriers to their participation in appellate proceedings. Moreover, the 3d DCA Employees, are building a case to deprive MR. POLO of access to the Appellate Court by forcing MR. POLO to continue filing appeals and petitions because they insist

on failing to apply the correct principle of law to the admitted facts of MR. POLO's case as shown by the following facts:

151.      Judges LOGUE (also an adjunct Professor of Defendant STU), HENDON, BOKOR, SCALES, and MILLER, were involved in fabricating and adopting false facts without any evidence in the record to support those facts.

152.      Judges FERNANDEZ, GORDO, LOBREE, HENDON, LINDSEY, EMAS, SCALES, MILLER, and LOGUE repeatedly and maliciously declined to apply the correct legal principles to the admitted facts of the Plaintiff's family case, despite being fully aware of them.

153.      Judges LINDSEY, HENDON, LOBREE, SCALES, and MILLER cited irrelevant case laws, without further elaboration on how these cases apply to MR. POLO'S case, with the malicious intent of depriving the Plaintiff of the opportunity to appeal to the Florida Supreme Court. Furthermore, they deliberately neglected to address other valid issues raised on appeal.

154.      The Judges FERNANDEZ, EMAS, and HENDON intentionally and maliciously dismissed a Writ of Mandamus as moot, disregarding the fact that the three essential elements of Mandamus were still in existence and under dispute.

155.      Judges SCALES, HENDON, and MILLER deliberately employed confusing and irrelevant language, introduced facts not relevant to the case, and distorted MR. POLO's arguments. Moreover, they applied a statute that was not even part of MR. POLO's argument or relevant to the case, and cited irrelevant case law.

156.      When MR. POLO raised his constitutional arguments on appeal, LOGUE, EMAS, and FERNANDEZ issued a Per Curiam Affirm ("PCA") order, with the intent of preventing the Plaintiff from appealing their orders to the Florida Supreme Court.

157.      The 3d DCA Employees and the employees of the Defendant THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (SCOTT BERNSTEIN, MARCIA DEL REY, SPENCER MULTACK, GENERAL MAGISTRATE ROBERT S. SINGER) acted in accordance with a policy or custom established by their respective employers. This policy involved depriving litigants of their constitutional rights without due process of law and retaliating against individuals who opposed their corrupt practices by depriving them of their constitutional rights without affording them due process of law.

158.    The Defendants THIRD DISTRICT COURT OF APPEALS and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA failed to investigate, and conduct disciplinary proceedings against those judges who were retaliating against individuals who complained about those state Judges' conduct, failed to adopt clear policies against retaliation and deprivation of rights without due process, and failed to properly train its JUDGES as to the proper role of judges in private disputes such as family cases and appeals.

159.    The Defendant's THIRD DISTRICT COURT OF APPEALS and THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA policy or custom, and its failure to adopt clear policies and failure to properly train its judges, were a direct and proximate cause of the constitutional deprivation suffered by Plaintiff.

160.    The Plaintiff's attempt to file in State Court on **April 24, 2014**, was rejected by the clerk, denying thereby access to the Court without due process.

161.    Therefore, the DEFENDANTS deprived the Plaintiff of his constitutional right to access the Courts, in violation of his right to Due Process of Law, and in retaliation for Plaintiff's involvement in the Protected Activities, while acting under color of state law in violation of 42 U.S.C. § 1983.

162.    Failure to grant the relief requested herein will result in ongoing irreparable harm to the Plaintiff, as the Plaintiff remains unable to access the state court, thereby depriving them of their constitutional right to seek redress for grievances.

163.    The Plaintiff in this case has tried all legal remedies, appeals, writs of prohibition, and mandamus, however, they are all intentionally frustrated by the 3d DCA Judges, and the Fla. Sup. Ct. elected not to exercise jurisdiction.

164.    Furthermore, relying on the U.S. Sup. Ct. as a remedy is impractical given that it only accepts about one percent of the cases it receives per year, rendering it an illusory option.

165.    As a direct, natural, and proximate result of DEFENDANTS' actions towards the Plaintiff, Plaintiff suffered damages.

166.    **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANTS named in this count as follows:

167.     Awarding attorney's fees and costs, and issuing a prospective declaratory judgment against all the DEFENDANTS named in this count, as outlined in the Prayer for Relief section of this complaint;

### COUNT 5.:     CONSPIRACY UNDER § 1983.

168.     Plaintiff further states that the DEFENDANTS SCOTT BERNSTEIN, MARCIA DEL REY, SPENCER MULTACK, THOMAS LOGUE, (all state actors), along with MANUEL A. SEGARRA III. MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (collectively referred to as the "DEFENDANTS" through this Count), acting under color of state law, did the following:

169.     There was an agreement (the "Agreement") among all co-conspirators that share the following common objective (the "Objective") to deprive the Plaintiff of constitutional rights without due process of law and retaliate against MR. POLO for his engagement in Protected activities.

170.     The Defendants utilized the judicial system as a retaliatory tool and leveraged the authority of their judicial positions to inflict harm upon MR. POLO in conspiracy with private parties (the "Method").

171.     At all times relevant is in this count that, in addition to the acts described herein, Ms. Hernandez ratified the actions of JUDGES BERNSTEIN, DEL REY, and MULTACK by prolonging the litigation, without a reasonable expectation of success, when it was evident that the court lacked jurisdiction to entertain motions for attorney's fees. This behavior furthered her agreement with the other co-conspirators to deprive MR. POLO of his constitutional rights without due process of law.

172.     At all times relevant is in this count that Mr. Martinez, as part of this conspiracy, tried to entrap MR. POLO by confronting him with the hopes of creating a physical altercation in front of police cameras to cause MR. POLO'S arrest. This action was designed to create a pretext for Bernstein to deprive MR. POLO of his custody rights.

173.     Using the Judicial System, the DEFENDANTS, and their coconspirators did the following intentional and malicious overt acts in pursuance of the conspiracy:

**(A)JUDGE BERNSTEIN, LILLIANA REAL, MERLIN HERNANDEZ AND RANDOLPH MARTINEZ (THE "CO-CONSPIRATORS" IN THIS SECTION)AGREE TO DEPRIVE THE PLAINTIFF OF HIS RIGHT TO ACCESS TO THE COURT BEFORE BEING DEPRIVE OF OF LIBERTY.**

174.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (A) and (B) (I), and further states that: on **February 11, 2014,** the GAL agreed with JUDGE BERNSTEIN, MS. HERNANDEZ, and MR. MARTINEZ and HERNADEZ'S ATTORNEYS to fabricate a false emergency. This fabrication was used as justification to remove the children from MR. POLO's custody without providing him the opportunity to access the court before suffering this deprivation.

175.     On the same date, MS. HERNANDEZ and MR. MARTINEZ deprived the Plaintiff of his constitutional right to access the court before being deprived of his liberty right to exercise care, custody, and management of his children, by taking the children from the daycare without legal authority or consent from MR. POLO.

176.     The GAL tried to entrap MR. POLO by encouraging the daycare owner to call the police on MR. POLO if he attempted to exercise his constitutional right to custody, then called MR. POLO and demanded for him to refrain from picking up the children.

177.     Additionally, BERNSTEIN intentionally delayed the emergency motion for 7 days, hoping MR. POLO would react rashly, thus providing grounds for removing custody.

**(B) JUDGE BERNSTEIN, MS. REAL, AND MS. HERNANDEZ AGREED TO DEPRIVE THE PLAINTIFF OF ACCESS TO THE COURT WITHOUT AFFORDING THE PLAINTIFF A REAL (MEANINGFUL) OPPORTUNITY TO BE HEARD.**

178.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (A) and (B) (I), and further states that: To achieve their objective, they agree to build a case against MR. POLO to justify giving MS. HERNANDEZ custody that was not justified, otherwise, by fact or law.

179.     In furtherance of the agreement, MS. HERNANDEZ intentionally created bruises and rashes on the children. She then sent the children to MR. POLO'S house in that condition, aiming to provoke MR. POLO to complain to the person overseeing the protection of the children's best interests, their Guardian, Ms. Real, which MR. POLO did.

180.    Afterward, the GAL fabricated a report falsely accusing MR. POLO of building a case against Ms. Hernandez and the GAL. To support this accusation, she testified under oath to the false statements contained in her report.

181.    The Guardian ad Litem (GAL) filed the report the day before the Final Hearing, despite the requirement for submission 20 days prior. Judge Bernstein denied MR. POLO the opportunity to rebut Ms. Real's false allegations by dismissing a continuance request. This decision aimed to use the report's allegations to grant Ms. Hernandez timesharing and child support, even though it lacked support from fact and/or law, as ultimately happened.

**(C) BERNSTEIN, MS. HERNANDEZ, AND HERNANDEZ'S ATTORNEYS AGREED TO ALLOW MR. POLO TO TAKE THE CHILDREN ON VACATION TO START BUILDING A CASE AGAINST MR. POLO, TO EVENTUALLY DEPRIVE THE PLAINTIFF OF HIS PROPERTY INTEREST.**

182.    Plaintiff re-alleges all relevant paragraphs under §5, §6 (B) (I), and further states that: On **December 15, 2015,** MS. HERNANDEZ brought a dispute in front of the court about who had the right to take the children on vacation.

183.    JUDGE BERNSTEIN intentionally refused to make a ruling regarding who had the right to take the children on vacation and waited for nine (9) days, until after MR. POLO had already left on vacation with the children to file an order regarding the previous hearing. This delay was intended to allow MR. POLO to take the children and establish grounds for finding him in contempt upon his return, which indeed occurred later.

184.    When MR. POLO returned, MS. HERNANDEZ filed a motion for contempt to find MR. POLO in contempt and JUDGE BERNSTEIN found MR. POLO in contempt.

**(D) JUDGE BERNSTEIN, MR. SEGARRA AND MS. HERNANDEZ AGREED TO DEPRIVE THE PLAINTIFF OF THE LIBERTY RIGHT OF MR. POLO TO EXERCISE AND THE CHILDREN TO RECEIVE CUSTODY AND CARE OF THE CHILDREN WITHOUT DUE PROCESS OF LAW, IN RETALIATION FOR MR. POLO FILING A CIVIL CASE AGAINST BERNSTEIN'S CO-CONSPIRATORS ON FEBRUARY 13, 2017.**

185.    Plaintiff re-alleges all relevant paragraphs under §5, §6 (B) (I), and further states that: On or about **April 3, 2017,** BERNSTEIN, SEGARRA, and MS. HERNANDEZ (in this count the "Co-conspirators") agreed to send the case to a pre-arranged co-parenting coordinator, who

MR. POLO found out that she was supposed to return a report proposing a change of custody using "domestic violence" as the reason for achieving this.

186.     To accomplish their goal, JUDGE BERNSTEIN issued an order of referral to a co-parenting coordinator on **April 3, 2017**, without a hearing and without serving MR. POLO with the order.

187.     The order claimed a history of domestic violence allegations, even though this was not an issue in front of BERNSTEIN'S court. Additionally, it falsely alleged that the parties had the opportunity to consult with an attorney or domestic violence advocate, and that the referral to the co-parenting coordinator was made "with the prior consent of the parties..."

188.     Judge BERNSTEIN waited for four months, and then, on **August 01, 2017**, he called for a hearing on his own and BERNSTEIN sent the case to the co-parenting coordinator.

189.     Even though there was no pending issue to be resolved by the co-parenting coordinator, other than BERNSTEIN'S fabricated domestic violence issue, MR. SEGARRA and MS. HERNANDEZ consented to JUDGE BERNSTEIN'S plan by SEGARRA failing to object and MS. HERNANDEZ registering with Family Court Services for the coordinator services.

190.     The plan was frustrated by MR. POLO when discovered the plan and put in an email to the Co-parenting coordinator on or about **January 2, 2018**. Consequently, BERNSTEIN, HERNANDEZ, and SEGARRA desisted from their plan.

**(E) JUDGE BERNSTEIN, MR. SEGARRA AND MS. HERNANDEZ AGREED TO DEPRIVE MR. POLO OF ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW ON OCTOBER 24, 2017.**

191.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (B) (I), and further states that: On **October 24, 2017**, BERNSTEIN held a hearing for "Resolution of Competing Orders."

192.     MR. POLO arrived at the hearing, the hearing was an ambush prepared by BERNSTEIN and SEGARRA where Segarra presented a page list of motions falsely indicating that all the motions in the list were still pending on the docket, expecting to confuse MR. POLO and make MR. POLO believe that he was acting vexatiously for having open motions in the docket.

193.     JUDGE BERNSTEIN pretended to be upset at MR. POLO and remove MR. POLO's access to the Court without notice and opportunity to be heard, and MR. POLO was unable to file *anything* after that.

**(F) JUDGE BERNSTEIN AND MR. SEGARRA AGREED TO DEPRIVE MR. POLO OF ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW TO REINFORCE THE CASE THEY WERE BUILDING AGAINST MR. POLO.**

194.    Plaintiff re-alleges all relevant paragraphs under §5, §6 (B) (I), and further states that: On **October 2, 2018**, BERNSTEIN issued an order depriving MR. POLO of his right to access the court by prohibiting him from filing "anything" without notice and opportunity to be heard.

195.    Moreover, during the hearing, JUDGE BERNSTEIN, to build the case against MR. POLO, continuously said that MR. POLO pretended to be an attorney in his courtroom, and MR. POLO continuously corrected JUDGE BERNSTEIN'S false allegations.

196.    During the hearing, MR. POLO learned that MR. SEGARRA had engaged in ex-parte communication by providing information to JUDGE BERNSTEIN disclosed only to MR. SEGARRA in a previously never-ordered or printed deposition taken on **May 23, 2018**.

197.    During the hearing, Bernstein attempted to obtain MR. POLO's graduation date to ensure there was enough time to fabricate a case against him before graduation. This tactic mirrored an earlier attempt by MR. SEGARRA during the abovementioned deposition.

**(G) GENERAL MAGISTRATE SINGER HAD AN AGREEMENT WITH JUDGE BERNSTEIN TO DEPRIVE MR. POLO OF ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW**

198.    Plaintiff re-alleges all relevant paragraphs under §5, §6 (D) and further states that: In furtherance of their agreement, on **July 11, 2018**, at the final hearing, General Magistrate Singer, without notice and opportunity to be heard, deprived the Plaintiff of Access to the Court by issuing an order dismissing the Plaintiff's Petition for Modification based on affirmative defenses not raised in the pleading by the opposing party.

**(H)JUDGE MARCIA DEL REY AND JUDGE MULTACK HAD AN AGREEMENT WITH JUDGE BERNSTEIN, WITH MR. SEGARRA, AND WITH MS. HERNANDEZ TO DEPRIVE MR. POLO OF HIS CONSTITUTIONAL RIGHT WITHOUT DUE PROCESS OF LAW.**

199.    Plaintiff re-alleges all relevant paragraphs under §5, §6 (E) and (F) and further states that: On two different occasions, on **January 6, 2019, and on May 5, 2021**, without notice and opportunity to be heard, JUDGE DEL REY deprived the Plaintiff of access to the court by

leaving MR. POLO without an attorney knowing that there was an order dated **October 2, 2018**, which was preventing the Plaintiff from having ANY access to the court.

200.     Moreover, JUDGE DEL REY prevented MR. POLO from having a hearing about whether his constitutional right to access the court should be reinstated for lack of a valid enforceable constitutional order depriving MR. POLO of such a right.

201.     After removing the limitations in MR. POLO'S access to the court, when JUDGE MULTACK found that MR. POLO had filed for injunctive relief in federal court against, among others, JUDGE BERNSTEIN and JUDGE DEL REY, on **July 11, 2022**, JUDGE MULTACK deprived the Plaintiff of his right to access the court by issuing an order that restricted his ability to file motions, limiting them to just one motion. This action was taken without providing the Plaintiff with notice and opportunity to be heard

202.     Additionally, JUDGE DEL REY and JUDGE MULTACK refused to let go of the Jurisdiction, knowing the court had lost jurisdiction to adjudicate attorney's fees by the time they became the JUDGES in the case.

203.     Additionally, JUDGE MULTACK granted attorney's fees not supported by law and/or facts to create financial harm to MR. POLO.

**(I) THOMAS LOGUE, ERIC Wm HENDON, ALEXANDER S. BOKOR, IVAN F. FERNANDEZ, MONICA GORDO, FLEUR J. LOBREE, NORMA S. LINDSEY, KEVIN EMAS, EDWIN A. SCALES III, AND BRONWYN C. MILLER (THE "3D DCA JUDGES") HAD AN AGREEMENT WITH STU MANAGEMENT AND JUDGE BERNSTEIN TO DEPRIVE HIM OF ACCESS TO THE COURT.**

204.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (G) and further states that: Judge LOGUE, who was the Chief Judge at the 3rd DCA, and also an adjunct Professor of Defendant STU, acting in concert with STU management, influenced the other 3D DCA JUDGES to engage in the following acts:

205.     Judge LOGUE, HENDON, BOKOR, SCALES, and MILLER, were involved in intentionally fabricating and adopting false facts without any evidence supporting those facts on the record.

206.    Judges FERNANDEZ, GORDO, LOBREE, HENDON, LINDSEY, EMAS, SCALES, MILLER, and LOGUE intentionally and repeatedly declined to apply the correct legal principles to the admitted facts of the Plaintiff's family case, despite being fully aware of them.

207.    Judges LINDSEY, HENDON, LOBREE, SCALES, and MILLER cited irrelevant laws with the malicious intent of depriving the Plaintiff of the opportunity to appeal to the Florida Supreme Court. Furthermore, they deliberately neglected to address other valid issues raised on appeal.

208.    The Judges FERNANDEZ, EMAS, and HENDON intentionally and maliciously dismissed a Writ of Mandamus as moot, disregarding the fact that the three essential elements of Mandamus were still in existence and under dispute.

209.    Judges SCALES, HENDON, and MILLER intentionally employed confusing and irrelevant language, introduced facts not in dispute, and distorted the arguments presented by MR. POLO. Additionally, they applied a statute that was neither argued by MR. POLO nor relevant to the case and cited irrelevant case law.

210.    LOGUE, EMAS, and FERNANDEZ, issued a Per Curiam Affirm ("PCA") order, with the intent of preventing the Plaintiff from appealing their orders to the Florida Supreme Court.

211.    At all times relevant in this count, MR. SEGARRA acted within the scope of his duties as MS. HERNANDEZ and MR. MARTINEZ agent when he engaged in providing misleading information to STU Management..

212.    Therefore, the DEFENDANTS named in this count conspired to deprive the Plaintiff of his constitutional rights in direct violation of 42 U.S.C. § 1983.

213.    As a direct, natural, and proximate result of DEFENDANTS' actions towards the Plaintiff, Plaintiff suffered damages.

214.    **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANTS named in this count as follows:

215.    Awarding attorney's fees, cost, and issuing a prospective declaratory judgment against all the DEFENDANTS named in this count, as outlined in the Prayer for Relief section of this complaint;

216.     Awarding judgment holding MANUEL A. SEGARRA III, MERLIN
HERNANDEZ, and RANDOPH MARTINEZ severally and jointly liable for the Plaintiff's
damages as outlined in the Prayer for Relief section of this complaint.

**COUNT 6.:    CONSPIRACY TO DEPRIVE MR. POLO OF HIS RIGHT TO
CONTINUED ENROLLMENT AT STU, WITHOUT DUE PROCESS OF LAW.**

217.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (B) (II), and further states
that: the DEFENDANTS SCOTT BERNSTEIN, MANUEL A. SEGARRA III, and MERLIN
HERNANDEZ (collectively referred to as the "DEFENDANTS" through this count), while acting
under color of state law, did the following:

218.     After learning which school MR. POLO was attending during the hearing on
**August 01, 2017**, Judge Bernstein convened a meeting with Dean Lawson and Dean Moore. At
this meeting, they agreed for Judge Bernstein to fabricate a pretext, utilizing STU's Honor Code
Rules, to justify MR. POLO's expulsion from law school. Additionally, Lawson and Moore agreed
to allow Judge Bernstein to utilize the Honor Council proceeding for this purpose.

219.     On **January 31, 2019,** acting in the clear absence of all jurisdiction, and engaging
in non-judicial acts, JUDGE BERNSTEIN sent a letter to DEAN LAWSON, containing his
**January 29, 2019** order of recusal. This order provided the pretext BERNSTEIN agreed to provide
to DEAN LAWSON and DEAN MOORE, which they needed to initiate the honor proceeding.

220.     DEAN LAWSON and DEAN MOORE consented to Judge Bernstein's use of the
Honor Council proceeding against MR. POLO in violation of the Honor Code's Section 3.03
(A)(3) which prohibited BERNSTEIN'S use of the Honor Council to resolve his "personal
conflicts."

221.     Additionally, STU did not make a decision based on Clear and Convincing
Evidence as called for by the Honor Council's rules, but on their agreement with JUDGE
BERNSTEIN to deprive MR. POLO of his property interest right in the continued enrollment at
STU without due process.

222.     MR. SEGARRA took on the role of an investigator for STU, actively seeking and
providing filings to be used against MR. POLO.

223.     On **May 17, 2019**, Lawson sent MR. POLO an official letter officially confirming and finalizing the expulsion. In the letter, she falsely claimed to have reconsidered all the evidence and allegations in the case.

224.     Therefore, the DEFENDANTS named in this count conspired to deprive the Plaintiff of his constitutional rights in direct violation of 42 U.S.C. § 1983.

225.     As a direct, natural, and proximate result of DEFENDANTS' actions towards the Plaintiff, Plaintiff suffered damages.

226.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANTS named in this count as follows:

227.     Awarding attorney's fees and costs, and issuing a prospective declaratory judgment against all the DEFENDANTS named in this count, as outlined in the Prayer for Relief section of this complaint;

228.     Award judgment holding SCOTT BERNSTEIN, MANUEL A. SEGARRA III, and MERLIN HERNANDEZ severally and jointly liable for the Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

### COUNT 7.:     ARBITRARY, CAPRICIOUS, MALICIOUS, AND LACKING RATIONAL BASIS BREACH OF IMPLIED IN-LAW CONTRACT.
### AGAINST ST. THOMAS UNIVERSITY, INC.

229.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (C) and further states that: DEFENDANT ST. THOMAS UNIVERSITY, INC. (the "DEFENDANT" in this count), through its agents, DEAN LAWSON, MR, SILVER, and DEAN MOORE, (collectively referred to as the "STU MANAGEMENT") did the following:

230.     As of **January 31, 2019**, MR. POLO had an implied contract with STU, based on the terms in the "Student Handbook 2014-2015." Under this contract, MR. POLO was to pay for STU's legal education program, and in return, STU would grant him a JD (Juris Doctor) degree and a Tax Law Certificate. Both MR. POLO and STU were actively fulfilling their agreement as of the **January 31, 2019** letter.

231.     When MR. POLO enrolled at STU, paid a deposit, and covered all legal education fees with Federal Student Loans, none of these payments were in default by **January 31, 2019**. He was close to completing his JD in Law and a Tax Law Certificate.

232.     STU had a duty to substantially perform the terms of the agreement, which are those expressed within the Student Handbook like Section 3.03 (A)(3) which prohibits the use of the Honor Code to resolve personal conflicts, Section 3.04 (E), that requires a single hearing and finding the accused student guilty by clear and convincing evidence, and Section 3.04(D)(3)(a) which grants the right for MR. POLO to be present during all testimony.

233.     However, STU Management, breached that duty when they substantially violated the terms of the agreement by allowing Bernstein to use the Honor Council to resolve his personal conflicts with MR. POLO, by failing to find MR. POLO guilty by clear and convincing evidence, by allowing MS. SILVER to engage in further finding of excuses, and by excluding MR. POLO from the hearing when MR. PLANAS testified. Additionally, they had made their decision to terminate MR. POLO even before the second hearing/

234.     STU MANAGEMENT was acting under color of state law, therefore MR. POLO was entitled to the same due process given to Public University students when state action is present. Therefore MR. POLO was entitled to confront his accuser to have access to all the evidence that was going to be used against him, and he was never afforded such an opportunity.

235.     Therefore, for all the facts contained in this court, STU, and its agents, Arbitrarily, Capriciously, and Maliciously breached the Implied In-Law Contract STU had with MR. POLO.

236.     As a direct, natural, and proximate result of the actions of the DEFENDANT ST. THOMAS UNIVERSITY, INC., and the actions of its Agents DEAN LAWSON, DEAN MOORE, and MR. SILVER, towards the Plaintiff, Plaintiff suffered damages.

237.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANT named in this count as follows:

238.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against the DEFENDANT named in this count, as outlined in the Prayer for Relief section of this complaint;

239.     Award judgment holding ST. THOMAS UNIVERSITY, INC., severally and jointly liable for the Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

## COUNT 8.:     TORTIOUS INTERFERENCE WITH CONTRACT

240.     Plaintiff re-alleges all relevant paragraphs under §5, §6(B)(I) and (C), and further states that: and further states that SCOTT BERNSTEIN (the "DEFENDANT" throughout this Count), did the following:

241.     As of **January 31, 2019**, MR. POLO had an implied contract in law with STU based on the terms in the "Student Handbook" 2014-2015. Under this contract, MR. POLO was to pay for STU's legal education program, and in return, STU would grant him a JD (Juris Doctor) degree and a Tax Law Certificate. Both MR. POLO and STU were actively fulfilling their agreement as of the **January 31, 2019** letter.

242.     When MR. POLO enrolled at STU, paid a deposit, and covered all legal education fees with Federal Student Loans, none of these payments were in default by **January 31, 2019**. He was close to completing his JD in Law and a Tax Law Certificate.

243.     SCOTT BERNSTEIN knew that, as a student at STU, MR. POLO had a contractual relation with STU and a legal right to obtain, upon completion of all required courses of study, a Juris Doctor Degree and a Tax Law Certificate from STU where MR. POLO was studying Law.

244.     On **January 31, 2019**, SCOTT BERNSTEIN intentionally interfered with and disrupted the contract between STU and MR. POLO while acting without jurisdiction. He maliciously provided STU with a pretext to breach their agreement with MR. POLO by sending a letter (a non-judicial act) containing his Order of Recusal to STU management.

245.     On January 31, 2019, MR. POLO was never under investigation for STU's ethical concerns.

246.     Therefore, but for the interference of SCOTT BERNSTEIN, STU would not have breached its agreement with MR. POLO, nor would it have had grounds to initiate a sham Honor Council Proceeding just a few weeks before MR. POLO's graduation.

247.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANT, SCOTT BERNSTEIN as follows:

248.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against the DEFENDANT, SCOTT BERNSTEIN, as outlined in the Prayer for Relief section of this complaint;

249.     Award judgment holding DEFENDANT, SCOTT BERNSTEIN, severally and jointly liable for the Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

**COUNT 9.:     GROSS NEGLIGENCE UNDER FLORIDA LAW**

250.     Plaintiff re-alleges all relevant paragraphs under §5 §6(B)(I) and (C), and further states that: ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., (the "DEFENDANTS" through this Count), did the following:

251.     DEFENDANT ST. THOMAS UNIVERSITY, INC., employed TAMARA F. LAWSON; JAY S. SILVER; and PATRICIA MOORE and was engaged in the exercise of providing legal education to members of our community.

252.     DEFENDANT SEGARRA & ASSOCIATES, P.A., employed MR. SEGARRA and was engaged in the exercise of providing services to members of our community.

253.     The conduct of the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. amounted to gross negligence through their wanton and reckless disregard for proper training and supervision of their respective employees which was the proximate cause of the Plaintiff's injuries and damages.

254.     DEAN LAWSON, DEAN MOORE, MR, SILVER, and MR. SEGARRA were acting in the course and scope of their employment duties as employees of their respective employers, at the time of the incident complained of herein, and they had a duty to perform their employment activities so as not to endanger or cause harm to the Plaintiff.

255.     Notwithstanding these duties, the DEFENDANTS ST. THOMAS UNIVERSITY; INC. and SEGARRA & ASSOCIATES, P.A.; breached these duties with deliberate indifference and gross negligence and without regard to MR. POLO'S rights and welfare through creating an environment in which the unconstitutional depravations conducted by TAMARA F. LAWSON, JAY S. SILVER, PATRICIA MOORE, and MR. SEGARRA were viewed as acceptable to the

DEFENDANTS ST. THOMAS UNIVERSITY; INC. and SEGARRA & ASSOCIATES, P.A., which caused serious injuries and damages to the Plaintiff.

256.     DEAN LAWSON, DEAN MOORE, MR. SILVER, and MR. SEGARRA had a specific intent to harm the Plaintiff in retaliation for his speech against corruption in the Judiciary, which was known to and condoned, ratified, and consented to by the president of STU, DAVID A. ARMSTRONG, by the law school DEAN LAWSON, by the Dean of Academic Affairs DEAN MOORE (Both Deans intentionally participated in harming the Plaintiff), and by the president of SEGARRA & ASSOCIATES, P.A., MR. SEGARRA (who also participated in intentionally harming MR. POLO).

257.     DEFENDANTS ST. THOMAS UNIVERSITY INC., and SEGARRA & ASSOCIATES, P.A. along with their employees/supervisees; knew or should have known that by breaching these duties they would injure the Plaintiff.

258.     THE DEFENDANTS had a duty to exercise reasonable care through sufficient training and supervision, and/or just by using reasonable care not to harm MR. POLO. Their breach of those duties was reckless and amounted to gross negligence.

259.     As a direct, natural, and proximate result of the actions of the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., the actions of their respective Agents DEAN LAWSON, DEAN MOORE, MR. SILVER, and MR. SEGARRA towards the Plaintiff, Plaintiff suffered damages.

260.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. as follows:

261.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., as outlined in the Prayer for Relief section of this complaint;

262.     Award judgment holding the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., severally and jointly liable for the Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

### COUNT 10.:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

263.     Plaintiff re-alleges all paragraphs contained in §5, §6(C) including all subsections and §6(B)(II), and further states that DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, MS. HERNANDEZ, MR. MARTINEZ, SEGARRA & ASSOCIATES, P.A., and ST. THOMAS UNIVERSITY, INC., (the "DEFENDANTS" through this Count) did the following:

264.     As described in the incorporated paragraphs, DEAN LAWSON, DEAN MOORE, MR, SILVER (all together referred to as "STU Management"), and MR. SEGARRA were acting in the course and scope of their employment duties as employees of their respective employers.

265.     STU Management's conduct of (1) humiliating MR. POLO by forcing him into an honor council they knew to be a sham proceeding, (2) depriving MR. POLO of his degree substantially disregarding the weight of the evidence and their own rules, (3) conspiring with a state actor to deprive the Plaintiff of his interest in property without due process of law, (4) retaliating against the Plaintiff for MR. POLO'S involvement in Political Speech and for petitioning the government for redress of his grievances exposing corruption in the family court system, and (5) breaching their contractual duty to MR. POLO were intentional, reckless, and ST. THOMAS UNIVERSITY, INC., and its agents, and managers knew or should have known that emotional distress would likely result.

266.     MR. SEGARRA'S actions, including conspiring with a state actor and STU Management to deprive MR. POLO of his constitutional property rights to his Continued enrollment at STU without due process of law, and conspiring with JUDGES BERNSTEIN, DEL REY, MULTACK, and GM SINGER to deprive MR. POLO of court access without notice and opportunity to be heard, were intentional and reckless. SEGARRA & ASSOCIATES, P.A., its agents/managers, and MR. SEGARRA himself knew or should have known that these actions would likely cause emotional distress.

267.     The conduct of MS. HERNANDEZ, and MR. MARTINEZ of engaging, directly or indirectly (1), in planning, supporting, aiding, and/or abating in the deprivation of MR. POLO constitutional property right to his continued enrollment at STU without due process of law, (2) planning, supporting, aiding, and/or abating in the deprivation of MR. POLO constitutional to access the court without due process of law, (3) depriving MR. POLO of the custody of his children without allowing MR. POLO to access the court, and (3) engaging in provocations to get MR.

POLO arrested, were intentional, reckless and they knew or should have known that emotional distress would likely result from these actions.

268.     JUDGE BERNSTEIN's conduct, which includes, (1) interfering with MR. POLO's contractual obligations with STU and depriving MR. POLO of his constitutional property interest in his continued enrollment at STU without due process of law by providing STU with pretexts to terminate MR. POLO's career in law, (2) causing the initiation of an Honor Council proceeding against MR. POLO by providing fabricated allegations, which resulted in embarrassment and humiliation for MR. POLO when his peers and family members discovered the investigation into his ethical misconduct, and (3) retaliating against MR. POLO for his involvement in Political Speech and for petitioning the government for redress of his grievances exposing corruption in the family court system, were intentional, and reckless and he knew or should have known that emotional distress would likely result from these actions.

269.     The conduct described in previous paragraphs was and is outrageous; that is, it goes beyond all bounds of decency and is and ought to be regarded as odious and utterly intolerable in a civilized community.

270.     The conduct described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

271.     As a direct, natural, and proximate result of the actions of the DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, MS. HERNANDEZ, MR. MARTINEZ, ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., and the actions of their respective employees/Agents DEAN LAWSON, DEAN MOORE, MR. SILVER, and MR. SEGARRA towards the Plaintiff, Plaintiff suffered damages.

272.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF, and against the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. as follows:

273.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against the DEFENDANTS ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., as outlined in the Prayer for Relief section of this complaint;

274.      Award judgment holding the DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, MS. HERNANDEZ, MR. MARTINEZ, ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A., are severally and jointly liable for the Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

## § 8.PRAYER FOR RELIEF

275.      The Plaintiff, FRANK E. POLO., demands a trial by jury and seeks judgment, in an amount to be determined at trial, against SCOTT MARCUS BERNSTEIN, MERLIN HERNANDEZ, RANDOLPH MARTINES, SEGARRA & ASSOCIATES, P.A., and ST. THOMAS UNIVERSITY, INC. and he asks this Honorable Court to hold them jointly and severally liable for a range of damages, including special damages, past, present, and future medical expenses, reliance damage, loss of opportunity damages, compensatory damages, exemplary and punitive damages, pain and suffering, loss of past earnings, and impairment of future earning capacity.

276.      To issue a prospective declaratory judgment against all defendants named in this complaint, declaring that, in the absence of a constitutional order obtained with notice and opportunity to be heard, the plaintiff has a constitutional right to access the state court system under **Fla. Const. Art. 1, §§ 5 and 21**, and under the **U.S. Const., Amend. 1**. This right will be violated if any state actor, including but not limited to the defendants, their agents, anyone acting on their behalf, their associates, or their affiliates, prevents MR. POLO from having full access to the state courts without notice and opportunity to be heard. Such prevention would be in violation of **42 U.S.C. Sec. 1983**, the **U.S. Const., Amend. 5th and 14th**, and/or **Fla. Const. Art. 1, § 9**.

277.      Additionally, declaring that the **U.S. Const., Amend. 1**, and the **Fla. Const. Art. 1, §§ 4 and 5** confers on MR. POLO a right to engage in **core political speech** intended to rally public support for fighting judicial corruption in the Florida Court System and a right to petition the government for redress of his grievances without suffering retaliation for exercising such rights, which will be violated if the DEFENDANTS, their agents, anyone acting on their behalf, their associates, or their affiliates, engage in retaliatory actions against the Defendants for exercising the abovementioned rights.

278.      The Plaintiff also requests injunctive relief against, SCOTT MARCUS BERNSTEIN, MANUEL A. SEGARRA III, MERLIN HERNANDEZ, RANDOLPH

MARTINEZ, ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. This relief would mandate them to abstain from violating the plaintiff's constitutional rights or conspiring to do so through any means, including but not limited to their agents, representatives, associates, affiliates, or employees. They are also to refrain from retaliating against the plaintiff or any witnesses involved in the case, directly or indirectly, for attempting to address their inappropriate and unlawful behavior. Additionally, the Plaintiff seeks a declaration that the defendants named in this paragraph infringed upon the plaintiff's Federal Protective rights in contravention of Section 1983.

279.    Awarding judgment for attorney's fees and/or court costs and such other relief as the Court may deem just and proper, against, all the DEFENDANTS named in this Count, pursuant to **42 U.S.C.** § 1983 and **42 U.S.C.** §1988.

280.    Awarding any necessary equitable relief including prejudgment interest, and The Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1$^{8TH}$ ST APT 411
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com