United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Frank Polo, Sr., Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 23-21684-Civ-Scola |
| Scott Marcus Bernstein, in both his | ) |
| individual and official capacities, | ) |
| and others, Defendants. | ) |

## Second Omnibus Order

     Pro se Plaintiff Frank Polo, Sr., seeks damages and injunctive relief, in what is now his fifth attempt to plead his claim, against various Defendants, including state-court judges, a university, a law firm, two state courts, the mother of his children, and her boyfriend, based on alleged violations of Polo's federal and state constitutional rights and various state common laws. (5th Am. Compl., ECF No. 38.)[1] The Court struck Polo's first four complaints, explaining each time that they were shotgun pleadings, leaving the Court unable to readily discern the nature of or basis for his claims. (ECF Nos. 6, 10, 22, 29.) After dismissing Polo's case based on defects in his third amended complaint, and based on the screening provisions of 28 U.S.C. § 1915(e)(2)(B), Polo asked the Court to reconsider. (Pl.'s Mot. for Recons., ECF No. 27.) One of Polo's objections was the Court's application of the screening provisions to his complaint based on his request to proceed *in forma pauperis*. (*Id.* at 3–4.) Polo complained that although the Court had granted his request to proceed *in forma pauperis*, it was improper for the Court to apply the screening provisions when he had in fact paid the Court's filing fee in full. (*Id.*) Finding some merit to the point, and in recognition of Polo's representation that he would be engaging an attorney to help him (*id.* at 8), the Court then vacated its order granting Polo *in forma pauperis* status (Order, ECF No. 29 at 1). In doing so, the Court agreed that it would be improper for Polo's case to be dismissed under § 1915 screening and therefore afforded him one more chance to amend his complaint. (*Id.* at 2.) Since then, Polo has filed a fourth amended complaint (ECF No. 34), followed by a fifth amended complaint (to fix a formatting issue) (ECF No. 38). Because Polo has once again failed to comply with the Court's orders, as outlined below, the Court dismisses this case.

---

[1] Although this is Polo's sixth pleading, there were no substantive changes between the fourth amended complaint and the fifth.

Polo's initial complaint named dozens of Defendants and spanned 147 pages, containing over 700 numbered paragraphs. (Compl., ECF No. 1.) After the Court struck that complaint as a shotgun pleading, affording Polo a chance to replead his claims, Polo filed an amended complaint this time against twenty Defendants, comprised of a subset of the Defendants named in the initial complaint. (Am. Compl., ECF No. 9.) While the Court generously construed Polo's second attempt as marginally better than his first, the amended complaint did not even come close to remedying the defects identified in the Court's first order. Accordingly, the Court struck the amended complaint as well. (2nd Order, ECF No. 10 (noting that Polo's complaint continued to be "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action").) But, affording Polo the benefit of the doubt, based on his pro se status and on the incremental improvement of his second effort, the Court granted Polo "one final chance to replead his case," warning him that his failure to comply would "result in the dismissal of his case." (2nd Order at 1, 3.)

In response, Polo then filed his second amended complaint, now lodged against only two Defendants: state-court Judge Scott Marcus Bernstein and St. Thomas University, Inc. (2nd Am. Compl., ECF No. 18.) Shortly thereafter, he also sought leave to change course and proceed *in forma pauperis* so that the Court could appoint the United States Marshal's Office to effect service. (Pl.'s IFP Mot., ECF No. 20; Pl.'s Mot. to Appoint, ECF No. 19.) The Court granted Polo's *in forma pauperis* request and then proceeded to screen his complaint under § 1915, before burdening the U.S. Marshal with effecting service. (3rd (Omnibus) Order, ECF No. 22.) Upon screening, the Court dismissed the second amended complaint, under § 1915(2)(B), finding Polo's claims appeared time barred, as well as barred by various forms of immunity and for a failure to state a claim. (3rd Order at 3.) Because that dismissal was, at least in part, under § 1915(2)(B)(ii), the Court, in an abundance of caution, afforded Polo yet another chance to produce a viable complaint. (3rd Order at 3.)

With that, Polo filed his third amended complaint, again against only Judge Bernstein and St. Thomas. (3rd Am. Compl., ECF No. 25.) While Polo provided facts that could possibly salvage the untimeliness of some of his claims, he failed to meaningfully embrace the Court's shotgun-pleading admonishments and additionally "failed [to] establish that he is entitled to relief on his federal claims or that the Court has jurisdiction over his state-law claims." (4th Order, ECF No. 26, 3.) Accordingly, the Court dismissed his case, albeit without prejudice, under § 1915, but without further leave to amend. (4th Order at 3.) At the same time, the Court noted that, even if the Court had not dismissed Polo's complaint under § 1915, it would have dismissed it regardless

"based on his repeated failure to comply with the Court's orders regarding the shotgun nature of his pleading." (4th Order at 3.)

Although the Court then administratively closed the case, denying any other pending motions as moot, that was not the end of this matter. Instead, Polo sought reconsideration. (Pl.'s Mot. for Recons., ECF No. 27.) In his motion, Polo pointed out that it would be unfair for the Court to dismiss his case under § 1915 screening, based on his *in forma pauperis* status, when he had initially paid the full filing fee. (Pl.'s Mot. for Recons. at 4.) Recognizing the inherent inconsistency, the Court agreed, vacating its order granting Polo's motion to proceed *in forma pauperis* and, as a result, denying Polo's request that the U.S. Marshal be appointed to effect service. (5th Order, ECF No. 29.) At the same time, the Court found no reason to disturb that part of its previous order finding Polo's third amended complaint noncompliant with Federal Rule of Civil Procedure 8(a)(2), still amounting to a shotgun pleading. (5th Order at 2.) However, Polo, in his motion for reconsideration, advised that, if given one more chance to amend, he would engage counsel to assist him with formulating a proper pleading. (Pl.'s Mot. for Recons. at 8.) Based on this representation, combined with construing Polo's efforts very liberally, because of his pro se status (combined with his expenditure of the filing fee), the Court once again generously, perhaps overly so, afforded Polo all benefit of the doubt, noting that each iteration of his complaint suggested that he was "at least *trying*, albeit unsuccessfully, to address some . . . of the Court's concerns." (5th Order at 2.) Accordingly, the Court acquiesced to Polo's demand for one more chance at amendment, at the same time warning him that his case would be dismissed if that fifth attempt—his fourth amended pleading—failed to comply with the federal rules or any of the Court's previous orders. (5th Order at 2.)

Upon review, the Court finds Polo's latest amended pleading (ECF No. 38) is still wholly problematic. Most bewildering is Polo's *addition* of nine new defendants back into this case: three other state-court judges, a lawyer, that lawyer's law firm, the mother of Polo's children, her boyfriend, and two state courts. The Court directed Polo to amend his complaint in order to bring it into compliance with rule 8(a)(2) and 10(b) and the Court's orders; he was not given leave to add new parties and claims. This is particularly troubling considering that these new counts replicate all the pleading mistakes that the Court, through several iterations of the complaint, has previously brought to Polo's attention. Counts four and five are particularly illustrative of Polo's repeated failures to comply with the Court's orders.

Court four, for example, titled a "Petition for Prospective Declaratory Judgment under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57," spanning over almost forty paragraphs, is lodged against four Florida state-court judges and

two Florida courts, one a trial-level court and the other an appellate court. Within in this one count, Polo references several different rights, under both the United States constitution as well as the Florida constitution, that he says were violated: his right to access the courts; his right to be free from governmental retaliation for engaging in political speech; his right to be free from governmental retaliation for petitioning the government for redress of his grievances; the deprivation of his property rights without due process; and the deprivation of his liberty rights without due process. Furthermore, to the extent there are any relevant factual allegations, it is impossible for the Court (or the Defendants) to discern which allegations could possibly correspond which claims. And, despite being repeatedly warned to avoid doing so, Polo relies almost exclusively on vague and conclusory assertions in trying to state a claim. To provide but a small sample: "The Defendants' actions described in this Count were taken to harass Mr. Polo as retaliatory responses to the Plaintiff's engagement in these Protected Activities and not for other reasons."(5th Am. Compl. ¶ 134); Judge Bernstein "buil[t] a case against Mr. Polo to destroy Mr. Polo['s] career in law without due process of law." (*id.* ¶ 137); "Judge Del Rey retaliated against the Plaintiff by continuing to retain jurisdiction over the Plaintiff's family case after the Court lost jurisdiction to adjudicate attorney's fees with the intent of creating financial harm on Mr. Polo by granting attorney's fees not supported by fact and law in retaliation for Mr. Polo's engagement in the Protected Activities." (*id.* ¶ 146); "Judge Multack deprived the Plaintiff of his right to access the court by issuing an order that restricted his ability to file motions, limiting them to just one motion." (*id.* ¶ 148). "Judge Logue," along with others, was "involved in fabricating and adopting false facts without any evidence in the record to support those facts," "repeatedly and maliciously declined to apply the correct legal principles to the admitted facts of the Plaintiff's family case, despite being fully aware of them," and "issued a Per Curiam Affirm order, with the intent of preventing the Plaintiff from appealing [the] orders to the Florida Supreme Court." (*id.* ¶¶ 151, 152, 156.) Defendants faced with such allegations would be left thoroughly unable to discern the contours of the claims against them, leaving them hamstrung in their abilities to defend against Polo's suit. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015) (describing one of the quintessential types of shotgun pleadings as being "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"). This is exactly what the Court has repeatedly ordered Polo, over the course of several orders, not to do.

   The pleading deficiencies of count five further highlight Polo's noncompliance. This count, labeled "Conspiracy under § 1983," is brought

against, again, the four state-court judges, along with a lawyer, the mother of Polo's children, and her boyfriend. This count spans nearly 50 paragraphs and aside from alleging that these Defendants all "agreed" to deprive Polo of various rights there is not a single actual fact proffered to support the claim. Instead, Polo relies on repeatedly insisting that the "co-conspirators" all agreed amongst themselves to violate his due process rights and retaliate against him for his engagement in certain protected activities. (*E.g.*, 5th Am. Compl. ¶¶ 169 ("There was an agreement . . . ."), 171 (describing one Defendant as having "ratified the actions of" the other Defendants"); 174 (alleging some of the Defendants as having "agreed" with a guardian ad litem "to fabricate a false emergency," using that fabrication "as justification to remove the children from Mr. Polo's custody without providing him the opportunity to access the court before suffering this deprivation"); 178 (contending that some of the Defendants "agree[d] to build a case against Mr. Polo to justify giving [the children's mother] custody that was not justified, otherwise, by fact or law"); 204–210 (complaining that Judge Logue, "acting in concert with [St. Thomas] management, influenced other [Florida appellate] judges to" "intentionally fabricat[e] and adopt[] false facts," "intentionally and repeatedly decline[] to apply the correct legal principles," and "cite irrelevant laws with the malicious intent of depriving the Plaintiff of the opportunity to appeal").) In doing so, Polo shows how thoroughly he disregards the Court's multiple orders that he set forth allegations that are "simple, concise, and direct," "presented with such clarity and precision that the defendants will be able to readily discern what he is claiming and frame a responsive pleading." (5th Order at 2 (cleaned up) (citing *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 663 (11th Cir. 2019).)

     Nor do the allegations in any of Polo's other federal claims fare any better. He repeatedly insists, in purely summary fashion, that he was falsely accused of ethical misconduct, that various findings against him (in both state court and St. Thomas's honor council proceedings) were all made in the absence of facts or legal basis, that the Defendants deprived him of various protected interests without due process, that the Defendants all acted under the color of law, that he was retaliated against, and that various of the Defendants conspired together to fabricate a pretext to get Polo expelled from law school. Further, the exceedingly sparse facts that Polo does provide are not logically tethered to any particular claim, rendering it nearly impossible to discern their import or applicability to any one cause of action. In sum, once again, any "defendant who reads the complaint would be hard-pressed to understand the grounds upon which each claim against him rests." *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (cleaned up).

  Because Polo has repeatedly disregarded the Court's orders and because, after being afforded generous opportunities to amend, his complaint remains a shotgun pleading, his case is dismissed. As to Polo's *federal claims*, this dismissal is *with prejudice*, albeit on non-merits grounds. *See Arrington v. Green*, 757 F. App'x 796, 798 (11th Cir. 2018) (concluding that the district court did not abuse its discretion by dismissing a pro se plaintiff's complaint with prejudice, on shotgun-pleading grounds, where the plaintiff was given "at least one opportunity to re-plead the complaint"). As to Polo's remaining *state-law claims*, the Court exercises its discretion and declines to exercise supplemental jurisdiction over them, thus dismissing them *without prejudice*. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (explaining that where a complaint is dismissed as a shotgun pleading, and a further sua sponte amendment is not offered, any remaining state-law claims should be dismissed "without prejudice as to refiling in state court").

  The Court directs the Clerk to **close** this case. Any remaining pending motions are **denied as moot**.

  **Done and ordered**, in Miami, Florida, on July 22, 2024.

                _____
                Robert N. Scola, Jr.
                United States District Judge