*** COURTESY COPY***

# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR. )
   Plaintiff, )
          v. )   CASE NO: <u>**1:23-cv-21684**</u>
)
SCOTT MARCUS BERNSTEIN; )
MARCIA DEL REY; )
SPENCER MULTACK; )   **JURY TRIAL IS DEMANDED**
THOMAS LOGUE; )
MANUEL A. SEGARRA III; )
MERLIN HERNANDEZ; )
RANDOLPH MARTINEZ; )
ST. THOMAS UNIVERSITY, INC.; )
SEGARRA & ASSOCIATES, P.A.; )
)
         Defendants, )
)
)
)

FILED BY ~~SAS~~ D.C.

**AUG 19 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## § 1. AMENDED COMPLAINT TO ADD PARTIES UNDER FED. R. CIV. P. 15(a)

1. Plaintiff, FRANK E. POLO SR., files this complaint against the Defendants SCOTT MARCUS BERNSTEIN (Personal Capacity); MARCIA DEL REY (official Capacity); SPENCER MULTACK (Official Capacity); THOMAS LOGUE (Official Capacity); MANUEL A. SEGARRA III (Official and Personal Capacity); MERLIN HERNANDEZ (Personal Capacity); RANDOLPH MARTINEZ (Personal Capacity); ST. THOMAS UNIVERSITY, INC.; and SEGARRA & ASSOCIATES, P.A.; (the "DEFENDANTS" in this complaint) and alleges as follows:

## § 2. INTRODUCTION SUMMARY OF THE CASE

2. This case arises from claims under the First and Fourteenth Amendments of the U.S. Constitution, the Constitution and laws of the State of Florida, and 42 U.S.C. § 1983.

3. Plaintiff Frank Polo brings this action against all Defendants who directly or indirectly deprived him of constitutional rights under state law. These deprivations included, but were not limited to: deprivation of (1) his right to access the court for redress of grievances; (2) his liberty interest in his good name, reputation, honor, and integrity; (3) his property interest in his continued enrollment at law school; (4) his liberty interest in being free from governmental retaliation for seeking redress of his grievances, and (5) his liberty interest in being free from government

*** COURTESY COPY***

# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

FRANK E. POLO, SR. )
   Plaintiff, )
       v. )   CASE NO: **1:23-cv-21684**

SCOTT MARCUS BERNSTEIN; )
MARCIA DEL REY; )
SPENCER MULTACK; )   **JURY TRIAL IS DEMANDED**
THOMAS LOGUE; )
MANUEL A. SEGARRA III; )
MERLIN HERNANDEZ; )
RANDOLPH MARTINEZ; )
ST. THOMAS UNIVERSITY, INC.; )
SEGARRA & ASSOCIATES, P.A.; )
                  )
         Defendants, )
_____/ )
                  )
                  )

## § 1. AMENDED COMPLAINT TO ADD PARTIES UNDER FED. R. CIV. P. 15(a)

1.  Plaintiff, FRANK E. POLO SR., files this complaint against the Defendants SCOTT MARCUS BERNSTEIN (Personal Capacity); MARCIA DEL REY (official Capacity); SPENCER MULTACK (Official Capacity); THOMAS LOGUE (Official Capacity); MANUEL A. SEGARRA III (Official and Personal Capacity); MERLIN HERNANDEZ (Personal Capacity); RANDOLPH MARTINEZ (Personal Capacity); ST. THOMAS UNIVERSITY, INC.; and SEGARRA & ASSOCIATES, P.A.; (the "DEFENDANTS" in this complaint) and alleges as follows:

## § 2. INTRODUCTION SUMMARY OF THE CASE

2.  This case arises from claims under the First and Fourteenth Amendments of the U.S. Constitution, the Constitution and laws of the State of Florida, and 42 U.S.C. § 1983.

3.  Plaintiff Frank Polo brings this action against all Defendants who directly or indirectly deprived him of constitutional rights under state law. These deprivations included, but were not limited to: deprivation of (1) his right to access the court for redress of grievances; (2) his liberty interest in his good name, reputation, honor, and integrity; (3) his property interest in his continued enrollment at law school; (4) his liberty interest in being free from governmental retaliation for seeking redress of his grievances, and (5) his liberty interest in being free from government

retaliation for engaging in Political Speech. These deprivations violated Plaintiff's Fourteenth Amendment rights to due process of law under 42 U.S.C. § 1983.

4. Additionally, state causes of action accrued when STU maliciously, arbitrarily, and capriciously breached their contract with Mr. Polo by ignoring their own rules that were part of their agreement with him.

5. Discovering and exposing corruption became costly for Mr. Polo when he subpoenaed Microsoft to prove that JUDGE BERNSTEIN'S friend and appointed GAL had perjured herself in court and filed a misleading report. This led JUDGE BERNSTEIN to transform his corruption scheme into a retaliatory personal vendetta aimed at destroying the life, livelihood, and financial future of Mr. Polo and his family. Mr. POLO'S crime was standing up against corruption and running for office promising to fight corruption led by JUDGE BERNSTEIN.

6. Paradoxically, many of the Defendants are judges who intentionally disregarded their duty to uphold their oath to support the Constitution of the United States and the State of Florida, abusing their power against law-abiding citizens. Additionally, STU, a law school meant to teach ethical behavior and respect for the constitution and laws of the United States to future lawyers, engaged in egregious acts to deprive Mr. Polo of his constitutional rights. Upper management at STU turned a blind eye while their employees conspired with JUDGE BERNSTEIN to violate Mr. POLO'S constitutional rights.

7. Despite the egregious nature of JUDGE BERNSTEIN'S involvement in rights deprivation, the remaining Defendants conspired with him to bring about the harm he sought to inflict on Mr. Polo, ultimately succeeding.

## § 3. JURISDICTION, VENUE & STANDING

8. These claims arise under the First Amendment of the U.S. Constitution, and the the due process clause of the Fifth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. § 1331 and over all other state claims under 28 U.S.C. § 1367, and under 28 U.S.C. §2201.

9. Venue is proper under 28 U.S.C. §1391(b) The claims being sued upon arose in Miami-Dade County, Florida, which is where the Defendants at all material times resided or did business.

10. All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiff for which the Plaintiff is seeking relief. Therefore, the Plaintiff has "standing" to bring this cause of action.

## § 4. PARTIES

11. Plaintiff, FRANK E. POLO, SR. ("MR. POLO" or "POLO"), is a resident of Miami-Dade County, Florida.

12. At all times material, Defendants, SCOTT M. BERNSTEIN (Judge "BERNSTEIN"); MARCIA DEL REY (Judge "DEL REY"); and SPENCER MULTACK (Judge "MULTACK"). were State Judges, and employees of the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA (the "EJCC"), a dependency of the Florida Supreme Court (the State Judicial Branch). Therefore, they were state actors.

13. At all times material, the Defendant Judge THOMAS LOGUE (Judge "LOGUE"). He was an employee of the THIRD DISTRICT COURT OF APPEALS ("3d DCA"), which is a dependency of the Florida Supreme Court (the State Judicial Branch). Therefore, he was a state actor.

14. Defendant MANUEL A. SEGARRA III ("MR. SEGARRA" or "SEGARRA"). He was an employee, owner, decision maker, and operator of SEGARRA & ASSOCIATES, P.A.

15. Defendant, MERLIN HERNANDEZ, ("MS. HERNANDEZ") is being sued in her personal capacity. She was the Petitioner in Family Court case 2012-017787-FC-04 in the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA.

16. Defendant, RANDOLPH MARTINEZ, ("MR. MARTINEZ"). He was/is MS. HERNANDEZ'S boyfriend.

17. Defendant, SEGARRA & ASSOCIATES, P.A. (the "Law Firm"), is a Florida for-profit Corporation organized and existing under the laws of the State of Florida, with a principal place of business in Miami Dade County, Florida.

18. Defendant, ST. THOMAS UNIVERSITY, INC. ("STU"), is a Florida Not-for-Profit Corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami Dade County, Florida.

## § 5. GENERAL FACTS APPLYING TO ALL COUNTS

19. At all relevant times, all Defendants are considered "PERSONS" under 42 U.S.C. § 1983.

20. At all relevant times, Judges BERNSTEIN, DEL REY, and MULTACK acted as STATE JUDGES under the authority of Florida law and in their official capacities towards MR. POLO.

21. At all relevant times, Judge LOGUE was an employee of the THIRD DISTRICT COURT OF FLORIDA and acted under Florida law in his dealings with MR. POLO.

22. At all relevant times, MR. SEGARRA was the principal owner and manager of SEGARRA & ASSOCIATES, P.A., which is legally responsible for his actions under agency principles.

23. At all relevant times, TAMARA F. LAWSON ("DEAN LAWSON"), PATRICIA MOORE ("DEAN MOORE"), and JAY SILVER ("MR. SILVER") (collectively "STU MANAGEMENT") were employed by ST. THOMAS UNIVERSITY, INC., which is liable for their actions under agency principles.

24. At all relevant times, SEGARRA & ASSOCIATES, P.A. was engaged by MS. HERNANDEZ to provide legal services for a family matter. The firm was an agent of MS. HERNANDEZ and should have been aware that its services were used beyond the contract, including depriving MR. POLO of court access, property interests, and protection from retaliation.

25. MR. POLO was a party in a family case in THE ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, Case No. 2012-017787-FC-04. Judge SCOTT M. BERNSTEIN presided over this case from **July 7, 2012**, until **January 29, 2019**, when he recused himself.

26. The Defendants acted collectively, endorsing and supporting each other's actions. They collaborated and significantly contributed to the misconduct outlined in the complaint.

27. The acts complained of were committed intentionally, maliciously, and with disregard for MR. POLO'S constitutional rights, resulting in heightened damages and entitlement to exemplary (punitive) damages.

28. At all relevant times, MR. POLO tried to access the Court to file a document on April 24, 2024, and the clerk of the Court denied MR. POLO access to the file.

## § 6. STATEMENT OF FACTS

### (A) MERLIN HERNANDEZ AND RANDOLPH MARTINEZ[1]

29. After MR. POLO and MS. HERNANDEZ separated in 2012, and MS. HERNANDEZ became obsessed with taking sole custody and parental responsibility for the couple's children.

30. MS. HERNANDEZ initiated the family court case on **July 19, 2012**, seeking sole custody of their children and limiting visitation for MR. POLO to about two (2) hours per week, with supervised visitation with no legal or factual basis.

31. Upon information and belief, MR. MARTINEZ financed MS. HERNANDEZ'S legal harassment against MR. POLO for over eleven (11) years.

32. JUDGE BERNSTEIN appointed Lilliana Real (the "GAL") as a Guardian in the case, who claimed to Mr. Polo to be friends with Bernstein and implied she could influence his decisions. Subsequently, the GAL proceeded to build a case against Mr. Polo.

33. Thereafter, Ms. Hernandez began sending the children to MR. POLO with repeated rashes and bruises for which MR. POLO contacted MS REAL.

34. On **February 11, 2014,** the GAL, MS. HERNANDEZ, MR. MARTINEZ, and HERNANDEZ'S attorneys, manufactured a false emergency with no probable cause.

35. On the same date, MS. HERNANDEZ and MR. MARTINEZ took MR. POLO'S children from MR. POLO'S legal custody without court authorization or MR. POLO'S consent. The Plaintiff was not given notice and an opportunity to be heard before the children were removed.

### (B) JUDGE BERNSTEIN

### (I).   BERNSTEIN'S ACTS BEFORE RECUSAL

36. When the Children were removed from MR. POLO'S custody, JUDGE BERNSTEIN delayed the return of MR. POLO's children for seven days despite awareness of the custody deprivation without any legal basis.

---

[1] Although the names of the Defendants are used in many subsections of this Statement of Fact, it's important to note that this does not imply that the subsections do not apply to other parties mentioned in each subsection.

37. At the Final Hearing, JUDGE BERNSTEIN permitted the GAL to file her report late, denied MR. POLO's motion for a continuance, and allowed false testimony from the GAL.

38. On **May 26, 2015**, MR. POLO discovered evidence of the GAL's fraudulent actions and filed a Motion to Vacate the Final Judgment, and right after that JUDGE BERNSTEIN began to retaliate against MR. POLO and to take actions intended to harm MR. POLO'S career in law.

39. In late 2015, JUDGE BERNSTEIN intentionally failed to address a contract interpretation issue related to who had the right to take the children on vacation and waited until MR. POLO was on vacation with the children, then he issued an unclear order on **December 24, 2015**, which did not put MR. POLO on notice of his rights under the agreement.

40. Upon returning from his vacation, on **February 2, 2016**, JUDGE BERNSTEIN held MR. POLO in contempt of Court.

41. On **February 13, 2017**, MR. POLO filed suit against MR. BERNSTEIN'S appointed GAL, and other co-conspirators.

42. On **April 3, 2017**, JUDGE BERNSTEIN issued an order of referral to a parenting coordinator without a hearing or MR. POLO's consent, falsely citing a history of domestic violence.

43. On **October 23, 2017**, JUDGE BERNSTEIN met with ST. THOMAS UNIVERSITY management and agreed to build a case against MR. POLO to provide STU with a justification to initiate an honor council against MR. POLO.

44. The following day, he restricted MR. POLO'S court access without notice and opportunity to be heard and labeled MR. POLO as vexatious without evidence, based on a misleading list of "open motions" provided by MR. SEGARRA at the hearing.

45. Later, on **October 2, 2018**, JUDGE BERNSTEIN issued an order barring MR. POLO from filing anything.

46. At the **October 2, 2018** hearing, JUDGE BERNSTEIN falsely accused MR. POLO of pretending to be an attorney and later admitted to gross misrepresentation.

47. On **January 29, 2019**, JUDGE BERNSTEIN issued an Order of Recusal falsely accusing MR. POLO of ethical misconduct.

## (II).   BERNSTEIN'S ACTS AFTER HIS RECUSAL

48. Two days after JUDGE BERNSTEIN'S recusal from the Family Court case on **January 31, 2019**, he sent a letter (the "Letter") along with his order of recusal from **January 29th, 2019**, to the Dean of ST. THOMAS UNIVERSITY Law School, DEAN LAWSON.

49. Before JUDGE BERNSTEIN'S letter on **January 31, 2019**, MR. POLO had never been investigated nor had anyone complained to the school management about MR. POLO.

50. In the letter, JUDGE BERNSTEIN was claiming to be performing the official duty of a State Judge by sending the letter to DEAN LAWSON using the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with his official judicial Signature block identifying himself and signing as the Administrative Judge.

51. The letter encouraged STU to act upon the false allegations and manipulated facts that JUDGE BERNSTEIN had stated in his order of recusal which STU Management knew to be false.

### (C) ST. THOMAS UNIVERSITY, INC.

52. As of **January 31, 2019**, MR. POLO had a contract with STU, as defined by the "Student Handbook and Catalog." Under this contract, MR. POLO was to pay for STU'S legal education program, and in return, STU would grant him a JD (Juris Doctor) degree and a Tax Law Certificate. Both MR. POLO and STU were actively fulfilling their agreement as of the **January 31, 2019** letter.

53. When MR. POLO enrolled at STU, paid a deposit, and covered all legal education fees with Federal Student Loans, none of these payments were in default by **January 31, 2019**. He was weeks away from completing his JD and a Tax Law Certificate and had already walked.

54. STU Management allowed Bernstein to misuse the Honor Council to resolve his personal conflicts and to retaliate against MR. POLO, failed to prove MR. POLO's guilt by clear and convincing evidence, and subjected MR. POLO to a second proceeding after the first one concluded without finding any evidence of fault. These actions violated STU'S Honor Code Sections 3.03(A)(3) and 3.04(E).

55. Additionally, MR. POLO was excluded from the hearing when MR. PLANAS testified and was never given a summary of MR. PLANAS's testimony before it occurred, in violation of STU'S Honor Code Section 3.04(D)(3)(a).

56. Furthermore, MR. SEGARRA, whom STU knew MR. POLO had accused of ex parte communication with JUDGE BERNSTEIN, served as the investigator for STU. MR. SEGARRA selectively collected documents, attempting to depict MR. POLO'S actions in state court as unethical while excluding evidence of his reasonable behavior or legal justifications for such actions.

57. During the Honor Proceedings, MR. POLO'S political speech and views were raised by STU Employees twice: once when MR. SILVER asked MR. POLO about a social media post comparing Democrats to Nazis, and again when DEAN MOORE inquired about MR. POLO's political campaign during the appeal meeting.

58. MS. HERNANDEZ, actively sought to damage MR. POLO'S reputation in concert with DANIEL PEREZ, MR. POLO'S political rival, during MR. POLO'S political campaign and monitored MR. POLO'S social media posts.

59. DEAN MOORE drafted a "Highly Confidential Memorandum" with JUDGE BERNSTEIN'S letter attached, outlining STU Management's plan to attribute MR. POLO'S attorneys' actions to him and she was declaring MR. POLO guilty without providing any exculpatory evidence, and without concrete evidence against MR. POLO, but just conclusory statements.

60. STU Management concealed the evidence and false accusations listed in the Memorandum from MR. POLO until the hearing, where he was only partially informed about the evidence being used against him.

61. MR. POLO was never allowed to confront JUDGE BERNSTEIN or MR. JUAN CARLOS PLANAS, who he claimed to be either biased or lying.

62. Before the second hearing on **March 23, 2019**, STU had already decided to terminate MR. POLO, as evidenced by deactivating MR. POLO'S ID card for campus access, removing him from the security access list, revoking his network access, and removing MR. POLO'S pro-bono community hours from the system.

63. MR. POLO appealed the Honor Council's decision on or about **April 16, 2019**.

64. The appeal was an informal meeting with DEAN LAWSON and DEAN MOORE, during which they tried to coerce MR. POLO into admitting guilt for false accusations made by MR. BERNSTEIN.

65. None of the evidence presented against or in favor of MR. POLO was discussed. The meeting was merely an interrogation rather than a review of the appeal record.

66. DEAN LAWSON used the meeting to humiliate MR. POLO. Knowing his wife was outside and able to hear, DEAN LAWSON said, "I don't think your problem is cognitive, but I think your problem is one of honesty," when MR. POLO refused to declare himself guilty of MR. BERNSTEIN'S false accusations.

67. Moreover, STU Management humiliated MR. POLO in front of his peers, friends, and family members, who learned that MR. POLO had never graduated due to allegations of ethical wrongdoing. STU published MR. POLO'S expulsion in their official records.

68. On **May 17, 2019**, DEAN LAWSON sent MR. POLO a letter formalizing his expulsion, stating that she had reconsidered all evidence and allegations. However, DEAN LAWSON and DEAN MOORE substantially disregarded the weight of the evidence presented and did not discuss it with MR. POLO.

69. It was not until **May 20, 2019**, that MR. POLO discovered JUDGE BERNSTEIN'S letter to STU and the conspiracy between STU MANAGEMENT and JUDGE BERNSTEIN.

70. On **May 17, 2019**, MR. POLO gave STU the opportunity to rectify their mistake by emailing DEAN LAWSON, DEAN MOORE, and STU President DAVID ARMSTRONG. He informed them of the "Highly Confidential Memorandum," which he had never received before any hearings. This deprived MR. POLO of a fair chance to defend himself against the baseless and false allegations in the memorandum. However, they declined to address the issue.

71. STU Management, including STU'S President DAVID ARMSTRONG, ignored MR. POLO'S newly discovered evidence and refused to provide him a fair opportunity to clear his name based on evidence that was never available to MR. POLO during the Honor Council Proceedings.

### (D) GENERAL MAGISTRATE SINGER

72. On or about **July 11, 2018**, a hearing was held in front of GM SINGER, and GM SINGER, without notice and opportunity to be heard, dismissed the case sua sponte, based on an affirmative defense not raised in the pleading by the opposing party, as required under Florida Fla. Fam. Law. R. P. 12.140 (b).

### (E) JUDGE MARCIA DEL REY

73. After JUDGE BERNSTEIN recused himself, JUDGE MARCIA DEL REY was appointed as the new judge. However, JUDGE DEL REY had lost jurisdiction to adjudicate attorney's fees by that time.

74. Despite this, JUDGE MARCIA DEL REY refused to relinquish jurisdiction and attempted to grant MS. HERNANDEZ attorney's fees not supported by fact or law.

75. On **March 6, 2019**, and again on **May 5, 2021**, JUDGE DEL REY left MR. POLO without legal representation, despite being aware of an order dated **October 2, 2018**, that prohibited MR. POLO from accessing the court. MR. POLO never received notice or an opportunity to be heard before JUDGE DEL REY denied him the ability to file anything.

76. Additionally, JUDGE DEL REY engaged in dilatory tactics, such as rehearing motions that had already been addressed and requesting briefs that had already been submitted.

77. Moreover, JUDGE DEL REY prevented MR. POLO from having a hearing to determine whether his constitutional right to access the court should be reinstated, despite the lack of a valid enforceable constitutional order depriving MR. POLO of this right.

78. Upon information and belief, JUDGE DEL REY engaged in ex parte communication with MR. SEGARRA to alter her ruling after the hearing had concluded.

### (F) JUDGE MULTACK

79. On October 8, 2021, MR. POLO filed for injunctive relief against JUDGE DEL REY, JUDGE BERNSTEIN, and their employer, the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, in Federal Court. This action prompted JUDGE DEL REY'S recusal from the family case.

80. During a hearing on July 5, 2022, JUDGE MULTACK announced on the record his intention to lift the injunction preventing MR. POLO from accessing the court.

81. However, before concluding the July 5, 2022 hearing, JUDGE MULTACK learned that MR. POLO had filed a petition for injunctive relief in Federal Court, naming JUDGE DEL REY as a defendant, which led to JUDGE DEL REY'S forced recusal.

82. Subsequently, on July 11, 2022, without prior notice or an opportunity to be heard, JUDGE MULTACK issued two orders: one limiting MR. POLO'S filing rights to a single motion and another finding that MR. POLO had violated the Florida Bar's Rules of Professional Conduct, which do not apply to non-lawyers.

83. Despite MR. POLO'S multiple jurisdictional objections, JUDGE MULTACK retained jurisdiction and awarded attorney's fees to MS. HERNANDEZ, unsupported by facts or law..

### (G)JUDGE THOMAS LOGUE

84. On or about **April 6, 2022**, Judges THOMAS LOGUE (Judge "LOGUE") (who also serves as an adjunct Professor working for Defendant STU), influenced 3d DCA Judges ERIC Wm HENDON (Judge "HENDON"), AND ALEXANDER S. BOKOR (Judge "BOKOR") to engage in fabricating facts not presented in any pleadings/filings to deprive MR. POLO of a real opportunity to be heard.

85. Additionally JUDGE LOGUE, engaged in influencing his other peers to fabricate and adopt false facts without supporting evidence in the record. Additionally, he failed to apply the correct principles of law to the admitted facts of the case with the malicious intent of preventing the Plaintiff from succeeding on appeal, and they also engaged in practices designed to prevent MR. POLO to have a fair opportunity to appeal to a higher court, the Florida Supreme Court, like issuing Per Curiam orders, and/or citing irrelevant case law that was not pending in front of the Florida Supreme Court, without explaining how that law applied to MR. POLO'S case.

86. The last act of JUDGE LOGUE to prevent MR. POLO from having an opportunity to appeal to the Fla. Sup. Ct. was to deny and influence his peers to deny MR. POLO'S motion for rehearing on April 18, 2024.

### § 7.COMPLAINT

### COUNT 1.:   DEPRIVATION OF PROPERTY INTEREST IN VIOLATION OF THE PLAINTIFF'S 14TH AMENDMENT RIGHTS TO DUE PROCESS OF LAW UNDER 42 U.S.C. SECTION 1983.

87. Plaintiff re-alleges paragraphs §5, §6(B)(II), and §6(C) and states:

88. Defendants ST. THOMAS UNIVERSITY, INC. ("STU"), SEGARRA & ASSOCIATES, P.A., MANUEL SEGARRA, and JUDGE BERNSTEIN (collectively referred to as the "Defendants" in this Count) acted under color of state law, by conspiring with and acting heavily influenced by JUDGE BERNSTEIN; therefore, their actions can be attributed to the state, making them liable under Section 1983.

89. Plaintiff had a property interest in continued enrollment at STU and a liberty interest in his good name and reputation, protected under the 14th Amendment.

### (A) AGAINST JUDGE BERNSTEIN AND MR. SEGARRA

90. On **January 31, 2019**, JUDGE BERNSTEIN sent a letter on official court letterhead falsely accusing Plaintiff of ethical misconduct, despite no longer being involved in Plaintiff's family case. This letter led to the Plaintiff's wrongful expulsion from STU.

91. MANUEL SEGARRA contributed to the Plaintiff's wrongful expulsion by producing misleading evidence used by STU management at the Honor Council hearing.

### (B) AGAINST ST. THOMAS UNIVERSITY, INC., AND SEGARRA & ASSOCIATES, P.A.

92. STU and SEGARRA & ASSOCIATES, P.A. (collectively, "the Institutions") knew or should have known of their employees' propensity to violate constitutional rights and failed to act to prevent these violations, which led to Plaintiff's wrongful expulsion.

93. This propensity is evidenced by STU employees' reliance on false information provided by JUDGE BERNSTEIN and MR. SEGARRA to initiate and continue the Honor Council proceedings against Plaintiff, which were conducted without adhering to the procedural safeguards required under STU'S Honor Code.

94. MR. SEGARRA'S propensity is shown by his role as STU'S investigator in the Honor Council proceeding, where he produced misleading evidence to facilitate the deprivation of Plaintiff's rights.

95. Despite being aware of these issues, the Institutions failed to address or prevent the misconduct.

96. The Institutions' actions reflect a policy or custom of permitting or endorsing unlawful deprivations of rights.

97. The Institutions' upper management, with deliberate indifference, failed to properly discipline, train, or supervise employees, leading to unlawful conduct.

98. Management had actual knowledge of their employees' involvement in depriving Plaintiff of his constitutional rights.

99. This pattern of conduct directly deprived Plaintiff of his civil rights under the United States Constitution without due process.

100.    STU'S publication and dissemination of Plaintiff's expulsion damaged his reputation, causing embarrassment and humiliation among peers, community members, and educators.

101.    Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference, warranting both compensatory and punitive damages.

102.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including loss of educational and professional opportunities, financial losses, emotional distress, and damage to his reputation and standing in the community.

103.    **WHEREFORE**, the Plaintiff requests that this Court to:

A)  enter judgment in favor of the PLAINTIFF and against the Defendants holding the Defendants severally and jointly liable for the Plaintiff's damages.

B)  Grant compensatory and punitive damages;

C)  Award attorney's fees and costs pursuant to 2 U.S.C. § 1988, and

D)  issuing a prospective declaratory and injunctive judgment against the Defendants, as outlined in the Prayer for Relief section of this complaint.

**COUNT 2.:**    FIRST AMENDMENT RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 1983.

104.    Plaintiff re-alleges paragraphs §5, §6(B)(II), and §6(C) as if fully set forth herein.

105.    Defendants ST. THOMAS UNIVERSITY, INC. ("STU"), SEGARRA & ASSOCIATES, P.A., and MANUEL SEGARRA, in concert with JUDGE BERNSTEIN (collectively referred to as the "Defendants" in this Count) acted under color of state law, by

conspiring with and acting heavily influenced by JUDGE BERNSTEIN; therefore, their actions can be attributed to the state, making them liable under Section 1983.

106.   At all relevant times, Plaintiff engaged in First Amendment-protected activities, including filing a Motion to Vacate Final Judgment on **May 26, 2015**, accusing the Guardian ad Litem of fraud, and running for State Representative while publicly criticizing judicial corruption in the Miami-Dade Family Court System.

107.   Defendants were aware of Plaintiff's protected activities, as evidenced by their subsequent retaliatory actions.

108.   Defendants took adverse actions against Plaintiff that would deter a person of ordinary firmness from engaging in protected activities. These actions included:

A)  JUDGE BERNSTEIN'S entrapped Plaintiff to declare him in contempt of court and removed Plaintiff's court access without due process.JUDGE BERNSTEIN'S influence on Plaintiff's expulsion from STU.

B)  MANUEL SEGARRA'S creation of false or misleading evidence.

C)  STU'S initiation of Honor Council proceedings based on manipulated facts.

D)  MANUEL SEGARRA'S participation in producing misleading evidence.

E)  Plaintiff's expulsion from STU without a fair hearing.

109.   These adverse actions occurred after Plaintiff's protected activities and were a direct response to them.

110.   MANUEL SEGARRA, presented selective evidence to STU'S Honor Council, portraying Plaintiff's actions as unethical, impacting the proceedings leading to Plaintiff's expulsion.

111.   The timing and sequence of events, including JUDGE BERNSTEIN'S planning and execution of actions against Plaintiff after his protected activities, demonstrate a causal connection between Plaintiff's protected activities and the adverse actions.

### (A) AGAINST ST. THOMAS UNIVERSITY, INC., AND SEGARRA & ASSOCIATES, P.A.

112.     STU and SEGARRA & ASSOCIATES, P.A. (collectively, "the Institutions") knew or should have known of their employees' propensity to retaliate and violate constitutional rights and failed to act to prevent these violations, which led to Plaintiff's wrongful expulsion.

113.     This propensity is evidenced by STU employees' reliance on false information provided by JUDGE BERNSTEIN and MR. SEGARRA to initiate and continue the Honor Council proceedings against Plaintiff, which were conducted without adhering to the procedural safeguards required under STU'S Honor Code.

114.     MR. SEGARRA'S propensity is shown by his role as STU'S investigator in the Honor Council proceeding, where he produced misleading evidence to facilitate the deprivation of Plaintiff's rights.

115.     Despite being aware of these issues, the Institutions failed to address or prevent the misconduct.

116.     The Institutions' actions reflect a policy or custom of permitting or endorsing unlawful deprivations of rights and retaliation for the exercise of constitutionally protected rights.

117.     The Institutions' upper management, with deliberate indifference, failed to properly discipline, train, or supervise employees, leading to unlawful conduct.

118.     Management had actual knowledge of their employees' involvement in depriving Plaintiff of his constitutional rights and retaliating for the exercise of constitutionally protected rights.

119.     This pattern of conduct directly deprived Plaintiff of his civil rights under the United States Constitution without due process.

120.     STU'S publication and dissemination of Plaintiff's expulsion damaged his reputation, causing embarrassment and humiliation among peers, community members, and educators.

121.     Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference, warranting both compensatory and punitive damages.

122.     As a direct and proximate result of Defendants' actions, Plaintiff suffered retaliation for the exercise of constitutionally protected rights, other damages including loss of educational and professional opportunities, financial losses, emotional distress, and damage to his reputation and standing in the community.

123.     **WHEREFORE**, the Plaintiff requests that this Court to:

124.     enter judgment in favor of the PLAINTIFF and against the Defendants holding the Defendants severally and jointly liable for the Plaintiff's damages.

125.     Grant compensatory and punitive damages;

126.     Award attorney's fees and costs pursuant to 2 U.S.C. § 1988, and

**127.**     Issue a prospective declaratory and injunctive judgment against the Defendants, as outlined in the Prayer for Relief section of this complaint.

## COUNTS 3 – COUNT 9

128.     In Counts 3 through 9, the Plaintiff re-alleges all relevant paragraphs under §5, §6(B)(I), §6(E), §6(F), and §6(G) and further states that: The DEFENDANTS SCOTT BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, JUDGE LOGUE, MS. HERNANDEZ, and MR. MARTINEZ (collectively referred to as the "Defendants" in this Count) acted under color of state law, by conspiring with and acting heavily influenced by JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and/or JUDGE LOGUE; therefore, their actions can be attributed to the state, making them liable under Section 1983:

129.     As it applies to Counts 3 through 9, Plaintiff had a right under the U.S. Constitution, Amendment I, Petition Clause, and under the Florida Constitution, Article I, Section 21, to access the courts of the state of Florida to obtain redress for his grievances.

130.     As it applies to Counts 3 through 9, the Due Process Clause of the U.S. Constitution, Amendment XIV, protects the Plaintiff from being deprived of access to the courts by state actors, as well as by private actors acting in concert with state actors, without due process of law.

131.     As it applies to Counts 3 through 9, the Due Process Clause of the 14th Amendment to the U.S. Constitution requires that state courts provide fair and impartial adjudication by applying the correct principles of law to the facts of the cases they adjudicate.

**COUNT 3.:    DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (MS. HERNANDEZ AND MR. MARTINEZ).**

132.    MS. HERNANDEZ and MR. MARTINEZ violated Plaintiff's right to access the court by engaging in actions that effectively barred Plaintiff from a fair opportunity to present his case in court, thereby violating his right to procedural due process under the Fourteenth Amendment.

133.    On **February 11, 2014**, MS. HERNANDEZ and MR. MARTINEZ, in concert with JUDGE BERNSTEIN and his appointed Guardian Ad Litem, LILIANA REAL, orchestrated the removal of Plaintiff's children from his custody without a court order or his consent, depriving Plaintiff of his legal right to notice and an opportunity to be heard.

134.    JUDGE BERNSTEIN, acting in concert with MS. HERNANDEZ, MR. MARTINEZ, and the GAL appointed by him, knowingly delayed the return of Plaintiff's children for seven days, further depriving Plaintiff of his right to access the courts to contest this custody issue.

135.    JUDGE BERNSTEIN permitted the GAL to file her report one day before the final hearing, despite the requirement that it be filed 20 days prior, and subsequently denied Plaintiff's motion for continuance. This action by JUDGE BERNSTEIN, influenced by his relationship with the GAL and in concert with MS. HERNANDEZ and MR. MARTINEZ, effectively deprived Plaintiff of the ability to adequately prepare and present his case, a fundamental component of access to the courts.

136.    The actions of MS. HERNANDEZ and MR. MARTINEZ, facilitated by JUDGE BERNSTEIN, were intentional and purposeful, aimed at denying Plaintiff the right to a fair legal process by manipulating court procedures and abusing judicial discretion.

137.    Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference to the rights of Mr. Polo, entitling him to compensatory and punitive damages.

**COUNT 4.:    DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE BERNSTEIN).**

138.     On **October 24, 2017**, JUDGE BERNSTEIN deprived Plaintiff of access to the court by removing Plaintiff's right to file documents in the family case without notice and an opportunity to be heard.

139.     Based on information and belief, JUDGE BERNSTEIN ordered the clerk of court to prohibit Plaintiff from filing any documents. As a result, Plaintiff was unable to file any documents following the **October 24, 2017**, order and continues to be unable to file.

### COUNT 5.:     DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE BERNSTEIN)

140.     On or about **October 2, 2018**, JUDGE BERNSTEIN deprived Plaintiff of access to the court by issuing another order preventing Plaintiff from filing anything in the case's docket without notice and an opportunity to be heard.

### COUNT 6.:     DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE DEL REY)

141.     On **March 6, 2019**, JUDGE DEL REY deprived Plaintiff of access to the court by leaving Plaintiff without an attorney, despite her knowledge of the **October 2, 2018** order, wich was preventing Plaintiff from having any access to the court.

142.     Upon information and belief, JUDGE DEL REY ordered the Clerk of Courts to continue denying Plaintiff access to file anything in the docket. Moreover, she refused to grant a hearing on whether Plaintiff's right to access the court was removed without due process of law (notice and opportunity to be heard).

### COUNT 7.:     DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE DEL REY).

143.     On **May 5, 2021**, JUDGE DEL REY further deprived Plaintiff of access to the court by leaving Plaintiff without an attorney, knowing that there was an order dated **October 2, 2018**, preventing Plaintiff from having any access to the court, and by refusing to hold a hearing on Plaintiff's right to access the court.

### COUNT 8.:     DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE MULTACK).

144.     On July 11, 2022, JUDGE MULTACK deprived Plaintiff of his right to access the court by issuing an order that restricted his ability to file motions, limiting them to just one motion. This action was taken without providing Plaintiff with notice and an opportunity to be heard.

**COUNT 9.:      DEPRIVATION OF ACCESS TO THE COURT IN VIOLATION OF 42 U.S.C. § 1983 (JUDGE LOGUE).**

145.      JUDGE LOGUE, the Chief Judge of the 3rd DCA and an employee of DEFENDANT STU, deprived Plaintiff of access to the court by engaging in and influencing his peers to fabricate and adopt false facts without supporting evidence in the record. Additionally, he failed to apply the correct principles of law to the admitted facts of the case with the malicious intent of preventing Plaintiff from succeeding on appeal, thereby depriving Plaintiff of a real opportunity to be heard, which is a fundamental aspect of due process.

146.      The Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference, warranting compensatory and punitive damages.

147.      As a direct and proximate result of the actions of Defendants SCOTT BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, JUDGE LOGUE, and those of MS. HERNANDEZ, and MR. MARTINEZ in concert with JUDGE BERNSTEIN, as described in Counts 3 through 9, Plaintiff was deprived of access to the court and suffered severe emotional distress and financial damages.

148.      **WHEREFORE**, the Plaintiff, in counts 3 through 9 requests that this Court enter judgment in favor of the PLAINTIFF and against the DEFENDANTS SCOTT BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, JUDGE LOGUE, MS. HERNANDEZ, and MR. MARTINEZ as follows:

    A) Holding the Defendants, MS. HERNANDEZ, and MR. MARTINEZ, severally and jointly liable for the Plaintiff's damages.

    B) The Plaintiff further requests that the Court grant compensatory and punitive damages against MS. HERNANDEZ, and MR. MARTINEZ.

    C) Awarding attorney's fees and costs pursuant to 2 U.S.C. § 1988 against the Defendants, and

149.      Awarding attorney's fees and costs, and issuing a prospective declaratory judgment against DEFENDANTS SCOTT BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, and JUDGE LOGUE, as outlined in the Prayer for Relief section of this complaint.

**COUNT 10.:    CIVIL AND 42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE MR. POLO OF HIS CIVIL LIBERTIES IN VIOLATION OF 42 U.S.C. § 1983.**

150.     Plaintiff re-alleges all relevant paragraphs under §5, §6(A), §6(B)(II), and §6(C), and further states that:

151.     Defendants ST. THOMAS UNIVERSITY, INC. ("STU"), SEGARRA & ASSOCIATES, P.A., MANUEL SEGARRA, JUDGE BERNSTEIN, JUDGE DEL REY, JUDGE MULTACK, JUDGE LOGUE, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (collectively referred to as the "Defendants" in this Count) acted under color of state law, by acting heavily influenced by JUDGE BERNSTEIN; therefore, their actions can be attributed to the state, making them liable under Section 1983.

152.     The Defendants conspired to deprive MR. POLO of his constitutional rights without due process of law and assisted each other, leading to the deprivation of Plaintiff's constitutional rights under 42 U.S.C. § 1983, and in furtherance of their agreement to deprive MR. POLO of their constitutional rights they engaged in the following acts:

### (A) DEPRIVATION OF ACCESS TO THE COURT.

153.     On **February 11, 2014**, Defendants, MS. HERNANDEZ and MR. MARTINEZ in conspiracy with Lilliana Real (the "GAL") and JUDGE BERNSTEIN fabricated a false emergency to remove MR. POLO'S children without legal basis, removed the children and retained them for 7 days. Moreover, during the pendency of the family case, they engaged in provoking altercations and filed a petition of injunction based on false allegations to facilitate building a case against MR. POLO.

154.     During the pendency of the case, JUDGE BERNSTEIN permitted the removal of MR. POLO'S children without any legal or factual bases, allowed procedural abuses and manipulated court proceedings to disadvantage MR. POLO, allowed his appointed GAL to perjure herself to facilitate a favorable outcome for MS. HERNANDEZ, denied MR. POLO'S motion for continuance to prevent MR. POLO from having a fair opportunity to respond to false allegations of his GAL, deprived MR. POLO of access to the Court without serving notice on MR. POLO and allowing him to be heard, made referrals to a co-parenting coordinator making false allegations of history of allegations domestic violence allegations which was not an issue in front of the court.

155.     MR. SEGARRA, engaged in providing Bernstein with an irrelevant and misleading list of open motions, to facilitate BERNSTEIN'S removal of MR. POLO'S access to the court without due process, engaged in ex parte communication with JUDGE BERNSTEIN and served

as an information gathering vehicle for JUDGE BERNSTEIN and St. Thomas University to obtain information to deprive MR. POLO of his career in law without due process.

156.     GM SINGER [2], another co-conspirator, dismissed MR. POLO'S petition for modification without notice and opportunity to be heard by dismissing the case based on affirmative defenses never raised by proper pleadings to prevent MR. POLO from having his day in court.

157.     JUDGE DEL REY  and JUDGE MULTACK intentionally failed to apply the correct principle of laws to the fact of MR. POLO'S case, restricted MR. POLO'S right to file without notice and opportunity to be heard, refused to allow MR. POLO a hearing to recover access to the court to have fair access to court resources, and exercise jurisdiction after the case was concluded without the Court retaining jurisdiction and the time to file for rehearing had expired, with the sole purpose of creating financial damages to MR. POLO by granting attorney's fees not supported by law or facts, which they did.

158.     JUDGE LOGUE, the Chief Judge of the 3rd DCA and an employee of DEFENDANT STU, deprived MR. POLO of access to the court by engaging in and influencing his peers to fabricate and adopt false facts without supporting evidence in the record and to intentionally fail to apply the correct principles of law to the admitted facts of the case with the malicious intent of preventing MR. POLO from succeeding on appeal, depriving MR. POLO, thereby, of a real opportunity to be heard.

### (B) DEPRIVATION OF PROPERTY INTEREST RIGHT

159.     MR. SEGARRA, MS. HERNANDEZ, MR. MARTINEZ, JUDGE BERNSTEIN, DEAN LAWSON, and DEAN MOORE (both deans together referred to as "STU management" in this count), agreed to deprive MR. POLO of his property interest right to the continued enrollment of MR. POLO at STU.

160.     On **October 23, 2017,** Judge BERNSTEIN agreed with STU Management to build a case against MR. POLO, to provide STU Management with any excuse to expel MR. POLO

---

[2] Not a party, but mentioned as another conspirator, for purpose of showing the concerted actions of the defendants.

from law school and STU management agreed to allow BERNSTEIN to use STU'S Honor proceeding to retaliate against MR. POLO, in violation of STU'S terms of contract with MR. POLO.

161.     Judge Bernstein, leveraging his position as a state actor, began to fabricate the record. On **January 31, 2019**, when he was no longer the judge in the case, he sent his order of recusal to STU Management, containing false allegations of misconduct against Mr. Polo. The order was accompanied by a letter in which he claimed to be acting within his official capacity by signing as the Judge and using the State Court's letterhead.

162.     STU Management, through its agents including DEANS LAWSON and MOORE, allowed BERNSTEIN to use the honor council proceeding by accepting allegations they knew to be false and initiating an honor council proceeding to resolve MR. BERNSTEIN'S personal grievances with MR. POLO, and they expelled MR. POLO, based on false allegations, and not on clear and convincing evidence of any wrongdoing in violation of their own Honor Council rules.

163.     MS. HERNANDEZ and MR. MARTINEZ continued to finance MR. SEGARRA to deprive MR. POLO of his constitutional rights, gave strategic support and used MR. SEGARRA'S services to harm MR. POLO in his property interest right.

164.     MR. SEGARRA provided a list of open motions to pretend between him and BERNSTEIN that those open motions were sufficient basis to remove MR. POLO'S access to the court without notice and opportunity to be heard. SEGARRA also conducted a deposition of MR. POLO to gather key information BERNSTEIN and STU needed to execute their plan. Additionally, he accepted to serve as an investigator for STU'S Honor Council providing misleading information to justify expelling MR. POLO.

165.     The actions of Defendants, expressed in this count, were taken in retaliation for MR. POLO'S engagement in Political Speech against the Corruption in the Judiciary branch, and for filing sue against MR. BERNSTEIN'S coconspirators.

166.     Moreover, their actions were intentional, malicious, and aimed at causing harm to MR. POLO, as evidenced by their total disregard for the rights of MR. POLO, the truth, and the procedural safeguards owed to MR. POLO under the law and STU'S own rules.

167.     BERNSTEIN'S actions in this section (B) were taken in the clear absence of all jurisdiction, because he was not the judge in the family court case anymore, and were nonjudicial acts entitling MR. POLO to compensatory damages, injunctive relief, and punitive damages against JUDGE BERNSTEIN.

### (C) POLICY(IES) OF STU AND SEGARRA & ASSOCIATES, P.A. LEADING TO THE PLAINTIFF CONSTITUTIONAL DAMAGES

168.     STU and SEGARRA & ASSOCIATES, P.A. (collectively, "the Institutions") knew or should have known of their employees' propensity to retaliate and violate constitutional rights and failed to act to prevent these violations, which led to Plaintiff's wrongful expulsion.

169.     This propensity is evidenced by STU employees' reliance on false information provided by JUDGE BERNSTEIN and MR. SEGARRA to initiate and continue the Honor Council proceedings against Plaintiff, which were conducted without adhering to the procedural safeguards required under STU'S Honor Code.

170.     MR. SEGARRA'S propensity is shown by his role as STU'S investigator in the Honor Council proceeding, where he produced misleading evidence to facilitate the deprivation of Plaintiff's rights.

171.     Despite being aware of these issues, the Institutions failed to address or prevent the misconduct.

172.     The Institutions' actions reflect a policy or custom of permitting or endorsing unlawful deprivations of rights and retaliation for the exercise of constitutionally protected rights.

173.     The Institutions' upper management, with deliberate indifference, failed to properly discipline, train, or supervise employees, leading to unlawful conduct.

174.     Management had actual knowledge of their employees' involvement in depriving Plaintiff of his constitutional rights and retaliating for the exercise of constitutionally protected rights.

175.     This pattern of conduct directly deprived Plaintiff of his civil rights under the United States Constitution without due process.

176.     STU'S publication and dissemination of Plaintiff's expulsion damaged his reputation, causing embarrassment and humiliation among peers, community members, and educators.

177.     Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference, warranting both compensatory and punitive damages.

178.     As a direct and proximate result of collection of the Defendants' actions in furtherance of their conspiracy, MR. POLO was deprived of his constitutional rights without due process of law and suffered significant damages including emotional distress, damage to his reputation, and financial losses related to his inability to complete his education and pursue his chosen career path.

179.     The Defendants' actions were intentional, willful, egregious, and undertaken with malice or reckless indifference, warranting compensatory and punitive damages.

180.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF as follows:

181.     Holding the Defendants JUDGE BERNSTEIN, SEGARRA & ASSOCIATES, P.A., ST. THOMAS UNIVERSITY, INC., MR. SEGARRA, MS. HERNANDEZ, and MR. MARTINEZ severally and jointly liable for the Plaintiff's damages, including but not limited to compensatory and punitive damages, and issuing injunctive relief against them as outlined in the Prayer for Relief section.

182.     Awarding attorney's fees and costs, and issuing a prospective declaratory judgment against the Defendants to stop the harassment that will not stop unless this court acts to prevent further deprivations of rights by the defendants against MR. POLO, as outlined in the Prayer for Relief section of this complaint.

## COUNT 11.:   ARBITRARY AND CAPRICIOUS, BREACH OF CONTRACT. AGAINST ST. THOMAS UNIVERSITY, INC.

183.     Plaintiff re-alleges all relevant paragraphs under §5, §6 (C) and further states that:

184.     Defendant ST. THOMAS UNIVERSITY, INC. ("STU") was bound by a contract with Plaintiff FRANK POLO ("Plaintiff") as outlined in the "Student Handbook 2014-2015."

185.     Under the contract, Plaintiff was required to pay tuition and fees in exchange for a Juris Doctor degree and a Tax Law Certificate upon successful completion of coursework and adherence to STU'S standards.

186.     Plaintiff fulfilled all obligations, including payment of fees and compliance with academic standards.

187.     STU, through its agents DEAN TAMARA F. LAWSON, DEAN PATRICIA MOORE, and JAY S. SILVER (collectively "STU Management"), engaged in actions that were arbitrary, capricious, and in breach of contract.

188.     Specifically, STU Management misused the Honor Council for personal vendettas, failed to meet the standard of proof required by STU'S Honor Code, and excluded Plaintiff from parts of the Honor Council hearing.

189.     These actions breached the contract by failing to adhere to the terms of honor code rules, which are the terms of the agreement, denying Plaintiff fair treatment and educational services for which he had paid.

190.     As a result, Plaintiff suffered significant damages including loss of educational and professional opportunities, reputational damage, emotional distress, and financial loss.

191.     Defendants' actions were intentional, willful, and malicious, warranting an award of compensatory and punitive damages to Plaintiff.

192.     **WHEREFORE**, Plaintiff requests judgment against STU as follows:

193.     Granting compensatory and punitive damages against the Defendant

194.     Awarding attorney's fees and costs, and issuing a declaratory and injunctive relief as outlined in the Prayer for Relief.

195.     Holding STU severally and jointly liable for Plaintiff's damages as detailed in the Prayer for Relief.

### COUNT 12.:   TORTIOUS INTERFERENCE WITH CONTRACT

196.     Plaintiff re-alleges all relevant paragraphs under §5, §6(A), §6(B)(II), and §6(C), and further states that:

197.     At all relevant times, Plaintiff FRANK POLO had a valid contract with ST. THOMAS UNIVERSITY, INC. ("STU"), under which Plaintiff was to receive a Juris Doctor degree and a Tax Law Certificate upon completing the required coursework and paying tuition and fees.

198.     The plaintiff complied with the terms of the contract and was not in default.

199.     Defendants JUDGE SCOTT M. BERNSTEIN, SEGARRA & ASSOCIATES, P.A., MANUEL SEGARRA (acting as an agent for SEGARRA & ASSOCIATES, P.A., and clients MERLIN HERNANDEZ and RANDOLPH MARTINEZ), MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (together referred to as the "Defendants" in this count) were aware of the contract between Plaintiff and STU.

200.     Defendants intentionally and unjustifiably interfered with this contract, causing STU to breach it. Specific actions included:

201.     On **January 31, 2019**, Defendant JUDGE BERNSTEIN sent a letter to the Dean of STU, using official court letterhead, containing false allegations about Plaintiff, which led STU to initiate disciplinary proceedings against Plaintiff.

202.     Defendant MANUEL SEGARRA, on behalf of SEGARRA & ASSOCIATES, P.A., and in coordination with HERNANDEZ and MARTINEZ, provided misleading information to STU, falsely depicting Plaintiff's actions as unethical, contributing to Plaintiff's expulsion.

203.     Defendants HERNANDEZ and MARTINEZ financed and supported the legal actions interfering with Plaintiff's educational contract, participating in a scheme to harm Plaintiff.

204.     As a direct and proximate result of Defendants' interference, STU expelled Plaintiff, breaching the contract and causing Plaintiff significant damages, including loss of career opportunities, reputational harm, emotional distress, and financial losses due to the inability to complete his degree.

205.     Defendants' actions were intentional, willful, and malicious, warranting an award of compensatory and punitive damages to Plaintiff.

206.     **WHEREFORE**, the Plaintiff requests that this Court enter judgment in favor of the PLAINTIFF as follows:

207.     Grant compensatory and punitive damages against the Defendant.

208.     Award attorney's fees and costs, and grant declaratory and injunctive relief as detailed in the Prayer for Relief.

209.     Hold Defendants severally and jointly liable for Plaintiff's damages as outlined in the Prayer for Relief.

### COUNT 13.:   GROSS NEGLIGENCE UNDER FLORIDA LAW

210.     Defendants JUDGE SCOTT M. BERNSTEIN, ST. THOMAS UNIVERSITY, INC., SEGARRA & ASSOCIATES, P.A., MANUEL SEGARRA, MERLIN HERNANDEZ, and RANDOLPH MARTINEZ (collectively, "Defendants") acted with gross negligence in violation of Florida law.

211.     Gross negligence under Florida law is defined as a course of conduct showing a reckless disregard for the safety and rights of others. Defendants' actions demonstrated such disregard towards Plaintiff FRANK POLO's constitutional rights and safety.

212.     Defendants knowingly deprived Plaintiff of his constitutional rights, including due process, access to the courts, and continued enrollment at STU. Their actions obstructed and denied judicial and administrative remedies sought by Plaintiff under the First Amendment.

213.     DEFENDANTS SEGARRA & ASSOCIATES, P.A., and ST. THOMAS UNIVERSITY, INC., had a duty to prevent foreseeable harm by properly training and supervising their employees. They breached this duty by failing to do so, leading to the wrongful deprivation of Plaintiff's rights.

214.     Defendants acted with gross negligence by failing to meet the high standards required in their judicial and educational roles, including:

A) On **January 31, 2019**, JUDGE BERNSTEIN sent a letter to the Dean of STU using official court letterhead, containing false allegations about Plaintiff, which led to disciplinary actions against him.

B) MANUEL SEGARRA, acting on behalf of SEGARRA & ASSOCIATES, P.A., and in coordination with HERNANDEZ and MARTINEZ, provided misleading information to STU that falsely depicted Plaintiff's actions as unethical.

C) HERNANDEZ and MARTINEZ financed and supported legal actions that interfered with Plaintiff's educational contract and participated in a broader scheme to harm Plaintiff.

D) STU Management, including DEANS LAWSON and MOORE, allowed BERNSTEIN's false allegations to influence their decisions and expel Plaintiff without clear and convincing evidence, contrary to their own rules.

215.     The Defendants' actions exemplify a reckless disregard for Plaintiff's rights and demonstrate gross negligence.

216.     As a result of Defendants' collective gross negligence, Plaintiff has suffered significant damages, including harm to his education, career, and reputation, warranting compensatory and punitive damages.

217.     **WHEREFORE**, Plaintiff requests that this Court:

218.     Grant compensatory and punitive damages against the Defendants.

219.     Award attorney's fees and costs, and grant declaratory and injunctive relief as detailed in the Prayer for Relief.

220.     Hold Defendants jointly and severally liable for Plaintiff's damages as outlined in the Prayer for Relief.

### COUNT 14.:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

221.     Plaintiff re-alleges all paragraphs contained in §5, §6(A), §6(B)(II), and §6(C), and further states that:

222.     DEFENDANTS JUDGE BERNSTEIN, MR. SEGARRA, MS. HERNANDEZ, MR. MARTINEZ, SEGARRA & ASSOCIATES, P.A., and ST. THOMAS UNIVERSITY, INC., (the "DEFENDANTS" through this Count) did the following:

223.     DEAN LAWSON, DEAN MOORE, MR. SILVER (collectively referred to as "STU Management"), and MR. SEGARRA were acting within the scope of their employment duties.

### (A) OUTRAGEOUS, INTENTIONAL AND RECKLESS CONDUCT:

#### (I).    STU AND ITS AGENTS CONDUCT:

224.    STU Management engaged in conduct that was outrageous and beyond the bounds of decency by:   (1) Forcing MR. POLO into an Honor Council proceeding known to be a sham; (2) Depriving MR. POLO of his degree while disregarding substantial evidence and their own rules; (3) Conspiring with a state actor, JUDGE BERNSTEIN, to deprive MR. POLO of his property interest without due process; (4) Retaliating against MR. POLO for his political speech and petitions for redress of grievances; and Breaching their contractual duty to MR. POLO.

225.    STU Management, including DEAN LAWSON, DEAN MOORE, STU President DAVID A. ARMSTRONG, and ST. THOMAS UNIVERSITY, INC. knew or should have known that such conduct would likely result in emotional distress.

#### (II).    CONDUCT OF MR. SEGARRA AND SEGARRA & ASSOCIATES, P.A.:

226.    MR. SEGARRA conspired with STU Management and state actors to (1) deprive MR. POLO of his constitutional right to Access the Court; and (2) his constitutional property interest rights to his continued enrollment at STU, without due process of law.

227.    SEGARRA & ASSOCIATES, P.A., its agents, and MR. SEGARRA himself knew or should have known that these actions would likely cause emotional distress.

#### (III).    MS. HERNANDEZ'S AND MR. MARTINEZ'S CONDUCT:

228.    MS. HERNANDEZ and MR. MARTINEZ: Engaged in actions that included (1) planning, supporting, and abetting the deprivation of MR. POLO's constitutional rights and custody of his children; (2) Provoked physical confrontations to get MR. POLO arrested.

229.    MS. HERNANDEZ and MR. MARTINES knew or should have known that these actions would likely cause emotional distress.

#### (IV).    JUDGE BERNSTEIN'S CONDUCT:

230.    JUDGE BERNSTEIN: (1) Interfered with MR. POLO'S contractual obligations and deprived him of his constitutional property interest in continued enrollment at STU; (2) Caused an Honor Council proceeding to be initiated with his fabricated false allegations, causing

embarrassment and humiliation; and (3) Retaliated against MR. POLO for his political speech and petitions for redress of his grievances.

231.     BERNSTEIN'S actions were intentional and reckless, and he knew or should have known that such conduct would likely cause emotional distress.

232.     The conduct described was outrageous and intolerable in a civilized community, going beyond all bounds of decency.

233.     The conduct of the Defendants directly and proximately caused Plaintiff's injuries, producing or contributing to such injuries in a natural and continuous sequence.

234.     As a direct, natural, and proximate result of the DEFENDANTS' actions, Plaintiff suffered severe emotional distress and damages.

235.     The Defendants' actions were intentional, willful, and undertaken with malice or reckless indifference, warranting compensatory and punitive damages.

236.     **WHEREFORE**, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against the Defendants as follows:

237.     Granting compensatory and punitive damages against the Defendant.

238.     Awarding attorney's fees and costs, and issuing a prospective declaratory and injunctive judgment against the DEFENDANTS as outlined in the Prayer for Relief section of this complaint;

239.     Awarding judgment holding the DEFENDANTS severally and jointly liable for Plaintiff's damages as outlined in the Prayer for Relief section of this complaint.

### § 8.PRAYER FOR RELIEF

240.     Plaintiff, FRANK E. POLO, demands a trial by jury and seeks judgment against SCOTT MARCUS BERNSTEIN; MARCIA DEL REY; SPENCER MULTACK; THOMAS LOGUE; MANUEL A. SEGARRA III; MERLIN HERNANDEZ; RANDOLPH MARTINEZ; ST. THOMAS UNIVERSITY, INC.; and SEGARRA & ASSOCIATES, P.A.,

241.     The plaintiff requests that the Court hold SCOTT MARCUS BERNSTEIN, MANUEL A. SEGARRA III; MERLIN HERNANDEZ; RANDOLPH MARTINEZ; ST.

THOMAS UNIVERSITY, INC.; and SEGARRA & ASSOCIATES, P.A., jointly and severally liable in the amount of three hundred twenty-four million dollars, (324,000,000) for the following:

A) **Compensatory Damages**: Including special damages, past, present, and future medical expenses, reliance damages, loss of opportunity damages, compensatory damages for pain and suffering, loss of past earnings, and impairment of future earning capacity.

B) **Exemplary and Punitive Damages**: To punish the Defendants for their conduct and deter similar future conduct.

242. **Declaratory Judgment:** Plaintiff requests a prospective declaratory judgment against all Defendants, declaring that:

A) In the absence of a constitutional order obtained with notice and opportunity to be heard, Plaintiff has a constitutional right to access the state court system under Fla. Const. Art. 1, §§ 5 and 21, and under the U.S. Const., Amend. 1.

B) Any action by a state actor, including but not limited to the Defendants, their agents, associates, or affiliates, that prevents MR. POLO from having full access to the state courts without notice and opportunity to be heard violates 42 U.S.C. § 1983, the U.S. Const., Amend. 5th and 14th, and/or Fla. Const. Art. 1, § 9.

243. **Retaliation Declaration:** Plaintiff requests a declaration that:

A) The U.S. Const., Amend. 1, and Fla. Const. Art. 1, §§ 4 and 5 confer on MR. POLO the right to engage in core political speech and petition the government for redress without suffering retaliation.

B) Any retaliatory action by the Defendants, their agents, associates, or affiliates, against MR. POLO for exercising these rights violates these constitutional provisions.

244.

245. **Injunctive Relief:** Plaintiff requests injunctive relief requiring SCOTT MARCUS BERNSTEIN, MANUEL A. SEGARRA III, MERLIN HERNANDEZ, RANDOLPH MARTINEZ, ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. to:

A) Abstain from violating or conspiring to violate Plaintiff's constitutional rights through any means.

B) Refrain from retaliating against Plaintiff or any witnesses involved in the case, directly or indirectly.

C) Additionally, Plaintiff seeks a declaration that Defendants have infringed upon Plaintiff's Federal Protective rights under Section 1983.

246.    **Injunctive Relief:** Plaintiff requests injunctive relief requiring SCOTT MARCUS BERNSTEIN, MANUEL A. SEGARRA III, MERLIN HERNANDEZ, RANDOLPH MARTINEZ, ST. THOMAS UNIVERSITY, INC., and SEGARRA & ASSOCIATES, P.A. to:

A) Abstain from violating or conspiring to violate Plaintiff's constitutional rights through any means.

B) Refrain from retaliating against Plaintiff or any witnesses involved in the case, directly or indirectly.

C) Additionally, Plaintiff seeks a declaration that Defendants have infringed upon Plaintiff's Federal Protective rights under Section 1983.

Respectfully submitted,

FRANK E. POLO SR.
1475 SW 1$^{8TH}$ ST APT 411
Miami, FL. 33135
Phone: 305-901-3360
Email: Frank.Polo@msn.com

PRESS FIRMLY TO SEAL



# UNITED STATES
## POSTAL SERVICE ®

# PRIORITY®
## MAIL

■ Expected delivery date specified for domestic use.

■ Domestic shipments include $100 of insurance (restrictions apply).*

■ USPS Tracking® service included for domestic and many international destinations.

■ Limited international insurance.**

■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

## PRIORITY
★ MAIL ★



# UNITED STATES
## POSTAL SERVICE ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:

RECD BY    D.C.

AUG 19 2024

TRACKED ■ INSURED

EXPECTED DELIVERY DAY: 08/19/24

USPS TRACKING® #

9505 5162 5883 4229 8687 03

**TO:** Attn: U.S. District Court Clerk
Wilkie D. Ferguson, Jr. United States
Courthouse
400 North Miami Ave. 8th Floor
Miami, Florida 33128

Label 228, March 2016        FOR DOMESTIC AND INTERNATIONAL USE

PS00

OD: 12 1/2 x 9 1/2
October 2023